**United States District Court**

**District of Massachusetts**

| | | |
|---|---|---|
| | ) | |
| Douglas Rosenberg | ) | |
|     Plaintiff | ) | |
| v. | ) | Case No. 1:23-cv-10441-FDS |
| | ) | |
| Mass Mutual Life Insurance Co., et al. | ) | |
|     Defendants | ) | |
| | ) | |

**STIPULATION OF THE PARTIES OF ACCEPTANCE OF SERVICE BY DEFENDANTS
MASS MUTUAL LIFE INSURANCE CO. AND MML INVESTORS SERVICES, LLC
AND MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Now comes Plaintiff Douglas Rosenberg ("Plaintiff") and Defendants Massachusetts Mutual Life Insurance Co. and MML Investors Services, LLC ("Defendants") (together with Plaintiff, the "Parties") in the above-entitled matter and they hereby stipulate and agree that Defendants will accept service of Plaintiff's complaint and summons, copies of which are attached hereto.

The Parties further stipulate and agree that, subject to Court approval, Defendants shall have to and until June 15, 2023, to move, answer or otherwise respond to Plaintiff's complaint.

The Plaintiff
Douglas Rosenberg

*Robert D. Loventhal*
_____
Robert D. Loventhal, Esq.
145 Morris Lane
Unit D   101
Lake Forest Illinois 60045
Telephone (617)5018285
Email:RDLLAW99@aol.com

The Defendants
Massachusetts Mutual Life Insurance Co.
and MML Investors Services, LLC

*James R. Carroll*
_____
James R. Carroll (BBO #554426)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
617-573-4800
Email: James.Carroll@skadden.com

APPROVED AND SO ORDERED:

Dated: _____

_____
F. Dennis Saylor IV
Chief Judge, United States District Court

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

---

**DOUGLAS ROSENBERG**

*Plaintiff*

v.

Civil Action No.: **1:23−CV−10441−FDS**

**MASS MUTUAL LIFE INSURANCE CO., ET AL.**

*Defendant*

---

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

MML Investors Services, LLC
1295 State Street
Springfield, MA 01111

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ − Francis Castilla**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023−05−10 12:54:55**, Clerk USDC DMA

Civil Action No.:  **1:23−CV−10441−FDS**

**PROOF OF SERVICE**

**_(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))_**

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____
Date

_____
_Server's Signature_

_____
_Printed name and title_

_____
_Server's Address_

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DOUGLAS ROSENBERG**

*Plaintiff*

v.

Civil Action No.: **1:23−CV−10441−FDS**

**MASS MUTUAL LIFE INSURANCE CO., ET AL.**

*Defendant*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Mass Mutual Life Insurance Co.
1295 State Street
Springfield, MA 01111

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ − Francis Castilla**

*Signature of Clerk or Deputy Clerk*



**ISSUED ON 2023−05−10 12:54:55**, Clerk USDC DMA

Civil Action No.:  **1:23−CV−10441−FDS**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____                    _____
           Date                                              *Server's Signature*

                                                             _____
                                                             *Printed name and title*


                                                             _____
                                                             *Server's Address*

Additional information regarding attempted service, etc:

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Rosenberg,Douglas

**(b)** County of Residence of First Listed Plaintiff    King
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Douglas Rosenberg,, Pro Se 105 Ziebach St #223
Belle Fourche, SD 57717 (415) 295-2508

## DEFENDANTS

MML INVESTORS SERVICES, LLC, MASSACHUSETTSMUTUAL LIFE MML INVESTORS SERVICES, LLC, MASSACHUSETTSMUTUAL LIFE INSURANCE CO. and KEITH GILL

County of Residence of First Listed Defendant    Hampden County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury—Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | 830 Patent | 430 Banks and Banking |
| | 340 Marine | | 720 Labor/Management Relations | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | **PERSONAL PROPERTY** | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 370 Other Fraud | 751 Family and Medical Leave Act | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 790 Other Labor Litigation | | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 360 Other Personal Injury | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 160 Stockholders' Suits | 362 Personal Injury -Medical Malpractice | 385 Property Damage Product Liability | | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | | | **IMMIGRATION** | 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee— Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1348

Brief description of cause:
Stock Manipulation , Failure  TO SUPERVISE,Conspiracy, California Unfair business practices

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE                          DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
**(Place an "X" in One Box Only)**    ☐ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA-MCKINLEYVILLE

DATE   02/23/2023          SIGNATURE OF ATTORNEY OF RECORD          Pro Se

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

**(1)** United States plaintiff. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

**(2)** United States defendant. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

**(3)** Federal question. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

**(4)** Diversity of citizenship. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.

**(1)** Original Proceedings. Cases originating in the United States district courts.

**(2)** Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

**(3)** Remanded from Appellate Court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

**(4)** Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

**(5)** Transferred from Another District. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

**(6)** Multidistrict Litigation Transfer. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

**(8)** Multidistrict Litigation Direct File. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.** **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | | |
|---|---|---|
| Douglas Rosenberg | ) | Case No. _____ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| KEITH PATRICK GILL, MML INVESTORS | ) | |
| SERVICES, LLC, AND MASSACHUSETTS | ) | |
| MUTUAL LIFE INSURANCE CO. | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

### I.      The Parties to This Complaint

#### A.      The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Douglas Rosenberg |
| Street Address | Se 105 Ziebach St #223  57717 |
| City and County | Belle Fourche, |
| State and Zip Code | South Dakota |
| Telephone Number | (415) 295-2508 |
| E-mail Address | 57717 |

#### B.      The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Defendant No. 1

|  |  |
|---|---|
| Name | MML INVESTORS SERVICES, LLC |
| Job or Title *(if known)* | |
| Street Address | 1295 STATE STREET |
| City and County | SPRINGFIELD,  Hampden County |
| State and Zip Code | MA 01111 |
| Telephone Number | not known |
| E-mail Address *(if known)* | not known |

Defendant No. 2

|  |  |
|---|---|
| Name | MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY |
| Job or Title *(if known)* | |
| Street Address | 1295 STATE ST |
| City and County | SPRINGFIELD , Hampden County |
| State and Zip Code | MA 01111 |
| Telephone Number | 413-744-1000 |
| E-mail Address *(if known)* | Not known |

Defendant No. 3

|  |  |
|---|---|
| Name | Keith Gill |
| Job or Title *(if known)* | |
| Street Address | 8 Chandler Rd  Middlesex County |
| City and County | Wilmington |
| State and Zip Code | MA , 01887 |
| Telephone Number | Not known |
| E-mail Address *(if known)* | Not known |

Defendant No. 4

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

[✓] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

15 U.S.C. §78i(a)(2),  15 U.S.C. §78i(a)(3), 15 U.S.C. §78i(a)(4), 15 U.S.C. §78i(a), 15 U.S.C. §78i(a), SECTION 20(a) OF
THE EXCHANGE ACT

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual
The plaintiff, *(name)* _____ , is a citizen of the
State of *(name)* _____ .

b.    If the plaintiff is a corporation
The plaintiff, *(name)* _____ , is incorporated
under the laws of the State of *(name)* _____ ,
and has its principal place of business in the State of *(name)*
_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual
The defendant, *(name)* _____ , is a citizen of
the State of *(name)* _____ . Or is a citizen of
*(foreign nation)* _____ .

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

    b.      If the defendant is a corporation

           The defendant,  *(name)* _____, is incorporated under

           the laws of the State of *(name)* _____, and has its

           principal place of business in the State of *(name)* _____.

           Or is incorporated under the laws of *(foreign nation)* _____,

           and has its principal place of business in *(name)* _____.

          *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

   3.      The Amount in Controversy

        The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

        The amount Defendants owe  Plaintiff is $1,300,000. The Plaintiff lost that in margin sellouts due to the GME rise instigated by Defendants and Defendants Failure to supervise

---

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

Please see attached sheets

---

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

WHEREFORE, the plaintiff, respectfully demands that this Court:
b. Enter judgment against the defendants and in favor of the plaintiff  for 1.2 Million which are the Plaintiffs actual loss in total from the GME Short squeeze caused by Defendants
c. Award the Plaitinff compensatory and punitive damages against all defendants,
jointly and severally, in an amount to be determined at trial, including pre and
post-judgment interest thereon;

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

## V.      Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:           02/24/2023

Signature of Plaintiff

Printed Name of Plaintiff       Douglas Rosenberg

### B.      For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

1. After purchasing a sizeable number of shares in GameStop Corp. ("GameStop")

at prices around $5 per share, Gill used multiple identities to promote GameStop on written and

video social media. He went by "Roaring Kitty" on YouTube – where cats and kittens are a

favorite subject matter – and on Twitter and "DeepF***ingValue" on Reddit's WallStreetBets

message board. In order to disguise that the aim of his social-media campaign was simply to

increase the worth of his GameStop shares by creating a demand for the stock, Gill took on the

fake persona of an amateur, everyday fellow, who simply was looking out for the little guy. He

exaggerated and misrepresented the prospects of GameStop and made bold predictions about its

future.

2. Indeed, in order to motivate amateur traders, Gill fashioned himself as a kind ofRobin Hood and characterized securities professionals as villains. Gill slyly targeted large hedgefunds who had shorted GameStop stock as the evil, powerful big boys. He incited a marketfrenzy by advocating revenge on the big hedge funds by buying GameStop shares to drive up the

price and "squeeze" short sellers who would be forced to cover their short positions at greatlyinflated prices. Because of Gill's conduct, in a matter of days, the price of GameStop shares

went up by more than 1,600% to a record $483 a share, causing huge losses for both short sellers

and those who purchased GameStop shares at artificially inflated prices. Gill achieve his

2objective; he made tens of millions of dollars on his original investment. As Gill's mother isquoted as saying, "He always liked money."[1]

3. Gill, however, is no amateur (and no Robin Hood). For many years, he activelyworked as a professional in the investment and financial industries. He holds

extensivesecurities licenses and qualifications, including a securities principal and supervisorymanagement license and a Charted Financial Analyst license. Indeed, at the time Gill wasinciting the market frenzy with his fake persona, he was licensed by MML as a registeredrepresentative (i.e., a securities broker), and he was employed by MassMutual as a "Financial Wellness Director."

4. Gill's deceitful and manipulative conduct not only violated numerous industryregulations and rules, but also various securities laws by undermining the integrity of the market for GameStop shares. He caused enormous losses not only to those who bought option contracts,but also to those who fell for Gill's act and bought GameStop stock during the market frenzy at greatly inflated prices.

5. At the time Gill was engaging in this wrongful conduct, MML and MassMutualhad legal and regulatory obligations to supervise Gill to prevent this very conduct. They failed to do so even though Gill's conduct was continuing and highly public.

6. Consequently, this action is brought to remedy Defendants' egregious conductand somewhat restore the integrity of the securities market.

He Talked to the Journal, The Wall Street Journal, https://www.wsj.com/articles/keith-gilldrove-

the-gamestop-reddit-mania-he-talked-to-the-journal-

11611931696?mod=series_gamestopstockmarket (last accessed Feb. 14, 2021).

Case 3:21-cv-10264-MGM Document 1 Filed 02/16/21 Page 4 of 36

3II. THE PARTIES

7. Plaintiff Douglas Rosenberg was a Resident of Washington

8. He sold Call Options and Sold GME Stock short

9. Keith Patrick Gill is a resident of the Commonwealth of Massachusetts and, oninformation and belief, resides in Brockton, Massachusetts. During the relevant period, Gill was associated with both MML, as a registered representative (a securities broker), and MassMutual,as a "Financial Wellness Director."

10. MML Investors Services, LLC is incorporated in Massachusetts andheadquartered in Springfield, Massachusetts. MML is a subsidiary of MassMutual, and it is abroker-dealer registered with the Financial Industry Regulatory Authority, Inc. ("FINRA").

11. Massachusetts Mutual Life Insurance Company is incorporated in Massachusettsand headquartered in Springfield, Massachusetts. MassMutual is a

financial services company that provides insurance, retirement, investment, and "financial wellness" products and services.

III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12. This Court has jurisdiction over each individual and/or corporate Defendant named herein, as each has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b).

14. In connection with the conduct described herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

IV. FACTS

A. The Real Keith Gill.

15. For more than ten years, Gill has actively worked as a professional in the investment and financial industries. He holds the following securities licenses and qualifications:

a. Investment advisor license (Series 65) since 2/22/2012;

b. Commodity futures and options broker license (Series 3) since 1/10/2013;

c. Securities broker license (Series 7) since 7/5/2016;

d. Securities broker license (Series 65) since 7/29/2016;

e. Securities principal and supervisory management license (Series 24) since

4/6/2017; and

f. Chartered Financial Analyst (considered the highest level of legal and regulatory recognition of finance-related qualifications).

16. Gill's various licenses permit him to sell and trade in a variety of securities,including options. Additionally, his Series 24 license qualifies him to be a principal of a broker

dealer and to supervise other brokers to ensure their compliance with applicable securities laws, regulations, and rules. Unquestionably, Gill holds extensive licenses in the securities industry, understands sophisticated aspect of the securities industry, including the markets, and has extensive knowledge of the securities laws and regulations.

17. Based on public records and information, Gill further has extensive experience working as a securities professional:

a. From July 2010 through March 2019, Gill was President of Debris Publishing, Inc. ("Debris"), which provided financial software to research and portfolio management companies and persons. Debris touted a product called "Quuve" that supposedly was "the world's first fully customizable web-based investment management ecosystem for professional investors" and "empowers investors to tailor institutional-level financial tools in ways thataccommodate their idiosyncratic investment style."

5b. From April 2012 through December 2014, Gill was licensed with Lucidia, LLC, a registered investment advisor firm, as a registered investment advisor.

c. From April 2016 through April 2017, Gill was an "Investment OperationsAnalyst" for LexShares, Inc., the business of which included financing commercial litigation.

d. From July 2016 through April 2017, Gill was registered with FINRA-member firm Wealthforce Securities, LLC as, on information and belief, a registeredrepresentative (a securities broker).

e. From March 2019 through January 28, 2021, Gill was employed by MassMutual as a "Financial Wellness Director."

f. From April 2019 through January 28, 2021, Gill also was registered as a

registered representative (a securities broker) with MML.

18. As a licensed securities professional, including the period he was licensed by andassociated with MML and MassMutual, Gill was obligated to follow various securities laws,

Securities and Exchange Commission ("SEC") rules and regulations, and FINRA rules. For example, the FINRA rules applicable to Gill include:

a. Rule 2010 requires Gill to conduct his business in observance of "high

standards of commercial honor and just and equitable principles of trade."

b. Rule 2020 prohibits Gill from inducing "the purchase or sale of[] any security

by means of manipulative, deceptive or other fraudulent device or contrivance."

c. Rule 2111 requires Gill only to recommend a security that is suitable for the recipient of the communication.

d. Rule 2210 requires that Gill's communications with the public, including on social media, (i) are based on principles of fair dealing and good faith, must be fair and balanced, and must provide a sound basis for evaluating the facts in regard to any particular security or type of security, industry, or service, (ii) not omit any material fact or qualification if the omission, in light of the context of the material presented, would cause the communication to be misleading, (iii) not contain any false, exaggerated, unwarranted, promissory, or misleading statement or claim in any communication, (iv) be clear and not misleading within the context in which they are made, and that they provide balanced treatment of risks and potential benefits, (v) must provide details and

6

explanations appropriate to the audience to which the communication is directed, (vi) must not bury material information in footnotes, and (vii) must not include a prediction or forecast of future performance or make exaggerated or unwarranted claims or forecasts.

e. Rule 3210 prohibits Gill from having accounts with brokerage firms other than the firm with whom he is licensed without the permission of the licensing firm.

B. MML's and MassMutual's Obligations To Supervise.

19. MML and MassMutual had the obligation to supervise Gill's activities concerning

securities and the securities markets.

20. For example, during the period that Gill was licensed with MML and employed

by MassMutual, MML and MassMutual had the duty, under SEC regulations, FINRA rules, and

pertinent law, to supervise Gill concerning his compliance with applicable securities laws and

regulations and with applicable FINRA rules, including those listed above.

21. Moreover, MML's and MassMutual's obligation to supervise Gill extends to his

use of social media and his compliance with the laws, regulations, and rules that apply to

licensed securities professionals, including those laws, rules, and regulations governing

communications to the public regarding securities.

C. Gill's Use of Social Media Undermines the Integrity of, and Manipulates, the

Market for GameStop Shares.

22. To orchestrate the manipulation of GameStop stock, Gill created a far-reaching

and wildly successful social media campaign in the year leading up to the surge in GameStop

shares.

23. The seeds of an idea Gill proliferated to his now hundreds of thousands of

followers—namely, to exponentially drive up the price of GameStop shares—would ultimately

germinate into a lucrative windfall for himself, at the expense of Plaintiff

7

24. Indeed, Gill has been rightfully characterized as "[t]he investor who helped direct

the world's attention to GameStop, leading a horde of online followers in a bizarre market rally

that made and lost fortunes from one day to the next," and "the force behind the quadruple-digit

gains in shares of the videogame retailer GameStop[.]"[2]

25. It was Gill's "advocacy" that, according to many online investors, "helped turn

them into a force powerful enough to cause big losses for established hedge funds and, for the

moment, turn the investing world upside down."[3]

26. Mr. Gill's online persona—he goes by "Roaring Kitty" on YouTube and Twitter

and "DeepF***ingValue" ("DFV") on Reddit—has "drawn tens of thousands of fans and

copycats who share screenshots of their own brokerage accounts."[4]

27. Gill's legion of fans were either unaware or unconcerned that they were

collectively acting to manipulate the price of GameStop shares.

28. Gill's advocacy took many forms, including through content generated on the

social media websites Reddit, YouTube, and Twitter.

29. Gill's conduct violated numerous securities laws and industry regulations and

rules, including those

Gill Incited Reddit Users on the "WallStreetBets" Forum.

30. The run on GameStop shares was, in large part, a direct result of Gill's influence

in an internet forum hosted on the website "Reddit" known as "WallStreetBets" ("WSB").

31. WSB has been characterized as a place "where like-minded people could gather to

exclusively discuss the type of trades that would make a financial adviser's skin crawl. Their

approach would be more akin to gambling than spreadsheet analysis, and their motto something

along the lines of 'YOLO,' short for "you only live once."[5]

32. Indeed, "[t]hat ethos on WallStreetBets not only encourages risky trades, but also

trading the entirety of your net worth or portfolio in a single risky trade."[6]

33. Despite its cavalier approach toward investing, the WSB community has an

undeniable influence on the financial markets—as the meteoric rise in the price of GameStop

shares illustrates.

34. "These guys can move markets," said Jeremy Blackburn, an assistant professor of

computer science at Binghamton University who studies extremist communities on the web.

"That's a huge deal."[7]

35. Currently, the WSB forum has approximately 9 million followers (self-described

as "Degenerates").[8]

36. By catering to the WSB community, Gill was able to achieve his objectives to the

tune of, on paper, approximately $48 million.

37. Approximately one year ago, Gill first began posting his positions in GameStop

under his "DeepF***kingValue" ("DFV") moniker. Specifically, he shared a screenshot of his

E*trade account, depicting how many shares and option contracts he had purchased, the value of

[5] Id.

[6] Jon Sarlin, Inside the Reddit army that's rushing Wall Street, CNN Business,

https://www.cnn.com/2021/01/29/investing/wallstreetbets-reddit-culture/index.html (last

accessed Feb. 14, 2021).

7 Id.

8 https://www.reddit.com/r/wallstreetbets/ (last accessed Feb. 14, 2021).

9

his holdings, and when his option contracts were set to expire.9 In effect, Gill was opening his

playbook, so to speak, for all to emulate his position.

38. Over the next several months, Gill would post a "month-end update" revealing

how the value of his positions fluctuated during the preceding period. Gill posted more

frequently as the price of GameStop shares increased.

39. While initially met with skepticism, Gill's posts garnered a cult-like following,

and he eventually was ordained a messianic figure within the WSB community.

40. For example, in a December 23, 2020, post, when the value of GameStop was

roughly $20 a share, Gill represented that his initial GameStop investment stood at

approximately 3.7 million dollars:

41. As contemplated by Gill, various WSB users said that it was Gill's "updates" that

caused them to purchase shares of their own:

9https://www.reddit.com/r/wallstreetbets/comments/d1g7x0/hey_burry_thanks_a_lot_for_jac

king_up_my_cost/ (last accessed Feb. 14, 2021).

Case 3:21-cv-10264-MGM Document 1 Filed 02/16/21 Page 11 of 36

10

42. Over the next several weeks, Gill continued to galvanize the WSB community. In

a January 5, 2021, post detailing the value of his holdings, WSB users continued to say with

increasing frequency that Gill was the catalyst for their purchase of GameStop shares:10

43. Gill's posts continued and, consequently, the mania for GameStop shares reached

a fever pitch. "As the GameStop frenzy peaked . . . hundreds of thousands of new investors

downloaded applications like Robinhood to join the action, according to Apptopia Inc."[11]

44. The value of Gill's holdings appear to have crested on January 27, 2021. At this

time, Gill represented to the WSB community that, on paper, the value of his holdings was worth

approximately $48 million dollars:

[10] https://www.reddit.com/r/wallstreetbets/comments/kr7s30/gme_yolo_update_jan_5_2021/

(last accessed Feb. 14, 2021).

[11] Id.

11

45. Gill's January 27, 2021, post, which was "liked" or "upvoted" approximately

200,000 times, is replete with WSB users' recounting how Gill encouraged them not only to buy

GameStop shares, but further inspired them to hold their shares so as to manipulate the market

into ensuring a loss for those holding short positions:

12

Gill Actively Recruited Traders on YouTube.

46. On July 13, 2020, Gill began posting videos on YouTube under the moniker

"Roaring Kitty." Gill's initial video stated that his "channel revolves around educational live

streams where I share my daily routine of tracking stocks and performing investment research."[12]

47. In his videos, Gill adorns a headband and cat-themed clothing items. Despite his

disarming appearance, Gill's videos reveal that he was a highly sophisticated and calculated

investor—consistent with his numerous financial certifications. For example, in a nearly twohour

YouTube video dated July 13, 2020, Gill educates his viewers with an array of financial

spreadsheets containing hundreds of metrics and financial calculations Gill purportedly relies

upon prior to making an investment.[13]

48. Though Gill claimed to have been focused on appraising stocks generally, he had

one target in his crosshairs: GameStop. Only two weeks after starting his channel, Gill posted an

approximately hour-long video on July 27, 2020, titled "100%+ short interest in GameStop stock

(GME) – fundamental & technical deep value analysis."[14] In this video, Gill pushed investment

in GameStop on his viewers and directed their attention to the possibility that GameStop shares

were ripe for a "short squeeze."

49. Over the ensuing months, Gill began uploading videos concerning GameStop

with increasing frequency. Of the 80 videos uploaded to Gill's YouTube channel, at least 56

concerned GameStop specifically.

[12] Roaring Kitty – Live Stream Launch, https://www.youtube.com/watch?v=UNqqeXJxaf8

(last accessed Feb. 14, 2021).

[13] Roaring Kitty – Tools Part 3 of 3, https://www.youtube.com/watch?v=7wjWnMcdnlQ (last

accessed Feb. 14, 2021).

14 100%+ short interest in GameStop stock (GME) – fundamental & technical deep value

analysis, https://www.youtube.com/watch?v=GZTr1-Gp74U (last accessed Feb. 14, 2021).

Case 3:21-cv-10264-MGM Document 1 Filed 02/16/21 Page 14 of 36

13

50. Tellingly, a significant number of Gill's videos over this period targeted

institutional hedge funds by specifically referencing a "short squeeze"—a situation where those

who have taken a short position on the price of a stock are obligated to purchase the stock on the

open market, facilitating a scramble to purchase shares, resulting in a sharp upward pressure on

the stock's price15:

·  "5 reasons GameStop stock (GME) is a roach not a cigar butt a la Warren Buffett

&  could short squeeze" (August 4, 2020)

·  "The Big Short SQUEEZE from $5 to $50? Could GameStop stock (GME)

explode higher?? Value investing!" (August 21, 2020)

·  "GameStop Q2 earnings 9/9 will Ryan Cohen BUY MORE GME STOCK before

then? Value investing live stream" (September 2, 2020)

·  "GameStop up 136% since 7/31. Has the short squeeze in GME stock kicked

off?!" (September 21, 2020)

·  "Ryan Cohen ADDS to his GameStop stake & wants to take on AMAZON! Is a

GME stock short squeeze afoot?" (September 23, 2020)

·   "GameStop holds $10 level to start week. Do GME stock longs now control the short squeeze narrative?" (September 30, 2020)

·   "GameStop pops 50% to above 14. Has the GME stock short squeeze kicked off?!" (October 9, 2020)

·   "GameStop ends week over $9 for 3rd week in a row. Could GME stock short squeeze off this higher base?" (October 5, 2020)

·   "GameStop shorts rise to a stunning 141% of the float, raising the odds of a GME stock short squeeze" (October 14, 2020)

·   "GameStop ends week @ $15! $1 billion market cap in sight. Could that cause a GME stock short squeeze?" (October 26, 2020)

15 Cory Mitchell, Short Squeeze, Investopedia, https://www.investopedia.com/terms/s/shortsqueeze.asp (last accessed Feb. 14, 2021).

14

·   GameStop Maguire - r/wallstreetbets, GME stock, Ryan Cohen, Michael Burry, Big Short, short squeeze (November 26, 2020)

·   GME stock tops 19, highest intraday price in ~3yrs! Could Q3 run-up trigger GameStop short squeeze? (December 2, 2020)

·   GME stock target raised from 10 to 19 by Telsey! GameStop holds 16 range. Short squeeze potential?! (December 4, 2020)

·   GameStop rockets thru 30 on major volume! Has GME stock short squeeze started?! ALL HAIL RYAN COHEN! (January 13, 2021)

· GameStop cracks 45. Could news of Ryan Cohen's strategy trigger a GME short

squeeze? (January 19, 2021)

51. On January 22, 2021, the volume of GameStop shares traded reached an

astonishing 196 million – the highest daily average in the history of the company.

52. That same day, Gill uploaded a video "thanking" his viewers, titled, "GameStop

closes at 65, up 1500% since July 2020. What a ride. Cheers, and thank you to
everyone!"[16]

53. As of February 14, 2021, Gill has approximately 415,000 subscribers to his

YouTube channel.

Gill Actively Recruited Traders on Twitter.

54. Gill also maintained an active Twitter account to further propagate a run on

GameStop shares.

55. From July 18, 2020, to the present, Gill tweeted 707 times. Approximately all of

Gill's tweets concerned GameStop, and accordingly tagged "$GME" (i.e., GameStop's
stock

ticker symbol) to draw attention further to his tweets.

[16] https://www.youtube.com/watch?v=bmwx78rF1xo (last accessed Feb. 14, 2021).

15

56. Gill's tweets during this period were ostensibly calculated to aggressively push

his "bull"[17] thesis. In particular, Gill's tweets fostered unfounded optimism that the price
of

GameStop was poised to dramatically increase, or directed Twitter users to his
YouTube

channel, where he advocated the same:

[17] A "bull" is "an investor who thinks the market, a specific security, or an industry is
poised

to rise. Investors who adopt a bull approach purchase securities under the assumption that

they can sell them later at a higher price. Bulls are optimistic investors who are attempting to

profit from the upward movement of stocks, with certain strategies suited to that theory." James

Chen, Bull, Investopedia, https://www.investopedia.com/terms/b/bull.asp (last accessed Feb. 14,

2021).

16

57. At the same time, Gill constantly targeted those taking a "short" position against

GameStop (i.e., those who believed the price of GameStop shares were likely to decline in value

or otherwise fail to appreciate), especially institutional hedge funds. In particular, he questioned

the ability of short sellers to cover their positions, improperly speculating that those investors were at risk of significant financial losses:

58. Moreover, Gill explicitly alluded to a "short squeeze" of GameStop shares:

59. As of February 14, 2021, Gill had approximately 158,300 Twitter followers.

D. Plaintiff's GameStop Options Transactions.

61. Plaintiff sold call option contracts (representing 2,000 shares

62. Plaintiff made these transactions relying on the integrity of the market for

GameStop shares.

63. Because of the market frenzy caused by Gill's manipulative conduct and MML's and MassMutual's failure to supervise, Plaintiff was forced to "cover" the options contracts by purchasing back offsetting GameStop options contracts representing Gamestop shares at unwarrantedly and unprecedented inflated prices of $300 and $315 unmoored to the true value of GameStop shares, causing Plaintiff to incur substantial loses.

64.. Plaintiff asserts  Gill violated 15 U.S.C. §78i(a) through his transactions in anddeceptive promotion of GameStop stock, which was intentionally designed toinduce other persons, particularly users of Reddit's "WallStreetBets" forumand followers of Gill's YouTube channel, to purchase additional shares ofGameStop.

b. Plaintiff asserts  a private right of action under

15 U.S.C. §78i(f) against Gill

88. Gill's transactions in GameStop securities and associated conduct in actively

touting strategies for trading the stock, directly or indirectly induced the sale or purchase of

GameStop securities by others.

89. Gill intended to induce trading in GameStop securities.

90. Gill sought to increase the value of his interest in GameStop stock.


91. Plaintiff was  participant  in the market for GameStop

securities and relied on the proper, fair, and non-manipulative functioning of that market.

92. Plaintiff were forced to close or cover their positions in

GameStop securities at a massive loss as a result of Gill's conduct, while others purchased at

artificially inflated prices in reliance on what was an unlawfully manipulated market.

93. Plaintiff purchased  sale prices that were unlawfully affected

by Gill's conduct.

94. Plaintiff have a private right of action under 15 U.S.C.

§78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as

described above and because Plaintiff s purchased or sold GameStop

securities at a price that was affected by Gill's conduct.

95. Plaintiff s are entitled to the damages they sustained as a

result of Gill's manipulative activity, as well as their costs and attorneys' fees.

B. COUNT II: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(3)

96. Plaintiff incorporates the allegations in paragraphs 1-95 as if restated here.

97. Gill is a registered and licensed broker.

98. Gill, through his conduct described above, induced others to purchase or sell

GameStop securities.

99. Gill affected that inducement through the circulation or dissemination in the

ordinary course of information about GameStop's stock and its likely price trajectory for the

purpose of affecting the price of the stock.

100. Gill routinely posted information about GameStop stock performance on his

various social media accounts in a direct or indirect attempt to induce coordinated market

activity.

25

101. Gill's communications and representations about the likely trajectory of

GameStop securities' prices were based on the market operations of traders, including himself

and his social media followers, which were conducted for the purpose of acting collectively to

raise the price of GameStop's securities artificially.

102. Gill assumed a deceptive "Robin Hood"-like persona on social media to portray

himself as an outsider trying to take on several large hedge funds. In reality, he was a

sophisticated and credentialed securities broker seeking to enrich himself.

103. As a result of Gill's conduct and Plaintiff s' reliance on

what ultimately was an unlawfully manipulated market, Plaintiff s either

were forced to close or cover their positions in GameStop securities at a massive loss or purchase

GameStop shares at artificially inflated prices.

104. Plaintiff s' purchase or sale prices were unlawfully affected

by Gill's conduct.

105. Plaintiff have a private right of action under 15 U.S.C.

§78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as

described above and because Plaintiff s purchased or sold GameStop

securities at a price that was affected by Gill's conduct.

106. Plaintiff is entitled to the damages they sustained as a

result of Gill's manipulative activity, as well as their costs and attorneys' fees.

C. COUNT III: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(4)

107. Plaintiff incorporates the allegations in paragraphs 1-106 as if restated here.

108. Gill is a registered and licensed broker.

109. Gill engaged in numerous communications over social media and other platforms

designed to influence the price of GameStop securities.

26

110. Gill intended to induce coordinated action among himself and other traders to

manipulate the price of GameStop securities.

111. Gill intended to induce the purchase or sale of GameStop securities.

112. Gill induced the purchase or sale of GameStop securities through his social media

communications, which were false and misleading as to material facts, including failing to

disclose that Gill was a professional, registered, licensed broker.

113. Gill knew or had reasonable grounds to believe his communications were false or

misleading as to material facts.

114. As a licensed and registered broker, Gill is bound to adhere to the rules and

regulations of FINRA, which are approved and adopted by the SEC.

115. Gill's communications regarding GameStop stock were false or misleading for the

additional reason that, in making them, Gill failed to adhere to the rigorous standards required by

FINRA, including its standards of commercial honor.

116. Gill assumed a deceptive "Robin Hood"-like persona on social media to portray

himself as an outsider trying to take on several large hedge funds. In reality, he was a

sophisticated and credentialed securities broker seeking to enrich himself.

117. Plaintiff purchase or sale prices for GameStop securities

were unlawfully affected by Gill's conduct.

118. Plaintiff s have a private right of action under 15 U.S.C.

§78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as

described above and because Plaintiff purchased or sold GameStop

securities at a price that was affected by Gill's conduct.

27

119. Plaintiff is  entitled to the damages they sustained as a

result of Gill's manipulative activity, as well as their costs and attorneys' fees.

D. COUNT III: MML AND MASSMUTUAL'S VIOLATION OF 15 U.S.C. §78i(a)

120. Plaintiff incorporates the allegations in paragraphs 1-119 as if restated here.

121. Defendant MML is a registered broker-dealer subject to regulation by FINRA.

122. Defendant MML is obligated to adhere to the rules and regulations promulgated

by the SEC and by FINRA in addition to the Federal securities laws.

123. At all relevant times, Gill was associated with MML and MassMutual as an

employee, associated person, and registered broker.

124. MML and MassMutual had an obligation to supervise and oversee Gill.

125. For example, FINRA Rule 3110 required MML to "establish and maintain a

system to supervise the activities of each associated person that is reasonably
designed to achieve

compliance with applicable securities laws and regulations, and with applicable FINRA
rules."

126. MML and MassMutual were required to implement systems to monitor Gill's

securities-related communications, including his social media communications.

127. MML and MassMutual failed to adequately supervise Gill by, among other things,
allowing him to engage in stock touting (actively encouraging others to purchase a
security), pooling (coordinating securities purchases with other market participants), and
other

manipulative activities.

128. MML and MassMutual failed to adequately supervise Gill by allowing him to
engage in extensive social media communications and other activities designed to
manipulate

129. By failing to adhere to its own supervision obligations, MML and MassMutual

directly or indirectly facilitated and enabled Gill's manipulative activity and violations of 15

U.S.C. §78i(a).

130. By failing to adhere to its own supervision obligation, MML and MassMutual willfully participated in Gill's manipulative activity and violations of 15 U.S.C. §78i(a).

131. As a result, MML and MassMutual are liable for Gill's unlawful and manipulative activity under 15 U.S.C. §78i(f).

132. Plaintiff purchase or sale prices for GameStop securities were unlawfully affected by Gill's conduct.

133. Plaintiff s have a private right of action under 15 U.S.C.

§78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff s purchased or sold GameStopsecurities at a price that was affected by Gill's conduct.

134. Plaintiff s are entitled to the damages they sustained as a

result of MML and MassMutual's activity, as well as their costs and attorneys' fees.

E. COUNT IV: GILL'S VIOLATION OF SECTION 10(b) OF THE EXCHANGE

ACT AND RULE 10b-5 (17 C.F.R. §240.10b-5)

135. Plaintiff incorporates the allegations in paragraphs 1-134 as if restated here.

136. Gill disseminated or approved the materially false and

misleading statements specified above, which he knew were misleading, or disregarded whether

they were misleading, because the statements contained material misrepresentations and failed to

disclose material facts necessary in order to make the statements not misleading.

137. Gill: (a) employed devices, schemes, and artifices to defraud; (b) made untrue

statements of material fact or omitted to state a material fact necessary to make the statements, in

the light of the circumstances in which they were made, not misleading; and (c) engaged in acts,

practices, and a course of business which operated as a fraud or deceit upon Plaintiff and the

138. Gill induced the purchase or sale of GameStop securities through his social media

communications, which were false and misleading, including his representations about the

prospects of GameStop, his fake persona, and his staged communications.

139. Gill knew or had reason to believe that his communications were false or

misleading.

140. As a licensed and registered broker, Gill is bound to adhere to the rules and

regulations of FINRA, which are approved and adopted by the SEC through its regulatory

authority.

141. Gill's communications regarding GameStop stock were false or misleading for the

additional reason that, in making them, Gill failed to adhere to the rigorous standards required by

FINRA including its standards of commercial honor.

142. Plaintiff paid artificially inflated prices for GameStop's securities. Plaintiff would not have purchased GameStop's securities at the prices they paid, or at all, had they known that the market prices were falsely and artificially inflated by Gill's

misleading statements.

143. Plaintiff s are entitled to the damages they sustained as a

result of Gill's manipulative activity, as well as their costs and attorneys' fees.

F. COUNT V: MML AND MASSMUTUAL'S VIOLATION OF SECTION 20(a) OF

THE EXCHANGE ACT

144. Plaintiff incorporates the allegations in paragraphs 1-143 as if restated here.

registered broker of MML and MassMutual, directly or indirectly participated in MML's and

MassMutual's business affairs.

146. As an employee, associated person, and a licensed and registered broker of MML,

which is a registered broker-dealer subject to regulation by FINRA, and of MassMutual, Gill had

a duty to disseminate truthful and accurate information to the market on behalf of MML and

MassMutual, and MML and MassMutual had an obligation to adequately supervise Gill.

147. In particular, Gill had direct and unfettered access to the market as a registered

broker and a representative of MML and MassMutual, and MML and MassMutual are therefore,

presumed to have had the power or control or to influence the particular transactions giving rise

to the securities violations alleged here, and they were obligated to exercise the same.

148. For example, FINRA Rule 3110 required MML to "establish and maintain a

system to supervise the activities of each associated person that is reasonably designed to achieve

compliance with applicable securities laws and regulations, and with applicable FINRA rules."

149. Defendants MML and MassMutual was required to implement systems to monitor

Gill's securities-related communications, including his social media communications.

150. MML and MassMutual failed to adequately supervise Gill by, among other

things, allowing him to engage in stock touting, pooling, and other manipulative activities.

151. MML and MassMutual failed to supervise Gill by allowing him to engage in

extensive social media communications and other activities designed to manipulate and

artificially inflate the market for GameStop securities.

152. As set forth above, Gill violated Section 9 and Section 10(b) of the Exchange Act

and Rule 10b-5 promulgated thereunder by his acts or omissions 31

Complaint. By virtue of MML and MassMutual's failure to abide by its supervision obligations

and responsibilities, MML and MassMutual are liable under Section 20(a) of the Exchange Act,

15 U.S.C. §78t(a), as a "control person" of Gill, the primary violator.

153. Plaintiff is  entitled to the recover damages from MML

and MassMutual that they sustained as a result of Gill's manipulative activities and MML and

MassMutual's control-person liability, as well as their costs and attorney's fees.

G. COUNT VI: MML AND MASSMUTUAL'S COMMON-LAW FAILURE TO

SUPERVISE

154. Plaintiff incorporates the allegations in paragraphs 1-153 as if restated here.

155. MML, a registered broker-dealer subject to regulation by FINRA, and

MassMutual were required to supervise and oversee the activities of Gill as discussed in detail

above.

156. For example, FINRA Rule 3110 required MML to "establish and maintain a

system to supervise the activities of each associated person that is reasonably designed to achieve

compliance with applicable securities laws and regulations, and with applicable FINRA rules."

157. MML and MassMutual were required to implement systems to monitor Gill's

securities-related communications, including his social media communications.

158. MML and MassMutual failed to adequately supervise Gill by, among other

things, allowing him to engage in stock touting, pooling, and other manipulative activities.

159. MML and MassMutual failed to adequately supervise Gill by allowing him to

engage in extensive social media communications and other activities designed to manipulate

and artificially inflate the market for GameStop securities.

160. MML and MassMutual had reason to know of Gill's activities due to Gill's

routine use of multiple social media accounts, where he made material misrepresentations or

omissions about the value of GameStop's securities in order to artificially inflate prices.

161. As a result, Plaintiff were harmed by initiating short positions in GME Stock


162. Plaintiff is  entitled to the damages that they sustained as a result of MML and MassMutual's failure to adequately supervise Gill's manipulative activities,

as well as their costs and attorneys' fees.


VII. DEMAND FOR JUDGMENT

163. WHEREFORE, the plaintiff, respectfully demands that this Court:

b. Enter judgment against the defendants and in favor of the plaintiff  for 1.2 Million

c. Award the Plaitinff compensatory and punitive damages against all defendants,

jointly and severally, in an amount to be determined at trial, including preand

post-judgment interest thereon;

d. Award the Plaintiff Treble damages as Authorized by 93A

e Award the costs of suit,  and Attorney fees  as Authorized by 93A

fg Award such further and additional relief as the case may require and the Court

may deem just and proper under the circumstances.

02/23/ Type text here

Douglas Rosenberg