UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DOUGLAS ROSENBERG,                                     :

                Plaintiff,        :        Civil Action
                                        No. 23-10441-FDS

        v.                                       :

KEITH PATRICK GILL, MML INVESTORS  :
SERVICES, LLC, AND MASSACHUSETTS
MUTUAL LIFE INSURANCE CO.,               :

                Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MASSMUTUAL DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

James R. Carroll
Vasundhara Prasad
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
vasundhara.prasad@skadden.com

Counsel for Defendants
Massachusetts Mutual Life Insurance Co.
and MML Investors Services, LLC

Dated: June 15, 2023

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ......................................................................................................3

A.   Mr. Gill Was Never Employed By The
     MassMutual Defendants As A Financial Advisor .............................................3

B.   The Complaint Does Not Allege That The MassMutual Defendants
     Were Aware Of Mr. Gill's Social Media Statements Until Late-January 2021 ..................4

LEGAL STANDARD................................................................................................5

ARGUMENT .............................................................................................................6

I.    PLAINTIFF DOES NOT HAVE A
      PRIVATE RIGHT OF ACTION TO PURSUE CLAIMS
      BASED ON A PURPORTED VIOLATION OF A FINRA RULE .......................................7

II.   PLAINTIFF FAILS TO STATE A CLAIM
      AGAINST THE MASSMUTUAL DEFENDANTS FOR
      VIOLATION OF 15 U.S.C. § 78i(a) ("SECTION 9(a)") (COUNT III) ............................8

      A.    The Complaint Contains No Allegations About
            The MassMutual Defendants' "Manipulative Conduct" ..........................................9

      B.    Plaintiff Does Not Adequately Plead The Requisite State of Mind......................12

      C.    Plaintiff Does Not Plead A Legally Cognizable Loss Nor Loss Causation...........14

III.  PLAINTIFF FAILS TO STATE A CLAIM
      AGAINST THE MASSMUTUAL DEFENDANTS FOR
      VIOLATION OF 15 U.S.C. § 78t(a) ("SECTION 20(a)") (COUNT V) ..........................15

      A.    The Complaint Does Not Allege A Primary Violation By Mr. Gill.....................15

      B.    The Complaint Does Not Allege That
            The MassMutual Defendants "Controlled" Mr. Gill...............................................16

IV.   PLAINTIFF FAILS TO STATE A COMMON  LAW
      CLAIM AGAINST THE MASSMUTUAL DEFENDANTS
      FOR FAILURE TO SUPERVISE GILL (COUNT VI) ...................................................17

      A.    The Complaint Does Not Allege A Primary Violation By Mr. Gill.....................18

B.      The Complaint Does Not Adequately Allege Foreseeability ................................18

C.      Plaintiff's Claim Is Barred By The Economic Loss Doctrine ...............................19

CONCLUSION ............................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*ACA Financial Guaranty Corp. v. Advest, Inc.*,
   512 F.3d 46 (1st Cir. 2008) ....................................................................................15

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) ................................................................................16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................5

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...................................................................5, 8, 10, 11

*Baum v. Phillips, Appel & Walden, Inc.*,
   648 F. Supp. 1518 (S.D.N.Y. 1986) .......................................................................11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................5

*In re Citigroup Auction Rate Securities Litigation*,
   700 F. Supp. 2d 294 (S.D.N.Y. 2009) ...................................................................14

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010) ............................................11, 12, 13, 14

*Corcoran v. Saxon Mortgage Services, Inc.*,
   No. 09-11468-NMG, 2010 WL 2106179 (D. Mass. May 24, 2010) ................................19

*Crane Co. v. Westinghouse Air Brake Co.*,
   419 F.2d 787 (2d Cir. 1969).....................................................................................12

*D.A.M. v. Barr*,
   474 F. Supp. 3d 45 (D.D.C. 2020) ...........................................................................2

*Fezzani v. Bear, Stearns & Co.*,
   384 F. Supp. 2d 618 (S.D.N.Y. 2004)...............................................................5, 10

*FMR Corp. v. Boston Edison Co.*,
   415 Mass. 393 (1993) .............................................................................................19

*In re ForceField Energy Inc. Securities Litigation*,
   No. 15 CIV. 3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) ........................13

*In re Forest Laboratories Securities Litigation*,
   No. 05-CV-2827, 2006 WL 5616712 (S.D.N.Y. July 21, 2006)........................................14

*Harrington v. CACV of Colorado, LLC*,
    508 F. Supp. 2d 128 (D. Mass. 2007) ............................................................................18

*Joffee v. Lehman Bros., Inc.*,
    410 F. Supp. 2d 187 (S.D.N.Y.),
    *aff'd*, 209 F. App'x 80 (2d Cir. 2006) ..........................................................................14

*LSI Design & Integration Corp. v. Tesaro, Inc.*,
    No. 18-cv-12352-LTS, 2019 WL 5967994 (D. Mass. Nov. 13, 2019)..............................15

*Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*,
    572 F. Supp. 1475 (D. Mass. 1983) ............................................................................7, 8

*Murray v. Uber Technologies, Inc.*,
    486 F. Supp. 3d 468 (D. Mass. 2020) .......................................................................18, 19

*Onel v. Top Ships, Inc.*,
    806 F. App'x 64 (2d Cir. 2020) .................................................................................8, 9

*Prestera v. Shearson Lehman Bros., Inc.*,
    No. 86-1528-MA, 1986 WL 10095 (D. Mass. July 30, 1986)...........................................7

*Sanders v. AVEO Pharmaceuticals, Inc.*,
    No. 13-11157-DJC, 2015 WL 1276824 (D. Mass. Mar. 20, 2015) ..................................17

*SEC v. Bio Defense Corp.*,
    No. 12-11669-DPW, 2019 WL 7578525 (D. Mass. Sept. 6, 2019),
    *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021) ..........................................16

*Spencer Companies v. Agency Rent-A-Car, Inc.*,
    No. 81-2097-S, 1981 WL 1680 (D. Mass. Sept. 21, 1981) ...............................................8

*Stark Trading & Shepherd Investments International, Ltd. v. Falconbridge Ltd.*,
    No. 05-C-1167, 2008 WL 153542, (E.D. Wis. Jan. 14, 2008) ...........................................8

*Thuman v. Dembski*,
    No. 13-CV-1087A(F), 2017 WL 3614522 (W.D.N.Y. Apr. 4, 2017) ...................7, 16, 17

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
    827 F.3d 201 (1st Cir. 2016)......................................................................................2

**STATUTES**

15 U.S.C. § 78i(a) ...............................................................................................2, 6, 8

15 U.S.C. § 78i(a)(1).................................................................................................11

15 U.S.C. §  78i(a)(1)-(6)............................................................................................8

15 U.S.C. § 78i(a)(2)..............................................................................................11

15 U.S.C. § 78i(a)(3)..............................................................................................11

15 U.S.C. § 78i(a)(4)..............................................................................................12

15 U.S.C. § 78i(a)(5)..............................................................................................11

15 U.S.C. § 78i(a)(6)..............................................................................................12

15 U.S.C. § 78i(f)................................................................................................8, 12

15 U.S.C. § 78t(a)...........................................................................................2, 6, 15

## **RULES**

Fed. R. Civ. P. 9(b).................................................................................................5

Fed. R. Civ. P. 11...................................................................................................4

Fed. R. Civ. P. 12(b)(6).......................................................................................2, 5

Fed. R. Evid. 201(b)(2)...........................................................................................2

FINRA Rule 3110.................................................................................................2, 7

## PRELIMINARY STATEMENT

Plaintiff seeks to hold Massachusetts Mutual Life Insurance Company ("MassMutual") and its subsidiary, MML Investors Services, LLC ("MMLIS" and, together with MassMutual, the "MassMutual Defendants") responsible for statements made by a former employee, Keith Patrick Gill, on his personal social media accounts, which purportedly triggered a short squeeze on GameStop Corp.'s ("GameStop") securities causing "substantial losses" to Plaintiff, a short seller of GameStop stock.  The Complaint fails to allege that the MassMutual Defendants:  (i) authorized any such statements by Mr. Gill; (ii) knew about any such statements; or (iii) employed Mr. Gill in any capacity that was at all related to the personal statements he made on his social media accounts.  The implausibility of Plaintiff's claim is made plain by the Complaint's own allegations, which concede that Mr. Gill never used his real name on any of his social media accounts and posts, but used pseudonyms such as "Roaring Kitty" and "DeepF***ingValue," and often wore disguises, including "cat-themed clothing items" in his online videos, which hid his real identity from both Plaintiff and the MassMutual Defendants alike. (Compl. ¶¶ 26, 30, 37, 46-49, 54-55.)

Plaintiff's claims against the MassMutual Defendants also fail to state a claim as a matter of law because he does not allege — nor can he — that Mr. Gill's personal investments and social media accounts were created, maintained, or related in any way to Mr. Gill's capacity as a MassMutual employee.  Indeed, Mr. Gill confirmed as much in his congressional testimony, during which he repeatedly made clear that (i) "I am an individual investor" who "analyz[ed]

stocks on my own time"; and (ii) "My investment in GameStop and my posts on social media were entirely my own."[1]  (Prasad Decl. Ex. 1 at 1, 2.)

Plaintiff's claims that the MassMutual Defendants "fail[ed] to adequately supervise Gill" in violation of the MassMutual Defendants' supervisory obligation under FINRA Rule 3110 (*see* Compl. ¶¶ 120-34, 144-62), are fatally deficient and, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, should be dismissed with prejudice for the following, independently dispositive, reasons:

*First*, Plaintiff's three claims against the MassMutual Defendants (for violations of Sections 9(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78i(a) and 78t(a)), and for common law failure to supervise), each derivative of the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill" pursuant to their supervisory obligations under FINRA Rule 3110, should be dismissed as a matter of law because Plaintiff does not have a private right of action to pursue claims based on a purported violation of a FINRA Rule.  (*Infra* Section I.)

*Second*, even if Plaintiff had a private right of action, his Section 9(a) claim against the MassMutual Defendants should be dismissed for at least three reasons: (i) it fails to allege "manipulative conduct"; (ii) it fails to allege the requisite state of mind; and (iii) it fails to plead a legally cognizable loss and loss causation.  (*Infra* Section II.)

---

[1]    In evaluating a motion to dismiss for failure to state a claim, a court may consider matters of public record and facts susceptible to judicial notice.  *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) (taking judicial notice of record of congressional testimony); *see also D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 n.12 (D.D.C. 2020) (taking "judicial notice of [] sworn [congressional] testimony" (citing Fed. R. Evid. 201(b)(2))).  Public record documents attached to the Transmittal Declaration Of Vasundhara Prasad In Support Of The MassMutual Defendants' Motion to Dismiss The Complaint are cited herein as "Prasad Decl. Ex. __."

***Third***, Plaintiff's control person claim under Section 20(a) should be dismissed if the Court dismisses Plaintiff's Section 9(a) and Section 10(b) claims against Mr. Gill, the alleged "primary violator."  Plaintiff also fails to allege that the MassMutual Defendants "controlled" Mr. Gill (or were "culpable participants" in Mr. Gill's alleged fraud) where the Complaint does not even allege that Mr. Gill's social media statements were within the scope of his employment as a MassMutual employee.  (*Infra* Section III.)

***Finally***, Plaintiff's common law claim for failure to supervise should also be dismissed if Plaintiff's claims for direct liability against Mr. Gill fail.  Even assuming they survive, Plaintiff's common law claim should be dismissed because the Complaint contains no allegations that Mr. Gill's alleged misconduct was "foreseeable" by the MassMutual Defendants. (*Infra* Section IV.)

## BACKGROUND

### A.    Mr. Gill Was Never Employed By The MassMutual Defendants As A Financial Advisor

Keith Patrick Gill was hired by MassMutual in March 2019.  (Compl. ¶¶ 17(e)-(f).)  MassMutual is a mutual life insurance company founded in 1851 and located in Springfield, Massachusetts.  (Compl. ¶ 11.)  MMLIS, a wholly-owned subsidiary of MassMutual, is a broker-dealer and registered investment adviser.  (*Id*. ¶ 10.)  From April, 2019, through January 28, 2021, Mr. Gill was registered as a broker-dealer agent with MMLIS.  (*Id.* ¶¶ 9, 17(f).)  Though registered with MMLIS, Mr. Gill did not work as a broker.  Rather, Mr. Gill worked as a Product Management Director, and subsequently as Director of Education and Wellness for a d/b/a of MMLIS known as In Good Company ("IGC").  (*Id.* ¶ 17(e).)  While employed at IGC, Mr. Gill was responsible for developing financial education classes that advisors could present to prospective clients.  (*See* Prasad Decl. Ex. 1 at 2.)  In his role, he never bought or sold securities

on behalf of MMLIS and did not serve as a financial advisor for any MassMutual customers at any time.  *Id.*

**B.      The Complaint Does Not Allege That The MassMutual Defendants
         Were Aware Of Mr. Gill's Social Media Statements Until Late-January 2021**

      Beginning around August 2019, five months after Mr. Gill's hire at MassMutual, Mr. Gill began posting about securities, specifically GameStop, on the subreddit community "WallStreetBets" using the pseudonym "DeepF***ingValue" (Compl. ¶¶ 26, 30, 37.)  Around the same time, Mr. Gill began livestreaming and posting videos about investing in securities, specifically GameStop, on YouTube and on Twitter using the pseudonym "Roaring Kitty."  (*Id.* ¶¶ 46-49, 54-55.)  He often wore disguises in his videos, including "cat-themed clothing items," which hid his real identity from the MassMutual Defendants and also the public at-large.  (*Id.* ¶ 47.)

      Mr. Gill's investments in GameStop and his posts on social media were entirely his own, and Plaintiff does not allege otherwise.  (Prasad Decl. Ex. 1 at 1, 2.)  The Complaint is devoid of allegations that Mr. Gill's investments and social media accounts were created, maintained, or related in any way to Mr. Gill's capacity as a MassMutual employee, nor, similarly, that they had <u>anything</u> to do with Mr. Gill's job responsibilities as a MassMutual employee (including for his work for IGC).  In fact, Plaintiff's Complaint affirmatively alleges that Mr. Gill "fail[ed] to disclose that [he] was a professional, registered, licensed broker." (Compl. ¶ 112.)  The Complaint also does not — and cannot, consistent with Plaintiff's obligations under Fed. R. Civ. P. 11 — allege that the MassMutual Defendants were even aware of Mr. Gill's alleged statements on social media until late-January 2021.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although the Court must take the allegations in a plaintiff's pleadings as true and make all reasonable inferences in favor of the plaintiff, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint should be dismissed where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

Here, because Plaintiff's claim under Sections 9(a) sound in fraud, Plaintiff must further meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) requires that the circumstances constituting the fraud be stated "with particularity." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s pleading standards, "a manipulation complaint must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007). In particular, the claim must state "what manipulative acts were performed, and which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 642 (S.D.N.Y. 2004) (citation omitted). With respect to "what manipulative acts were performed," the acts must be alleged as to each defendant, and "[g]eneral allegations not tied to the defendants or resting upon speculation are insufficient." *ATSI Commc'ns*, 493 F.3d at 102.

5

As demonstrated below, Plaintiff's Complaint does not meet this standard, and this Court should dismiss his claims against the MassMutual Defendants in their entirety.

## ARGUMENT

Plaintiff, a short seller, who allegedly "sold [c]all [o]ptions and [s]old GME [s]tock short," asserts three Counts against the MassMutual Defendants:[2]

- Count III[3] alleges that the MassMutual Defendants violated Section 9(a) of the Exchange Act, 15 U.S.C. § 78i(a), by "fail[ing] to adequately supervise Gill" and "allowing him to engage in stock touting . . . pooling . . . and other manipulative activities [including] by allowing him to engage in extensive social media communications" in violation of the MassMutual Defendants' supervisory obligation under FINRA Rule 3110.  (Compl. ¶¶ 124-128.)

- Count V alleges that the MassMutual Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by "fail[ing] to adequately supervise Gill," as "an employee, associated person, and a licensed and registered broker of MML" in violation of the MassMutual Defendants' supervisory obligations under FINRA Rule 3110.  (Compl. ¶¶ 144-153.)

- Count VI alleges that the MassMutual Defendants are liable under Massachusetts common law for "fail[ure] to adequately supervise Gill" in violation of the MassMutual Defendants' supervisory obligations under FINRA Rule 3110, given that the MassMutual Defendants allegedly "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts."  (Compl. ¶¶ 154-162.)

For the reasons discussed below, all of these Counts should be dismissed, as a matter of law, with prejudice.

---

[2]     The Complaint also alleges three claims against Mr. Gill: Count II: Mr. Gill's Violation of Section 9(a)(3) (Compl. ¶¶ 96-106);  Count III: Mr. Gill's Violation of Section 9(a)(4) (Compl. ¶¶ 107-119); and Count IV: Mr. Gill's Violation of Section 10(b) of the Exchange Act and Rule 10b-5 (Compl. ¶¶ 135-143).  The Complaint, which appears to have been copied verbatim from a complaint filed by Christian Iovin in 2021 against Mr. Gill and the MassMutual Defendants, also purports to contain an additional, incomplete claim against Mr. Gill: Count I: Mr. Gill's Violation of Section 9(a)(2).  (Compl. ¶¶ 88-95.)  (*See generally* Prasad Decl. Ex. 2.)

[3]     Presumably by mistake, the Complaint includes two counts titled "Count III."  (*See* Compl. pp. 26, 28.)

I.      **PLAINTIFF DOES NOT HAVE A PRIVATE RIGHT OF ACTION TO
        PURSUE CLAIMS BASED ON A PURPORTED VIOLATION OF A FINRA RULE**

As an initial matter, each of Plaintiff's three claims against the MassMutual

Defendants should be dismissed because Plaintiff does not have a private right of action to

pursue claims based on a purported violation of a FINRA Rule. *See Prestera v. Shearson*

*Lehman Bros., Inc.*, No. 86-1528-MA, 1986 WL 10095, at *3 (D. Mass. July 30, 1986) (noting

that there is "no private right of action for alleged violations of the rules of the various self-

regulatory organizations" like FINRA); *Margaret Hall Found., Inc. v. Atl. Fin. Mgmt., Inc.*, 572

F. Supp. 1475, 1482 (D. Mass. 1983) ("This court has ruled that there is no private right of action

for violations of the rules of self-regulatory organizations . . . .").

Indeed, each of Plaintiff's claims (under Section 9(a) (*see* Compl. ¶¶ 124-134) and

Section 20(a) (*see* Compl. ¶¶ 144-153), and for common law failure to supervise (*see* Compl. ¶¶

154-162)) is derivative of the MassMutual Defendants' alleged "fail[ure] to adequately supervise

Gill" pursuant to their supervisory obligations under FINRA Rule 3110.[4]  (Compl. ¶¶ 125, 148,

156.)  That rule requires FINRA members to "establish and maintain a system to supervise the

activities of each associated person that is reasonably designed to achieve compliance with

applicable securities laws and regulations."  FINRA Rule 3110.  An alleged violation of this rule

cannot be the basis for liability under the securities laws or under common law.  *See Thuman v.*

*Dembski*, No. 13-CV-1087A(F), 2017 WL 3614522, at *9 (W.D.N.Y. Apr. 4, 2017) (rejecting

plaintiff's argument that defendant, a broker-dealer, had a "duty to supervise [its registered

representative] pursuant to FINRA Rule 3280," which according to plaintiff "impose[d]

---

[4]      The Complaint also references MassMutual Defendants' supervisory obligations "under
SEC regulations," but it fails to cite with any specificity which SEC regulations, if any, that
MassMutual Defendants are alleged to have violated.  (*See* Compl. ¶¶ 20, 122.)

*respondeat superior* liability for [Exchange Act] § 10(b) and Rule 10b-5 claims" and noting that FINRA rules "create no private right of action and do not provide a basis to impose vicarious liability in actions under federal securities laws") (citing *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 275 (S.D.N.Y. 2012) ("Courts [] have cautioned against allowing securities fraud claims to be predicated solely on violations of [FINRA] rules because such 'rules do not confer private rights of action.'")).  For this reason, all of Plaintiff's claims against the MassMutual Defendants should be dismissed in their entirety.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE MASSMUTUAL DEFENDANTS FOR VIOLATION OF 15 U.S.C. § 78i(a) ("SECTION 9(a)") (COUNT III)

Section 9(a) of the Exchange Act, entitled "[m]anipulation of securities prices," imposes liability on persons "directly or indirectly" manipulating stock prices.  15 U.S.C. § 78i(a).  To state a claim under Section 9(a), a plaintiff must allege: (i) that defendant engaged in "manipulative" conduct, 15 U.S.C. § 78i(a)(1)-(6); (ii) that defendant did so "willfully," which courts often refer to as a scienter requirement, *see* 15 U.S.C. § 78i(f); and (iii) that plaintiff bought or sold a security "at a price which was affected" by defendant's alleged violation of Section 9(a), *see* 15 U.S.C. § 78i(f).[5]  *Cf. ATSI Commc'ns*, 493 F.3d at 101 (listing elements of a market manipulation claim under Section 10(b)).[6]

_____

[5]     There are only two District of Massachusetts cases that enter into any robust discussion of Section 9(a), and both cases are over 30 years old.  *See Margaret Hall Found.*, 572 F. Supp. at 1484; *Spencer Cos. v. Agency Rent-A-Car, Inc.*, No. 81-2097-S, 1981 WL 1680, at *3 (D. Mass. Sept. 21, 1981).

[6]     Courts routinely compare the elements of market manipulation under Section 9(a) to those under Section 10(b), and often apply the same analysis to both claims on a motion to dismiss.  *See Onel v. Top Ships, Inc.*, 806 F. App'x 64, 66 n.1 (2d Cir. 2020) (dismissing plaintiff's Section 9(a) and Section 10(b) claims because "allegations of a manipulative act are [] needed to state a claim of market manipulation" under both); *Stark Trading & Shepherd Inv. Int'l, Ltd. v. Falconbridge Ltd.*, No. 05-C-1167, 2008 WL 153542, at *15 (E.D. Wis. Jan. 14,

*(cont'd)*

Plaintiff's Complaint does not identify which subsection of Section 9(a) he contends the MassMutual Defendants violated.  As explained below, Plaintiff cannot state a claim as a matter of law under <u>any</u> of Section 9(a)'s subsections.  Plaintiff premises his Section 9(a) claim on the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill" by "allowing him to engage in stock touting . . . pooling . . . and other manipulative activities [including] by allowing him to engage in extensive social media communications" in violation of the MassMutual Defendants' supervisory obligations under FINRA Rule 3110.  (Compl. ¶¶ 124-128.)  In Plaintiff's view, "by failing to adhere to [their] own supervision obligations" the MassMutual Defendants "directly or indirectly facilitated and enabled Gill's manipulative activity and violations of [Section 9(a)] . . . and willfully participated in Gill's manipulative activity and violations . . . [and] as a result, . . . are liable for Gill's manipulative activity under 15 U.S.C. § 78i(f)."  (Compl. ¶¶ 129-31.)  None of these allegations states a claim under Section 9(a).

Plaintiff's Section 9(a) claim fails for multiple, independently dispositive reasons: (i) it fails to allege any "manipulative conduct"; (ii) it fails to allege the requisite state of mind; and (iii) it fails to plead a legally cognizable loss and loss causation.

### A. The Complaint Contains No Allegations About The MassMutual Defendants' "Manipulative Conduct"

Plaintiff's Section 9(a) claim should be dismissed for the independent reason that Plaintiff fails to allege that the MassMutual Defendants engaged in any "manipulative conduct." "[A]llegations of a manipulative act are . . . needed to state a claim of market manipulation" under Section 9(a).  *Onel*, 806 F. App'x at 66 n.1.  The "critical question" in determining whether

---

2008) ("The court finds that the plaintiffs' § 9(a) claims must fail for many of the same reasons the plaintiffs' § 10(b) claims must fail.")

manipulation has occurred is whether the conduct at issue "'artificially' affects a security's price *in a deceptive manner*." *ATSI Commc'ns*, 493 F.3d at 100 (emphasis added) (citation omitted).  A market manipulation claim, however, cannot be based solely upon misrepresentations or omissions.  *Id.* at 101.  There must be some market activity, such as "wash sales, matched orders, or rigged prices."  *Id.*

The following two cases demonstrate this pleading requirement.  In *ATSI Communications*, the plaintiff brought Section 9(a) market manipulation claims under Section 10(b) against defendants, alleging that defendants brought about a "death spiral" in the price of plaintiff's common stock through coordinated short selling.  493 F.3d at 97.  Plaintiff also brought a market manipulation claim against the "principal market maker in [plaintiff's] stock," alleging "that any manipulation had to involve [this] defendant."  *Id.*  In particular, plaintiff alleged that the market maker "knew or should have known of the manipulation [and] was a cooperating broker-dealer."  *Id.* at 105.  The Second Circuit affirmed the dismissal of the claims against the market maker in the absence of "any allegations of specific acts by [the market maker] to manipulate the market, much less how those actions might have affected the market." *Id.*

In *Fezzani*, the court dismissed a Section 9(a) claim against certain broker-dealer defendants where the "complaint merely state[d] that the Broker Defendants conspired . . . 'to create an artificial appearance of trading activity through repeated[] 'parking' of [the] securities [at issue] in customer and proprietary trading accounts.'"  384 F. Supp. 2d at 642.  The court found that such "general statements" were "entirely insufficient" because they failed to allege "any fraudulent acts specifically with regard to [the securities purchased by plaintiff]" by the broker defendants.  *Id.* at 642-43.

10

As in *ATSI Communications* and *Fezzani*, Plaintiff's Complaint contains only general statements about the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill," and contains <u>no</u> <u>allegations</u> of any "fraudulent acts" to manipulate GameStop securities. Indeed, far from alleging "market activity" from the MassMutual Defendants, Plaintiff has alleged no deception at all from the MassMutual Defendants.  Moreover, as demonstrated in *ATSI Communications*, it is not enough to allege that the MassMutual Defendants "had reason to know of Gill's activities" here.  (*See, e.g.* Compl. ¶ 160.)  Plaintiff is required to allege "specific acts by [the MassMutual Defendants] to manipulate the market."  *ATSI Commc'ns*, 493 F.3d at 105.  No such allegations appear in the Complaint.

Moreover, as noted previously, Plaintiff has failed to plead which subsection(s) of Section 9(a) were allegedly violated by the MassMutual Defendants.  In any event, the Complaint fails to state a claim as a matter of law under any of those subsections because it contains <u>no</u> <u>allegations</u> that the MassMutual Defendants:

- engaged in wash sales or matched orders "for the purpose of creating a false or misleading appearance of active trading in any security . . . or a false or misleading appearance with respect to the market for any such security," *see* 15 U.S.C. § 78i(a)(1); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 424 (S.D.N.Y. 2010) (dismissing Subsection 9(a)(1) claim where Plaintiffs did not identify any wash sales or matched orders);

- engaged in "a series of transactions," which includes "purchasing, selling, bidding, or ordering purchases or sales of securities" to "create[e] actual or apparent active trading in [a] security, or [to] rais[e] or [to] depress[] the price" of the security for "the purpose of inducing the purchase or sale of such security by others," *see* 15 U.S.C. § 78i(a)(2); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F. Supp. 1518, 1530 (S.D.N.Y. 1986) (dismissing a Subsection 9(a)(2) claim against brokerage where plaintiffs' manipulation claim was based on trades the brokerage did not execute rather than on "a series of transactions");

- disseminated information about whether the price of a security "is likely to rise or fall because of market operations," or hired another person to disseminate such information "[f]or consideration" for the purpose of "induc[ing] the purchase or sale of any security," *see* 15 U.S.C. § 78i(a)(3), (5);

- made a false or misleading statement with respect to a material fact that the MassMutual Defendants knew or had reasonable ground to believe was false or misleading for the purpose of inducing the purchase or sale of a security, *see* 15 U.S.C. § 78i(a)(4); or

- engaged in a "series of transactions" for the purpose of "pegging, fixing, or stabilizing the price" of a security "in contravention of such rules and regulations as the Commission may prescribe," *see* 15 U.S.C. § 78i(a)(6).

**B.     Plaintiff Does Not Adequately Plead The Requisite State of Mind**

Plaintiff's Section 9(a) claim should be dismissed for the independent reason that Plaintiff fails to allege that the MassMutual Defendants acted with a "willful[]" state of mind, *see* 15 U.S.C. § 78i(f), which courts often refer to as a scienter requirement. *See Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969) ("Sections 9(a)(2) and 9(e) contain requirements of both manipulative motive and willfulness.").

To plead a claim under Section 9(a), Plaintiff must "state with particularity facts giving rise to a strong inference that each defendant acted with scienter." *Cohen*, 722 F. Supp. 2d at 428 (citation omitted). Scienter is defined as a "'mental state embracing intent to deceive, manipulate or defraud.'" *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)). "'Conclusory statements of associations' or generalized allegations of scienter against groups of defendants [do] not state a claim for securities fraud." *Id.* (citation omitted). Instead, Plaintiff must plead "specific facts as to each defendant that" (1) "give rise to a strong inference that the defendant had both motive and opportunity to commit fraud," which requires pleading that defendant "would realize 'concrete benefits' from the fraud" or (2) "provide strong circumstantial evidence of 'conscious misbehavior or recklessness,'" *i.e.*, "deliberate illegal behavior" or conduct that was "highly unreasonable" and "an extreme departure from the

standards of ordinary care." *Cohen*, 722 F. Supp. 2d at 428-30 (citations omitted).  Here, the Complaint fails to plead facts which give rise to either inference.

Instead, the Complaint only alleges that the MassMutual Defendants "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts" and that "[b]y failing to adhere to [their] own supervision obligation," the MassMutual Defendants "willfully participated in Gill's manipulative activity and violations of 15 U.S.C. § 78i(a)." (Compl. ¶¶ 130, 160.)  These generic allegations do not allege "a motive and opportunity to commit fraud" or a "conscious misbehavior or recklessness."  *See Cohen*, 722 F. Supp. 2d at 429 (finding plaintiffs had failed to allege scienter for their Section 9(a) claim where plaintiffs did not allege that any of the financial institution defendants "made [the allegedly false statements], knew that they were false or even knew that the statements were being made" nor "allege with any specificity what any [f]inancial [i]nstitution [d]efendants' supposed role was in the [making of the false statements]").

Moreover, the Court should not give <u>any</u> <u>weight</u> to these allegations, particularly where the Complaint also alleges that Mr. Gill used pseudonyms on his social media accounts (*e.g.*, "Roaring Kitty" and "DeepF***ingValue") and wore disguises in his YouTube videos, including "cat-themed clothing items."  (*See* Compl. ¶¶ 26, 37, 46-47.)  Where there are allegations that Mr. Gill attempted to conceal his purportedly illegal activity, "[P]laintiff can hardly argue that [the MassMutual Defendants] were reckless for failing to discover conduct that they concede was covert."  *In re ForceField Energy Inc. Sec. Litig.*, No. 15 Civ. 3020 (NRB), 2017 WL 1319802, at *18 (S.D.N.Y. Mar. 29, 2017) (finding that brokerage defendants did not act recklessly with respect to the actions of the broker defendants they employed where those broker defendants concealed their actions from the brokerage defendants).

13

### C.       Plaintiff Does Not Plead A Legally Cognizable Loss Nor Loss Causation

Finally, Plaintiff's Section 9(a) claim should be dismissed for failing to plead facts supporting any legally cognizable loss or any "'causal connection between the [alleged manipulation] . . . and the loss.'"  *Cohen*, 722 F. Supp. 2d at 430 (citation omitted).  To prevail on securities claims, plaintiffs are required to "allege facts indicating the economic loss they claim to have suffered," including "allegations as to the price each Plaintiff paid for the [] stock or the date on which each Plaintiff purchased the stock."  *Joffee v. Lehman Bros., Inc.*, 410 F. Supp. 2d 187, 192 (S.D.N.Y.), *aff'd*, 209 F. App'x 80 (2d Cir. 2006).  Even though all of the information concerning Plaintiff's stock transactions — including the date(s) on which he purportedly bought GameStop stock, the price at which he purchased them, and the date(s) on which he sold them — is plainly available to Plaintiff, the Complaint fails to plead it.  *See Cohen*, 722 F. Supp. 2d at 430 (finding plaintiff failed to plead any legally cognizable loss where they did not "allege the amount of stock they purportedly sold, the date(s) on which the stock was sold, or the price initially paid and then received for any stock").

Moreover, because Plaintiff has not pled any actionable loss, he has also failed to allege loss causation.  *See id.* at 431-32; *see also In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 307-08 (S.D.N.Y. 2009) (holding that because "Plaintiff has failed to allege that he suffered any specific economic harm as a result of Defendants' conduct . . . he has not alleged loss causation sufficiently"); *In re Forest Labs. Sec. Litig.*, No. 05 Civ. 2827(RMB), 2006 WL 5616712, at *13 (S.D.N.Y. July 21, 2006) (holding that plaintiffs failed to establish causal link between fraud and fall in stock price where they did not "point[] . . . to any specific stock price reaction due to [the misconduct]").  The Court should thus dismiss Plaintiff's Section 9(a) claim on these independent bases.  *See Cohen*, 722 F. Supp. 2d at 433 (dismissing Section 9(a) claim

where plaintiffs' complaint failed to allege that they had suffered "any economic injury [or] loss causation," which are "[required] element[s] of their federal [securities] claims").

## III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE MASSMUTUAL DEFENDANTS FOR VIOLATION OF 15 U.S.C. § 78t(a) ("SECTION 20(a)") (COUNT V)

To state a claim of control person liability under Section 20(a), Plaintiff must show that: (1) Mr. Gill committed a primary violation of either Section 9(a) or Section 10(b) of the Exchange Act (*see* Compl. ¶¶ 63-64, 88-119, 135-143); and (2) the MassMutual Defendants "controlled" Mr. Gill.  The Complaint fails to plead either element of this claim, and the Court should dismiss it in its entirety.

### A.   The Complaint Does Not Allege A Primary Violation By Mr. Gill

The Section 20(a) claim against the MassMutual Defendants should be dismissed if the Court dismisses Plaintiff's Section 9(a) and 10(b) claims against Mr. Gill.[7]  *See* 15 U.S.C. § 78t(a); *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 67-68 (1st Cir. 2008) ("The plain terms of section 20(a) indicate that it only creates liability derivative of an underlying securities violation."); *LSI Design & Integration Corp. v. Tesaro, Inc.*, No. 18-cv-12352-LTS, 2019 WL 5967994, at *3 (D. Mass. Nov. 13, 2019) ("Liability under Section 20(a) requires a 'primary violation.'" (citation omitted)).[8]

---

[7]   Although the MassMutual Defendants do not purport to make any arguments on behalf of Mr. Gill, they note the absence of any allegations regarding scienter and manipulative conduct, which Plaintiff is required to plead to state a claim under both Sections 9(a) and 10(b) against Mr. Gill.  Specifically, the Complaint contains no allegations to suggest that Mr. Gill was actively selling his GameStop shares while simultaneously promoting on social media that others invest in GameStop.  Moreover, there are no allegations that Mr. Gill hid his actions from the market; in fact, Plaintiff's Complaint alleges otherwise.

[8]   To the best of the MassMutual Defendants' knowledge, as of the date of this Motion, Plaintiff has yet to serve Mr. Gill with the Complaint.

**B.**     **The Complaint Does Not Allege That**
           **The MassMutual Defendants "Controlled" Mr. Gill**

Even if Plaintiff were able to allege a primary violation of Section 9(a) or Section

10(b) by Mr. Gill, Plaintiff's Section 20(a) claim against the MassMutual Defendants should still

be dismissed for the independent reason that Plaintiff's Complaint fails to allege that the

MassMutual Defendants "controlled" Mr. Gill.[9]  "[A] control-person relationship exists

whenever (i) the alleged control person actually exercised control over the general operations of

the primary violator and (ii) the alleged control person possessed — but did not necessarily

exercise — the power to determine the specific acts or omissions upon which the underlying

violation is predicated."  *SEC v. Bio Def. Corp.*, No. 12-11669-DPW, 2019 WL 7578525, at *30

(D. Mass. Sept. 6, 2019) (citation omitted), *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir.

2021).

Here, the Complaint makes the broad and conclusory allegation that because "Gill

had direct and unfettered access to the market as a registered broker and a representative of

MML and MassMutual . . . MML and MassMutual are therefore presumed to have had the power

to control or to influence the particular transactions giving rise to the securities violations alleged

here, and they were obligated to exercise the same."  (Compl. ¶ 147.)  This is not sufficient to

state a claim that the MassMutual Defendants actually exercised control over Mr. Gill's

---

[9]     The First Circuit has expressly "taken no position" on whether a plaintiff alleging a
Section 20(a) claim must also allege that the defendant was in some way a "culpable participant"
in the controlled person's fraud.  *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 n.6 (1st Cir.
2002).  In any event, the Complaint contains no such allegations against the MassMutual
Defendants.  *See Thuman*, 2017 WL 3614522, at *11 (holding that broker-dealer defendant was
not a "culpable participant" in "employee and registered representative['s]" fraud where the
complaint contained no allegations "that as a result of such alleged employment, or business or
relationship, [broker-dealer defendants] also had actual knowledge of the fraudulent conduct or
with recklessness, failed to act to prevent [employee and registered representative's] alleged
fraud").

statements on social media.  Moreover, the Complaint contains no allegations that Mr. Gill's

statements on social media were within the scope of his employment as a MassMutual employee.

In fact, the Complaint is replete with allegations of how Mr. Gill actively concealed his real

identity on social media from both Plaintiff and the MassMutual Defendants alike.  (Compl.

¶¶ 26, 30, 37, 46-49, 54-55.)  Because the MassMutual Defendants are not alleged to even know

about Mr. Gill's alleged statements, Plaintiff cannot state that the MassMutual Defendants had

the "power to determine the specific acts or omissions upon which the underlying violation is

predicated."  *See Thuman*, 2017 WL 3614522, at *10 (finding plaintiff failed to plead "control"

under Section 20(a) where the complaint contained no allegations that the broker-dealer

defendants had "any involvement…in [employee and registered representative's] conduct"); *see*

*also Aldridge*, 284 F.3d at 85 (dismissing Section 20(a) claim because there were no facts

indicating that the "control[] [persons] were actively participating in the decisionmaking

processes of the [primary violator]" and noting that "[i]n the absence of some indicia of the

*exercise* of control over the entity primarily liable however, that status alone is not enough");

*Sanders v. AVEO Pharm., Inc.*, No. 13-11157-DJC, 2015 WL 1276824, at *11 (D. Mass. Mar.

20, 2015) (finding that defendants had "'participated in the operation and management of [the

primary violator], and/or directed and oversaw the operation and management of [the primary

violator's] business and regulatory affairs and investor communications'" to be insufficient to

allege that defendants had "actively participat[ed] in the decisionmaking processes of the

[primary violator]").

## IV.   PLAINTIFF FAILS TO STATE A COMMON
## LAW CLAIM AGAINST THE MASSMUTUAL DEFENDANTS
## FOR FAILURE TO SUPERVISE GILL (COUNT VI)

        In addition to alleging violations of the federal securities laws, the Complaint

asserts a common law claim against the MassMutual Defendants for their alleged "fail[ure] to

adequately supervise Gill" by "allowing him to engage in stock touting . . . pooling . . . and other manipulative activities [including] by allowing him to engage in extensive social media communications." (Compl. ¶¶ 154-162.) In Plaintiff's view, the MassMutual Defendants "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts, where he made material misrepresentations or omissions about the value of GameStop's securities in order to artificially inflate prices." (Compl. ¶ 160.)

Under Massachusetts law, to state a claim for negligent supervision, a plaintiff must allege that the employer knew "'or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action.'" *Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 477 (D. Mass. 2020) (citation omitted). Plaintiff's common law claim against the MassMutual Defendants fails for at least three reasons: (i) it does not adequately allege a primary violation by Gill; (ii) it does not adequately allege that Mr. Gill's alleged misconduct was "reasonably foreseeable"; and (iii) it is barred by the economic loss doctrine.

### A.       The Complaint Does Not Allege A Primary Violation By Mr. Gill

The MassMutual Defendants cannot be held liable for negligent supervision if Plaintiff's claims for direct liability against Mr. Gill fail. *See Harrington v. CACV of Colo., LLC*, 508 F. Supp. 2d 128, 141 (D. Mass. 2007). Thus, if Plaintiff cannot state actionable claims against Mr. Gill for violating Sections 9(a) or 10(b), *see supra*, Section III.A, the Court should accordingly dismiss Plaintiff's common law claim against the MassMutual Defendants.

### B.       The Complaint Does Not Adequately Allege Foreseeability

Even assuming that Plaintiff is able to allege a primary violation by Mr. Gill, his common law claim against the MassMutual Defendants should be dismissed for the independent reason that the Complaint contains no allegations that Mr. Gill's alleged misconduct was

18

"foreseeable."  Indeed, the Complaint does not — and cannot — allege that the MassMutual

Defendants were even aware of Mr. Gill's alleged statements on social media until late-January

2021.  Moreover, Plaintiff's conclusory allegation that the MassMutual Defendants "had reason

to know of Gill's activities due to Gill's routine use of multiple social media accounts" does not

pass muster because Mr. Gill's social media accounts used a "fake persona" — Mr. Gill used

pseudonyms such as "Roaring Kitty" and "DeepF***ingValue," and often wore disguises,

including "cat-themed clothing items" in his online videos — which hid his real identity from the

MassMutual Defendants.  (Compl. ¶¶ 1, 3, 26, 30, 37-38, 46-49, 54-55.)  *Cf. Murray*, 486 F.

Supp. 3d at 477 (dismissing negligent supervision claim on a motion to dismiss because plaintiff

did not "identify any 'red flags' in [employee's] background or employment history that should

have alerted" the employer that the employee had a "proclivity to commit the complained-of

acts").

### C.    <u>Plaintiff's Claim Is Barred By The Economic Loss Doctrine</u>

Finally, Plaintiff's common law claim, which sounds in negligence and thus does

not require allegations of any intentional act by the MassMutual Defendants (not that the

Complaint contains any allegations about the MassMutual Defendants' alleged intentional acts),

is barred by the economic loss doctrine.  Under Massachusetts law, "purely economic losses are

unrecoverable in tort and strict liability actions in the absence of personal injury or property

damages."  *FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393, 395 (1993); *see also Corcoran v.*

*Saxon Mortg. Servs., Inc.*, No. 09-11468-NMG, 2010 WL 2106179, at *4 (D. Mass. May 24,

2010) (dismissing negligence claim as "barred by the economic loss doctrine" where plaintiff's

alleged damages were "purely economic in nature").  Here, given that Plaintiff's alleged damages

are purely economical, his recovery under this claim is barred by the economic loss doctrine.

## **CONCLUSION**

For all of the foregoing reasons, all of the claims asserted against the MassMutual Defendants in Plaintiff's Complaint should be dismissed with prejudice.

Dated: June 15, 2023                         Respectfully submitted,
      Boston, Massachusetts

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Vasundhara Prasad (BBO #705774)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
vasundhara.prasad@skadden.com

Counsel for Defendants
Massachusetts Mutual Life Insurance Co. and
MML Investors Services, LLC

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on June 15, 2023.  I further certify that on June 15, 2023, this document was served via electronic mail and U.S. mail, postage prepaid to:

Robert D. Loventhal
15 Hammersmith Road
Ste Unit 13
Newport, RI 02840
(617) 501-8285
Email: rdllaw99@aol.com

Counsel for Plaintiff Douglas Rosenberg


Dated:   June 15, 2023          /s/ James R. Carroll
              James R. Carroll