# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTIAN IOVIN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | C.A. NO. _____ |
| v. | **JURY TRIAL DEMANDED** |
| KEITH PATRICK GILL, MML INVESTORS SERVICES, LLC, AND MASSACHUSETTS MUTUAL LIFE INSURANCE CO. | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

I.      OVERVIEW OF WRONGDOING ................................................................................1

II.     THE PARTIES ...........................................................................................................3

III.    JURISDICTION AND VENUE ...................................................................................3

IV.     FACTS .......................................................................................................................4

        A.      The Real Keith Gill. ........................................................................................4

        B.      MML's and MassMutual's Obligations To Supervise.......................................6

        C.      Gill's Use of Social Media Undermines the Integrity of, and Manipulates,
                the Market for GameStop Shares. .....................................................................6

        D.      Plaintiff's GameStop Options Transactions.....................................................17

V.      CLASS ALLEGATIONS ...........................................................................................18

VI.     CLAIMS ...................................................................................................................22

        A.      COUNT I: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(2).............................22

        B.      COUNT II: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(3) ............................24

        C.      COUNT III: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(4)...........................25

        D.      COUNT III: MML AND MASSMUTUAL'S VIOLATION OF 15 U.S.C.
                §78i(a) ...........................................................................................................27

        E.      COUNT IV: GILL'S VIOLATION OF SECTION 10(b) OF THE
                EXCHANGE ACT AND RULE 10b-5 (17 C.F.R. §240.10b-5) ........................28

        F.      COUNT V: MML AND MASSMUTUAL'S VIOLATION OF SECTION
                20(a) OF THE EXCHANGE ACT ...................................................................29

        G.      COUNT VI: MML AND MASSMUTUAL'S COMMON-LAW
                FAILURE TO SUPERVISE ............................................................................31

VII.    DEMAND FOR JUDGMENT.....................................................................................32

VIII.   JURY DEMAND .......................................................................................................33

Plaintiff, Christian Iovin, for himself and all others similarly situated, files this Class Action Complaint against Defendants, Keith Patrick Gill ("Gill"), MML Investors Services, LLC ("MML"), and Massachusetts Mutual Life Insurance Company ("MassMutual," and, together with Gill and MML, "Defendants"), and avers as follows:

## I.     OVERVIEW OF WRONGDOING

1.     After purchasing a sizeable number of shares in GameStop Corp. ("GameStop") at prices around $5 per share, Gill used multiple identities to promote GameStop on written and video social media.  He went by "Roaring Kitty" on YouTube – where cats and kittens are a favorite subject matter – and on Twitter and "DeepF***ingValue" on Reddit's WallStreetBets message board.  In order to disguise that the aim of his social-media campaign was simply to increase the worth of his GameStop shares by creating a demand for the stock, Gill took on the fake persona of an amateur, everyday fellow, who simply was looking out for the little guy.  He exaggerated and misrepresented the prospects of GameStop and made bold predictions about its future.

2.     Indeed, in order to motivate amateur traders, Gill fashioned himself as a kind of Robin Hood and characterized securities professionals as villains.  Gill slyly targeted large hedge funds who had shorted GameStop stock as the evil, powerful big boys.  He incited a market frenzy by advocating revenge on the big hedge funds by buying GameStop shares to drive up the price and "squeeze" short sellers who would be forced to cover their short positions at greatly inflated prices.  Because of Gill's conduct, in a matter of days, the price of GameStop shares went up by more than 1,600% to a record $483 a share, causing huge losses for both short sellers and those who purchased GameStop shares at artificially inflated prices.   Gill achieve his

objective; he made tens of millions of dollars on his original investment.  As Gill's mother is quoted as saying, "He always liked money."[1]

3.      Gill, however, is no amateur (and no Robin Hood).  For many years, he actively worked as a professional in the investment and financial industries.  He holds extensive securities licenses and qualifications, including a securities principal and supervisory management license and a Charted Financial Analyst license.  Indeed, at the time Gill was inciting the market frenzy with his fake persona, he was licensed by MML as a registered representative (i.e., a securities broker), and he was employed by MassMutual as a "Financial Wellness Director."

4.      Gill's deceitful and manipulative conduct not only violated numerous industry regulations and rules, but also various securities laws by undermining the integrity of the market for GameStop shares.  He caused enormous losses not only to those who bought option contracts, but also to those who fell for Gill's act and bought GameStop stock during the market frenzy at greatly inflated prices.

5.      At the time Gill was engaging in this wrongful conduct, MML and MassMutual had legal and regulatory obligations to supervise Gill to prevent this very conduct.  They failed to do so even though Gill's conduct was continuing and highly public.

6.      Consequently, this action is brought to remedy Defendants' egregious conduct and somewhat restore the integrity of the securities market.

---

[1] Julia Ambra Verlaine and Gunjan Banerji, *Keith Gill Drove the GameStop Reddit Mania. He Talked to the Journal*, The Wall Street Journal, https://www.wsj.com/articles/keith-gill-drove-the-gamestop-reddit-mania-he-talked-to-the-journal-11611931696?mod=series_gamestopstockmarket (last accessed Feb. 14, 2021).

## II.    THE PARTIES

7.    Plaintiff Christian Iovin is a resident of the State of Washington. During the relevant period, he purchased option contracts on the shares of GameStop.

8.    Keith Patrick Gill is a resident of the Commonwealth of Massachusetts and, on information and belief, resides in Brockton, Massachusetts. During the relevant period, Gill was associated with both MML, as a registered representative (a securities broker), and MassMutual, as a "Financial Wellness Director."

9.    MML Investors Services, LLC is incorporated in Massachusetts and headquartered in Springfield, Massachusetts. MML is a subsidiary of MassMutual, and it is a broker-dealer registered with the Financial Industry Regulatory Authority, Inc. ("FINRA").

10.    Massachusetts Mutual Life Insurance Company is incorporated in Massachusetts and headquartered in Springfield, Massachusetts. MassMutual is a financial services company that provides insurance, retirement, investment, and "financial wellness" products and services.

## III.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.    This Court has jurisdiction over each individual and/or corporate Defendant named herein, as each has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

13.    Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b).

14.    In connection with the conduct described herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

## IV.    FACTS

### A.    The Real Keith Gill.

15.    For more than ten years, Gill has actively worked as a professional in the investment and financial industries.    He holds the following securities licenses and qualifications:

        a.    Investment advisor license (Series 65) since 2/22/2012;

        b.    Commodity futures and options broker license (Series 3) since 1/10/2013;

        c.    Securities broker license (Series 7) since 7/5/2016;

        d.    Securities broker license (Series 65) since 7/29/2016;

        e.    Securities principal and supervisory management license (Series 24) since 4/6/2017; and

        f.    Chartered Financial Analyst (considered the highest level of legal and regulatory recognition of finance-related qualifications).

16.    Gill's various licenses permit him to sell and trade in a variety of securities, including options.    Additionally, his Series 24 license qualifies him to be a principal of a broker dealer and to supervise other brokers to ensure their compliance with applicable securities laws, regulations, and rules.    Unquestionably, Gill holds extensive licenses in the securities industry, understands sophisticated aspect of the securities industry, including the markets, and has extensive knowledge of the securities laws and regulations.

17.    Based on public records and information, Gill further has extensive experience working as a securities professional:

        a.    From July 2010 through March 2019, Gill was President of Debris Publishing, Inc. ("Debris"), which provided financial software to research and portfolio management companies and persons.    Debris touted a product called "Quuve" that supposedly was "the world's first fully customizable web-based investment management ecosystem for professional investors" and "empowers investors to tailor institutional-level financial tools in ways that accommodate their idiosyncratic investment style."

Case 1:21-cv-10264-FDS Document 242 Filed 02/16/23 Page 8 of 37segment>

     b.   From April 2012 through December 2014, Gill was licensed with Lucidia, LLC, a registered investment advisor firm, as a registered investment advisor.

     c.   From April 2016 through April 2017, Gill was an "Investment Operations Analyst" for LexShares, Inc., the business of which included financing commercial litigation.

     d.   From July 2016 through April 2017, Gill was registered with FINRA-member firm Wealthforce Securities, LLC as, on information and belief, a registered representative (a securities broker).

     e.   From March 2019 through January 28, 2021, Gill was employed by MassMutual as a "Financial Wellness Director."

     f.   From April 2019 through January 28, 2021, Gill also was registered as a registered representative (a securities broker) with MML.

18.    As a licensed securities professional, including the period he was licensed by and associated with MML and MassMutual, Gill was obligated to follow various securities laws, Securities and Exchange Commission ("SEC") rules and regulations, and FINRA rules. For example, the FINRA rules applicable to Gill include:

     a.   Rule 2010 requires Gill to conduct his business in observance of "high standards of commercial honor and just and equitable principles of trade."

     b.   Rule 2020 prohibits Gill from inducing "the purchase or sale of[] any security by means of manipulative, deceptive or other fraudulent device or contrivance."

     c.   Rule 2111 requires Gill only to recommend a security that is suitable for the recipient of the communication.

     d.   Rule 2210 requires that Gill's communications with the public, *including on social media*, (i) are based on principles of fair dealing and good faith, must be fair and balanced, and must provide a sound basis for evaluating the facts in regard to any particular security or type of security, industry, or service, (ii) not omit any material fact or qualification if the omission, in light of the context of the material presented, would cause the communication to be misleading, (iii) not contain any false, exaggerated, unwarranted, promissory, or misleading statement or claim in any communication, (iv) be clear and not misleading within the context in which they are made, and that they provide balanced treatment of risks and potential benefits, (v) must provide details and

explanations appropriate to the audience to which the communication is directed, (vi) must not bury material information in footnotes, and (vii) must not include a prediction or forecast of future performance or make exaggerated or unwarranted claims or forecasts.

e. Rule 3210 prohibits Gill from having accounts with brokerage firms other than the firm with whom he is licensed without the permission of the licensing firm.

## B.  MML's and MassMutual's Obligations To Supervise.

19.  MML and MassMutual had the obligation to supervise Gill's activities concerning securities and the securities markets.

20.  For example, during the period that Gill was licensed with MML and employed by MassMutual, MML and MassMutual had the duty, under SEC regulations, FINRA rules, and pertinent law, to supervise Gill concerning his compliance with applicable securities laws and regulations and with applicable FINRA rules, including those listed above.

21.  Moreover, MML's and MassMutual's obligation to supervise Gill extends to his use of social media and his compliance with the laws, regulations, and rules that apply to licensed securities professionals, including those laws, rules, and regulations governing communications to the public regarding securities.

## C.  Gill's Use of Social Media Undermines the Integrity of, and Manipulates, the Market for GameStop Shares.

22.  To orchestrate the manipulation of GameStop stock, Gill created a far-reaching and wildly successful social media campaign in the year leading up to the surge in GameStop shares.

23.  The seeds of an idea Gill proliferated to his now hundreds of thousands of followers—namely, to exponentially drive up the price of GameStop shares—would ultimately germinate into a lucrative windfall for himself, at the expense of Plaintiff and the Class Members.

24.     Indeed, Gill has been rightfully characterized as "[t]he investor who helped direct the world's attention to GameStop, leading a horde of online followers in a bizarre market rally that made and lost fortunes from one day to the next," and "the force behind the quadruple-digit gains in shares of the videogame retailer GameStop[.]"[2]

25.     It was Gill's "advocacy" that, according to many online investors, "helped turn them into a force powerful enough to cause big losses for established hedge funds and, for the moment, turn the investing world upside down."[3]

26.     Mr. Gill's online persona—he goes by "Roaring Kitty" on YouTube and Twitter and "DeepF***ingValue" ("DFV") on Reddit—has "drawn tens of thousands of fans and copycats who share screenshots of their own brokerage accounts."[4]

27.     Gill's legion of fans were either unaware or unconcerned that they were collectively acting to manipulate the price of GameStop shares.

28.     Gill's advocacy took many forms, including through content generated on the social media websites Reddit, YouTube, and Twitter.

29.     Gill's conduct violated numerous securities laws and industry regulations and rules, including those sets forth in this Class Action Complaint.

**_Gill Incited Reddit Users on the "WallStreetBets" Forum._**

30.     The run on GameStop shares was, in large part, a direct result of Gill's influence in an internet forum hosted on the website "Reddit" known as "WallStreetBets" ("WSB").

31.     WSB has been characterized as a place "where like-minded people could gather to exclusively discuss the type of trades that would make a financial adviser's skin crawl. Their

---

[2] _Id._

[3] _Id._

[4] _Id._

approach would be more akin to gambling than spreadsheet analysis, and their motto something along the lines of 'YOLO,' short for "you only live once."[5]

32.     Indeed, "[t]hat ethos on WallStreetBets not only encourages risky trades, but also trading the entirety of your net worth or portfolio in a single risky trade."[6]

33.     Despite its cavalier approach toward investing, the WSB community has an undeniable influence on the financial markets—as the meteoric rise in the price of GameStop shares illustrates.

34.     "These guys can move markets," said Jeremy Blackburn, an assistant professor of computer science at Binghamton University who studies extremist communities on the web. "That's a *huge* deal."[7]

35.     Currently, the WSB forum has approximately 9 million followers (self-described as "Degenerates").[8]

36.     By catering to the WSB community, Gill was able to achieve his objectives to the tune of, on paper, approximately $48 million.

37.     Approximately one year ago, Gill first began posting his positions in GameStop under his "DeepF***kingValue" ("DFV") moniker. Specifically, he shared a screenshot of his E*trade account, depicting how many shares and option contracts he had purchased, the value of

---

[5] *Id.*

[6] Jon Sarlin, *Inside the Reddit army that's rushing Wall Street*, CNN Business, https://www.cnn.com/2021/01/29/investing/wallstreetbets-reddit-culture/index.html (last accessed Feb. 14, 2021).

[7] *Id.*

[8] https://www.reddit.com/r/wallstreetbets/ (last accessed Feb. 14, 2021).

his holdings, and when his option contracts were set to expire.[9] In effect, Gill was opening his playbook, so to speak, for all to emulate his position.

38.     Over the next several months, Gill would post a "month-end update" revealing how the value of his positions fluctuated during the preceding period.   Gill posted more frequently as the price of GameStop shares increased.

39.     While initially met with skepticism, Gill's posts garnered a cult-like following, and he eventually was ordained a messianic figure within the WSB community.

40.     For example, in a December 23, 2020, post, when the value of GameStop was roughly $20 a share, Gill represented that his initial GameStop investment stood at approximately 3.7 million dollars:



41.     As contemplated by Gill, various WSB users said that it was Gill's "updates" that caused them to purchase shares of their own:



[9] https://www.reddit.com/r/wallstreetbets/comments/d1g7x0/hey_burry_thanks_a_lot_for_jacking_up_my_cost/ (last accessed Feb. 14, 2021).



42.     Over the next several weeks, Gill continued to galvanize the WSB community.  In a January 5, 2021, post detailing the value of his holdings, WSB users continued to say with increasing frequency that Gill was the catalyst for their purchase of GameStop shares:[10]



43.     Gill's posts continued and, consequently, the mania for GameStop shares reached a fever pitch.  "As the GameStop frenzy peaked  . . . hundreds of thousands of new investors downloaded applications like Robinhood to join the action, according to Apptopia Inc."[11]

44.     The value of Gill's holdings appear to have crested on January 27, 2021.  At this time, Gill represented to the WSB community that, on paper, the value of his holdings was worth approximately $48 million dollars:

---

[10] https://www.reddit.com/r/wallstreetbets/comments/kr7s30/gme_yolo_update_jan_5_2021/ (last accessed Feb. 14, 2021).

[11] *Id.*



45.     Gill's January 27, 2021, post, which was "liked" or "upvoted" approximately 200,000 times, is replete with WSB users' recounting how Gill encouraged them not only to buy GameStop shares, but further inspired them to hold their shares so as to manipulate the market into ensuring a loss for those holding short positions:



*Gill Actively Recruited Traders on YouTube.*

46.     On July 13, 2020, Gill began posting videos on YouTube under the moniker "Roaring Kitty."  Gill's initial video stated that his "channel revolves around educational live streams where I share my daily routine of tracking stocks and performing investment research."[12]

47.     In his videos, Gill adorns a headband and cat-themed clothing items. Despite his disarming appearance, Gill's videos reveal that he was a highly sophisticated and calculated investor—consistent with his numerous financial certifications. For example, in a nearly two-hour YouTube video dated July 13, 2020, Gill educates his viewers with an array of financial spreadsheets containing hundreds of metrics and financial calculations Gill purportedly relies upon prior to making an investment.[13]

48.     Though Gill claimed to have been focused on appraising stocks generally, he had one target in his crosshairs: GameStop.  Only two weeks after starting his channel, Gill posted an approximately hour-long video on July 27, 2020, titled "100%+ short interest in GameStop stock (GME) – fundamental & technical deep value analysis."[14]  In this video, Gill pushed investment in GameStop on his viewers and directed their attention to the possibility that GameStop shares were ripe for a "short squeeze."

49.     Over the ensuing months, Gill began uploading videos concerning GameStop with increasing frequency.  Of the 80 videos uploaded to Gill's YouTube channel, at least 56 concerned GameStop specifically.

---

[12] *Roaring Kitty – Live Stream Launch*, https://www.youtube.com/watch?v=UNqqeXJxaf8 (last accessed Feb. 14, 2021).

[13] *Roaring Kitty – Tools Part 3 of 3*, https://www.youtube.com/watch?v=7wjWnMcdnlQ (last accessed Feb. 14, 2021).

[14] *100%+ short interest in GameStop stock (GME) – fundamental & technical deep value analysis*, https://www.youtube.com/watch?v=GZTr1-Gp74U (last accessed Feb. 14, 2021).

50.     Tellingly, a significant number of Gill's videos over this period targeted institutional hedge funds by specifically referencing a "short squeeze"—a situation where those who have taken a short position on the price of a stock are obligated to purchase the stock on the open market, facilitating a scramble to purchase shares, resulting in a sharp upward pressure on the stock's price[15]:

- "5 reasons GameStop stock (GME) is a roach not a cigar butt a la Warren Buffett & could short squeeze" (August 4, 2020)

- "The Big Short SQUEEZE from $5 to $50?  Could GameStop stock (GME) explode higher??  Value investing!" (August 21, 2020)

- "GameStop Q2 earnings 9/9 will Ryan Cohen BUY MORE GME STOCK before then?  Value investing live stream" (September 2, 2020)

- "GameStop up 136% since 7/31.  Has the short squeeze in GME stock kicked off?!" (September 21, 2020)

- "Ryan Cohen ADDS to his GameStop stake & wants to take on AMAZON!  Is a GME stock short squeeze afoot?" (September 23, 2020)

- "GameStop holds $10 level to start week.  Do GME stock longs now control the short squeeze narrative?" (September 30, 2020)

- "GameStop pops 50% to above 14.  Has the GME stock short squeeze kicked off?!" (October 9, 2020)

- "GameStop ends week over $9 for 3rd week in a row.  Could GME stock short squeeze off this higher base?" (October 5, 2020)

- "GameStop shorts rise to a stunning 141% of the float, raising the odds of a GME stock short squeeze" (October 14, 2020)

- "GameStop ends week @ $15!  $1 billion market cap in sight.   Could that cause a GME stock short squeeze?" (October 26, 2020)

---

[15] Cory Mitchell, *Short Squeeze*, Investopedia, https://www.investopedia.com/terms/s/shortsqueeze.asp (last accessed Feb. 14, 2021).

- GameStop Maguire - r/wallstreetbets, GME stock, Ryan Cohen, Michael Burry, Big Short, short squeeze (November 26, 2020)

- GME stock tops 19, highest intraday price in ~3yrs! Could Q3 run-up trigger GameStop short squeeze? (December 2, 2020)

- GME stock target raised from 10 to 19 by Telsey! GameStop holds 16 range. Short squeeze potential?! (December 4, 2020)

- GameStop rockets thru 30 on major volume! Has GME stock short squeeze started?! ALL HAIL RYAN COHEN! (January 13, 2021)

- GameStop cracks 45. Could news of Ryan Cohen's strategy trigger a GME short squeeze? (January 19, 2021)

51.  On January 22, 2021, the volume of GameStop shares traded reached an astonishing 196 million – the highest daily average in the history of the company.

52.  That same day, Gill uploaded a video "thanking" his viewers, titled, "GameStop closes at 65, up 1500% since July 2020. What a ride. Cheers, and thank you to everyone!"[16] Gill has, at the time of filing this Class action Complaint, ceased uploading videos to his YouTube channel.

53.  As of February 14, 2021, Gill has approximately 415,000 subscribers to his YouTube channel.

***Gill Actively Recruited Traders on Twitter.***

54.  Gill also maintained an active Twitter account to further propagate a run on GameStop shares.

55.  From July 18, 2020, to the present, Gill tweeted 707 times. Approximately *all* of Gill's tweets concerned GameStop, and accordingly tagged "$GME" (i.e., GameStop's stock ticker symbol) to draw attention further to his tweets.

---

[16] https://www.youtube.com/watch?v=bmwx78rF1xo (last accessed Feb. 14, 2021).

56.     Gill's tweets during this period were ostensibly calculated to aggressively push his "bull"[17] thesis.   In particular, Gill's tweets fostered unfounded optimism that the price of GameStop was poised to dramatically increase, or directed Twitter users to his YouTube channel, where he advocated the same:



---

[17] A "bull" is "an investor who thinks the market, a specific security, or an industry is poised to rise.   Investors who adopt a bull approach purchase securities under the assumption that they can sell them later at a higher price.   Bulls are optimistic investors who are attempting to profit from the upward movement of stocks, with certain strategies suited to that theory." James Chen, *Bull*, Investopedia, https://www.investopedia.com/terms/b/bull.asp (last accessed Feb. 14, 2021).



57.     At the same time, Gill constantly targeted those taking a "short" position against GameStop (i.e., those who believed the price of GameStop shares were likely to decline in value or otherwise fail to appreciate), especially institutional hedge funds.  In particular, he questioned the ability of short sellers to cover their positions, improperly speculating that those investors were at risk of significant financial losses:



16

58.     Moreover, Gill explicitly alluded to a "short squeeze" of GameStop shares:



59.     As of February 14, 2021, Gill has approximately 158,300 Twitter followers.

## D.     Plaintiff's GameStop Options Transactions.

60.     Unaware of Gill's deceitful social media communications, Plaintiff used approximately $200,000 in collateral to sell call option contracts for GameStop shares when the stock was below $100.

61.     Plaintiff sold call option contracts (representing 2,000 shares) at a strike price of $100 on January 26, 2021 with expiration date of January 19,2021, while Gill's manipulative social media conduct drove the market for GameStop shares into an unjustified frenzy (above $400).

62.     Plaintiff made these transactions relying on the integrity of the market for GameStop shares.

63.     Because of the market frenzy caused by Gill's manipulative conduct and MML's and MassMutual's failure to supervise, Plaintiff was forced to "cover" the options contracts by purchasing back offsetting GameStop options contracts representing Gamestop shares  at unwarrantedly and unprecedented inflated prices of $300 and $315 unmoored to the true value of GameStop shares, causing Plaintiff to incur substantial loses.

## V.     CLASS ALLEGATIONS

64.     Plaintiff brings this lawsuit as a class action on behalf of himself and all other Class Members similarly situated under Rules 23(a) and (b)(2), (b)(3), or (c)(4) of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those rules.

65.     Under Rules 23(a); (b)(2); and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff, by this action, seeks to certify and maintain it as a class action on behalf of himself and a Nationwide Class, as defined below, or, in the alternative, for statewide State Classes, as defined below.

66.     Plaintiffs seek a Nationwide Class (or State Classes) for damages under Rule 23(b)(3) of the Federal Rules of Civil Procedure for all those individuals and entities who during the period of January 22, 2021 through February 2, 2021 (the "Class Period"), (i) either (a) purchased GameStop shares (b) purchased back an option on GameStop shares, (c) had an option

for GameStop shares called away from them, (d) purchased GameStop shares to cover a short position, or (e) had their options expire, and (ii) suffered losses as a result of any transactions identified by clauses (a)-(e).

67.    Excluded from the proposed Nationwide Class are: (1) Defendants and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's immediate family and the Judge's staff; and (3) governmental entities. Plaintiff reserves the right to amend the Nationwide Class definition if discovery and further investigation reveal that the Nationwide Class should be expanded, divided into subclasses, or modified in any other way.

Numerosity

68.    Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough so that the joinder of parties plaintiff is impracticable.

69.    On information and belief, the number of options traded during the class period numbered well into hundreds of thousands per day.[18]

70.    The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

Typicality

71.    Plaintiff's claims are typical of the claims of Class Members in that Plaintiff, like all Class Members, was injured and suffered damages from the manipulation of GameStop stock caused by, or resulting from, Defendants' misconduct. Furthermore, the factual bases of

---

[18] Andrew Bary, *GameStop Bears are Turning to the Options Market*, Barron's, https://www.barrons.com/articles/gamestop-bears-are-turning-to-the-options-market-51611867452 (last accessed Feb. 14, 2021).

Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

Adequate Representation

72.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff has retained counsel with substantial experience in prosecuting securities class actions.

73.     Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class Members, and they have the financial resources to do so.  Neither Plaintiff nor his counsel have interests adverse to those of Class Members.

Predominance of Common Issues

74.     There are numerous questions of law and fact common to the Plaintiff and the Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members.   These common legal and factual issues include, but are not necessarily limited to:

a.   Whether Gill violated 15 U.S.C. §78i(a) through his transactions in and deceptive promotion of GameStop stock, which was intentionally designed to induce other persons, particularly users of Reddit's "WallStreetBets" forum and followers of Gill's YouTube channel, to purchase additional shares of GameStop.

b.   Whether Plaintiff and the Class Members have a private right of action under 15 U.S.C. §78i(f) against Gill

c.   Whether MML and MassMutual directly or indirectly facilitated and enabled Gill's manipulative activity and violations of 15 U.S.C. §78i(a).

d.   Whether Gill: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of GameStop's options and in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.

e.   Whether Gill violated Section 9 and Section 10(b) of the Securities Exchange Act and Rule 10b-5 by his acts or omissions as alleged in this Class Action Complaint.

f.   Whether by virtue of MML's and MassMutual's failure to abide by its supervision obligations and responsibilities, MML and MassMutual are liable under Section 20(a) of the Securities Exchange Act as a "control person" of Gill, the primary violator.

g.   Whether Plaintiff and the Class Members are entitled at common law to the damages they sustained as a result of MML's and MassMutual's failure to adequately supervise Gill's manipulative activities, as well as their costs and attorneys' fees.

<u>Superiority</u>

75.   Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of the manipulation of GameStop stock caused by, or resulting from, Defendants' misconduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

76.     Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

77.     Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and it will promote consistency and efficiency of adjudication.

## VI.     CLAIMS

### A.     COUNT I: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(2)

78.     Plaintiff incorporates the allegations in paragraphs 1-77 as if restated here.

79.     The Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78i(a)(2), prohibits persons, directly or indirectly, from effecting, alone or with one or more other persons, a series of securities transactions that create actual or apparent active trading in the security, or that raise or depress the price of that security, for the purpose of inducing the purchase or sale of the security by others.

80.     Gill violated §78i(a)(2) through his transactions in, and deceptive promotion of, GameStop stock, which were intentionally designed to induce other persons, particularly users of Reddit's "WallStreetBets" forum and followers of Gill's YouTube channel, to purchase additional shares of GameStop.

81.     Gill's direct and indirect actions in trading and promoting GameStop shares were designed to manipulate an increase in the price of the stock by deceptively using a "Robin Hood"-like persona to both induce "long" traders to purchase the stock and force "short" investors to also purchase GameStop shares to cover their short positions.

82.     Gill's conduct thus had a compounding effect of inducing or forcing other traders to purchase GameStop shares in a distorted and irrational manner.

83.     Gill's conduct, directly or indirectly, caused enormous volatility in the trading of GameStop shares.

84.     Gill's conduct, directly or indirectly, caused GameStop's market capitalization to spike sharply over the course of days before, predictably, it cratered.

85.     Other traders and national news publications have confirmed that Gill's conduct incited a concerted effort among himself and unaffiliated traders to manipulate and drive up the price of GameStop shares solely to "squeeze" short sellers and achieve a nominal price for the shares that was entirely untethered to any underlying fundamental value.

86.     Gill accomplished all of this while maintaining his status as a FINRA-regulated broker affiliated with MML MassMutual and ignoring the fact he was violating numerous industry and securities rules and regulations.

87.     By using a false identity, Gill failed to disclose his position as a regulated securities broker and industry insider and was able to mislead his media audience with his "every man" act and vilify securities industry professionals to incite his media audience to purchase GameStop shares so he himself could reap large profits.

88.     Gill's transactions in GameStop securities and associated conduct in actively touting strategies for trading the stock, directly or indirectly induced the sale or purchase of GameStop securities by others.

89.     Gill intended to induce trading in GameStop securities.

90.     Gill sought to increase the value of his interest in GameStop stock.

91.     Plaintiff and the Class Members were participants in the market for GameStop securities and relied on the proper, fair, and non-manipulative functioning of that market.

92.     Plaintiff and the Class Members were forced to close or cover their positions in GameStop securities at a massive loss as a result of Gill's conduct, while others purchased at artificially inflated prices in reliance on what was an unlawfully manipulated market.

93.     Plaintiff and the Class Members purchase or sale prices were unlawfully affected by Gill's conduct.

94.     Plaintiff and the Class Members have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff and the Class Members purchased or sold GameStop securities at a price that was affected by Gill's conduct.

95.     Plaintiff and the Class Members are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

## B.     COUNT II: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(3)

96.     Plaintiff incorporates the allegations in paragraphs 1-95 as if restated here.

97.     Gill is a registered and licensed broker.

98.     Gill, through his conduct described above, induced others to purchase or sell GameStop securities.

99.     Gill affected that inducement through the circulation or dissemination in the ordinary course of information about GameStop's stock and its likely price trajectory for the purpose of affecting the price of the stock.

100.    Gill routinely posted information about GameStop stock performance on his various social media accounts in a direct or indirect attempt to induce coordinated market activity.

101.    Gill's communications and representations about the likely trajectory of GameStop securities' prices were based on the market operations of traders, including himself and his social media followers, which were conducted for the purpose of acting collectively to raise the price of GameStop's securities artificially.

102.    Gill assumed a deceptive "Robin Hood"-like persona on social media to portray himself as an outsider trying to take on several large hedge funds.  In reality, he was a sophisticated and credentialed securities broker seeking to enrich himself.

103.    As a result of Gill's conduct and Plaintiff and the Class Members' reliance on what ultimately was an unlawfully manipulated market, Plaintiff and the Class Members either were forced to close or cover their positions in GameStop securities at a massive loss or purchase GameStop shares at artificially inflated prices.

104.    Plaintiff and the Class Members' purchase or sale prices were unlawfully affected by Gill's conduct.

105.    Plaintiff and the Class Members have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff and the Class Members purchased or sold GameStop securities at a price that was affected by Gill's conduct.

106.    Plaintiff and the Class Members are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

**C.    COUNT III: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(4)**

107.    Plaintiff incorporates the allegations in paragraphs 1-106 as if restated here.

108.    Gill is a registered and licensed broker.

109.    Gill engaged in numerous communications over social media and other platforms designed to influence the price of GameStop securities.

110.   Gill intended to induce coordinated action among himself and other traders to manipulate the price of GameStop securities.

111.   Gill intended to induce the purchase or sale of GameStop securities.

112.   Gill induced the purchase or sale of GameStop securities through his social media communications, which were false and misleading as to material facts, including failing to disclose that Gill was a professional, registered, licensed broker.

113.   Gill knew or had reasonable grounds to believe his communications were false or misleading as to material facts.

114.   As a licensed and registered broker, Gill is bound to adhere to the rules and regulations of FINRA, which are approved and adopted by the SEC.

115.   Gill's communications regarding GameStop stock were false or misleading for the additional reason that, in making them, Gill failed to adhere to the rigorous standards required by FINRA, including its standards of commercial honor.

116.   Gill assumed a deceptive "Robin Hood"-like persona on social media to portray himself as an outsider trying to take on several large hedge funds.  In reality, he was a sophisticated and credentialed securities broker seeking to enrich himself.

117.   Plaintiff and the Class Members' purchase or sale prices for GameStop securities were unlawfully affected by Gill's conduct.

118.   Plaintiff and the Class Members have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff and the Class Members purchased or sold GameStop securities at a price that was affected by Gill's conduct.

119.     Plaintiff and the Class Members are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

**D.     COUNT III: MML AND MASSMUTUAL'S VIOLATION OF 15 U.S.C. §78i(a)**

120.     Plaintiff incorporates the allegations in paragraphs 1-119 as if restated here.

121.     Defendant MML is a registered broker-dealer subject to regulation by FINRA.

122.     Defendant MML is obligated to adhere to the rules and regulations promulgated by the SEC and by FINRA in addition to the Federal securities laws.

123.     At all relevant times, Gill was associated with MML and MassMutual as an employee, associated person, and registered broker.

124.     MML and MassMutual had an obligation to supervise and oversee Gill.

125.     For example, FINRA Rule 3110 required MML to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules."

126.     MML and MassMutual were required to implement systems to monitor Gill's securities-related communications, including his social media communications.

127.     MML and MassMutual failed to adequately supervise Gill by, among other things, allowing him to engage in stock touting (actively encouraging others to purchase a security), pooling (coordinating securities purchases with other market participants), and other manipulative activities.

128.     MML and MassMutual failed to adequately supervise Gill by allowing him to engage in extensive social media communications and other activities designed to manipulate and artificially inflate the market for GameStop securities.

129.     By failing to adhere to its own supervision obligations, MML and MassMutual directly or indirectly facilitated and enabled Gill's manipulative activity and violations of 15 U.S.C. §78i(a).

130.     By failing to adhere to its own supervision obligation, MML and MassMutual willfully participated in Gill's manipulative activity and violations of 15 U.S.C. §78i(a).

131.     As a result, MML and MassMutual are liable for Gill's unlawful and manipulative activity under 15 U.S.C. §78i(f).

132.     Plaintiff and the Class Members' purchase or sale prices for GameStop securities were unlawfully affected by Gill's conduct.

133.     Plaintiff and the Class Members have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff and the Class Members purchased or sold GameStop securities at a price that was affected by Gill's conduct.

134.      Plaintiff and the Class Members are entitled to the damages they sustained as a result of MML and MassMutual's activity, as well as their costs and attorneys' fees.

**E.     COUNT IV: GILL'S VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 (17 C.F.R. §240.10b-5)**

135.     Plaintiff incorporates the allegations in paragraphs 1-134 as if restated here.

136.     During the Class Period, Gill disseminated or approved the materially false and misleading statements specified above, which he knew were misleading, or disregarded whether they were misleading, because the statements contained material misrepresentations and failed to disclose material facts necessary in order to make the statements not misleading.

137.     Gill: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements, in

the light of the circumstances in which they were made, not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiff and the Class and other purchasers of GameStop's stock during the Class Period.

138.    Gill induced the purchase or sale of GameStop securities through his social media communications, which were false and misleading, including his representations about the prospects of GameStop, his fake persona, and his staged communications.

139.    Gill knew or had reason to believe that his communications were false or misleading.

140.    As a licensed and registered broker, Gill is bound to adhere to the rules and regulations of FINRA, which are approved and adopted by the SEC through its regulatory authority.

141.    Gill's communications regarding GameStop stock were false or misleading for the additional reason that, in making them, Gill failed to adhere to the rigorous standards required by FINRA including its standards of commercial honor.

142.    Plaintiff and the Class Members have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for GameStop's securities.  Plaintiff and the Class Members would not have purchased GameStop's securities at the prices they paid, or at all, had they known that the market prices were falsely and artificially inflated by Gill's misleading statements.

143.    Plaintiff and the Class Members are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

**F.      COUNT V: MML AND MASSMUTUAL'S VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT**

144.    Plaintiff incorporates the allegations in paragraphs 1-143 as if restated here.

145. During the Class Period, Gill, as an employee, associated person, and licensed and registered broker of MML and MassMutual, directly or indirectly participated in MML's and MassMutual's business affairs.

146. As an employee, associated person, and a licensed and registered broker of MML, which is a registered broker-dealer subject to regulation by FINRA, and of MassMutual, Gill had a duty to disseminate truthful and accurate information to the market on behalf of MML and MassMutual, and MML and MassMutual had an obligation to adequately supervise Gill.

147. In particular, Gill had direct and unfettered access to the market as a registered broker and a representative of MML and MassMutual, and MML and MassMutual are therefore, presumed to have had the power or control or to influence the particular transactions giving rise to the securities violations alleged here, and they were obligated to exercise the same.

148. For example, FINRA Rule 3110 required MML to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules."

149. Defendants MML and MassMutual was required to implement systems to monitor Gill's securities-related communications, including his social media communications.

150. MML and MassMutual failed to adequately supervise Gill by, among other things, allowing him to engage in stock touting, pooling, and other manipulative activities.

151. MML and MassMutual failed to supervise Gill by allowing him to engage in extensive social media communications and other activities designed to manipulate and artificially inflate the market for GameStop securities.

152. As set forth above, Gill violated Section 9 and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by his acts or omissions as alleged in this Class Action

Complaint. By virtue of MML and MassMutual's failure to abide by its supervision obligations and responsibilities, MML and MassMutual are liable under Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), as a "control person" of Gill, the primary violator.

153.     Plaintiff and the Class Members are entitled to the recover damages from MML and MassMutual that they sustained as a result of Gill's manipulative activities and MML and MassMutual's control-person liability, as well as their costs and attorney's fees.

## G.     COUNT VI: MML AND MASSMUTUAL'S COMMON-LAW FAILURE TO SUPERVISE

154.     Plaintiff incorporates the allegations in paragraphs 1-153 as if restated here.

155.     MML, a registered broker-dealer subject to regulation by FINRA, and MassMutual were required to supervise and oversee the activities of Gill as discussed in detail above.

156.     For example, FINRA Rule 3110 required MML to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules."

157.     MML and MassMutual were required to implement systems to monitor Gill's securities-related communications, including his social media communications.

158.     MML and MassMutual failed to adequately supervise Gill by, among other things, allowing him to engage in stock touting, pooling, and other manipulative activities.

159.     MML and MassMutual failed to adequately supervise Gill by allowing him to engage in extensive social media communications and other activities designed to manipulate and artificially inflate the market for GameStop securities.

160.     MML and MassMutual had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts, where he made material misrepresentations or omissions about the value of GameStop's securities in order to artificially inflate prices.

161.     As a result, Plaintiff and the Class Members were harmed by initiating both "long" and "short" positions based on MML's and MassMutual's failure to adequately supervise Gill's deceptive, coordinated market manipulation.

162.     Plaintiff and the Class Members are entitled to the damages that they sustained as a result of MML and MassMutual's failure to adequately supervise Gill's manipulative activities, as well as their costs and attorneys' fees.

## VII.    DEMAND FOR JUDGMENT

163.     WHEREFORE, the plaintiff, on behalf of himself and the proposed class, respectfully demands that this Court:

     a.  Determine that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class, and declare the plaintiff as the representative of the class;

     b.  Enter judgment against the defendants and in favor of the plaintiff and the class;

     c.  Award the class compensatory and punitive damages against all defendants, jointly and severally, in an amount to be determined at trial, including pre- and post-judgment interest thereon;

     d.  Award the plaintiff and the class their costs of suit, including reasonable attorneys' fees as provided by law; and

     e.  Award such further and additional relief as the case may require and the Court may deem just and proper under the circumstances.

## VIII.   JURY DEMAND

164.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the plaintiff, on

behalf of himself and the proposed class, demands a trial by jury on all issues so triable.

Dated: February 16, 2021                              Respectfully submitted,

                                                      /s/ *Thomas M. Sobol*
                                                      Thomas M. Sobol
                                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                                      55 Cambridge Parkway, Suite 301
                                                      Cambridge, MA 02142
                                                      Tel: 617-482-3700
                                                      Fax: 617-482-3003
                                                      tom@hbsslaw.com

                                                      Steve W. Berman (*pro hac vice* forthcoming)
                                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                                      1301 Second Ave., Suite 2000
                                                      Seattle, WA 98101
                                                      Tel: 206-623-7292
                                                      Fax: 206-623-0594
                                                      steve@hbsslaw.com

                                                      Reed Kathrein (*pro hac vice* forthcoming)
                                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                                      715 Hearst Ave., Suite 202
                                                      Berkeley, CA 94710
                                                      Tel: 510-725-3000
                                                      Fax: 510-725-3001
                                                      reed@hbsslaw.com

                                                      THE MILLER LAW FIRM, P.C.
                                                      E. Powell Miller (*pro hac vice* forthcoming)
                                                      Sharon S. Almonrode (*pro hac vice* forthcoming)
                                                      950 West University Drive, Suite 300
                                                      Rochester, MI 48307
                                                      Tel: 248-841-2200
                                                      epm@millerlawpc.com
                                                      ssa@millerlawpc.com

                                                      HONIGMAN LLP
                                                      2290 First National Building
                                                      660 Woodward Avenue
                                                      Detroit, MI 48226-3506
                                                      Tel: 313-465-7000

                                                      *Of Counsel*

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, certify that, on this date, the foregoing document was filed

electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel

of record, and parties may access the filing through the Court's system.

Dated: February 16, 2021                        /s/ *Thomas M. Sobol*
                                                 Thomas M. Sobol