# COMMONWEALTH OF MASSACHUSETTS
# OFFICE OF THE SECRETARY OF THE COMMONWEALTH
# SECURITIES DIVISION
# ONE ASHBURTON PLACE, ROOM 1701
# BOSTON, MASSACHUSETTS 02108

|  |  |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| MML INVESTORS SERVICES, LLC, ) | Docket No. E-2021-0004 |
| ) | |
| RESPONDENT. ) | |

## CONSENT ORDER

### I.  PRELIMINARY STATEMENT

This Consent Order ("Order") is entered into by the Massachusetts Securities Division (the "Division") and MML Investors Services, LLC ("MMLIS") with respect to the investigation by the Division into whether MMLIS' activities and conduct violated the Massachusetts Uniform Securities Act, MASS. GEN. LAWS ch. 110A (the "Act"), and the corresponding regulations promulgated thereunder at 950 MASS. CODE REGS. 10.00 – 14.413 (the "Regulations").

On September 15, 2021, MMLIS submitted an Offer of Settlement ("Offer") to the Division. Solely for the purpose of this matter's resolution, MMLIS neither admits nor denies the Statement of Facts set forth in Section VI and the Violations of Law set forth in Section VII below, and consents to the entry of this Order by the Division, consistent with the language and terms of the Offer, settling the investigation (E-2021-0004) hereby with prejudice.

1

## II. JURISDICTION AND AUTHORITY

1. As provided for by the Act, the Division has jurisdiction over matters relating to securities pursuant to chapter 110A of Massachusetts General Laws.

2. The Offer was made and this Order is entered in accordance with the Act. Specifically, the acts and practices investigated by the Division took place in Massachusetts while MMLIS was registered as a broker-dealer in Massachusetts.

## III. RELEVANT TIME PERIOD

3. Except as otherwise expressly stated, the conduct described herein occurred during the approximate time period of April 1, 2019, to the present (the "Relevant Time Period").

## IV. RESPONDENT

4. <u>MML Investors Services, LLC</u> ("MMLIS") is a broker-dealer with headquarters in Massachusetts. MMLIS has a Financial Industry Regulatory Authority ("FINRA") Central Registration Depository ("CRD") number of 10409. MMLIS has been registered as a broker-dealer in Massachusetts since March 31, 1982. Massachusetts Mutual Life Insurance Company ("MassMutual") is the parent company of MMLIS.

## V. RELATED PERSON

5. <u>Keith Patrick Gill</u> ("Gill") is a resident of Wilmington, Massachusetts. Gill has a FINRA CRD number of 6054636 and was registered as a broker-dealer agent of MMLIS from April 2, 2019, through January 28, 2021.

## VI. STATEMENT OF FACTS

**A. Overview**

6. MMLIS is a broker-dealer and registered investment adviser that provides investment and wealth management services through over 7,500 registered agents across

2

the country as well as serving as one of the country's largest distributors of mutual funds, variable annuities, and variable life insurance products. As of the date of this Offer, MMLIS has 2,021 agents registered in Massachusetts.

7. From April 2, 2019, through January 28, 2021, Gill was registered as a broker-dealer agent of MMLIS.

8. While registered with MMLIS, Gill worked as a Product Management Director, and subsequently Director of Education and Wellness for a d/b/a of MMLIS known as In Good Company ("IGC").

9. MMLIS designed IGC as a marketing program to attract new customers and retain current customers through educational offerings, presented by broker-dealer agents with limited or no book of business, and given to employees of pre-existing institutional clients of MassMutual and potential new customers of MMLIS.

10. While employed at IGC, Gill was responsible for creating educational materials used by MMLIS in connection with the IGC program.

11. MMLIS is responsible for ensuring regulatory compliance of IGC and its agents.

12. Certain employees of IGC, including Gill, were registered as broker-dealer agents of MMLIS (classified internally as "'home office' registered representatives") and were subject to regulatory supervision requirements as compared to non-registered employees.

13. MMLIS failed in its supervision of its home office registered representatives.

14. MMLIS failed to have reasonable policies and procedures in place to detect and monitor a broker-dealer agent's use of social media accounts unaffiliated with MMLIS to achieve compliance with the Act and Regulations. Specifically, MMLIS policies and procedures were inadequate to detect Gill's social media activities, including over 250

hours, or 10 days' worth of YouTube videos detailing investment strategies, at least 590 securities related tweets on Twitter, and a similar volume of posts on other social media platforms all concerning securities related information.

15. MMLIS also failed to have reasonable policies and procedures in place to detect and monitor broker-dealer agent trading in the accounts of others, away from MMLIS, to achieve compliance with the Act and Regulations.

16. In fact, MMLIS failed to detect or monitor nearly 1,700 trades effected by Gill in the accounts of three other individuals.

17. MMLIS also failed to have reasonable policies and procedures in place to monitor the personal trading of MMLIS registered agents.

18. MMLIS' use of a third-party electronic trading surveillance program was substantially flawed. MMLIS failed to reasonably implement and review its trade surveillance program and as a result failed to detect two transactions effected by Gill, each nearly $500,000 in excess of MMLIS' pre-determined per-transaction limit of $250,000. As a result, MMLIS failed to conduct any additional compliance review as otherwise required by its own policies and procedures.

19. Despite numerous opportunities, MMLIS failed to review the activity of a MMLIS broker-dealer agent whose actions contributed to diminished investor confidence in securities markets.

20. MMLIS compliance failures were systemic and not unique to Gill.

21. MMLIS acts, practices, and failures to act, both individually and collectively, violated Section 204(a)(2)(J) of the Act.

## B. MMLIS' Effort to Develop New Business through Purported Educational Offerings

22. While registered with MMLIS, Gill served as a critical link between IGC and MMLIS' client facing registered agents. As a subject matter expert, he was responsible, among others, for developing content, building educational workshop offerings, training MMLIS registered agents to prepare for the workshops, and acted as liaison between IGC and the compliance team to ensure approval of the content created for the workshops.

23. Gill's position was so closely involved with MMLIS registered agents who managed customer accounts that MassMutual registered Gill with MMLIS as a broker-dealer agent even though Gill himself did not service retail customers.

24. A senior executive at MMLIS ("Broker-Dealer Supervisor One") served as Gill's broker-dealer supervisor during the entirety of Gill's employment.

25. Broker-Dealer Supervisor One testified he met with Gill only one time in a group setting.

26. While Gill was registered with MMLIS and under the supervision of Broker-Dealer Supervisor One, Broker-Dealer Supervisor One testified he never once had a one-on-one interaction or conversation with Gill.

27. In fact, while responsible for supervising Gill, Broker-Dealer Supervisor One was also acting as the FINRA Office of Supervisory Jurisdiction ("OSJ") principal at MMLIS' offices in Springfield, Massachusetts, and was therefore ultimately responsible for the supervision of approximately 500 other "home office" agents.

**C.     MMLIS Failed to Detect and Monitor Social Media Activity of its Broker-Dealer Agents**

28.    MMLIS prohibits its broker-dealer agents from discussing generic securities[1] and company business on social media, including specifically YouTube and Twitter.

29.    Despite these prohibitions, MMLIS failed to implement policies and procedures reasonably designed to detect, monitor, or prevent its broker-dealer agents from discussing securities related information or company business—which in the case of IGC was educating potential retail customers on topics including general investing strategies and financial planning—on their social media accounts.

30.    Gill ran rampant on his personal social media—frequently and extensively posting regarding generic and specific securities.

31.    In fact, while registered with MMLIS, Gill utilized at least six social media platforms: YouTube, Twitter, Reddit, TikTok, Stocktwits, and Seeking Alpha.

32.    Throughout this period, Gill's almost exclusive use of social media was discussing, analyzing, and promoting GameStop.

33.    MMLIS missed numerous opportunities to review Gill's use of social media to discuss securities related information.

34.    Beginning around August 2019, four months after his hire, Gill began posting about securities, specifically GameStop, on the Subreddit community WallStreetBets.

35.    Gill continuously posted on Reddit about securities from August 2019 until his termination on January 28, 2021.

---

[1] As testified to by various MMLIS employees, generic securities consist of stocks, bonds, mutual funds, variable annuities, securities generally, and any market information. Along with generic securities, MMLIS also prohibits its registered representatives from discussing specific securities, such as a specific stock.

6

36. In at least 45 posts on the Subreddit community WallStreetBets, Gill included a screenshot of his investments in GameStop. These posts garnered tens of thousands of comments from other Reddit users.

37. Beginning around July 2020, Gill began livestreaming and posting videos about investing in securities, specifically GameStop, on YouTube.

38. On the About Page of his YouTube Channel, Gill describes his posts as "for educational purposes" about his approach to "investing." Gill even referred to himself as a security analyst.

39. Gill continuously livestreamed and posted on YouTube regarding securities from July 2020 until his termination. Although he never mentioned his name or his affiliation with MMLIS, Gill's face was front and center on his YouTube videos. Gill posted at least 80 videos that contained more than 250 hours, or more than 10 days, of content, all of which he livestreamed and posted while registered with MMLIS.

40. Also beginning around July 2020, Gill began posting about securities, specifically GameStop, on Twitter.

41. Gill continuously tweeted on Twitter regarding securities from July 2020 until his termination. Specifically, Gill tweeted at least 590 times regarding GameStop using animation and memes and often would direct readers to his YouTube videos.

42. Gill also posted about securities on three other social media platforms: TikTok, Stocktwits, and Seeking Alpha.

43. As early as September 2020, at least one IGC employee ("MMLIS Representative One") was aware of Gill's interest in GameStop.

7

44. However, for months, MMLIS failed to reasonably monitor internal communications exchanged between and among its registered persons—namely failing to identify Gill's extensive communications with MMLIS Representative One on internal systems regarding GameStop.

45. It was not until January 18, 2021 that a low level employee brought Gill's social media activity to the attention of the head of IGC ("IGC Employee One") and Gill's IGC manager ("IGC Employee Two").

46. Despite the fact that IGC Employee One and IGC Employee Two became aware of Gill posting on social media in violation of company policy, MMLIS did not take any immediate action against Gill and failed to address his misconduct. Gill posted an additional 19 securities-related posts on social media between the time IGC Employee One and IGC Employee Two learned Gill was posting videos about securities on YouTube and when MMLIS terminated him on January 28, 2021—all during the meme stock[2] run-up. These posts included two YouTube videos, six posts on Reddit, and 11 tweets on Twitter.

47. On January 21, 2021, Gill submitted an e-mail of resignation stating his last day of employment would be January 29, 2021. No one at MMLIS, including Broker-Dealer Supervisor One, Gill's supervisor of record, ever questioned Gill about his resignation.

48. On January 28, 2021, MMLIS and MassMutual cut off Gill's access to all company resources and terminated his employment on January 28, 2021, one day prior to his announced last day.

---

[2] A meme stock is a stock that experiences an increase in trading volume not because of the company's performance but rather because of promotion on social media platforms and online forums such as Reddit. Meme stocks are generally risky and volatile investments.

49. By this time, Gill's social media activity was part of the GameStop and meme stock frenzy.

50. Although IGC Employee One and IGC Employee Two learned of Gill's securities-related social media activity on January 18, 2021, Broker-Dealer Supervisor One was unaware of the scope or nature of the problem until January 28, 2021.

51. The week following Gill's resignation, GameStop, along with other so-called meme stocks, experienced extreme fluctuations in price. Gill had gained tens of thousands of followers by this time and his social media posts were oft cited as a driving force behind the market volatility surrounding GameStop in late January.

52. MMLIS failed to have reasonable policies and procedures in place to detect and monitor Gill's social media activities as described above.

**D.  MMLIS Failed to Implement Policies and Procedures Reasonably Designed to Supervise Gill's Securities Transactions in the Accounts of Others**

53. MMLIS also failed to reasonably supervise trades effected by its broker-dealer agent away from MMLIS.

54. The Regulations prohibit broker-dealer agents from "[e]ffecting securities transactions not recorded on the regular books and records of the broker-dealer that the agent represents, unless the transactions are authorized in writing by the broker-dealer prior to execution of the transactions." 950 MASS. CODE REGS. 12.204(b)(2).

55. Similarly, FINRA Rule 3280 requires that broker-dealers monitor private securities transactions. A private securities transaction is a securities transaction outside the regular course or scope of an associated person's employment.

56. MMLIS policies prohibit undisclosed private securities transactions and state that "[c]ompliance will help determine if the investment raises regulatory concerns."

9

57. As early as March 2019, MMLIS and Broker-Dealer Supervisor One knew or should have known that Gill may have been effecting private securities transactions in the accounts of others when he submitted an Outside Business Activity ("OBA") form requesting permission to manage the accounts of another individual ("Individual One"). Despite initially signing off on the OBA, on or around April 2, 2019, MMLIS denied this request.

58. Moreover, in late March 2019, Gill separately disclosed to MMLIS that he had access to three outside investment accounts of Individual One.

59. No one at MMLIS, including Broker-Dealer Supervisor One, ever questioned Gill about his access to the three accounts of Individual One. MMLIS failed to conduct even the most basic due diligence, which would have revealed that Gill was managing at least two of Individual One's accounts.

60. MMLIS also failed to identify that in addition to Gill's access to the accounts of Individual One, Gill was also managing at least three other outside investment accounts for two other individuals ("Individual Two" and "Individual Three").

61. In total, while employed as a broker-dealer agent of MMLIS, Gill effected approximately 1,700 trades in the accounts of Individuals One, Two, and Three, including the following:

   a. 11 trades in Individual One's TD Ameritrade account;
   b. 94 trades in Individuals Two and Three's TD Ameritrade account;
   c. 95 trades in Individual One's E*Trade account;
   d. 140 trades in Individual Two's E*Trade account; and
   e. 1,356 trades in Individual Three's Fidelity account.

62. Gill additionally was listed as a beneficiary on at least two of Individual Three's accounts.

10

63.     Despite the fact that the firm was on notice that Gill had access to the accounts of Individual One, MMLIS failed to conduct reasonable due diligence concerning possible private securities transactions in the accounts of other individuals.

64.     While MMLIS requires its registered representatives to submit annual compliance attestations, the firm failed to design these attestations in a manner reasonably designed to address trading in outside investment accounts.

65.     In fact, since at least 2019, MMLIS has failed to inquire reasonably regarding private securities transactions effected by "home office" broker-dealer agents.

66.     Due to the inadequacy of its compliance attestation form, MMLIS failed to uncover Gill's access to and trading in outside accounts.

**E.     MMLIS Failed to Detect Gill's Role in Fueling the GameStop Frenzy**

67.     MMLIS utilizes a third party electronic monitoring system (the "Trade Surveillance System") to track the personal trading of its registered representatives.

68.     The Trade Surveillance System has at least nine rules MMLIS could have enabled in order to monitor excessive trading. These rules can monitor excessive trading based on quantity, value, or volume.

69.     Initially, MMLIS had one excessive trading rule enabled to monitor the dollar value across all accounts a registered representative trades in a single security, whether buying or selling. MMLIS set the rule to flag transactions of $250,000 or more.

70.     Gill first began trading in GameStop in June 2019, shortly after registering with MMLIS.

71.     On January 5, 2021, weeks prior to Gill's resignation, he sold 1,000 GameStop options contracts worth approximately $750,000.

11

72. On the same day, he purchased GameStop shares in the amount of $703,600.

73. These two transactions each greatly exceeded $250,000.

74. However, the Trade Surveillance System did not flag either of these transactions because MMLIS disabled the excessive trading rule sometime between April 2019 and January 2021. As a result, MMLIS failed to reasonably utilize the Trade Surveillance System.

75. Prior to these two GameStop transactions, around September 2020, Gill began communicating with MMLIS Representative One over internal systems about investing in GameStop.

76. The communications between Gill and MMLIS Representative One continued through January 2021, even after Gill's two GameStop transactions totaling more than $1.4 million. At no point did MMLIS flag these communications for review.

### F. MMLIS' Failures Were Readily Recognized as Problematic by its Own Employees

77. On January 20, 2021, GameStop's closing price was $39.12. The next two weeks the stock experienced unprecedented swings, reaching a high price of $483 on January 29 and closing on February 4 at $53.50.

78. MMLIS employees immediately recognized the problems associated with Gill's social media accounts and trading activity.

79. IGC Employee One, for his part, in a January 28, 2021, email marked "Urgent!" stated "[Gill's] being identified as a 'ring leader' (not by name but by his reddit handle) in manipulating the value of GameStop stock . . . I feel like we need to cut his access to MM systems asap . . . ."

80. In a later email sent on January 28, 2021, IGC Employee One stated "it is clear that these actions, were not in line with MassMutual's code of conduct, ethics policies, and are potentially a violation of regulatory laws."

81. MMLIS' chief compliance officer concurred, testifying that Gill's conduct "seems inconsistent with the MassMutual code of conduct."

82. As a result, both individually and collectively, MMLIS acts, practices, and failures to act, violated Section 204(a)(2)(J) of the Act.

## VII.   VIOLATIONS OF LAW

### Count I – Violations of MASS. GEN. LAWS ch. 110A, § 204(a)(2)(J)

83. Section 204(a)(2)(J) of the Act provides:

> The secretary may by order impose an administrative fine or censure or deny, suspend, or revoke any registration or take any other appropriate action if he finds (1) that the order is in the public interest and (2) that the applicant or registrant or, in the case of a broker-dealer or investment adviser, any partner, officer, or director, any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling the broker-dealer or investment adviser:
>
> (J) has failed reasonably to supervise agents, investment adviser representatives or other employees to assure compliance with this chapter[.]

MASS. GEN. LAWS ch. 110A, § 204(a)(2)(J).

84. The conduct of MMLIS, as described above, constitutes a violation of MASS. GEN. LAWS ch. 110A, § 204(a)(2)(J).

## VIII.   ORDER

**IT IS HEREBY ORDERED:**

A. MMLIS shall permanently cease and desist from further violations of the Act and Regulations in Massachusetts;

B. MMLIS is censured by the Division;

13

C. Within ninety (90) days of the entry of this Order, MMLIS shall retain the services of an independent third-party consultant (the "Consultant") not unacceptable to the Division. MMLIS shall cooperate fully with the Consultant and pay exclusively all compensation and expenses. Furthermore, MMLIS shall require the Consultant to conduct a comprehensive review of MMLIS policies and written supervisory procedures as guided and informed by the allegations in this Offer to ensure compliance with state and federal securities laws. The comprehensive review shall include a review of the following:

    a. MMLIS' policies and procedures regarding broker-dealer agents' use of social media platforms to achieve compliance with the Act and Regulations and industry standards or best practices;

    b. MMLIS' policies and procedures to detect and monitor broker-dealer agent trading in the accounts of others to achieve compliance with the Act and Regulations and industry standards or best practices;

    c. MMLIS' policies and procedures to monitor the personal trading of MMLIS registered agents, particularly as to excessive trading, to achieve compliance with the Act and Regulations and industry standards or best practices; and

    d. MMLIS' compliance training related to each of (a), (b), and (c), above, including, without limitation, making recommendations for appropriate additional trainings.

D. Within one hundred eighty (180) days of the entry of this Order:

    a. MMLIS shall submit a report to the Division containing the findings of the comprehensive review (the "Report"). The Report shall include, without

limitation, a description of the review performed, the conclusions reached, and the recommendations for changes in or improvements to MMLIS policies, compliance training, and written supervisory procedures, as well as the process for implementing recommended changes and improvements;

b. The Report's recommendations shall not be unacceptable to the Division, provided that the Division will not unreasonably withhold its consent of the recommendations; and

c. If the recommendations are not unacceptable to the Division, MMLIS will promptly adopt all recommendations in the Report.

E. For a period of three (3) years after the entry of this Order, MMLIS shall conduct an annual compliance review ("Annual Review") of its policies and procedures regarding the use of social media by broker-dealer agents, private securities transactions, and compliance training, subject to the following terms:

a. MMLIS' first Annual Review shall be conducted within ninety (90) days after the Division gives notice to MMLIS that the recommendations contained in the Report are not unacceptable, as discussed in Section IX(D)(b), above, and the remaining two Annual Reviews shall be conducted within ninety (90) days of the end of the 2022 and 2023 fiscal years; and

b. Within sixty (60) days following the Annual Review, MMLIS shall file a report with the Division with a summary of its ongoing compliance with the recommendations set forth in Section VIII(D)(c) and noting any material deficiencies detected and how MMLIS addressed the material deficiencies.

F. Within sixty (60) days following the Report, MMLIS shall provide compliance training to all home office broker-dealer agents regarding the use of social media and private securities transactions, subject to the following terms:

  a. Within thirty (30) days following the required compliance training, MMLIS will provide the Division a report (the "Training Report") of the compliance training provided. The Training Report shall include a summary of the compliance training provided, a copy of all materials used for the training, and the total number of MMLIS broker-dealer agents that received the training.

G. Within five (5) business days of the entry of this Order, MMLIS shall pay an administrative fine in the amount of $4,000,000 (USD) to the Commonwealth of Massachusetts. Payment shall be: (1) made by United States postal money order, certified check, bank cashier's check, bank money order, or wire transfer; (2) made payable to the Commonwealth of Massachusetts; (3) either hand-delivered or mailed to One Ashburton Place, Room 1701, Boston, Massachusetts 02108, or wired per Division instructions; and (4) submitted under cover letter or other documentation that identifies the payor making the payment and the docket number of the proceedings. Additionally, MMLIS shall provide the Division with notice twenty-four (24) hours prior to the payment;

H. MMLIS shall not claim, assert, or apply for a tax deduction or tax credit with regard to any state, federal or local tax for any amounts that Respondent shall pay pursuant to this Order;

I.      MMLIS shall not seek or accept, directly or indirectly, reimbursement or indemnification, including, but not limited to, any payments made pursuant to any insurance policy, with regard to any amount that MMLIS shall pay pursuant to this Order;

J.      Upon the issuance of this Order, if MMLIS fails to comply with any of the terms set forth in this Order, the Division may institute an action to have this agreement declared null and void. Additionally, after a full and fair hearing and the issuance of an order finding that MMLIS has not complied with this Order, the Division may move to have this Order declared null and void, in whole or in part, and re-institute the associated investigation that had been brought against MMLIS; and

K.      For good cause shown, the Division m ay extend any of the procedural dates set forth above. MMLIS shall make any requests for extensions of the dates set forth above in writing to the Division.

## IX.    NO DISQUALIFICATION

This Order waives any disqualification in the Massachusetts laws, or rules or regulations thereunder, including any disqualification from relying upon the registration exemptions or safe harbor provisions to which MMLIS may be subject. This Order is not intended to be a final order based upon violations of the Act that prohibit fraudulent, manipulative, or deceptive conduct. This Order is not intended to form the basis of any disqualifications under Section 3(a)(39) of the Securities Exchange Act of 1934; or Rules 504(b)(3) and 506(d)(1) of Regulation D, Rule 262(a) of Regulation A and Rule 503(a) of Regulation CF under the Securities Act of 1933. This Order is not intended to form the basis of disqualification under the FINRA rules prohibiting continuance in membership absent the filing of a MC-400A application or disqualification under SRO rules prohibiting

continuance in membership. This Order is not intended to form a basis of a disqualification under Section 204(a)(2) of the Uniform Securities Act of 1956 or Section 412(d) of the Uniform Securities Act of 2002. Except in an action by the Division to enforce the obligations of this Order, any acts performed or documents executed in furtherance of this Order: (a) may not be deemed or used as an admission of, or evidence of, the validity of any alleged wrongdoing, liability, or lack of any wrongdoing or liability; or (b) may not be deemed or used as an admission of, or evidence of, any such alleged fault or omission of MMLIS in any civil, criminal, arbitration, or administrative proceeding in any court, administrative agency, or tribunal.

**WILLIAM FRANCIS GALVIN**
**SECRETARY OF THE COMMONWEALTH**

By: *[signature]*
Diane Young-Spitzer
Director and General Counsel
Massachusetts Securities Division
One Ashburton Place, Room 1701
Boston, MA 02108

Dated: September _15_, 2021