## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Douglas Rosenberg

               Plaintiff,

      v.

KEITH PATRICK GILL, MML INVESTORS
SERVICES, LLC, AND MASSACHUSETTS
MUTUAL LIFE INSURANCE CO.

               Defendants.

**C.A. NO. 1:23-cv-10441-FDS**

**First Amended Complaint**

**JURY TRIAL DEMANDED**

## <u>TABLE OF CONTENTS</u>

I.   OVERVIEW OF WRONGDOING ............................................................................... 1

II.   THE PARTIES ..................................................................................................... 3

III.   JURISDICTION AND VENUE ............................................................................ 3

IV.   FACTS ............................................................................................................... 4

   A.   The Real Keith Gill ...................................................................................... 4

   B.   MML's and MassMutual's Obligations To Supervise ................................ 6

   C.   Gill's Use of Social Media Undermines the Integrity of, and Manipulates,
        the Market for GameStop Shares ............................................................... 6

   D.   Plaintiff's GameStop Options Transactions ............................................... 17

V.   CLAIMS ............................................................................................................ 22

   A.   COUNT I: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(2) .................................. 22

   B.   COUNT II: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(3) ................................. 24

   C.   COUNT III: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(4) ............................... 25

   D.   COUNT III: MML AND MASSMUTUAL'S VIOLATION OF 15 U.S.C.
        §78i(a) ........................................................................................................ 27

   E.   COUNT IV: GILL'S VIOLATION OF SECTION 10(b) OF THE
        EXCHANGE ACT AND RULE 10b-5 (17 C.F.R. §240.10b-5) .......................... 28

   F.   COUNT V: MML AND MASSMUTUAL'S VIOLATION OF SECTION
        20(a) OF THE EXCHANGE ACT .................................................................... 29

   G.   COUNT VI: MML AND MASSMUTUAL'S COMMON-LAW
        FAILURE TO SUPERVISE ............................................................................. 31

VI.   DEMAND FOR JUDGMENT .............................................................................. 32

VII.   JURY DEMAND ............................................................................................... 33

Case   **1:23-cv-10441-FDS**

Plaintiff Douglas Rosenberg, files this  Action Complaint against Defendants, Keith Patrick Gill ("Gill"), MML Investors Services, LLC ("MML"), and Massachusetts Mutual Life Insurance Company ("MassMutual," and, together with Gill and MML, "Defendants"), and avers as follows:

## I.     OVERVIEW OF WRONGDOING

Plaintiff purchased securities in Game Stop unaware of Gills manipulation in the market

1. Plaintiff sold 10 Calls February 19, 2021 Strike price 100 at $27.73 per share. Later in the day he sold an additional 10 calls in the February options with a strike price of $200.00 at $15.00 per share. ( See Exhibit 1). This caused a loss of approximately $420,000.00.

2. Additionally on Feb 18th Plaintiffs Game Stock was closed out causing Plaintiff an additional loss of $710,76.80

| SHORTS (continued) Description | Acquired | Quantity | Unit Cost Basis | Total Cost Basis | Estimated Market Price | Estimated Market Value | Unrealized Gain/(Loss) | Estimated Annual Income |
|---|---|---|---|---|---|---|---|---|
| GAMESTOP CORP NEW  CL A | 02/18/21 | 89.0000 | 169.9807 | 15,128.29◆ | 101.7400 | 9,054.86 | (24,183.15) | |
| GAMESTOP CORP NEW  CL A | 02/18/21 | 5.0000 | 175.6720 | 878.36◆ | 101.7400 | 508.70 | (1,387.06) | |
| GAMESTOP CORP NEW  CL A | 02/18/21 | 15.0000 | 171.7113 | 2,575.67◆ | 101.7400 | 1,526.10 | (4,101.77) | |
| GAMESTOP CORP NEW  CL A | 02/18/21 | 79.0000 | 170.0239 | 13,431.89◆ | 101.7400 | 8,037.46 | (21,469.35) | |
| Subtotal | | 2,000.0000 | | 507,281.80 | | 203,480.00 | (710,761.80) | |
| RESEARCH FRONTIERS INC | 02/18/21 | | | | | | | |

After purchasing a sizeable number of shares in GameStop Corp. ("GameStop") at prices around $5 per share, Gill used multiple identities to promote GameStop on written and video social media.  He went by "Roaring Kitty" on YouTube – where cats and kittens are a favorite subject matter – and on Twitter and "DeepF***ingValue" on Reddit's WallStreetBets message board.  In order to disguise that the aim of his social-media campaign was simply to increase the worth of his GameStop shares by creating a demand for the stock, Gill took on the fake persona of an amateur, everyday fellow, who simply was looking out for the little guy.  He exaggerated and misrepresented the prospects of GameStop and made bold predictions about its future.

1.Indeed, in order to motivate amateur traders, Gill fashioned himself

as a kind of Robin Hood and characterized securities professionals as villains. Gill slyly targeted large hedge funds who had shorted GameStop stock as the evil, powerful big boys.  He incited a market frenzy by advocating revenge on the big hedge funds by buying GameStop shares to drive up the price and "squeeze" short sellers who would be forced to cover their short positions at greatly inflated prices.  Because of Gill's conduct, in a matter of days, the price of GameStop shares went up by more than 1,600% to a record $483 a share, causing huge losses for both short sellers and  those  who  purchased GameStop shares at artificially inflated prices.   Gill achieve his

objective; he made tens of millions of dollars on his original investment.  As Gill's mother is quoted as saying, "He always liked money."[1]

2.    Gill, however, is no amateur (and no Robin Hood).  For many years, he actively worked as a professional in the investment and financial industries. He holds extensive securities licenses and qualifications, including a securities principal and supervisory management license and a Charted Financial Analyst license.  Indeed, at the time Gill was inciting the market frenzy with his fake persona, he was licensed by MML as a registered representative (i.e., a securities broker), and he was employed by MassMutual as a "Financial Wellness Director."

3.    Gill's deceitful and manipulative conduct not only violated numerous industry regulations and rules, but also various securities laws by undermining the integrity of the market for GameStop shares.  He caused enormous losses not only to those who bought option contracts, but also to those who fell for Gill's act and bought GameStop stock during the market frenzy at greatly inflated prices.

4.    At the time Gill was engaging in this wrongful conduct, MML and MassMutual had legal and regulatory obligations to supervise Gill to prevent this very conduct.  They failed to do so even though Gill's conduct was continuing and highly public.

5.    Consequently, this action is brought to remedy Defendants' egregious conduct and somewhat restore the integrity of the securities market.

---

[1] Julia Ambra Verlaine and Gunjan Banerji, *Keith Gill Drove the GameStop Reddit Mania. He Talked to the Journal*, The Wall Street Journal, https://www.wsj.com/articles/keith-gill-drove-the-gamestop-reddit-mania-he-talked-to-the-journal-11611931696?mod=series_gamestopstockmarket (last accessed Feb. 14, 2021).

## II.     THE PARTIES

6.Plaintiff Douglas Rosenberg is a resident of the State of Washington. During the relevant period, he purchased option contracts and shorted   shares of GameStop. Plaintiff Douglas Rosenberg lost 1.2 Million dollars during January and February 2021 do to Gill's conspiracy to raise the price of GME Stock.

7.Keith Patrick Gill is a resident of the Commonwealth of Massachusetts and, on information and belief, resides in Brockton, Massachusetts. During the relevant period, Gill was associated with both MML, as a registered representative (a securities broker), and MassMutual, as a "Financial Wellness Director."

8.MML Investors Services, LLC is incorporated in Massachusetts and headquartered in Springfield, Massachusetts. MML is a subsidiary of MassMutual, and it is a broker-dealer registered with the Financial Industry Regulatory Authority, Inc. ("FINRA").

9.Massachusetts Mutual Life Insurance Company is incorporated in Massachusetts and headquartered in Springfield, Massachusetts. MassMutual is a financial services company that provides insurance, retirement, investment, and "financial wellness" products and services.

## III.     JURISDICTION AND VENUE

10.     11  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

11.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b).

12.     In connection with the conduct described herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

## IV.    FACTS

**A.    The Real Keith Gill.**

13.      For more than ten years, Gill has actively worked as a professional in the investment and financial industries.  He holds the following securities licenses and qualifications:

a.   Investment advisor license (Series 65) since 2/22/2012;

b.   Commodity futures and options broker license (Series 3) since 1/10/2013;

c.   Securities broker license (Series 7) since 7/5/2016;

d.   Securities broker license (Series 65) since 7/29/2016;

e.   Securities principal and supervisory management license (Series 24) since 4/6/2017; and

f.   Chartered Financial Analyst (considered the highest level of legal and regulatory recognition of finance-related qualifications).

14.      Gill's various licenses permit him to sell and trade in a variety of securities, including options.  Additionally, his Series 24 license qualifies him to be a principal of a broker dealer and to supervise other brokers to ensure their compliance with applicable securities laws, regulations, and rules. Unquestionably, Gill holds extensive licenses in the securities industry, understands sophisticated aspect of the securities industry, including the markets, and has extensive knowledge of the securities laws and regulations.

15.      Based on public records and information, Gill further has extensive experience working as a securities professional:

a.   From July 2010 through March 2019, Gill was President of Debris Publishing, Inc. ("Debris"), which provided financial software to research and portfolio management companies and persons.  Debris touted a product called "Quuve" that supposedly was "the world's first fully customizable web-based investment management ecosystem for professional investors" and "empowers investors to tailor institutional-level financial tools in ways that

accommodate their idiosyncratic investment style."

b. From April 2012 through December 2014, Gill was licensed with Lucidia, LLC, a registered investment advisor firm, as a registered investment advisor.

c. From April 2016 through April 2017, Gill was an "Investment Operations Analyst" for LexShares, Inc., the business of which included financing commercial litigation.

d. From July 2016 through April 2017, Gill was registered with FINRA-member firm Wealthforce Securities, LLC as, on information and belief, a registered representative (a securities broker).

e. From March 2019 through January 28, 2021, Gill was employed by MassMutual as a "Financial Wellness Director."

f. From April 2019 through January 28, 2021, Gill also was registered as a registered representative (a securities broker) with MML.

16.    As a licensed securities professional, including the period he was licensed by and associated with MML and MassMutual, Gill was obligated to follow various securities laws, Securities and Exchange Commission ("SEC") rules and regulations, and FINRA rules. For example, the FINRA rules applicable to Gill include:

a. Rule 2010 requires Gill to conduct his business in observance of "high standards of commercial honor and just and equitable principles of trade."

b. Rule 2020 prohibits Gill from inducing "the purchase or sale of[] any security by means of manipulative, deceptive or other fraudulent device or contrivance."

c. Rule 2111 requires Gill only to recommend a security that is suitable for the recipient of the communication.

d. Rule 2210 requires that Gill's communications with the public, *including on social media*, (i) are based on principles of fair dealing and good faith, must be fair and balanced, and must provide a sound basis for evaluating the facts in regard to any particular security or type of security, industry, or service, (ii) not omit any material fact or qualification if the omission, in light of the context of the material presented, would cause the communication to be misleading, (iii) not contain any false, exaggerated, unwarranted, promissory, or misleading statement or claim in any communication, (iv) be clear and not misleading within the context in which they are made, and that they provide balanced treatment of risks and potential benefits, (v) must provide details and

explanations appropriate to the audience to which the communication is directed, (vi) must not bury material information in footnotes, and (vii) must not include a prediction or forecast of future performance or make exaggerated or unwarranted claims or forecasts.

e. Rule 3210 prohibits Gill from having accounts with brokerage firms other than the firm with whom he is licensed without the permission of the licensing firm.

**B.      MML's and MassMutual's Obligations To Supervise.**

17.      MML and MassMutual had the obligation to supervise Gill's activities concerning securities and the securities markets.

18.      For example, during the period that Gill was licensed with MML and employed by MassMutual, MML and MassMutual had the duty, under SEC regulations, FINRA rules, and pertinent law, to supervise Gill concerning his compliance with applicable securities laws and regulations and with applicable FINRA rules, including those listed above.

19.      Moreover, MML's and MassMutual's obligation to supervise Gill extends to his use of social media and his compliance with the laws, regulations, and rules that apply to licensed securities professionals, including those laws, rules, and regulations governing communications to the public regarding securities.

**C.      Gill's Use of Social Media Undermines the Integrity of, and Manipulates, the Market for GameStop Shares.**

20.      To orchestrate the manipulation of GameStop stock, Gill created a far-reaching and wildly successful social media campaign in the year leading up to the surge in GameStop shares.

21.      The seeds of an idea Gill proliferated to his now hundreds of thousands of followers—namely, to exponentially drive up the price of GameStop shares—would ultimately germinate into a lucrative windfall for

himself, at the expense of Plaintiff and the   Members.

22.     Indeed, Gill has been rightfully characterized as "[t]he investor who helped direct the world's attention to GameStop, leading a horde of online followers in a bizarre market rally that made and lost fortunes from one day to the next," and "the force behind the quadruple-digit gains in shares of the videogame retailer GameStop[.]"[2]

23.     It was Gill's "advocacy" that, according to many online investors, "helped turn them into a force powerful enough to cause big losses for established hedge funds and, for the moment, turn the investing world upside down."[3]

24.     Mr. Gill's online persona—he goes by "Roaring Kitty" on YouTube and Twitter and "DeepF***ingValue" ("DFV") on Reddit—has "drawn tens of thousands of fans and copycats who share screenshots of their own brokerage accounts."[4]

25.     Gill's legion of fans were either unaware or unconcerned that they were collectively acting to manipulate the price of GameStop shares.

26.     Gill's advocacy took many forms, including through content generated on the social media websites Reddit, YouTube, and Twitter.

27.     Gill's conduct violated numerous securities laws and industry regulations and rules, including those sets forth in this Action Complaint.

*Gill Incited Reddit Users on the "WallStreetBets" Forum.*

28.     The run on GameStop shares was, in large part, a direct result of Gill's influence in an internet forum hosted on the website "Reddit" known as "WallStreetBets" ("WSB").

29.     WSB has been characterized as a place "where like-minded people could gather to exclusively discuss the type of trades that would make

a financial adviser's skin crawl.  Their

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

approach would be more akin to gambling than spreadsheet analysis, and their motto something along the lines of 'YOLO,' short for "you only live once."[5]

30.     Indeed, "[t]hat ethos on WallStreetBets not only encourages risky trades, but also trading the entirety of your net worth or portfolio in a single risky trade."[6]

31.     Despite its cavalier approach toward investing, the WSB community has an undeniable influence on the financial markets—as the meteoric rise in the price of GameStop shares illustrates.

32.     "These guys can move markets," said Jeremy Blackburn, an assistant professor of computer science at Binghamton University who studies extremist communities on the web. "That's a *huge* deal."[7]

33.     Currently, the WSB forum has approximately 9 million followers (self-described as "Degenerates").[8]

34.     By catering to the WSB community, Gill was able to achieve his objectives to the tune of, on paper, approximately $48 million.

35.     Approximately one year ago, Gill first began posting his positions in GameStop under his "DeepF***kingValue" ("DFV") moniker. Specifically, he shared a screenshot of his E*trade account, depicting how many shares and option contracts he had purchased, the value of

---

[5] *Id.*

[6] Jon Sarlin, *Inside the Reddit army that's rushing Wall Street*, CNN Business, https://www.cnn.com/2021/01/29/investing/wallstreetbets-reddit-culture/index.html (last accessed Feb. 14, 2021).

[7] *Id.*

[8] https://www.reddit.com/r/wallstreetbets/ (last accessed Feb. 14, 2021).

his holdings, and when his option contracts were set to expire.[9] In effect, Gill was opening his playbook, so to speak, for all to emulate his position.

36.     Over the next several months, Gill would post a "month-end update" revealing how the value of his positions fluctuated during the preceding period.  Gill posted more frequently as the price of GameStop shares increased.

37.     While initially met with skepticism, Gill's posts garnered a cult-like following, and he eventually was ordained a messianic figure within the WSB community.

38.     For example, in a December 23, 2020, post, when the value of GameStop was roughly $20 a share, Gill represented that his initial GameStop investment stood at  approximately 3.7 million dollars:



39.     As contemplated by Gill, various WSB users said that it was Gill's "updates" that caused them to purchase shares of their own:



[9] https://www.reddit.com/r/wallstreetbets/comments/d1g7x0/hey_burry_thanks_a_lot_for_jacking_up_my_cost/ (last accessed Feb. 14, 2021).



42-AX 1 month ago
This dude inspired me to buy 9000 GME shares
6   Reply   Share   Report   Save

40.     Over the next several weeks, Gill continued to galvanize the

WSB community.  In a January 5, 2021, post detailing the value of his

holdings, WSB users continued to say with increasing frequency that Gill was

the catalyst for their purchase of GameStop shares:[10]



ridethelightning469 1 month ago
Bought 200 more GME shares on a whim today. My hunch was on the mark after seeing DFV
loading up on more shares
All hail DFV & his unbelievable position. You dropped this 👑
17   Reply   Share   Report   Save
4 more replies

mwilkens 1 month ago
I'm about to invest my life savings into GME shares this week. No way this goes wrong right?
331   Reply   Share   Report   Save

[deleted] 1 month ago
He's still in it. So am I. 157,199 shares average cost of $20.28
636   Reply   Share   Report   Save

41.     Gill's posts continued and, consequently, the mania for

GameStop shares reached a fever pitch.  "As the GameStop frenzy peaked . . .

hundreds  of  thousands  of  new  investors  downloaded  applications  like

Robinhood to join the action, according to Apptopia Inc."[11]

42.     The value of Gill's holdings appear to have crested on

January 27, 2021.  At this time, Gill represented to the WSB community that,

on  paper,  the  value  of  his  holdings  was  worth  approximately  $48  million

dollars:

[10] https://www.reddit.com/r/wallstreetbets/comments/kr7s30/gme_yolo_update_jan_5_2021/ (last accessed Feb. 14, 2021).

[11] *Id.*



43.     Gill's January 27, 2021, post, which was "liked" or "upvoted"

approximately 200,000 times, is replete with WSB users' recounting how Gill

encouraged them not only to buy GameStop shares, but further inspired them

to hold their shares so as to manipulate the market into ensuring a loss for

those holding short positions:



*Gill Actively Recruited Traders on YouTube.*

44.　　On July 13, 2020, Gill began posting videos on YouTube under the moniker "Roaring Kitty."  Gill's initial video stated that his "channel revolves around educational live streams where I share my daily routine of tracking stocks and performing investment research."[12]

45.　　In his videos, Gill adorns a headband and cat-themed clothing items. Despite his disarming appearance, Gill's videos reveal that he was a highly sophisticated and calculated investor—consistent with his numerous financial certifications. For example, in a nearly two- hour YouTube video dated July 13, 2020, Gill educates his viewers with an array of financial spreadsheets containing hundreds of metrics and financial calculations Gill purportedly relies upon prior to making an investment.[13]

46.　　Though Gill claimed to have been focused on appraising stocks generally, he had one target in his crosshairs: GameStop.  Only two weeks after starting his channel, Gill posted an approximately hour-long video on July 27, 2020, titled "100%+ short interest in GameStop stock (GME) – fundamental & technical deep value analysis."[14]  In this video, Gill pushed investment in GameStop on his viewers and directed their attention to the possibility that GameStop shares were ripe for a "short squeeze."

47.　　Over the ensuing months, Gill began uploading videos concerning GameStop  with increasing frequency.  Of the 80 videos uploaded to Gill's YouTube channel, at least 56 concerned GameStop specifically.

---

[12] *Roaring Kitty – Live Stream Launch*, https://www.youtube.com/watch?v=UNqqeXJxaf8 (last accessed Feb. 14, 2021).

[13] *Roaring Kitty – Tools Part 3 of 3*, https://www.youtube.com/watch?v=7wjWnMcdnlQ (last accessed Feb. 14, 2021).

[14] *100%+ short interest in GameStop stock (GME) – fundamental & technical deep value analysis*, https://www.youtube.com/watch?v=GZTr1-Gp74U (last accessed Feb. 14, 2021).

48.     Tellingly, a significant number of Gill's videos over this period targeted institutional hedge funds by specifically referencing a "short squeeze"—a situation where those who have taken a short position on the price of a stock are obligated to purchase the stock on the open market, facilitating a scramble to purchase shares, resulting in a sharp upward pressure on the stock's price[15]:

- "5 reasons GameStop stock (GME) is a roach not a cigar butt a la Warren Buffett & could short squeeze" (August 4, 2020)

- "The Big Short SQUEEZE from $5 to $50?  Could GameStop stock (GME) explode higher??  Value investing!" (August 21, 2020)

- "GameStop Q2 earnings 9/9 will Ryan Cohen BUY MORE GME STOCK before then?  Value investing live stream" (September 2, 2020)

- "GameStop up 136% since 7/31.  Has the short squeeze in GME stock kicked off?!" (September 21, 2020)

- "Ryan Cohen ADDS to his GameStop stake & wants to take on AMAZON!  Is a GME stock short squeeze afoot?" (September 23, 2020)

- "GameStop holds $10 level to start week.  Do GME stock longs now control the short squeeze narrative?" (September 30, 2020)

- "GameStop pops 50% to above 14.  Has the GME stock short squeeze kicked off?!" (October 9, 2020)

- "GameStop ends week over $9 for 3rd week in a row.  Could GME stock short squeeze off this higher base?" (October 5, 2020)

- "GameStop shorts rise to a stunning 141% of the float, raising the odds of a GME stock short squeeze" (October 14, 2020)

- "GameStop ends week @ $15!  $1 billion market cap in sight.  Could that cause a GME stock short squeeze?" (October 26, 2020)

---

[15] Cory Mitchell, *Short Squeeze*, Investopedia, https://www.investopedia.com/terms/s/shortsqueeze.asp (last accessed Feb. 14, 2021).

- GameStop Maguire - r/wallstreetbets, GME stock, Ryan Cohen, Michael Burry, Big Short, short squeeze (November 26, 2020)

- GME stock tops 19, highest intraday price in ~3yrs!  Could Q3 run-up trigger GameStop short squeeze? (December 2, 2020)

- GME stock target raised from 10 to 19 by Telsey!  GameStop holds 16 range.  Short squeeze potential?! (December 4, 2020)

- GameStop rockets thru 30 on major volume!  Has GME stock short squeeze started?!  ALL HAIL RYAN COHEN! (January 13, 2021)

- GameStop cracks 45.  Could news of Ryan Cohen's strategy trigger a GME short squeeze? (January 19, 2021)

49.     On January 22, 2021, the volume of GameStop shares traded reached an astonishing 196 million – the highest daily average in the history of the company.

50.     That same day, Gill uploaded a video "thanking" his viewers, titled, "GameStop closes at 65, up 1500% since July 2020.  What a ride.  Cheers, and thank you to everyone!"[16] Gill has, at the time of filing this action Complaint, ceased uploading videos to his YouTube channel.

51.     As of February 14, 2021, Gill has approximately 415,000 subscribers to his YouTube channel.

### Gill Actively Recruited Traders on Twitter.

52.     Gill also maintained an active Twitter account to further propagate a run on GameStop shares.

53.     From July 18, 2020, to the present, Gill tweeted 707 times.  Approximately *all* of Gill's tweets concerned GameStop, and accordingly tagged "$GME" (i.e., GameStop's stock ticker symbol) to draw attention further to his tweets.

[16] https://www.youtube.com/watch?v=bmwx78rF1xo (last accessed Feb. 14, 2021).

54.      Gill's tweets during this period were ostensibly calculated to aggressively push his "bull"[17] thesis. In particular, Gill's tweets fostered unfounded optimism that the price of GameStop was poised to dramatically increase, or directed Twitter users to his YouTube channel, where he advocated the same:



---

[17] A "bull" is "an investor who thinks the market, a specific security, or an industry is poised to rise. Investors who adopt a bull approach purchase securities under the assumption that they can sell them later at a higher price. Bulls are optimistic investors who are attempting to profit from the upward movement of stocks, with certain strategies suited to that theory." James Chen, *Bull*, Investopedia, https://www.investopedia.com/terms/b/bull.asp (last accessed Feb. 14, 2021).



55.     At the same time, Gill constantly targeted those taking a "short" position against GameStop (i.e., those who believed the price of GameStop shares were likely to decline in value or otherwise fail to appreciate), especially institutional hedge funds.  In particular, he questioned the ability of short sellers to cover their positions, improperly speculating that those investors were at risk of significant financial losses:



56.     Moreover, Gill explicitly alluded to a "short squeeze" of GameStop shares:



57.     As of February 14, 2021, Gill has approximately 158,300 Twitter followers.

**D.     Plaintiff's GameStop Options Transactions.**

58.     Unaware of Gill's deceitful social media communications, Plaintiff used approximately $200,000 in collateral to sell call option contracts for GameStop shares when the stock was below $100.

59. Plaintiff sold call option contracts (representing 2,000 shares) at a strike price of $100 on January 26, 2021 with expiration date of January 19,2021, while Gill's manipulative social media conduct drove the market for GameStop shares into an unjustified frenzy (above $400).

60. Plaintiff made these transactions relying on the integrity of the market for GameStop shares.

61. Because of the market frenzy caused by Gill's manipulative conduct and MML's and MassMutual's failure to supervise, Plaintiff was forced to "cover" the options contracts by purchasing back offsetting GameStop options contracts representing Gamestop shares at unwarrantedly and unprecedented inflated prices of $300 and $315 unmoored to the true value of GameStop shares, causing Plaintiff to incur substantial loses.

## V.    ALLEGATIONS

62. Plaintiff brings this lawsuit as a  action on behalf of himself and all other  Members similarly situated under Rules 23(a) and (b)(2), (b)(3), or (c)(4) of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those rules.

63. Under Rules 23(a); (b)(2); and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff, by this action, seeks to certify and maintain it as a action on behalf of himself and a Nationwide , as defined below, or, in the alternative, for statewide State es, as defined below.

64. Plaintiffs seek a Nationwide  (or State es) for damages under Rule 23(b)(3) of the Federal Rules of Civil Procedure for all those individuals and entities who during the period of January 22, 2021 through February 2,

2021 (the " Period"), (i) either (a) purchased GameStop shares (b) purchased

back an option on GameStop shares, (c) had an option

for GameStop shares called away from them, (d) purchased GameStop shares to cover a short position, or (e) had their options expire, and (ii) suffered losses as a result of any transactions identified by clauses (a)-(e).

65.     Excluded from the proposed Nationwide are: (1) Defendants and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's immediate family and the Judge's staff; and (3) governmental entities. Plaintiff reserves the right to amend the Nationwide definition if discovery and further investigation reveal that the Nationwide should be expanded, divided into subes, or modified in any other way.

<u>Numerosity</u>

66.     Although the exact number of Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough so that the joinder of parties plaintiff is impracticable.

67.     On information and belief, the number of options traded during the period numbered well into hundreds of thousands per day.[18]

68.     The disposition of the claims of these Members in a single action will provide substantial benefits to all parties and to the Court.

<u>Typicality</u>

69.     Plaintiff's claims are typical of the claims of Members in that Plaintiff, like all Members, was injured and suffered damages from the manipulation of GameStop stock caused by, or resulting from, Defendants' misconduct. Furthermore, the factual bases of

---

[18] Andrew Bary, *GameStop Bears are Turning to the Options Market*, Barron's,

https://www.barrons.com/articles/gamestop-bears-are-turning-to-the-options-market-51611867452 (last accessed Feb. 14, 2021).

a.  Whether Gill violated 15 U.S.C. §78i(a) through his transactions in and
    deceptive promotion of GameStop stock, which was intentionally designed to
    induce other persons, particularly users of Reddit's "WallStreetBets" forum
    and followers of Gill's YouTube channel, to purchase additional shares of
    GameStop.

b.  Whether Plaintiff have a private right of action under 15 U.S.C. §78i(f)
    against Gill

c.  Whether MML and MassMutual directly or indirectly facilitated and enabled
    Gill's manipulative activity and violations of 15 U.S.C. §78i(a).

d. Whether Gill: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of GameStop's options and in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.

e. Whether Gill violated Section 9 and Section 10(b) of the Securities Exchange Act and Rule 10b-5 by his acts or omissions as alleged in this  Action Complaint.

f. Whether by virtue of MML's and MassMutual's failure to abide by its supervision obligations and responsibilities, MML and MassMutual are liable under Section 20(a) of the Securities Exchange Act as a "control person" of Gill, the primary violator.

g. Whether Plaintiff are entitled at common law to the damages they sustained as a result of MML's and MassMutual's failure to adequately supervise Gill's manipulative activities, as well as their costs and attorneys' fees.

<u>Superiority</u>

70.     Plaintiff have all suffered and will continue to suffer harm and damages as a result of the manipulation of GameStop stock caused by, or resulting from, Defendants' misconduct. A  action is superior to other available methods for the fair and efficient adjudication of this controversy.

71.      Absent a  action, most  Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the size of the individual   Members' claims (compared to the cost of litigation), it is likely that only a few  Members could afford to seek legal redress for Defendants' misconduct.

72.       treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that treatment will conserve the resources of the courts and the litigants, and it will promote consistency and efficiency of adjudication.

## VI.    CLAIMS

### A.    COUNT I: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(2)

73.    Plaintiff incorporates the allegations in paragraphs 1-77 as if restated here.

74.    The Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78i(a)(2), prohibits persons, directly or indirectly, from effecting, alone or with one or more other persons, a series of securities transactions that create actual or apparent active trading in the security, or that raise or depress the price of that security, for the purpose of inducing the purchase or sale of the security by others.

75.      Gill violated §78i(a)(2) through his transactions in, and deceptive promotion of, GameStop stock, which were intentionally designed to induce other persons, particularly users of Reddit's "WallStreetBets" forum and followers of Gill's YouTube channel, to purchase additional shares of GameStop.

76.      Gill's direct and indirect actions in trading and promoting GameStop shares were designed to manipulate an increase in the price of the stock by deceptively using a "Robin Hood"-like persona to both induce "long"

traders to purchase the stock and force "short" investors to also purchase GameStop shares to cover their short positions.

77.     Gill's conduct thus had a compounding effect of inducing or forcing other traders to purchase GameStop shares in a distorted and irrational manner.

78.     Gill's conduct, directly or indirectly, caused enormous volatility in the trading of GameStop shares.

79.     Gill's conduct, directly or indirectly, caused GameStop's market capitalization to spike sharply over the course of days before, predictably, it cratered.

80.     Other traders and national news publications have confirmed that Gill's conduct incited a concerted effort among himself and unaffiliated traders to manipulate and drive up the price of GameStop shares solely to "squeeze" short sellers and achieve a nominal price for the shares that was entirely untethered to any underlying fundamental value.

81.     Gill accomplished all of this while maintaining his status as a FINRA-regulated broker affiliated with MML MassMutual and ignoring the fact he was violating numerous industry and securities rules and regulations.

82.     By using a false identity, Gill failed to disclose his position as a regulated securities broker and industry insider and was able to mislead his media audience with his "every man" act and vilify securities industry professionals to incite his media audience to purchase GameStop shares so he himself could reap large profits.

83.     Gill's transactions in GameStop securities and associated conduct in actively touting strategies for trading the stock, directly or indirectly induced the sale or purchase of GameStop securities by others.

84.     Gill intended to induce trading in GameStop securities.

85.     Gill sought to increase the value of his interest in GameStop stock.

86.     Plaintiff were participants in the market for GameStop securities and relied on the proper, fair, and non-manipulative functioning of that market.

87.     Plaintiff were forced to close or cover their positions in GameStop securities at a massive loss as a result of Gill's conduct, while others purchased at artificially inflated prices in reliance on what was an unlawfully manipulated market.

88.     Plaintiff purchase or sale prices were unlawfully affected by Gill's conduct.

89.     Plaintiff have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff purchased or sold GameStop securities at a price that was affected by Gill's conduct.

90.     Plaintiff are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

**B.     COUNT II: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(3)**

91.     Plaintiff incorporates the allegations in paragraphs 1-95 as if restated here.

92.     Gill is a registered and licensed broker.

93.     Gill, through his conduct described above, induced others to purchase or sell GameStop securities.

94.     Gill affected that inducement through the circulation or dissemination in the ordinary course of information about GameStop's stock and its likely price trajectory for the purpose of affecting the price of the stock.

95.     Gill routinely posted information about GameStop stock performance on his various social media accounts in a direct or indirect

39

attempt to induce coordinated market activity.

96.     Gill's communications and representations about the likely trajectory of GameStop securities' prices were based on the market operations of traders, including himself and his social media followers, which were conducted for the purpose of acting collectively to raise the price of GameStop's securities artificially.

97.     Gill assumed a deceptive "Robin Hood"-like persona on social media to portray himself as an outsider trying to take on several large hedge funds. In reality, he was a sophisticated and credentialed securities broker seeking to enrich himself.

98.     As a result of Gill's conduct and Plaintiff and the Members' reliance on what ultimately was an unlawfully manipulated market, Plaintiff either were forced to close or cover their positions in GameStop securities at a massive loss or purchase GameStop shares at artificially inflated prices.

99.     Plaintiff and the Members' purchase or sale prices were unlawfully affected by Gill's conduct.

100.    Plaintiff have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff purchased or sold GameStop securities at a price that was affected by Gill's conduct.

101.    Plaintiff are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

## C.     COUNT III: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(4)

102.    Plaintiff incorporates the allegations in paragraphs 1-106 as if restated here.

103.    Gill is a registered and licensed broker.

104.    Gill engaged in numerous communications over social media

and other platforms designed to influence the price of GameStop securities.

105.     Gill intended to induce coordinated action among himself and other traders to manipulate the price of GameStop securities.

106.   Gill intended to induce the purchase or sale of GameStop securities.

107.     Gill induced the purchase or sale of GameStop securities through his social media communications, which were false and misleading as to material facts, including failing to disclose that Gill was a professional, registered, licensed broker.

108.     Gill knew or had reasonable grounds to believe his communications were false or misleading as to material facts.

109.     As a licensed and registered broker, Gill is bound to adhere to the rules and regulations of FINRA, which are approved and adopted by the SEC.

110.     Gill's communications regarding GameStop stock were false or misleading for the additional reason that, in making them, Gill failed to adhere to the rigorous standards required by FINRA, including its standards of commercial honor.

111.     Gill assumed a deceptive "Robin Hood"-like persona on social media to portray himself as an outsider trying to take on several large hedge funds.  In reality, he was a sophisticated and credentialed securities broker seeking to enrich himself.

112.     Plaintiff and the  Members' purchase or sale prices for GameStop securities were unlawfully affected by Gill's conduct.

113.   Plaintiff have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff purchased or sold GameStop securities at a price that was

affected by Gill's conduct.

114.     Plaintiff are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

**D.     COUNT III: MML AND MASSMUTUAL'S VIOLATION OF 15 U.S.C. §78i(a)**

115.   Plaintiff incorporates the allegations in paragraphs 1-119 as if restated here.

116.   Defendant MML is a registered broker-dealer subject to regulation by FINRA.

117.     Defendant MML is obligated to adhere to the rules and regulations promulgated by the SEC and by FINRA in addition to the Federal securities laws.

118.     At all relevant times, Gill was associated with MML and MassMutual as an employee, associated person, and registered broker.

119.   MML and MassMutual had an obligation to supervise and oversee Gill.

120.     For example, FINRA Rule 3110 required MML to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules."

121.     MML and MassMutual were required to implement systems to monitor Gill's securities-related communications, including his social media communications.

122.     MML and MassMutual failed to adequately supervise Gill by, among other things, allowing him to engage in stock touting (actively encouraging others to purchase a security), pooling (coordinating securities purchases with other market participants), and other manipulative activities.

123.     MML and MassMutual failed to adequately supervise Gill by allowing him to engage in extensive social media communications and other activities designed to manipulate and artificially inflate the market for

GameStop securities.

124.     By failing to adhere to its own supervision obligations, MML and MassMutual directly or indirectly facilitated and enabled Gill's manipulative activity and violations of 15

U.S.C. §78i(a).

125.     By failing to adhere to its own supervision obligation, MML and MassMutual willfully participated in Gill's manipulative activity and violations of 15 U.S.C. §78i(a).

126.     As a result, MML and MassMutual are liable for Gill's unlawful and manipulative activity under 15 U.S.C. §78i(f).

127.     Plaintiff and the   Members' purchase or sale prices for GameStop securities were unlawfully affected by Gill's conduct.

128.    Plaintiff have a private right of action under 15 U.S.C. §78i(f) against Gill because he willfully participated in transactions that violated §78i(a) as described above and because Plaintiff purchased or sold GameStop securities at a price that was affected by Gill's conduct.

129.     Plaintiff are entitled to the damages they sustained as a result of MML and MassMutual's activity, as well as their costs and attorneys' fees.

**E.      COUNT IV: GILL'S VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 (17 C.F.R. §240.10b-5)**

130.    Plaintiff incorporates the allegations in paragraphs 1-134 as if restated here.

131.     During the   Period, Gill disseminated or approved the materially false and misleading statements specified above, which he knew were misleading, or disregarded whether they were misleading, because the statements contained material misrepresentations and failed to disclose

material facts necessary in order to make the statements not misleading.

       132.     Gill: (a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material fact or omitted to state a material fact

necessary to make the statements, in

the light of the circumstances in which they were made, not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiff and the and other purchasers of GameStop's stock during the Period.

133.    Gill induced the purchase or sale of GameStop securities through his social media communications, which were false and misleading, including his representations about the prospects of GameStop, his fake persona, and his staged communications.

134.    Gill knew or had reason to believe that his communications were false or misleading.

135.    As a licensed and registered broker, Gill is bound to adhere to the rules and regulations of FINRA, which are approved and adopted by the SEC through its regulatory authority.

136.    Gill's communications regarding GameStop stock were false or misleading for the additional reason that, in making them, Gill failed to adhere to the rigorous standards required by FINRA including its standards of commercial honor.

137.    Plaintiff have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for GameStop's securities. Plaintiff would not have purchased GameStop's securities at the prices they paid, or at all, had they known that the market prices were falsely and artificially inflated by Gill's misleading statements.

138.    Plaintiff are entitled to the damages they sustained as a result of Gill's manipulative activity, as well as their costs and attorneys' fees.

**F.    COUNT V: MML AND MASSMUTUAL'S VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT**

139.     Plaintiff incorporates the allegations in paragraphs 1-143 as if restated here.

140. During the Period, Gill, as an employee, associated person, and licensed and registered broker of MML and MassMutual, directly or indirectly participated in MML's and MassMutual's business affairs.

141. As an employee, associated person, and a licensed and registered broker of MML, which is a registered broker-dealer subject to regulation by FINRA, and of MassMutual, Gill had a duty to disseminate truthful and accurate information to the market on behalf of MML and MassMutual, and MML and MassMutual had an obligation to adequately supervise Gill.

142. In particular, Gill had direct and unfettered access to the market as a registered broker and a representative of MML and MassMutual, and MML and MassMutual are therefore, presumed to have had the power or control or to influence the particular transactions giving rise to the securities violations alleged here, and they were obligated to exercise the same.

143. For example, FINRA Rule 3110 required MML to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules."

144. Defendants MML and MassMutual was required to implement systems to monitor Gill's securities-related communications, including his social media communications.

145. MML and MassMutual failed to adequately supervise Gill by, among other things, allowing him to engage in stock touting, pooling, and other manipulative activities.

146. MML and MassMutual failed to supervise Gill by allowing

him to engage in extensive social media communications and other activities designed to manipulate and artificially inflate the market for GameStop securities.

147.    As set forth above, Gill violated Section 9 and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by his acts or omissions as alleged in this  Action

Complaint. By virtue of MML and MassMutual's failure to abide by its supervision obligations and responsibilities, MML and MassMutual are liable under Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), as a "control person" of Gill, the primary violator.

148. Plaintiff are entitled to the recover damages from MML and MassMutual that they sustained as a result of Gill's manipulative activities and MML and MassMutual's control-person liability, as well as their costs and attorney's fees.

## G. COUNT VI: MML AND MASSMUTUAL'S COMMON-LAW FAILURE TO SUPERVISE

149. Plaintiff incorporates the allegations in paragraphs 1-148 as if restated here.

150. MML, a registered broker-dealer subject to regulation by FINRA, and MassMutual were required to supervise and oversee the activities of Gill as discussed in detail above.

151. For example, FINRA Rule 3110 required MML to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules."

152. MML and MassMutual were required to implement systems to monitor Gill's securities-related communications, including his social media communications.

153. MML and MassMutual failed to adequately supervise Gill by, among other things, allowing him to engage in stock touting, pooling, and other manipulative activities.

154. MML and MassMutual failed to adequately supervise Gill by allowing him to engage in extensive social media communications and other

activities designed to manipulate and artificially inflate the market for GameStop securities.

155.     MML and MassMutual had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts, where he made material misrepresentations or omissions about the value of GameStop's securities in order to artificially inflate prices.

156.     As a result, Plaintiff were harmed by initiating both "long" and "short" positions based on MML's and MassMutual's failure to adequately supervise Gill's deceptive, coordinated market manipulation.

157.     Plaintiff are entitled to the damages that they sustained as a result of MML and MassMutual's failure to adequately supervise Gill's manipulative activities, as well as their costs and attorneys' fees.

158.     Plaintiff incorporates Exhibit 2 The Consent Order as if contained within.

159.     Within Exhibit 2 MMLIS consents to an Order that forbids from further violation of   Massachusetts General Law ch 11A chapter 204(a)(2)(j)

160.     Mass Mutual paid a 4.75 Million dollar fine for their activity and their employees activity in GME

## Massachusetts fines MassM $4.75 mln in 'Roaring Kitty

By **Nate Raymond**

September 16, 2021 10:33 AM PDT · Updated 2 years ago

161.

162.     Given the large fine paid by Mass Mutual , this is a tacit admission of guilt ofi violation of Mass Civil Statues

163. Mass Mutuals actions in employing Gill and facilitating his trading and postings constitutes aiding and abetting SEC Act pursuant to 1) and (3) of Section 21(d) of [the Exchange Act]

164. Although there is no private cause of action, for Aiding and abetting of violations of the SEC Act these violation constitutes per se violations or RCW 19.86.093 and 93A-aa

163 .Pursuant to RCW 19.86.093 violations of a civil statute constitute violations of RCW 19.86.093.

164 Violations of RCW 19.86.093 are per se violations of RCW19.86.020 (Washington State Law) RCW 19.86.020



**COUNT VII VIOLATION OF Washington State Law RCW 19.86.093 and 19.86.020**
165.    Plaintiff incorporates the allegations in paragraphs 1-164 as if restated here.

**COUNT VIII  Gill -  Conspiracy to Violate  Massachusetts  General Law 93A-11**
166.    Plaintiff incorporates the allegations in paragraphs 1-164 as if restated here.
167.    Violations of State Statutes constitute a

**COUNT IX Gill -  Conspiracy to Violate  Massachusetts  General Law 93A-11**
168.    Plaintiff incorporates the allegations in paragraphs 1-164 as if restated here.

169  Plaintiff incorporates the allegations in paragraphs 1-164 as if restated here.

**COUNT IIX Against Mass Mutual  and MML – Tortuous AIDING AND Abetting in GILLS  SCHEME**

**170. Plaintiff incorporates Exhibit 3 as if  contained herein.**
**171.** Plaintiff incorporates the allegations in paragraphs 1-168as if restated here.

**172. Gil conspired with fellow posters to fix the price of GME Stock and options**
1.

.                    **COUNT IIIX Against GIL – Violation of Section 1 of the Sherman act**
.

## VII.    DEMAND FOR JUDGMENT

2.     WHEREFORE, the plaintiff, on behalf of himself and the proposed ,

respectfully demands that this Court:

3.    a. Declare that Defendant's conduct resulted in a tolling of the statute of limitations due to

historically unprecedented nature of Defendants scheme to marshall Millions of members of

Reddit to allow him to cause a Stock squeeze

4.

    a.  Enter judgment against the defendants and in favor of the plaintiff and the
        ;

    b.  Award the  compensatory and punitive damages against all defendants,
        jointly and severally, in an amount to be determined at trial, including pre-
        and post-judgment interest thereon;

    c.  Award the plaintiff a costs of suit, including reasonable attorneys' fees
        as provided by law; and

    d.  Award such further and additional relief as the case may require and the Court
        may deem just and proper under the circumstances.

. Award the Plaintiff treble   Damages pursuant to   Chapter 93A section 11

. Award the Plaintiff Attorney fees and costs to Title XV Chapter 93A section 11

Award the Plaintiff actual damages   pursuant to RCW 19.86.090

Award the Plaintiff damages treble damages  pursuant to RCW 19.86.090
Award the Plaintiff Attorney fees and costs    pursuant to RCW 19.86.090
Award the Plaintif treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C.S. § 15,
Award the Plaintiff Attorney fees and costs pursuant to Section 4 of the Clayton Act, 15 U.S.C.S. §
15,

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the plaintiff, demands a Jury trial

Pro SE

Douglas Rosenberg

8/29/2023