UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DOUGLAS ROSENBERG,                                    :

                      Plaintiff,          :   Civil Action
                                        No. 23-10441-FDS

        v.                                      :

KEITH PATRICK GILL, MML INVESTORS  :
SERVICES, LLC, AND MASSACHUSETTS
MUTUAL LIFE INSURANCE CO.,              :

                   Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MASSMUTUAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT (ECF NO. 38)

James R. Carroll
Vasundhara Prasad
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
vasundhara.prasad@skadden.com

Counsel for Defendants
Massachusetts Mutual Life Insurance Co.
and MML Investors Services, LLC

Dated: October 23, 2023

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

A.    Mr. Gill Was Never Employed By The
MassMutual Defendants As A Financial Advisor ............................................................ 3

B.    The Complaint Does Not Allege That The MassMutual Defendants
Were Aware Of Mr. Gill's Social Media Statements Until Late-January 2021 ................ 4

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

I.      PLAINTIFF DOES NOT HAVE A PRIVATE RIGHT OF ACTION TO PURSUE
CLAIMS BASED ON A PURPORTED VIOLATION OF A FINRA RULE ...................... 7

II.     PLAINTIFF FAILS TO STATE A CLAIM
AGAINST THE MASSMUTU AL DEFENDANTS FOR
VIOLATION OF 15 U.S.C. § 78i(a) ("SECTION 9(a)") (COUNT III) ............................ 8

    A.    The Complaint Contains No Factual Allegations
About The MassMutual Defendants' "Manipulative Conduct" ............................ 10

    B.    Plaintiff Does Not Adequately Plead The Requisite State of Mind ...................... 11

III.    PLAINTIFF FAILS TO STATE A CLAIM
AGAINST THE MASSMUTUAL DEFENDANTS FOR
VIOLATION OF 15 U.S.C. § 78t(a) ("SECTION 20(a)") (COUNT V) ......................... 13

    A.    The Complaint Does Not Allege A Primary Violation By Mr. Gill ..................... 14

    B.    The Complaint Does Not Allege That
The MassMutual Defendants "Controlled" Mr. Gill .............................................. 14

IV.    PLAINTIFF FAILS TO STATE A
COMMON  LAW CLAIM AGAINST THE MASSMUTUAL DEFENDANTS
FOR FAILURE TO SUPERVISE GILL (COUNT VI) ..................................................... 16

    A.    The Complaint Does Not
Allege A Primary Violation By Mr. Gill .............................................................. 16

    B.    The Complaint Does Not Adequately Allege Foreseeability ................................ 17

i

C.       Plaintiff's Claim Is Barred By The Economic Loss Doctrine ................................17

V.       PLAINTIFF'S REMAINING CLAIMS AGAINST THE  MASSMUTUAL
         DEFENDANTS SHOULD BE DISMISSED (COUNTS VII, IIX) ................................18

         A.       Plaintiff Fails To Plead A Violation
                  Of The Washington Consumer Protection Act ......................................................18

         B.       Plaintiff Fails To State A
                  Common Law Claim For Tortious Aiding and Abetting.......................................19

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*ACA Financial Guaranty Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008) ................................................................................14

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002) ...........................................................................15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................5

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ......................................................................5, 6, 9, 10, 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................5

*Chaloupka v. Proximo Travel, LLC*,
    Civil Action No. 21-40028-DHH, 2023 WL 5804255 (D. Mass. Feb. 24, 2023) .............18

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) ............................................................9, 12

*Corcoran v. Saxon Mortgage Services, Inc.*,
    Civil Action No. 09-11468-NMG, 2010 WL 2106179 (D. Mass. May 24, 2010) ...........17

*Crane Co. v. Westinghouse Air Brake Co.*,
    419 F.2d 787 (2d Cir. 1969) ................................................................................12

*D.A.M. v. Barr*,
    474 F. Supp. 3d 45 (D.D.C. 2020) ........................................................................2

*Fezzani v. Bear, Stearns & Co.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004) ..............................................................6, 11

*Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015) .................................................................................7

*FMR Corp. v. Bos. Edison Co.*,
    415 Mass. 393 (1993) ........................................................................................17

*In re ForceField Energy Inc. Securities Litigation*,
    No. 15 Civ. 3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) .........................13

*Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*,
719 P.2d 531 (Wash. 1986)...................................................................................18, 19

*Harrington v. CACV of Colorado, LLC*,
508 F. Supp. 2d 128 (D. Mass. 2007) ...............................................................16

*Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*,
572 F. Supp. 1475 (D. Mass. 1983) ..................................................................7

*Murray v. Uber Technologies, Inc.*,
486 F. Supp. 3d 468 (D. Mass. 2020) ..........................................................16, 17

*Onel v. Top Ships, Inc.*,
806 F. App'x 64 (2d Cir. 2020) .........................................................................9, 10

*Prestera v. Shearson Lehman Bros.*,
Civil Action No. 86-1528-MA, 1986 WL 10095 (D. Mass. July 30, 1986).......................7

*Sanders v. AVEO Pharmaceuticals, Inc.*,
Civil Action No. 13-11157-DJC, 2015 WL 1276824 (D. Mass. Mar. 20, 2015) .............16

*SEC v. Bio Defense Corp.*,
Civil Action No. 12-11669-DPW, 2019 WL 7578525 (D. Mass. Sept. 6, 2019),
*aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021) ...........................15

*In re TelexFree Securities Litigation*,
360 F. Supp. 3d 46 (D. Mass. 2019) ..............................................................20

*Thuman v. Dembski*,
No. 13-CV-1087A(F), 2017 WL 3614522 (W.D.N.Y. Apr. 4, 2017) ...................8, 14, 15

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
827 F.3d 201 (1st Cir. 2016).............................................................................2

*Zunum Aero, Inc. v. Boeing Co.*,
No. C21-0896JLR, 2022 WL 2116678 (W.D. Wash. June 13, 2022) .............................19

## STATUTES AND RULES

15 U.S.C. § 78i(a) .................................................................................... passim

15 U.S.C. § 78i(a)(1).......................................................................................11

15 U.S.C. § 78i(a)(1)-(6)....................................................................................8

15 U.S.C. § 78i(a)(2), (6)..................................................................................11

15 U.S.C. § 78i(a)(3), (5)..................................................................................11

15 U.S.C. § 78i(a)(4)..............................................................................................................11

15 U.S.C. § 78i(f)...........................................................................................................8, 9, 12

15 U.S.C. § 78t(a)..............................................................................................................6, 14

RCW 19.86.093.....................................................................................................................19

Fed. R. Civ. P.  9(b)................................................................................................................5

## PRELIMINARY STATEMENT

Plaintiff seeks to hold Massachusetts Mutual Life Insurance Company ("MassMutual") and its subsidiary, MML Investors Services, LLC ("MMLIS" and, together with MassMutual, the "MassMutual Defendants") responsible for statements made by a former employee, Keith Patrick Gill, on his personal social media accounts, which allegedly triggered a short squeeze on GameStop Corp.'s ("GameStop") securities causing "substantial losses" to Plaintiff, a short seller of GameStop stock with no alleged relationship with the MassMutual Defendants.  The Amended Complaint[1] (the "Complaint") fails to allege that the MassMutual Defendants:  (i) authorized any such statements by Mr. Gill; (ii) knew about any such statements; or (iii) employed Mr. Gill in any capacity that was at all related to the personal statements he made on his social media accounts.  The implausibility of Plaintiff's claim is made plain by Plaintiff's own allegations, which concede that Mr. Gill never even used his real name on any of his social media accounts and posts, but used pseudonyms such as "Roaring Kitty" and "DeepF***ingValue," and often wore disguises, including "cat-themed clothing items" in creating online videos from his basement, which hid his real identity from both Plaintiff and the MassMutual Defendants alike. (*See* ¶¶ 24, 28, 35, 44-45, 52-53.)

Plaintiff' also fails to state a claim as a matter of law because he does not allege — nor can he — that Mr. Gill's personal investments and social media accounts were created, maintained, or related in any way to Mr. Gill's capacity as a MassMutual employee.  Indeed, Mr. Gill confirmed as much in his congressional testimony — which, as a matter of public record, may be considered on this Motion — during which he repeatedly made clear that (i) "I am an individual investor" who "analyz[ed] stocks on my own time"; and (ii) "My investment in

---

[1]     Citations to the Complaint (ECF No. 38) are referred to herein as "¶."

GameStop and my posts on social media were entirely my own."[2]  (Prasad Decl. Ex. 1 at 1, 2.)

Despite these very clear pleading deficiencies, Plaintiff makes the sweeping claim that the

MassMutual Defendants "fail[ed] to adequately supervise Gill."  (*See* ¶¶ 117-29, 140-57)

Plaintiff asserted these very same claims against the MassMutual Defendants in

his original complaint.  The MassMutual Defendants moved to dismiss them under Rules 9(b)

and 12(b)(6).  Instead of opposing the MassMutual Defendants' initial Motion to Dismiss,

Plaintiff chose to amend and supplement his allegations in an attempt to cure the multiple

deficiencies.  But Plaintiff's Complaint leaves the majority of his previous allegations untouched,

adds new class action allegations[3], and new, but equally flawed, claims against the MassMutual

Defendants.  The Complaint fails to state a claim and should be dismissed with prejudice for the

following, independently dispositive, reasons:

*First*, Plaintiff's original three claims against the MassMutual Defendants for

violations of Sections 9(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78i(a) and 78t(a), and for common law failure to supervise, each derivative

of the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill" pursuant to their

---

[2]      In evaluating a motion to dismiss for failure to state a claim, a court may consider matters of public record and facts susceptible to judicial notice.  *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) (taking judicial notice of record of congressional testimony); *see also D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 n.12 (D.D.C. 2020) (taking "judicial notice of [] sworn [congressional] testimony" (citing Fed. R. Evid. 201(b)(2))). Public record documents attached to the Transmittal Declaration Of Vasundhara Prasad In Support Of The MassMutual Defendants' Motion to Dismiss The Amended Complaint are cited herein as "Prasad Decl. Ex. __."

[3]      Although Plaintiff's Complaint, which appears to have been copied verbatim from a class action complaint filed in 2021 (*see generally* Prasad Decl. Ex. 2), contains class allegations (¶¶ 62-72), the word "Class" seems to have been scrubbed from the entirety of the document (*see e.g.*, ¶¶ 99, 112, 127, 131, 140) and Plaintiff's demand for judgment does not ask the Court to certify a class (*see* Compl. at pp. 57-58).

supervisory obligations under FINRA Rule 3110, should be dismissed as a matter of law because Plaintiff does not have a private right of action to pursue claims based on a purported violation of a FINRA Rule.  (*Infra* Section I.)  *Second*, even if Plaintiff had a private right of action, his Section 9(a) claim should be dismissed for at least two reasons: (i) it fails to allege "manipulative conduct"; and (ii) it fails to allege the requisite state of mind.  (*Infra* Section II.)

*Third*, Plaintiff's control person claim under Section 20(a) should be dismissed if the Court dismisses Plaintiff's Section 9(a) and Section 10(b) claims against Mr. Gill, the alleged "primary violator."  Plaintiff also fails to allege that the MassMutual Defendants "controlled" Mr. Gill (or were "culpable participants" in Mr. Gill's alleged fraud) where the Complaint does not even allege that Mr. Gill's social media statements were within the scope of his employment as a MassMutual employee.  (*Infra* Section III.)  *Fourth*, Plaintiff's common law claim for failure to supervise should also be dismissed if Plaintiff's claims for direct liability against Mr. Gill fail. Even assuming they survive, Plaintiff's common law claim should be dismissed because the Complaint contains no allegations that Mr. Gill's alleged misconduct was "foreseeable" by the MassMutual Defendants.  (*Infra* Section IV.)  *Finally*, Plaintiff's claims against the MassMutual Defendants for violating Washington's Consumer Protection Act, and for tortious aiding and abetting in Mr. Gill's alleged scheme should be dismissed for failing to plead any facts sufficient to state a cause of action.  (*Infra* Section V.)

## BACKGROUND

### A.    Mr. Gill Was Never Employed By The MassMutual Defendants As A Financial Advisor

MassMutual is a mutual life insurance company founded in 1851 and located in Springfield, Massachusetts.  (*Id.* ¶ 9.)  MMLIS, a wholly-owned subsidiary of MassMutual, is a broker-dealer and registered investment adviser.  (*Id.* ¶ 8.)  Keith Patrick Gill was hired by

MassMutual in March 2019.  (¶¶ 15(e)-(f).)  From April, 2019, through January 28, 2021, Mr.

Gill was registered as a broker-dealer agent with MMLIS.  (*Id.* ¶¶ 7, 15(f).)  Though registered

with MMLIS, Mr. Gill did not work as a broker.  Rather, Mr. Gill worked as a Product

Management Director, and subsequently as Director of Education and Wellness for a d/b/a of

MMLIS known as In Good Company ("IGC").  (*Id.* ¶ 15(e).)  While employed at IGC, Mr. Gill

was responsible for developing financial education classes that advisors could present to

prospective clients.  (*See* Prasad Decl. Ex. 1 at 2.)  In his role, he never bought or sold securities

on behalf of MMLIS and did not serve as a financial advisor for any MassMutual customers or

have any contact whatsoever with MassMutual customers at any time.  *See id.*

**B.     The Complaint Does Not Allege That The MassMutual Defendants
          Were Aware Of Mr. Gill's Social Media Statements Until Late-January 2021**

Beginning around August 2019, five months after Mr. Gill's hire at MassMutual,

Mr. Gill apparently began posting about securities, specifically GameStop, on the subreddit

community "WallStreetBets" using the pseudonym "DeepF***ingValue" (¶¶ 24, 28, 35.)

Around the same time, Mr. Gill began livestreaming and posting videos about investing in

securities, specifically GameStop, on YouTube and on Twitter using the pseudonym "Roaring

Kitty."  (*Id.* ¶¶ 44-48, 52-53.)  He often wore disguises in his videos, including "cat-themed

clothing items," which hid his real identity from the MassMutual Defendants and also the public

at-large.  (*Id.* ¶ 45.)

Mr. Gill's investments in GameStop and his posts on social media were entirely

his own, and Plaintiff does not allege otherwise.  (Prasad Decl. Ex. 1 at 1, 2.)  The Complaint is

devoid of allegations that Mr. Gill's investments and social media accounts were created,

maintained, or related in any way to Mr. Gill's capacity as a MassMutual employee, nor,

similarly, that they had <u>anything</u> to do with Mr. Gill's job responsibilities as a MassMutual

employee (including for his work for IGC).  In fact, Plaintiff's Complaint affirmatively alleges

that Mr. Gill "us[ed] a false identity" and "fail[ed] to disclose that [he] was a professional,

registered, licensed broker."  (¶¶ 82, 107.)  The Complaint also does not — and cannot,

consistent with Plaintiff's obligations under Fed. R. Civ. P. 11 — allege that the MassMutual

Defendants were even aware of Mr. Gill's alleged statements on social media until late-January

2021.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must

allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

Although the Court must take the allegations in a plaintiff's pleadings as true and make all

reasonable inferences in favor of the plaintiff, "a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Id.* at 555 (alteration in original) (citation

omitted).  Rather, a "claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, a complaint should be

dismissed where "the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct."  *Id.* at 679.

Here, because certain of Plaintiff's claims sound in fraud (*see infra* Sections II,

IV, V), Plaintiff must further meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Rule 9(b) requires that the circumstances constituting the fraud be stated "with particularity."

Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b)'s pleading standards, "a manipulation complaint must

plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of

the defendants."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007).  In

particular, the claim must state "what manipulative acts were performed [and] which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 642 (S.D.N.Y. 2004) (citation omitted).  With respect to "what manipulative acts were performed," the acts must be alleged as to each defendant, and "[g]eneral allegations not tied to the defendants or resting upon speculation are insufficient." *ATSI*, 493 F.3d at 102.

As demonstrated below, Plaintiff's Complaint does not meet this standard, and the Court should dismiss his claims against the MassMutual Defendants in their entirety.

## **ARGUMENT**

Plaintiff asserts five claims against the MassMutual Defendants:[4]

- Count III[5] alleges that the MassMutual Defendants violated Section 9(a) of the Exchange Act, 15 U.S.C. § 78i(a), by "fail[ing] to adequately supervise Gill" and "allowing him to engage in stock touting . . . pooling . . . and other manipulative activities [including] by allowing him to engage in extensive social media communications" in violation of the MassMutual Defendants' supervisory obligation under FINRA Rule 3110.  (¶¶ 115-129.)

- Count V alleges that the MassMutual Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by "fail[ing] to adequately supervise Gill," as "an employee, associated person, and a licensed and registered broker of MML" in violation of the MassMutual Defendants' supervisory obligations under FINRA Rule 3110.  (*Id.* ¶¶ 139-148.)

- Count VI alleges that the MassMutual Defendants are liable under Massachusetts common law for "fail[ure] to adequately supervise Gill" in violation of the MassMutual Defendants' supervisory obligations under FINRA Rule 3110, given

---

[4]     The Complaint also alleges seven claims against Mr. Gill: Count I: Mr. Gill's Violation of Section 9(a)(1) (¶¶ 73-90); Count II: Mr. Gill's Violation of Section 9(a)(3) (*Id.* ¶¶ 91-101); Count III: Mr. Gill's Violation of Section 9(a)(4) (*Id.* ¶¶ 102-114); Count IV: Mr. Gill's Violation of Section 10(b) of the Exchange Act and Rule 10b-5 (*Id.* ¶¶ 130-138); Count VIII and IX: Mr. Gill's Conspiracy to Violate Massachusetts General Law 93A-11 (*Id.* ¶¶ 166-169); and, Count IIIX: Mr. Gill's Violation of Section 1 of the Sherman Act (*Id.* at p. 56).  As of the date of this Motion, the docket does not indicate that Mr. Gill has been served.

[5]     Presumably by mistake, the Complaint contains two Counts titled "Count III."

that the MassMutual Defendants allegedly "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts." (*Id.* ¶¶ 149-164.)

- Count VII alleges that the MassMutual Defendants engaged in unfair methods of competition and unfair or deceptive acts in violation of Washington's Consumer Protection Act ("WCPA"). (*Id.* at pp. 55-56.)

- Count XII alleges that the MassMutual Defendants are liable for "tortious aiding and abetting in Gill's scheme." (*Id.* ¶¶ 170-172.)

In sum, the Complaint represents an attempt to blame the MassMutual Defendants for Mr. Rosenberg's investment decisions. The MassMutual Defendants had nothing to do with Mr. Gill's alleged actions and statements, and the Complaint does not — and cannot — otherwise allege. This case has been pending since February 2023 and Mr. Rosenberg has been extended every reasonable courtesy in light of his *pro se* status and assertions of poor health. Respectfully, it is time to conclude this matter. For the reasons discussed below, all of Mr. Rosenberg's claims against the MassMutual Defendants should be dismissed, as a matter of law, with prejudice. *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) (affirming dismissal and denying leave to amend where plaintiffs were put on notice of deficiencies in complaint by motion to dismiss and further amendment would be futile).

## I.    PLAINTIFF DOES NOT HAVE A PRIVATE RIGHT OF ACTION TO PURSUE CLAIMS BASED ON A PURPORTED VIOLATION OF A FINRA RULE

As an initial matter, Plaintiff's Counts III, V and VI against the MassMutual Defendants should be dismissed because Plaintiff does not have a private right of action to pursue claims based on a purported violation of a FINRA Rule. *See Prestera v. Shearson Lehman Bros.*, No. 86-1528-MA, 1986 WL 10095, at *3 (D. Mass. July 30, 1986) (noting that there is "no private right of action for alleged violations of the rules of the various self-regulatory organizations" like FINRA); *Margaret Hall Found., Inc. v. Atl. Fin. Mgmt., Inc.*, 572 F. Supp.

1475, 1482 (D. Mass. 1983) ("This court has ruled that there is no private right of action for violations of the rules of self-regulatory organizations . . . .").

Indeed, each of Plaintiff's claims under Section 9(a), Section 20(a), and for common law failure to supervise is derivative of the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill" pursuant to their supervisory obligations under FINRA Rule 3110.[6] (¶¶ 120, 143, 151.)  That rule requires FINRA members to "establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations."  FINRA Rule 3110.  An alleged violation of this rule cannot be the basis for liability under the securities laws or under common law.  *See Thuman v. Dembski*, No. 13-CV-1087A(F), 2017 WL 3614522, at *9 (W.D.N.Y. Apr. 4, 2017) (rejecting plaintiff's argument that defendant, a broker-dealer, had a "duty to supervise [its registered representative] pursuant to FINRA Rule 3280," and noting that FINRA rules "create no private right of action and do not provide a basis to impose vicarious liability in actions under federal securities laws").

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE MASSMUTUAL DEFENDANTS FOR VIOLATION OF 15 U.S.C. § 78i(a) ("SECTION 9(a)") (COUNT III)

Section 9(a) of the Exchange Act, entitled "[m]anipulation of securities prices," imposes liability on persons "directly or indirectly" manipulating stock prices.  15 U.S.C. § 78i(a).  To state a claim under Section 9(a), a plaintiff must allege: (i) that defendant engaged in "manipulative" conduct, 15 U.S.C. § 78i(a)(1)-(6); (ii) that defendant did so "willfully," which courts often refer to as a scienter requirement, *see* 15 U.S.C. § 78i(f); and (iii) that plaintiff

---

[6]     The Complaint also references MassMutual Defendants' supervisory obligations "under SEC regulations," but it again fails to cite with any specificity which SEC regulations, if any, that MassMutual Defendants are alleged to have violated.  (*See* ¶¶ 18, 117.)

bought or sold a security "at a price which was affected" by defendant's alleged violation of Section 9(a), *see* 15 U.S.C. § 78i(f).  *Cf. ATSI*, 493 F.3d at 101 (listing elements of a market manipulation claim under Section 10(b)).[7]

Plaintiff's Complaint still does not identify which subsection of Section 9(a) he contends the MassMutual Defendants violated.  As explained below, Plaintiff cannot state a claim as a matter of law under <u>any</u> of Section 9(a)'s subsections.  Plaintiff premises his Section 9(a) claim on the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill" by "allowing him to engage in stock touting . . . pooling . . . and other manipulative activities [including] by allowing him to engage in extensive social media communications" in violation of the MassMutual Defendants' supervisory obligations under FINRA Rule 3110.  (¶¶ 122-26.)  In Plaintiff's view, "by failing to adhere to [their] own supervision obligations" the MassMutual Defendants "directly or indirectly facilitated and enabled Gill's manipulative activity and violations of [Section 9(a)] . . . and willfully participated in Gill's manipulative activity and violations . . . [and] as a result, . . . are liable for Gill's manipulative activity under 15 U.S.C. § 78i(f)."  (*Id.* ¶¶ 124-26.)  None of these allegations states a claim under Section 9(a).  Plaintiff's Section 9(a) claim fails for multiple, independently dispositive reasons:  (i) it fails to allege any "manipulative conduct"; and (ii) it fails to allege the requisite state of mind.[8]

---

[7]      Courts routinely compare the elements of market manipulation under Section 9(a) to those under Section 10(b), and often apply the same analysis to both claims on a motion to dismiss.  *See Onel v. Top Ships, Inc.*, 806 F. App'x 64, 66 n.1 (2d Cir. 2020) (dismissing plaintiff's Section 9(a) and Section 10(b) claims because "allegations of a manipulative act are [] needed to state a claim of market manipulation" under both).

[8]      Plaintiff's original complaint failed to plead any information concerning Plaintiff's stock transactions.  In his Complaint, Plaintiff attempts to cure this deficiency but provides inconsistent allegations (*compare* ¶ 1 stating "Plaintiff sold 10 Calls February 19, 2021 Strike price at $27.73 per share" and "[l]ater in the day [] sold an additional 10 Calls in the February options with a strike price of $200.0 at $15.00 per share" *with* ¶ 59 stating "Plaintiff sold call

*(cont'd)*

**A.**     **The Complaint Contains No Factual Allegations**
          **About The MassMutual Defendants' "Manipulative Conduct"**

Plaintiff's Section 9(a) claim should be dismissed for the independent reason that

Plaintiff fails to allege that the MassMutual Defendants engaged in any "manipulative conduct."

"[A]llegations of a manipulative act are . . . needed to state a claim of market manipulation"

under Section 9(a).  *Onel*, 806 F. App'x at 66 n.1.  The "critical question" in determining whether

manipulation has occurred is whether the conduct at issue "'artificially' affects a security's price

*in a deceptive manner*." *ATSI*, 493 F.3d at 100 (emphasis added) (citation omitted).  A market

manipulation claim, however, cannot be based solely upon misrepresentations or omissions.  *See*

*id.* at 101.  There must be some market activity, such as "wash sales, matched orders, or rigged

prices."  *Id.* (citation omitted).

The following two cases demonstrate this pleading requirement.  In *ATSI*, plaintiff

brought Section 9(a) market manipulation claims under Section 10(b) against defendants,

alleging that defendants brought about a "death spiral" in the price of plaintiff's common stock

through coordinated short selling.  493 F.3d at 97.  Plaintiff also brought a market manipulation

claim against the "principal market maker in [plaintiff's] stock," alleging "that any manipulation

had to involve [this] defendant."  *Id.*  In particular, plaintiff alleged that the market maker "knew

or should have known of the manipulation [and] was a cooperating broker-dealer."  *Id.* at 105.

The Second Circuit affirmed the dismissal of the claims against the market maker in the absence

of "any allegations of specific acts by [the market maker] to manipulate the market, much less

---

option contracts (representing 2,000 shares) at a strike price of $100 on January 26, 2021"),
which this Court should not credit.  *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 433
(S.D.N.Y. 2010) (dismissing Section 9(a) claim where plaintiffs' complaint failed to allege that
they had suffered "any economic injury [or] loss causation," which are "[required] element[s] of
their federal [securities] claims").

how those actions might have affected the market." *Id.*  In *Fezzani*, the court dismissed a Section 9(a) claim against certain broker-dealer defendants where the "complaint merely state[d] that the Broker Defendants conspired . . . 'to create an artificial appearance of trading activity through repeated[] 'parking' of [the] securities [at issue] in customer and proprietary trading accounts.'" 384 F. Supp. 2d at 642.  The court found that such "general statements" were "entirely insufficient" because they failed to allege "any fraudulent acts specifically with regard to [the securities purchased by plaintiff]" by the broker defendants.  *Id.*

As in *ATSI* and *Fezzani*, Plaintiff's Complaint contains only general statements about the MassMutual Defendants' alleged "fail[ure] to adequately supervise Gill," and contains <u>no</u> <u>allegations</u> of any "fraudulent acts" to manipulate GameStop securities.  Indeed, far from alleging "market activity" from the MassMutual Defendants, Plaintiff has alleged no deception at all by the MassMutual Defendants.  Moreover, as demonstrated in *ATSI*, it is not enough to allege that the MassMutual Defendants "had reason to know of Gill's activities" here.  (*See, e.g.* ¶ 155.)  Plaintiff is required to allege "specific acts by [the MassMutual Defendants] to manipulate the market." *ATSI*, 493 F.3d at 105.  No such allegations appear in the Complaint.[9]

**B.**    <u>Plaintiff Does Not Adequately Plead The Requisite State of Mind</u>

Plaintiff's Section 9(a) claim should be dismissed for the independent reason that Plaintiff fails to allege that the MassMutual Defendants acted with a "willful[]" state of mind, *see*

---

[9]      Moreover, as noted previously, Plaintiff has failed to plead which subsection(s) of Section 9(a) were allegedly violated by the MassMutual Defendants.  In any event, the Complaint fails to state a claim as a matter of law under any of those subsections because it contains <u>no</u> <u>allegations</u> that the MassMutual Defendants: (i) engaged in wash sales or matched orders, *see* 15 U.S.C. § 78i(a)(1); (ii) engaged in "a series of transactions," *see* 15 U.S.C. § 78i(a)(2), (6); (iii) disseminated information about whether the price of a security "is likely to rise or fall because of market operations," or hired another person to disseminate such information, *see* 15 U.S.C. § 78i(a)(3), (5); or (iv) made a false or misleading statement with respect to a material fact, *see* 15 U.S.C. § 78i(a)(4).

15 U.S.C. § 78i(f), which courts often refer to as a scienter requirement.  *See Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969) ("Sections 9(a)(2) and 9(e) contain requirements of both manipulative motive and willfulness.").

        To plead a claim under Section 9(a), Plaintiff must "state with particularity facts giving rise to a strong inference that each defendant acted with scienter."  *Cohen*, 722 F. Supp. 2d at 428 (citation omitted).  Scienter is defined as a "'mental state embracing intent to deceive, manipulate or defraud.'"  *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007)).  "'Conclusory statements of associations' or generalized allegations of scienter against groups of defendants [do] not state a claim for securities fraud."  *Id.* (citation omitted).  Instead, Plaintiff must plead "specific facts as to each defendant that" (1) "give rise to a strong inference that the defendant had both motive and opportunity to commit fraud," which requires pleading that defendant "would realize 'concrete benefits' from the fraud" or (2) "provide strong circumstantial evidence of 'conscious misbehavior or recklessness,'" *i.e.*, "deliberate illegal behavior" or conduct that was "highly unreasonable" and "an extreme departure from the standards of ordinary care."  *Id.* at 428-30 (citations omitted).  Here, the Complaint fails to plead facts that give rise to either inference.

        Instead, the Complaint only alleges that the MassMutual Defendants "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts" and that "[b]y failing to adhere to [their] own supervision obligation," the MassMutual Defendants "willfully participated in Gill's manipulative activity and violations of 15 U.S.C. § 78i(a)."  (¶¶ 125, 155.)  These generic allegations do not allege "a motive and opportunity to commit fraud" or a "conscious misbehavior or recklessness."  *See Cohen*, 722 F. Supp. 2d at 428-30 (citation omitted) (finding plaintiffs had failed to allege scienter for their Section 9(a) claim where

plaintiffs did not allege that any of the financial institution defendants "made [the allegedly false statements], knew that they were false or even knew that the statements were being made" nor "allege with any specificity what any [f]inancial [i]nstitution [d]efendants' supposed role was in the [making of the false statements]").

Moreover, the Court should not give <u>any</u> <u>weight</u> to these allegations, particularly where the Complaint also alleges that Mr. Gill used pseudonyms on his social media accounts (*e.g.*, "Roaring Kitty" and "DeepF***ingValue") and wore disguises in his YouTube videos. (*See* ¶¶ 24, 35, 44-45.)  Where there are allegations that Mr. Gill attempted to conceal his purportedly illegal activity by "using a false identity" (¶ 82), "[P]laintiff can hardly argue that [the MassMutual Defendants] were reckless for failing to discover conduct that they concede was covert."  *In re ForceField Energy Inc. Sec. Litig.*, No. 15 Civ. 3020 (NRB), 2017 WL 1319802, at *18 (S.D.N.Y. Mar. 29, 2017) (finding that brokerage defendants did not act recklessly with respect to the actions of the broker defendants they employed where those broker defendants concealed their actions from the brokerage defendants).  Finally, the Complaint is entirely devoid of any allegations of motive by the MassMutual Defendants.  Of course it is: MassMutual had nothing to gain from Mr. Gill's actions and did not even know of them.

## III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE MASSMUTUAL DEFENDANTS FOR VIOLATION OF 15 U.S.C. § 78t(a) ("SECTION 20(a)") (COUNT V)

To state a claim of control person liability under Section 20(a), Plaintiff must show that: (1) Mr. Gill committed a primary violation of either Section 9(a) or Section 10(b) of the Exchange Act (*see* ¶¶ 73-114, 130-138); and (2) the MassMutual Defendants "controlled" Mr. Gill.  The Complaint fails to plead either element of this claim, and the Court should dismiss it in its entirety.

### A.    The Complaint Does Not Allege A Primary Violation By Mr. Gill

The Section 20(a) claim against the MassMutual Defendants should be dismissed if the Court dismisses Plaintiff's Section 9(a) and 10(b) claims against Mr. Gill.[10]  *See* 15 U.S.C. § 78t(a); *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 67 (1st Cir. 2008) ("The plain terms of section 20(a) indicate that it only creates liability derivative of an underlying securities violation.").

### B.    The Complaint Does Not Allege That
### The MassMutual Defendants "Controlled" Mr. Gill

Even if Plaintiff were able to allege a primary violation by Mr. Gill, Plaintiff's Section 20(a) claim against the MassMutual Defendants should still be dismissed for the independent reason that Plaintiff's Complaint fails to allege that the MassMutual Defendants "controlled" Mr. Gill.[11]  "[A] control-person relationship exists whenever (i) the alleged control person actually exercised control over the general operations of the primary violator and (ii) the alleged control person possessed — but did not necessarily exercise — the power to determine

---

[10]    Although the MassMutual Defendants do not purport to make any arguments on behalf of Mr. Gill, they note the absence of any allegations regarding scienter and manipulative conduct, which Plaintiff is required to plead to state a claim under both Sections 9(a) and 10(b) against Mr. Gill.  Specifically, the Complaint contains no allegations to suggest that Mr. Gill was actively selling his GameStop shares while simultaneously promoting on social media that others invest in GameStop.  Moreover, there are no allegations that Mr. Gill hid his actions from the market; in fact, Plaintiff's Complaint alleges otherwise.

[11]    The Section 20(a) claim must also fail because Plaintiff has not adequately pled "culpable participation" on the part of the MassMutual Defendants.  *See Thuman*, 2017 WL 3614522, at *11 (holding that broker-dealer defendant was not a "culpable participant" in "employee and registered representative['s]" fraud where the complaint contained no allegations "that as a result of such alleged employment, or business or relationship, [broker-dealer defendants] also had actual knowledge of the fraudulent conduct or with recklessness, failed to act to prevent [employee and registered representative's] alleged fraud").  Although the First Circuit has not yet addressed this issue, several courts in this district have required "culpable participation" to survive a motion to dismiss.  *See e.g.*, *Dahhan v. OvaScience, Inc.*, No. 1:17-CV-10511-IT, 2021 WL 2186466, at *6 (D. Mass. May 28, 2021).

the specific acts or omissions upon which the underlying violation is predicated." *SEC v. Bio Def. Corp.*, No. 12-11669-DPW, 2019 WL 7578525, at *30 (D. Mass. Sept. 6, 2019) (citation omitted), *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021).

Here, the Complaint makes the broad and conclusory allegation that because "Gill had direct and unfettered access to the market as a registered broker and a representative of MML and MassMutual . . . MML and MassMutual are therefore presumed to have had the power to control or to influence the particular transactions giving rise to the securities violations alleged here, and they were obligated to exercise the same." (¶ 142.)  This is not sufficient to state a claim that the MassMutual Defendants actually exercised control over Mr. Gill's personal statements on social media made from the basement of his own home.

Moreover, the Complaint contains no allegations that Mr. Gill's statements on social media were within the scope of his employment as a MassMutual employee.  In fact, the Complaint is replete with allegations of how Mr. Gill actively concealed his real identity on social media from both Plaintiff and the MassMutual Defendants alike.  (¶¶ 24, 35, 44-45, 82.) Because the MassMutual Defendants are not alleged to even know about Mr. Gill's alleged statements, Plaintiff cannot state that the MassMutual Defendants had the "power to determine the specific acts or omissions upon which the underlying violation is predicated."  *See Thuman*, 2017 WL 3614522, at *10 (finding plaintiff failed to plead "control" under Section 20(a) where the complaint contained no allegations that the broker-dealer defendants had "any involvement…in [employee and registered representative's] conduct . . . . ."); *see also Aldridge*, 284 F.3d at 85 (dismissing Section 20(a) claim because there were no facts indicating that the "control[] [persons] were actively participating in the decisionmaking processes of the [primary violator]" and noting that "[i]n the absence of some indicia of the *exercise* of control over the

15

entity primarily liable, however, that status alone is not enough"); *Sanders v. AVEO Pharm., Inc.*, No. 13-11157-DJC, 2015 WL 1276824, at *11 (D. Mass. Mar. 20, 2015) (finding that defendants had "'participated in the operation and management of [the primary violator], and/or directed and oversaw the operation and management of [the primary violator's] business and regulatory affairs and investor communications'" to be insufficient to allege that defendants had "actively participat[ed] in the decisionmaking processes of the [primary violator]").

## IV.   PLAINTIFF FAILS TO STATE A COMMON LAW CLAIM AGAINST THE MASSMUTUAL DEFENDANTS FOR FAILURE TO SUPERVISE GILL (COUNT VI)

The Complaint also asserts a common law claim against the MassMutual Defendants for their alleged "fail[ure] to adequately supervise Gill."  (¶¶149-64.)  In Plaintiff's view, the MassMutual Defendants "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts."  (¶ 155.)  Under Massachusetts law, to state a claim for negligent supervision, a plaintiff must allege that the employer knew "'or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action.'"  *Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 477 (D. Mass. 2020) (citation omitted).  Plaintiff's common law claim against the MassMutual Defendants fails for at least three reasons: (i) it does not adequately allege a primary violation by Gill; (ii) it does not adequately allege that Mr. Gill's alleged misconduct was "reasonably foreseeable"; and (iii) it is barred by the economic loss doctrine.

### A.   The Complaint Does Not Allege A Primary Violation By Mr. Gill

The MassMutual Defendants cannot be held liable for negligent supervision if Plaintiff's claims for direct liability against Mr. Gill fail.  *See Harrington v. CACV of Colo., LLC*, 508 F. Supp. 2d 128, 141 (D. Mass. 2007).

### B.    The Complaint Does Not Adequately Allege Foreseeability

Even assuming that Plaintiff is able to allege a primary violation by Mr. Gill, his common law claim against the MassMutual Defendants should be dismissed for the independent reason that the Complaint contains no allegations that Mr. Gill's alleged misconduct was "foreseeable."  Indeed, the Complaint does not — and cannot — allege that the MassMutual Defendants were even aware of Mr. Gill's alleged statements on social media until late-January 2021.  Moreover, Plaintiff's conclusory allegation that the MassMutual Defendants "had reason to know of Gill's activities due to Gill's routine use of multiple social media accounts" does not pass muster because Mr. Gill's social media accounts used a "fake persona" — Mr. Gill used pseudonyms such as "Roaring Kitty" and "DeepF***ingValue," and often wore disguises, including "cat-themed clothing items" in his online videos — which hid his real identity from the MassMutual Defendants.  (¶¶ 24, 35, 44-45, 82.)  *Cf. Murray*, 486 F. Supp. 3d at 477 (dismissing negligent supervision claim on a motion to dismiss because plaintiff did not "identify any 'red flags' in [employee's] background or employment history that should have alerted" the employer that the employee had a "proclivity to commit the complained-of acts").

### C.    Plaintiff's Claim Is Barred By The Economic Loss Doctrine

Plaintiff's common law claim, which sounds in negligence and thus does not require allegations of any intentional act by the MassMutual Defendants (not that the Complaint contains any allegations about the MassMutual Defendants' alleged intentional acts), is also barred by the economic loss doctrine.  Under Massachusetts law, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damages."  *FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393, 395 (1993); *see also Corcoran v. Saxon Mortg. Servs., Inc.*, No. 09-11468-NMG, 2010 WL 2106179, at *4 (D. Mass. May 24, 2010) (dismissing negligence claim as "barred by the economic loss doctrine" where plaintiff's

alleged damages were "purely economic in nature").  Here, given that Plaintiff's alleged damages are purely economical, his recovery under this claim is barred by the economic loss doctrine.

## V.   PLAINTIFF'S REMAINING CLAIMS AGAINST THE MASSMUTUAL DEFENDANTS SHOULD BE DISMISSED (COUNTS VII, IIX)

Plaintiff's remaining two claims against the MassMutual Defendants for violations of Washington's Consumer Protection Act ("WCPA")[12] (¶¶ 163-65) and for common law tortious aiding and abetting in Mr. Gill's alleged "scheme" (¶¶ 170-72) should be dismissed for failure to state facts sufficient to constitute a valid cause of action.

### A.   Plaintiff Fails To Plead A Violation Of The Washington Consumer Protection Act

Washington courts have derived a five-part test for private actions brought under the WCPA.  *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537 (Wash. 1986).  Under the *Hangman Ridge* test, plaintiffs must demonstrate: (1) an unfair or deceptive practice or act; (2) in trade or commerce; (3) which affects the public interest; (4) injury to the plaintiff's business or property; and (5) a causal link between the unfair or deceptive practice or act and the injury suffered.  *Id.* at 784-85.  Plaintiff's Complaint fails to plead these elements, and the Court should dismiss the claim in its entirety.

Plaintiff appears to predicate the public interest element on an alleged "per se violation" of the "SEC Act" and "a civil statute" (¶¶ 163-164), but to do so successfully, Plaintiff

---

[12]     The Complaint does not appear to allege a similar claim under Massachusetts' Consumer Protection Act.  However, because the Complaint passingly references that "violations of the SEC Act … constitutes per se violations … [of] 93A-aa," (¶ 164), the MassMutual Defendants note that Plaintiff has both failed to comply with the demand letter requirement under the law and to allege any facts supporting such a claim.  To the extent Plaintiff intended to allege such a claim, that claim should be dismissed.  *See Chaloupka v. Proximo Travel, LLC*, No. 21-40028-DHH, 2023 WL 5804255, at *3 (D. Mass. Feb. 24, 2023) (dismissing plaintiff's 93A claim for failing to mail or deliver a "written demand for relief" to defendant "at least thirty days prior to the filing of any such action" (quoting Mass. Gen. Laws ch. 93A, § 9(3))).

must allege that the MassMutual Defendants' conduct "(1) violates a statute that incorporates [the WCPA]; [or] (2) violates a statute that contains a specific legislative declaration of public interest impact."  RCW 19.86.093; *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2022 WL 2116678, at \*11 (W.D. Wash. June 13, 2022) (noting that the "first two subsections of [RCW 19.86.093] reflect … that the public interest element can be satisfied per se.").  Assuming that the "SEC Act" refers to the Exchange Act (*see* ¶¶ 115-29, 139-48) and the "civil statute" refers to Mass. Gen. Laws ch. 110A, § 204(a)(2)(J) (*see* ¶ 158-62), neither of these incorporate the WCPA or contain a "specific legislative declaration" of public interest impact.  Even if they did, Plaintiff has not alleged sufficient facts to plead a violation of either of these statutes (*see supra* Sections I-III),[13] and his WCPA claim should thus be dismissed.[14]

> ### B.     Plaintiff Fails To State A Common Law Claim For Tortious Aiding and Abetting

Under Massachusetts law, to state a claim for tortious aiding and abetting, a plaintiff must show that: (1) the primary actor committed a wrongful act that causes injury; (2) the aider and abettor was aware of his role in the overall wrongful activity when he provided the assistance; and (3) the aider and abettor knowingly and substantially assisted the primary actor's

---

[13]     Plaintiff alleges that the "large fine paid by MassMutual" pursuant to the Consent Order entered into by the Massachusetts Securities Division and MMLIS on September 15, 2021, is a "tacit admission of guilt [in] violation of Mass Civil Statutes."  (*Id.* ¶ 158-62.)  But the Consent Order expressly states that MMLIS "neither admits nor denies" any facts or violations of law alleged therein, and Plaintiff's Complaint does not otherwise allege any facts supporting a violation of any "Mass Civil Statutes."

[14]     Plaintiff has also failed to plead any of the other elements to state a viable claim under the WCPA, including any allegations of unfair or deceptive conduct on the part of the MassMutual Defendants.  *See Hangman*, 719 P.2d at at 538 (emphasizing that "when a statute containing a legislative public interest pronouncement can be shown to have been violated, only the public interest requirement is satisfied per se . . . . [t]he other four elements of a private CPA action must be separately established").

wrongful act.  *In re TelexFree Sec. Litig.*, 360 F. Supp. 3d 46, 50 (D. Mass. 2019).  The

MassMutual Defendants cannot be held liable for tortious aiding and abetting if Plaintiff's claims

for direct liability against Mr. Gill fail.  Even assuming that Plaintiff is able to allege a primary

violation by Mr. Gill, his common law claim against the MassMutual Defendants should be

dismissed for the independent reason that the Complaint contains no allegations that MassMutual

defendants had "actual knowledge" of Mr. Gill's alleged social media activities or that the

MassMutual Defendants "active[ly] participat[ed] in" or provided "substantial assistance" to Mr.

Gill in furtherance of his alleged wrongful conduct.  *Id.* at 50-51 (dismissing plaintiff's tortious

aiding and abetting claim and holding that: (i) an "aiding and abetting claim demands a showing

of 'actual knowledge' of the underlying wrongdoing"; and (ii) "passive assistance and inaction

does not rise to the level of substantial assistance").

## CONCLUSION

   For all of the foregoing reasons, all of the claims asserted against the MassMutual

Defendants in Plaintiff's Complaint should be dismissed with prejudice.

Dated: October 23, 2023       Respectfully submitted,
   Boston, Massachusetts

                /s/ James R. Carroll
                James R. Carroll (BBO #554426)
                Vasundhara Prasad (BBO #705774)
                SKADDEN, ARPS, SLATE,
                 MEAGHER & FLOM LLP
                500 Boylston Street
                Boston, Massachusetts 02116
                (617) 573-4800
                james.carroll@skadden.com
                vasundhara.prasad@skadden.com

                Counsel for Defendants
                Massachusetts Mutual Life Insurance Co. and
                MML Investors Services, LLC