**Practical Guidance®**

**Practical Guidance**

# Control Person Liability

A Practical Guidance® Practice Note by
Alexander C. Drylewski, Skadden, Arps, Slate, Meagher & Flom LLP



Alexander C. Drylewski
Skadden, Arps, Slate, Meagher & Flom LLP

This practice note discusses control person liability under the Securities Act of 1933, as amended (Securities Act), and Securities Exchange Act of 1934, as amended (Exchange Act). Control person liability provides for liability of any person who controls an individual or entity that violates federal securities laws. Plaintiffs typically file control person claims against individual officers and directors, particularly in light of the Supreme Court's foreclosure of aiding and abetting liability and limits on primary liability in private securities litigation. This practice note provides an overview of secondary liability, including the scope and elements of a control person claim, discusses the different pleading standards for control person liability, and outlines practical considerations in defending against such claims.

For more information on control person liability and related issues, see Corporations, Directors, and Officers: Potential Criminal and Civil Liability, Liability under the Federal Securities Laws for Securities Offerings, and Liability for Securities Offerings Checklist.

For additional information on liability provisions and potential defenses under the federal securities laws in general, see Securities Act and Exchange Act Liability Provisions, Section 11 Elements and Defenses under the Securities Act, Section 12(a)(2) Elements and Defenses under the Securities Act, Reliance in Securities Fraud Actions, Materiality in Securities Fraud Actions, Scienter Defenses in Securities Fraud Actions, Securities Litigation under the Private Securities Litigation Reform Act (PSLRA), Special Litigation Committees, Supreme Court Securities Litigation Decisions, Jurisdictional Defenses under the Exchange Act, Jurisdictional Defenses under the Securities Act, Defense Strategies under the Securities Act, and U.S. Securities Laws.

## Overview of Secondary Liability

A person who commits an act prohibited by law is primarily liable for that violation. However, a person who does not commit the act, but who either provides assistance to the primary violator or has some supervisory relationship to the primary violator, can be subject to secondary liability. Courts have come to different conclusions regarding how to define secondary liability. Depending on the court and type of claim, the four types of secondary liability are: respondeat superior (agency law), control person, aiding and abetting, and conspiracy. Control person liability should not be confused with the three other types of secondary liability.

The doctrine of respondeat superior originates from common law and provides that principals are liable for the acts of their agents. Courts recognizing respondeat superior often treat it as part of the analysis for a primary violation. Control person liability, on the other hand, provides a separate and independent cause of action against a person who controls a primary violator. Rather than being held liable for a primary violation, a control person may be held liable under a separate control person liability statute.

The other two types of secondary liability—aiding and abetting liability and conspiracy—are not available in civil

securities actions. The Supreme Court foreclosed aiding and abetting liability for private actions in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994). Based on the Supreme Court's analysis, courts have generally interpreted *Central Bank* to preclude a private right of action for conspiracy as well. See, e.g., Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 841 (2d Cir. 1998) ("[E]very court to have addressed the viability of a conspiracy cause of action under § 10(b) and Rule 10b–5 in the wake of *Central Bank* has agreed that *Central Bank* precludes such a cause of action.").

## Scope of Control Person Liability

Control person liability provides for liability against those who control, directly or indirectly, an entity or individual that violates the securities laws. Control person liability "prevent[s] people and entities from using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws." Laperriere v. Vesta Ins. Group, Inc., 526 F.3d 715, 721 (11th Cir. 2008). Control person claims can be brought both in private securities actions and Securities and Exchange Commission (SEC) enforcement actions.

Plaintiffs generally name control persons as additional defendants along with the entity or individual alleged to be liable for the primary violation. A defendant cannot ultimately be held liable for both a primary violation and control person liability; however, plaintiffs can and do plead both claims as alternate theories of liability. See, e.g., Police & Fire Ret. Sys. v. SafeNet, Inc., 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009). For example, an investor who brings a securities fraud claim against a corporation will often bring both a primary securities fraud claim and control person liability claim against certain of its individual officers. If the court does not find the individuals liable for the primary securities fraud claim, it will then analyze the control person liability claim.

Typically, plaintiffs assert control person claims against officers or directors who exercise control over a company that allegedly violated the securities laws. Such claims are based on the control person's oversight and ultimate responsibility over the company. Although plaintiffs sometimes bring claims against members of the board of directors, it's often more difficult to show that individual directors have sufficient control over the company to be considered a control person under the tests discussed below.

Control person liability is not limited to claims against a company's officers or directors. Both the control person and the controlled person can be either an individual or an entity, and courts have found entities liable for controlling individuals. For example, plaintiffs may bring control person claims against a parent company for its control of a subsidiary entity. See DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A., 413 F. Supp. 3d 187, 219–21 (S.D.N.Y. 2019). Or, as another example, investors who are injured by individual stock brokers may assert control person claims against the brokers' brokerage firm. See, e.g., Martin v. Shearson Lehman Hutton, Inc., 986 F.2d 242 (8th Cir. 1993).

## Elements of a Control Person Claim

Although control person liability may seem straightforward, courts disagree about the required elements for a claim, the tests and definitions used to determine whether each element is met, and the applicable pleading standards. As such, a large part of defending against control person claims involves knowing the case law in the relevant jurisdiction and arguing for the most favorable standards where possible. Defense counsel accordingly should be wary of forum shopping by plaintiff's counsel.

Two federal control person provisions exist: Section 15 of the Securities Act (15 U.S.C. § 77o) and Section 20(a) of the Exchange Act (15 U.S.C. § 78t). Both sections provide that a person who controls another person shall be held liable to the same extent as the controlled person is liable. However, the two sections offer different statutory defenses. Section 15 provides that the controlling person is liable unless they "had no knowledge or reasonable ground to believe in the existence" of the fraud, whereas Section 20(a) provides that the controlling person is liable unless they "acted in good faith and did not directly or indirectly induce" the fraud.

In spite of the clearly different plain language of the two sections, courts generally treat them as "parallel provisions" that are "interpreted in the same manner." In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 660 (S.D.N.Y. 2007).

Under both provisions, a plaintiff must plead and prove:

- A primary violation
- The defendant's control over the violator

In some courts, including the Second and Third Circuits, a plaintiff must also plead and prove:

- The defendant's "culpable participation" in the violation

See ATSI Communs, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007); Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 484–85 (3d Cir. 2013).

As discussed below, courts have disagreed as to whether culpable participation is an element of the plaintiff's prima facie claim or whether it instead constitutes an affirmative defense available to the defendant. Accordingly, you should review the case law in your relevant jurisdiction in order to best prepare an effective defense.

**Primary Violation**

In order to pursue control person theory, a plaintiff must first establish a primary violation. Under the Securities Act, this means a violation of Sections 11 (15 U.S.C. § 77k) or 12 (15 U.S.C. § 77l). Section 11 provides for liability for material misstatements or omissions within a registration statement. Section 12(a)(2) imposes similar liability for material misstatements or omissions in a prospectus or oral communication, and Section 12(a)(1) imposes liability for violations of the registration requirements of Section 5 of the Securities Act.

Under the Exchange Act, a primary violation typically means a violation of Section 10(b) (15 U.S.C. § 78j) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder, the general securities fraud provision which imposes liability for any act or omission that results in fraud "in connection with the purchase or sale of any security." However, the primary violation may also be a violation of any other Exchange Act provision.

Because a control person claim derives from a primary violation, defense counsel typically focuses on defending against the primary violation as a first line of defense. In the context of a motion to dismiss, defendants' briefs often include an argument that the plaintiff failed to adequately plead a control person claim adequately because the complaint fails to plead any primary violation adequately. Given the page limits for briefs imposed by most courts, as a practical matter it often makes sense to devote much of the brief to defending against the primary violation. If the court dismisses the primary violation claim, the court will dismiss the control person claim with it.

For additional information on liability provisions for primary violation under the Securities Act and potential defenses, see Securities Act and Exchange Act Liability Provisions, Section 11 Elements and Defenses under the Securities Act, Section 12(a)(2) Elements and Defenses under the Securities Act, Defense Strategies under the Securities Act, and Jurisdictional Defenses under the Securities Act.

For additional information on liability provisions for primary violation under the Exchange Act and potential defenses, see Securities Act and Exchange Act Liability Provisions, Jurisdictional Defenses under the Exchange Act, Reliance in Securities Fraud Actions, Materiality in Securities Fraud Actions, Scienter Defenses in Securities Fraud Actions, Securities Litigation under the Private Securities Litigation Reform Act (PSLRA), and U.S. Supreme Court Securities Litigation Decisions.

**Defendant's Control over the Violator**

Once the plaintiff establishes a primary violation, they must establish that the defendant had control over the primary violator. The term "control" is not defined in the statutes and courts have reached different conclusions as to what may constitute control. Again, you should be mindful of the particular jurisdiction where the case has been filed.

Some courts rely on the SEC's definition of control, which does not require the defendant to exercise actual control over the alleged violation. Instead, Rule 405 of the Securities Act (17 C.F.R. § 230.405) defines the term control as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." See Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1108–09 (10th Cir. 2003). Under this definition, an executive who is not involved in the company's alleged securities fraud but who possesses ultimate management authority might still be liable as a control person. See, e.g., In re Allstate Life Ins. Co. Litig., 2013 U.S. Dist. LEXIS 29046, at *23–24 (D. Ariz. Mar. 1, 2013) (denying control person's motion for summary judgment on the ground that, although he "did not participate or was unaware of the alleged misstatements," his "position as chairman obligated him to 'supervise and control all of the business and affairs of the corporation . . . '").

On the other hand, some courts require that the defendant have "exercised actual power or control over the primary violator." See Ballesteros v. Galectin Therapeutics, Inc. (In re Galectin Therapeutics, Inc.), 843 F.3d 1257, 1276 (11th Cir. 2016). Under this definition, an executive who has general management authority over the violator but did not actually exercise that authority may not be held liable. See, e.g., Abdo v. Fitzsimmons, 2017 U.S. Dist. LEXIS 228340, at *67–69 (N.D. Cal. Nov. 3, 2017) (dismissing control person claim against board members on the ground that general allegations about high-level positions were insufficient to show that they exercised control over the individual violators—the CEO and the chair of the audit committee).

Still other courts have employed a definition of control where a defendant must (1) actually exercise control over the general operations of the violator and (2) possess, but not necessarily exercise, the power to determine the specific acts or omissions underlying the violation. See Lustgraaf v. Behrens, 619 F.3d 867, 873–74 (8th Cir. 2010). Under this definition, if an executive exercised general authority over the violator, liability may depend on whether the executive possessed the power to control the acts that gave rise to the alleged primary violation (whether or not it was actually exercised).

Another issue related to the definition of control is the extent to which ownership or governance of the primary violator may give rise to control person liability. Generally, courts have held that a minority ownership interest in the primary violator or minority membership on its board, by themselves, do not give rise to control. See, e.g., In re Deutsche Telekom Ag Sec. Litig., 2002 U.S. Dist. LEXIS 2627, at *18–20 (S.D.N.Y. Feb. 20, 2002); In re Flag Telecom Holdings Ltd. Sec. Litig., 352 F. Supp. 2d 429, 457–59 (S.D.N.Y. 2005). Where the defendant held a majority ownership interest along with the ability to appoint a majority of the primary violator's directors, however, at least one court has sustained control person allegations against that defendant. See, e.g., No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 945–46 (9th Cir. 2003).

As discussed below, because the control element is often subject to the ordinary pleading standard requiring plaintiffs to allege a "short and plain statement of the claim," it may be difficult to rebut control allegations at the pleading stage, particularly if a defendant holds a clear position of power such as a CEO or chief financial officer. Nevertheless, at a later stage of the proceedings, defense counsel should consider moving for summary judgment if a plaintiff does not provide sufficient evidence of defendant's control. See Pleading Standards below for further information.

### Defendant's Culpable Participation

As mentioned above, courts are split as to whether the culpable participation factor is an element of the plaintiff's prima facie case that must be adequately alleged in the complaint or instead an affirmative defense available to the defendant to negate liability. See Lustgraaf, 619 F.3d at 877 (listing cases). Additionally, courts that do treat culpable participation as a prima facie element also diverge as to whether the element is required for both Section 15(a) and Section 20(a) claims, or only for Section 20(a) claims. Finally, courts have employed varying definitions as to the meaning of culpable participation.

*Prima Facie Element*

Some courts have held that culpable participation is a prima facie element of a plaintiff's claim. The Second and Third Circuits have indicated that it is a required element of a Section 20(a) claim. See ATSI Communs, Inc., 493 F.3d at 108; Belmont, 708 F.3d at 484–85. Although the D.C. Circuit has not decided the issue, two decisions from the District of Columbia have held that it is a required element as well. See Evergreen Equity Trust v. Fannie Mae (In re Fannie Mae Sec.), 503 F. Supp. 2d 25, 43–46 (D.D.C. 2007); Freeland v. Iridium World Communs, Ltd., 545 F. Supp. 2d 59, 83–84 n.5 (D.D.C. 2008).

Where courts have recognized culpable participation as a prima facie element, they also have split as to whether it is an element for control person claims under Section 15 and Section 20(a), or only Section 20 claims alone. See, e.g., In re Vivendi Universal, S.A., 381 F. Supp. 2d 158, 187–88 (S.D.N.Y. 2003) (collecting S.D.N.Y. cases). This distinction appears to arise from the text of the statutes. Although Section 20(a) excludes controlling persons who "act[] in good faith" and "d[o] not directly or indirectly induce" the violation, Section 15 excludes only controlling persons who have "no knowledge of or reasonable ground to believe in" the violation. See In re Refco, 503 F. Supp. 2d at 660 n.43.

As a prima facie element, courts have used varying definitions for culpable participation. For example, some courts have defined it as "at least recklessness" but less than "conscious misconduct." See, e.g., Evergreen Equity Trust, 503 F. Supp. 2d at 44–45; see also In re Virtus Inv. Partners, Inc. Sec. Litig., 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (interpreting culpable participation as "a scienter requirement . . . at least approximating recklessness in the section 10b context . . ."). The Third Circuit has required that a defendant must have knowledge of and "consciously intend to aid" the securities law violation. See Belmont, 708 F.3d at 485. In all events, the term requires evidence of the defendant's state of mind, and without it, the control person claim is likely to fail.

*Affirmative Defense*

Some courts have held that culpable participation constitutes an affirmative defense. See, e.g., Ark. Pub. Emples. Ret. Sys. v. Harman Int'l Indus. Inc. (In re Harman Int'l Indus., Inc. Sec. Litig.), 791 F.3d 90, 111 n.1 (D.C. Cir. 2015) (listing cases). In those instances, courts have held that the plaintiff only needs to establish a primary violation and that the defendant had control over the violator. The burden then shifts to the defendant to prove that it acted in good faith and, per Section 20 of the Exchange Act, "did not directly or indirectly induce the act or acts constituting the violation or cause of action." Good faith

has been construed in this context to mean the absence of recklessness or scienter. See S.E.C. v. Todd, 642 F.3d 1207, 1224 (9th Cir. 2011); G.A. Thompson & Co. v. Partridge, 636 F.2d 945, 959 (5th Cir. 1981). Although this may seem to imply that the control person must prove a negative, some courts have held that a control person must show that it "d[id] enough to prevent the violation." G.A. Thompson & Co., 636 F.2d at 959. This inquiry may focus on what internal controls were put in place to guard against the risk that the primary violator would commit securities violations. Id.

Although a number of circuit courts have treated culpable participation as an affirmative defense, several circuits have not yet decided the issue, leaving it to the district courts to decide. See, e.g., In re Harman, 791 F.3d at 112; Brody v. Stone & Webster, Inc. (In re Stone & Webster, Inc., Sec. Litig.), 414 F.3d 187, 194 n.4 (1st Cir. 2005).

If your relevant jurisdiction treats culpable participation as an affirmative defense, you may need to marshal evidence regarding any steps that the control person took to prevent violations of the securities laws—including any policies or internal controls that were in place—in order to show that the control person acted in good faith.

## Pleading Standards

Under the Private Securities Litigation Reform Act (PSLRA), 104 P.L. 67, and Rule 9(b) of the Federal Rules of Civil Procedure (U.S.C.S. Fed Rules Civ Proc R 9), a heightened pleading standard applies to allegations that the defendant acted with a fraudulent state of mind. Under this heightened standard, a complaint must "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind." See 15 U.S.C. § 78u-4(b)(2); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007). This imposes a greater burden than the ordinary notice pleading standard of Rule 8(a), which requires only a "short and plain statement of the claim." U.S.C.S. Fed Rules Civ Proc R 8(a). For more information on the PSLRA, see Securities Litigation under the Private Securities Litigation Reform Act (PSLRA), Safe Harbors for Forward-Looking Statements, and Forward-Looking Statements Safe Harbor Checklist.

Courts have held that the heightened pleading standard applies to the first element of a control person claim where the primary violation requires proof of scienter (e.g., claims under Section 10(b) of the Exchange Act). This is because the element involves proving the state of mind of the violator. See Lustgraaf, 619 F.3d at 874 ("Because the primary violation in this case is [the controlled person's] alleged violation of § 10(b) of the Securities Exchange Act . . . Appellants must satisfy the PSLRA's heightened pleading requirements."). Those defending against control person claims must consider the plaintiff's theory of scienter for the primary violator, which in many cases is the corporation itself. For example, some courts have held that corporate scienter can be inferred only from the mental state of the person who makes the allegedly misleading statement. Other courts have endorsed a "collective scienter" theory, which permits an inference of corporate scienter without regard to a specific individual defendant.

The PSLRA's heightened pleading standard is often not applied to the second element of a control person claim—the defendant's control over the violator—because that element does not require proof of the defendant's state of mind. See, e.g., In re Refco, 503 F. Supp. 2d at 660. Under such reasoning, the plaintiff may plead this element under the ordinary notice pleading standard of Rule 8(a).

Because culpable participation requires some showing that the control person acted with a particular state of mind, the courts that treat culpable participation as a prima facie element apply the heightened PSLRA pleading standard to this third prong. See, e.g., In re Veon Ltd. Sec. Litig., 2018 U.S. Dist. LEXIS 148272, at *58 (S.D.N.Y. Aug. 30, 2018).

## Practical Considerations and Defense Strategies

This section provides arguments and strategies to consider when defending against a control person claim.

### Elements and Standards

Given the nature of control person claims and how courts have construed their elements and standards, you may have some latitude when defending your client to advocate for particular elements and standards to apply in a particular case. Therefore, it is critical that you review the case law in the relevant jurisdiction in order to evaluate:

- How control is determined—whether the defendant must actually exercise power over the violator, and if so, whether the defendant must exercise power over the specific acts underlying the violation or just general operations
- Whether culpable participation is an element of a prima facie claim or an affirmative defense
- If culpable participation is an element, whether it is required for Section 15 claims and Section 20(a) claims or Section 20(a) claims only

- How culpable participation is defined
- What pleading standard applies to each element, including whether the PSLRA's heightened pleading standard applies

These factors may determine whether your defense of the control person claim is successful. Given the range of potential standards and requirements, you should have a strong understanding of these issues at the outset of the case to determine your overall litigation and trial strategy.

For example, if the culpable participation factor is an affirmative defense in the given jurisdiction, the defendant will have the burden to establish facts necessary to prevail on that defense. This may have implications for other defenses and strategies, including that it may impact what discovery you pursue in order to lay the groundwork for the defense. You may need to marshal evidence regarding what steps the control person took to minimize the risk of primary violations, as well as the policies, procedures, and systems of internal controls implemented and in effect during the relevant time period. Even prior to litigation, you should counsel control persons to document their oversight of a potential primary violator, including by memorializing the existence of internal controls and communications with management, as well as observing corporate formalities.

In jurisdictions where the burden is on the defendant to assert the affirmative defense that it acted in good faith, you may also consider whether to assert an advice of counsel defense (i.e., that the defendant acted in good faith reliance on the advice of lawyers in connection with the alleged violation). Be mindful, however, that this defense in turn may require you to waive privilege over communications with the lawyers upon whose advice the defendant relied.

### Statute of Limitations

Because control person claims are derivative of the underlying primary violations, the statutes of limitation and statutes of repose applicable to control person claims are the same as those of the primary violation. Private claims for fraud, such as those under Section 10(b) of the Exchange Act, are subject to a two-year statute of limitations and a five-year statute of repose. 28 U.S.C. § 1658(b). Claims brought under Sections 11 and 12(a)(2) of the Securities Act are subject to a one-year statute of limitations and a three-year statute of repose. 15 U.S.C. § 77m. If a plaintiff brings a control person claim based on an underlying violation that is time-barred, you should move to dismiss the claim as untimely.

### Joint Representations

At the outset of a case alleging primary violations against one party and control person claims against another party, you may need to decide whether to jointly represent both the primary violator and the control person. Joint representations may provide benefits and efficiencies in terms of litigation costs and ease of communications but you must remain cognizant of any material adversity of interests among the parties to the joint representation. In many situations, the interests of the primary violator and control person are aligned. However, it is imperative that you assess these issues at the outset of any joint representation and continually reassess as the case progresses beyond the pleading stage. Should a material adversity arise, separate counsel for the primary violator and control person may be necessary. You should discuss such contingencies with your clients at the time of the engagement. As with any representation, you should always know and adhere to your legal and ethical responsibilities.

### Insurance

You should advise executives and other control persons to consider the risk of control person liability when obtaining directors and officers liability (D&O) insurance. In the event of a lawsuit, D&O insurance may protect individual defendants from personal losses and cover the costs of legal fees and other expenses. Accordingly, control persons should consult with insurance professionals to ensure that their policies are sufficiently tailored in light of potential control person claims. For additional information on D&O insurance, see [Director and Officer (D&O) Insurance](#) and [Directors and Officers (D&O) Liability Insurance Selection Checklist](#).

**Alexander C. Drylewski, Partner, Skadden, Arps, Slate, Meagher & Flom LLP**

Alex Drylewski is co-chair of Skadden's Web3 and Digital Assets Group. His practice focuses on high-stakes complex commercial litigation around the world, and he has represented companies and individuals across nearly every type of industry and dispute, including high-profile commercial litigation involving emerging technologies, government investigations, securities class actions, trials and appeals.

Mr. Drylewski was named a Rising Star by the *New York Law Journal* for 2020 and a Future Star by *Benchmark Litigation* for 2021. He also has been named to Lawdragon 500 Leading Lawyers in America. Mr. Drylewski was recognized by *The American Lawyer* in 2021 for representing Capital One in appellate litigation related to the taxi and ride-hail industries. Additionally, he was recognized twice in 2020 by *The American Lawyer* for his representations of Lyft Inc. in successfully invalidating a new "cruising cap" rule in New York City, and Maker Ecosystem Growth Foundation in litigation relating to the MakerDAO blockchain platform.

This document from Practical Guidance®, a comprehensive resource providing insight from leading practitioners, is reproduced with the permission of LexisNexis®. Practical Guidance includes coverage of the topics critical to practicing attorneys. For more information or to sign up for a free trial, visit lexisnexis.com/practical-guidance. Reproduction of this material, in any form, is specifically prohibited without written consent from LexisNexis.

