UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Rose Maio and Michael Maio, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:22-CV-10578-AK |
| TD Bank, N.A., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**A. KELLEY, D.J.**

Plaintiffs Rose Maio ("Mrs. Maio") and Michael Maio ("Mr. Maio") bring this suit against Defendant TD Bank, N.A. ("TD Bank"), in connection with three wire transfers Plaintiffs sent to a third party in response to an internet scam. Plaintiffs allege that in allowing the wire transfers, TD Bank breached its fiduciary duty, was negligent and grossly negligent, recklessly and intentionally inflicted emotional distress, and violated the Massachusetts Consumer Protection Act ("Chapter 93A"). [Dkt. 1-1 at ¶¶ 78-89]. The action was removed to federal court on the basis of diversity jurisdiction, and TD Bank filed a motion to dismiss, which Plaintiffs oppose. [See Dkt. 1; Dkt. 17; Dkt. 20]. For the following reasons, TD Bank's motion to dismiss [Dkt. 17] is **GRANTED IN PART** and **DENIED IN PART.**

**I. BACKGROUND**

Plaintiffs are retired octogenarians and have been customers of TD Bank for over a decade. [Dkt. 1-1 at ¶¶ 7-8]. On August 20, 2020, Plaintiffs received an email from NTS IT Care ("NTS"), an organization claiming to be an IT company and claiming Plaintiffs had an

1

account with it. [Id. at ¶ 9]. NTS claimed to have withdrawn funds for a subscription fee from the Plaintiffs' bank account and informed Plaintiffs that it needed access to their computer to process a refund. [Id. at ¶¶ 10-12]. Plaintiffs granted NTS access to their computer, and NTS then informed Plaintiffs that it accidentally transferred $40,000 into Plaintiffs' TD Bank account when processing the reimbursement. [Id. at ¶ 13-14]. Plaintiffs agreed to return the $40,000, and NTS provided wire instructions to send the money back. [Id. at ¶¶ 12-16]. That same day, Mr. Maio and his daughter, Sandra Maio ("Ms. Maio") went to TD Bank's branch office in Peabody, Massachusetts, and asked the teller to initiate a wire transfer. [Id. at ¶¶ 17-18]. When the bank teller asked why Mr. Maio was sending the money, Ms. Maio explained that money had inadvertently been sent to her parents and they were sending the money back. [Id. at ¶¶ 18-19]. At Mr. Maio's request, the bank teller confirmed that there was enough money in their checking account to initiate the wire transfer. [Id. at ¶¶ 20-21]. TD Bank authorized the wire transfer of $39,500 from Plaintiffs' checking account to an account with Bangkok Bank in Lat Phrao, Thailand.[1] [Id. at ¶¶ 20-21]. Prior to this transfer, Plaintiffs had never sent money internationally. [Id. at ¶ 23].

On August 21, 2020, Plaintiffs received a call from NTS, who stated that two more transfers, totaling $100,000, had been deposited into their account and requested Plaintiffs return the money in two transfers of $49,500.[2] [Id. at ¶ 24]. Mrs. Maio and Ms. Maio went to TD Bank's branch office in Rowley, Massachusetts, and asked the bank teller to transfer $99,000. [Id. at ¶ 26]. The bank teller asked why they were initiating this transfer, and Mrs. Maio and Ms. Maio explained that a business had erroneously transferred the money into the account. [Id. at ¶¶ 27-29]. The bank teller commented that it was odd that a business would make such a

---

[1] The parties subtracted $500 to cover the cost of the wire transfer. [Dkt. 1-1 at ¶ 22 n.2].
[2] The parties subtracted $500 to cover the cost of each wire transfer. [Id. at ¶ 25 n.3].

mistake but helped fill out the wire transfer form to transfer the funds to the same location. [Id. at ¶¶ 29, 31]. While Plaintiffs believed they authorized transfers only from their checking account, they later learned the first transfer on August 20, 2022, had exhausted their checking account, and the funds withdrawn on August 21, 2022, were from their predominantly unused home equity line of credit ("HELOC") and exhausted that account. [Id. at ¶¶ 30, 32-33, 52].

On August 25, 2020, Plaintiffs were again informed by NTS of an accidental deposit of $40,000. [Id. at ¶ 34]. Plaintiffs and Ms. Maio entered TD Bank's branch in Peabody, Massachusetts, planning to make another wire transfer, and were helped by an assistant manager, who inquired about the wire transfers. [Id. at ¶¶ 34-37]. Plaintiffs explained the situation, and Mr. Maio asked if $40,000 had been transferred into their account. [Id. at ¶¶ 38-39]. The assistant manager stated the money was "pending" and therefore could not be withdrawn by Plaintiffs because it could be "called back" by the transferring entity. [Id. at ¶¶ 40-41]. The assistant manager suggested Plaintiffs wait until the $40,000 posted to their account before transferring the funds. [Id. at ¶ 42]. Plaintiffs withdrew their request to transfer the funds. [Id.]. That was the first time Plaintiffs learned that money could appear in their account as "pending." [Id. at ¶ 40]. In total, Plaintiffs transferred $138,650 from their TD accounts. [Id. at ¶ 50].

On August 26, 2020, Plaintiffs and Ms. Maio had a meeting with a supervisor and the assistant manager from TD Bank's branch in Peabody, Massachusetts, where "together they all realized that the Maios had been the victims of a scam." [Id. at ¶¶ 47-48]. TD Bank asked Plaintiffs to file a police report, which they did, and assured Plaintiffs it would open a fraud investigation. [Id. at ¶¶ 53-54]. TD Bank's investigation ultimately concluded that TD Bank had no responsibility for the scheme perpetuated against Plaintiffs. [Id. at ¶ 57]. TD Bank informed Plaintiffs that there would be no duty to pay the HELOC until the investigation was

3

concluded, yet it sent a collection notice prior to the investigation's conclusion. [Id. at ¶ 65]. Plaintiffs have lost sleep and suffered from anxiety and depression as a result of this ordeal. [Id. at ¶¶ 66-67].

In November 2021, Plaintiffs filed a complaint in state court, alleging that TD Bank breached its fiduciary duty (Counts I and II); was negligent, resulting in property loss and emotional distress (Counts III and IV); was grossly negligent, resulting in property loss and emotional distress (Counts V and VI); recklessly inflicted emotional distress (Counts VII and VIII); intentionally inflicted emotional distress (Counts IX and X); and violated Chapter 93A (Counts XI and XII). [Id. at ¶¶ 78-89]. Plaintiffs seek damages, including double or treble damages for Counts XI and XII, and attorney fees and costs. [Id. at 8]. In April 2022, the case was removed to this Court, and Defendants filed a motion to dismiss [Dkt. 17], which Plaintiffs oppose [Dkt. 19].

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine

4

whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

## III. DISCUSSION

Plaintiffs' claims require the Court to evaluate whether TD Bank can be held liable for Plaintiffs' financial losses after they fell victim to an internet scam perpetrated by a third party. TD Bank contends that it cannot. First, TD Bank argues that Plaintiffs' claims for breach of fiduciary duty (Counts I and II) fail as a matter of law because TD Bank is not a broker-dealer or agent that provided investment advice to Plaintiffs. Second, TD Bank claims that it was not negligent (Counts III and IV) or grossly negligent (Counts V and VI) because its employees did not have a duty to monitor routine wire transfers and the economic loss doctrine bars such claims here. Third, TD Bank avers that Plaintiffs fail to allege extreme and outrageous conduct to satisfy reckless (Counts VII and VIII) and intentional (Counts IX and X) infliction of emotional distress. Finally, TD Bank argues that it did not engage in an unfair or deceptive business practice, nor did it cause Plaintiffs' harm, and therefore it cannot to be held liable under Chapter 93A (Counts XI and XII).[3]

---

[3] TD Bank argues that Plaintiffs' common law claims are preempted under Article 4A of the Uniform Commercial Code. "Article 4A precludes customers from bringing common law claims inconsistent with the statute," but common law claims are not "per se inconsistent," and "[c]laims that . . . are not about the mechanics of how a funds transfer was conducted may fall outside of this regime." Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 89 (2nd Cir. 2010). While some of Plaintiffs' claims are about "the mechanics of how a funds transfer was conducted," id., such as Plaintiffs' allegations that TD Bank failed to act in a timely manner to freeze the wire transfers in Bank of Bangkok [Dkt. 1-1 at ¶ 62], many of Plaintiffs' claims are not, including their allegations that TD Bank failed to notify Plaintiffs of the "pending" status of the deposits in their account and that TD Bank's internal investigation was not conducted in good faith [id. at ¶¶ 59, 64]. The Court therefore must evaluate the merits of Plaintiffs' claims but limits its analysis to those claims that are not related to "the mechanics of how [the] funds transfer[s] [were] conducted." Ma, 597 F.3d at 89.

5

### A. Breach of Fiduciary Duty (Counts I and II)

It is not entirely clear from the complaint whether Plaintiffs bring a statutory or common law claim for breach of fiduciary duty. While Plaintiffs do claim that a regulation issued by the Massachusetts Securities Division imposes a fiduciary duty on TD Bank, see 950 Mass. Code. Regs. § 12.207 (2020), they also briefly mention a "general fiduciary duty of care" and state merely that the "first [and second] cause of action" is for "[b]reach of [f]iduciary [d]uties." [Dkt. 1-1 at ¶¶ 68-71, 78-79]. As such, the Court considers both statutory and common law claims for breach of fiduciary duty.

Plaintiffs claim TD Bank owed a fiduciary duty pursuant to Section 12.207 of the Code of Massachusetts Regulations, see 950 Mass. Code Regs. §12.207, which imposes a duty of care on broker-dealers or agents. A broker-dealer is defined as "[a] brokerage firm that engages in the business of trading securities for its own account (i.e., as a principal) before selling them to customers." Black's Law Dictionary (11th ed. 2019). An agent "includes every individual who represents or acts for a broker-dealer in effecting or attempting to effect transactions in securities." 950 Mass. Code. Regs. § 14.401 (2019). Plaintiffs do not allege TD Bank is a broker-dealer or an agent, nor do the facts Plaintiffs do allege suggest such a role. Therefore, TD Bank did not owe Plaintiffs a statutory fiduciary duty. See id.

To state a common law claim for breach of fiduciary duty, Plaintiffs must allege the following with relation to TD Bank: "(1) existence of a fiduciary duty arising from a relationship between the parties, (2) breach of that duty, (3) damages, and (4) a causal relationship between the breach and the damages." Szulik v. State St. Bank & Tr. Co., 935 F. Supp. 2d 240, 275 (D. Mass. 2013) (citation omitted). Plaintiffs allege that TD Bank owed "a fiduciary duty with respect to the subject wire transfers," a "general fiduciary duty of care," and a "fiduciary duty of

6

full disclosure" because Plaintiffs are customers of TD Bank. [Dkt. 1-1 at ¶¶ 7, 69-71]. However, "the relationship between a bank and its customer is generally one of debtor and creditor and does not itself, without more, establish a fiduciary duty." Szulik, 935 F. Supp. 2d at 275 (citation omitted). In other words, the typical relationship between a bank and a customer is a business relationship rather than a fiduciary one. See Nat'l Shawmut Bank v. Hallett, 78 N.E.2d 624, 628 (Mass. 1948); Snow v. Merchants Nat'l Bank, 35 N.E.2d 213, 360-61 (Mass. 1941) (finding that a bank officer giving investment advice to a customer did not establish a fiduciary duty). Such was the relationship between Plaintiffs and TD Bank, and the fact that Plaintiffs were customers of TD Bank for over a decade is insufficient to establish the existence of a fiduciary relationship. [See Dkt. 1-1 at ¶ 7]. Without more, TD Bank owed no fiduciary duty to Plaintiffs.

While a fiduciary duty may exist "when one reposes faith, confidence, and trust in another's judgment and advice . . . unilateral trust or confidence does not automatically create a fiduciary relationship," and the "trust or confidence must be accepted as well." Szulik, 935 F. Supp. 2d at 275 (citations omitted). The complaint does not indicate that Plaintiffs sought or received advice from TD Bank regarding the wire transfer; Plaintiffs' questions were generally limited to asking for confirmation of certain facts, which does not go beyond a mere business relationship. Cf. Mansor v. JPMorgan Chase Bank, N.A., 183 F. Supp. 3d 250, 266, 274 (D. Mass. 2016) (explaining that a "non-discretionary" account in which "the customer makes the investment decisions" and the bank "merely receives and executes the customer's orders . . . does not give rise to general fiduciary duties"). Plaintiffs fail to establish a relationship of accepted "trust or confidence" here, and the facts instead indicate that TD Bank and Plaintiffs had a mere "arm's length business relationship," not a fiduciary one. See id. ("[A] business relationship

7

'does not become a general fiduciary relationship merely because an uninformed customer reposes trust in [another].'"); Flaherty v. Baybank Merrimack Valley, N.A., 808 F. Supp. 55, 64 (D. Mass. 1992) ("[O]ne party cannot unilaterally transform a business relationship into a fiduciary relationship by reposing trust and confidence in another."). Such allegations do not impose a fiduciary duty "to counsel or make disclosures" on TD Bank.[4] Flaherty, 808 F. Supp. at 64.

The Court grants TD Bank's motion to dismiss as to Counts I and II.

### B. Negligence (Counts III and IV) and Gross Negligence (Counts V and VI)

Plaintiffs bring claims for negligence and gross negligence, alleging TD Bank deviated from the minimum standard of care. [Dkt. 1-1 at ¶¶ 58, 80-83]. To prevail on such claims, a plaintiff "must show: (1) a legal duty owed by [the] defendant to [the] plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Jorgensen et al. v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). To determine whether TD Bank was negligent or grossly negligent is "a fact-based inquiry," and the Court must consider TD Bank's "conduct as a whole." Szulik, 935 F. Supp. 2d at 269.

Negligence claims may be barred by the economic loss doctrine. That doctrine "bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 46 (Mass. 2009). Here, Plaintiffs allege that they have "lost most of their life savings, lost sleep, and have suffered anxiety and depression" as a result of TD Bank's actions. [Dkt. 1-1 at ¶ 67]. While some cases suggest that

---

[4] Moreover, Plaintiffs' Personal Deposit Account Agreement expressly states that the "Agreement and the deposit relationship do not create a fiduciary, quasi-fiduciary, or special relationship between [Plaintiffs] and [TD Bank]." [Dkt. 18-3 at 24].

8

there is a "physical injury requirement" to economic loss doctrine, see In re TJX Cos. Retail Sec. Breach Litig., 564 F.3d 489, 498-99 (1st Cir. 2009), others suggest that allegations of emotional harm may be sufficient to state physical harm, see Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 189 & n.8 (D. Mass. 2006) (noting that plaintiffs "allege[d] more than economic harm" when they alleged that the defendant's "negligence resulted in 'emotional and psychological harm, medical expenses, lost enjoyment of life and economic harm'" and "severe emotional distress manifested by objective symptomology"); McCormick v. Lischynsky, No. 19-10433-FDS, 2019 WL 3429242, at *5 (D. Mass. July 30, 2019) (explaining that the "complaint specially alleges that Sara deliberately absconded with the bulk of Patrick's estate, which caused Dora to suffer 'severe emotional distress, with physical manifestations thereof,'" which "alleges a 'personal injury' sufficient to overcome the economic-loss doctrine" at the motion to dismiss stage). Here, Plaintiffs' allegations of lost sleep, anxiety, and depression are sufficient to satisfy the exception to the economic loss doctrine at this stage of the proceedings.

The question then becomes whether TD Bank owed Plaintiffs a duty of care. The "existence of a legal duty" is an "essential element of every negligence claim," Afarian v. Mass. Elec. Co., 866 N.E.2d 901, 905 (Mass. 2007), and a "duty of care can be established from the relationship between the parties," Grundy v. HSBC Bank USA, N.A., No. 17-11449-PBS, 2020 WL 1326269, at *36 (Feb, 10, 2020). Plaintiffs ground their complaint in allegations of *fiduciary* duty, not a general duty of care. [See Dkt. 1-1 at ¶¶ 68-71]. However, as explained, the relationship between Plaintiffs and TD Bank is one of creditor and debtor, and Massachusetts courts have not imposed a general duty on banks "to counsel or make disclosures to the

9

customer."[5]  Flaherty, 808 F. Supp. at 64.  Still, the lack of a *fiduciary* duty "does not necessarily mean that no duty is owed," and the "real question" is whether the defendant owes a duty to a plaintiff "such that if [the defendant] negligently performed, the [plaintiff] *ought* have a negligence claim against it."  Islam, 432 F. Supp. 2d at 195.

Plaintiffs' claim that TD Bank failed to inform them that they were transferring money from their home equity line of credit ("HELOC") is the only allegation that could support a negligence claim here.  [See Dkt. 1-1 at ¶¶ 32, 73].  For Plaintiffs to allege a viable negligence claim on that basis, the Court must conclude that TD Bank had a duty to disclose that two of the withdrawals for the wire transfers originated from Plaintiffs' largely unused HELOC.  "While no rule can be laid down that will cover every transaction between a bank and its depositor, it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties, and the established or known usages of banking business."  Leather Mfrs.' Nat. Bank v. Morgan, 117 U.S. 96, 116 (1886).  The same can be said for the bank.  Plaintiffs have alleged sufficient facts for the Court to conclude, at this stage, that such a duty exists here, as Plaintiffs state that they believed "they only authorized transfers from their TD checking account" and, indeed, had previously been informed that they had enough money in their checking account for a large withdrawal.  [Dkt. 1-1 at ¶¶ 20-21, 30].  Under these circumstances, it is no great stretch to conclude that TD Bank owed a duty to Plaintiffs to inform them that the wire transfer would be withdrawn from a largely unused HELOC account rather than their checking account.  Morgan, 117 U.S. at 116; see McCormick, 2019 WL 3429242, at *5 (explaining that the existence of a

---

[5] Indeed, "Massachusetts courts generally view the commercial bank-customer relationship as [a] contractual one."  Kriegel v. Bank of Am., N.A., Nos. 07-CV-12246-NG, 08-11598-NG, 2010 WL 3169579, at *13 (D. Mass. Aug. 10, 2010).  Plaintiffs, however, do not bring any contract claims in their complaint.

duty of care "is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy"); see also Valente v. TD Bank, N.A., 82 N.E.3d 1082, 1087 (Mass. App. Ct. 2017) ("The question before us is not whether the bank owes a duty of care to its customers, for it most certainly does.").

Plaintiffs' gross negligence claims, however, fall short. Gross negligence is "substantially and appreciably higher in magnitude than ordinary negligence" and is defined as "indifference to present legal duty and . . . utter forgetfulness of legal obligations so far as other persons may be affected." Altman v. Aronson, 121 N.E. 505, 506 (Mass. 1919). That is, gross negligence is "an act or omission respecting [the] legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care." Hayes v. Town of Dalton, No. 3:21-CV-30055-KAR, 2022 WL 488466, at *11 (D. Mass. Feb. 17, 2022) (alteration in original) (quoting Altman, 121 N.E. at 506). Plaintiffs simply do not allege facts supporting an act or omission of such "aggravated character" here.

The Court denies TD Bank's motion to dismiss as to Counts III and IV, though Plaintiffs' negligence claims are limited to the withdrawal of funds from their HELOC account, and grants TD Bank's motion to dismiss as to Counts V and VI.

### C. Reckless (Counts VII and VIII) and Intentional (Counts IX and X) Infliction of Emotional Distress

Plaintiffs assert claims against TD Bank for reckless and intentional infliction of emotional distress. Massachusetts courts "have placed reckless and intentional infliction of emotional distress in the same category," and the Court therefore evaluates them through the same lens. Nancy P. v. D'Amato, 517 N.E.2d 824, 827 (Mass. 1988). Plaintiffs must show

> (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and

11

>was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)). It is well established that "the door to recovery should be opened narrowly and with due caution," Agis, 355 N.E.2d at 318, and "liability is imposed only where the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 380 (1st Cir. 1991). This is not such a case, at least with respect to TD Bank's actions.

Plaintiffs claim emotional distress as a result of TD Bank's failures to prevent the loss of their life savings.[6] [Dkt. 1-1 at 67]. However, the complaint is devoid of any facts raising a plausible claim that TD Bank intentionally caused Plaintiffs to transfer their money to a third party. Indeed, the facts alleged demonstrate that TD Bank merely carried out Plaintiff's *express* instructions to effectuate a wire transfer. Even if such conduct is considered reckless, the Plaintiffs' allegations regarding TD Bank's actions do not suggest "extreme and outrageous" conduct giving rise to liability for the resulting emotional distress. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d, 1012, 1021 (1st Cir. 1988) ("[C]onduct that is intentional or reckless and causes severe emotional distress does not *ipso facto* constitute extreme and outrageous conduct."). Here, Plaintiffs allege the bank tellers should have inquired further about the circumstances surrounding the wire transfers, which does amount to conduct going "beyond all possible bounds of decency," such that it is "utterly intolerable in a civilized community." Limone, 579 F.3d at

---

[6] Plaintiffs brings claims for reckless and intentional infliction of emotional distress. [Dkt. 1-1 at ¶¶ 84-87]. Their opposition to the motion to dismiss, however, discusses negligent infliction of emotional distress. [Dkt. 20 at 6, 9-11]. The Court is bound by the complaint.

12

94 (quoting Agis, 355 N.E.2d at 318-19). Moreover, lost sleep, anxiety, and depression do not amount to emotional distress that is "severe and of a nature that no reasonable man could expect to endure it." Id. (quoting Agis, 355 N.E.2d at 318-19); see also Kennedy v. Town of Billerica, 617 F.3d 520, 530 (1st Cir. 2010) (emphasizing "the kind of distress that 'no reasonable man could be expected to endure' as opposed to mere 'emotional responses including anger, sadness, anxiety, and distress'").[7]

The Court grants TD Bank's motion to dismiss as to Counts VII-X.

### D. Chapter 93 A (Counts XI and XII)

Plaintiffs claim TD Bank violated Chapter 93A, which prohibits unfair and deceptive business practices, when its employees failed to notify Plaintiffs that the deposits were pending and not posted into their account; failed to notify Plaintiffs that the money was withdrawn from their HELOC account; failed to detect the suspicious nature of the transfers; failed to freeze the wire transfers in Bank of Bangkok and call back their money; failed to conduct an internal investigation in good faith; and sent Plaintiffs a collection notice regarding their HELOC. [Dkt. 1-1 at ¶¶ 59-64]. To state a claim under Chapter 93A, a plaintiff must show that: (1) the defendant engaged in trade or business and committed an unfair or deceptive act; (2) this act resulted in economic injury to the plaintiff; and (3) there is a casual connection between the unfair practice and the plaintiff's economic injury. Mass. Gen. Laws. ch. 93A, § 9. The crucial issue here is the latter half of the first element—whether TD Bank committed an unfair or deceptive act when authorizing the Plaintiffs' wire transfers.

---

[7] Plaintiffs' cursory allegations regarding TD Bank's investigation into the wire transfers and the HELOC collection notice—their only allegations regarding TD Bank's actions post-wire transfers—are simply not enough to state plausible claims of negligence, gross negligence, or reckless or intentional infliction of emotional distress. See Squeri v. Mount Ida Coll., 954 F.3d 56, 65 (1st Cir. 2020) (explaining that a motion to dismiss may be granted when the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture").

13

To determine whether conduct is "unfair" under Chapter 93A, courts consider several factors, including (1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (citation omitted). "To rise to the level of an 'unfair' act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature." Id.; see also Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014). "An act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" Walsh, 821 F.3d at 160 (quoting Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476, 486–87 (2004)). Chapter 93A also requires "that there must be a causal connection between the defendant's deception and the plaintiff's loss." King v. Wells Fargo Bank, N.A., No. 19-CV-10065-ADB, 2019 WL 3717677, at *4 (D. Mass. Aug. 7, 2019).

Despite their many allegations of TD Bank's shortcomings, Plaintiffs do not allege that TD Bank deceived or misled them into making the wire transfers. [See Dkt. 1-1 at ¶¶ 59-64]. On August 20, 2020, the bank teller confirmed Plaintiffs had enough money in their account, which was accurate at the time of that transaction. On August 21, 2020, Plaintiffs did not ask the bank teller if there was enough money in their account for the wire transfers, which account the money was coming from, or whether money had, in fact, been deposited into their account. [See Dkt. 1-1 at ¶¶ 26-32]. TD Bank did not mislead Plaintiffs and merely authorized the transactions at Plaintiffs' request. Such acts are neither unfair nor deceptive under Chapter 93A. And even if the actions by TD Bank "created an environment . . . in which fraudulent conduct was more likely to occur," the causation element is not met because "the actual loss sustained by the

14

[Plaintiffs] was caused by the criminal act of a third-party who absconded with the funds." King, 2019 WL 3717677, at *4. The Court therefore grants TD Bank's motion to dismiss as to Counts XI and XII.[8]

## IV. CONCLUSION

For the foregoing reasons, TD Bank's motion to dismiss [Dkt. 17] is **GRANTED IN PART** and **DENIED IN PART**. Counts I-II and V-XII are **DISMISSED**. Counts III and IV remain.

**SO ORDERED.**

Dated: March 10, 2023

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge

---

[8] While TD Bank argues that Plaintiffs' Chapter 93A claims are barred by the economic loss doctrine [see Dkt. 18 at 10-11], "Massachusetts courts have generally held that the economic loss doctrine does not bar recovery in actions brought under Chapter 93A," Cummings v. HPG Intern, Inc., 244 F.3d 16, 26 n.3 (1st Cir. 2001); see also Logan Equipment Corp. v. Simon Aerials, Inc., 736 F. Supp. 1188, 1198 (D. Mass. 1990).