UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ ) | | |
| DOUGLAS ROSENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 23-10441-FDS |
| | ) | |
| MASS MUTUAL LIFE INSURANCE | ) | |
| CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | |

MEMORANDUM AND ORDER ON
DEFENDANT MASSMUTUAL'S MOTION TO DISMISS

SAYLOR, C.J.

This is a market manipulation case. Plaintiff Douglas Rosenberg (acting *pro se*) alleges

that he sustained financial damages by buying stocks recommended by defendant Keith Patrick

Gill, who was employed by defendants Mass Mutual Life Insurance Company and MML

Investors Services LLC (collectively, "MassMutual"). The complaint asserts that Gill's stock-

trading advice amounted to market manipulation in violation of the Securities Exchange Act of

1934 ("Exchange Act"), and other statutes. It also contends that MassMutual is liable for Gill's

alleged violations under its supervisory obligations under the Exchange Act, Financial Industry

Regulatory Authority ("FINRA") rules, and state common law. Plaintiff seeks monetary

damages as compensation for his alleged investment losses.

MassMutual has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for

failing to state a claim upon which relief can be granted. For the following reasons, that motion

will be granted.

I.   **Background**

A.   **Factual Background**

Unless otherwise noted, the facts are drawn from the complaint, documents referred to or attached to that complaint, and other filings concerning defendant's motion to dismiss.[1]

Mass Mutual Life Insurance Company ("MML") is a mutual life-insurance company based in Springfield, Massachusetts.  (Compl. ¶ 9).  MML Investors Services LLC ("MMLIS") is a wholly-owned subsidiary of MML, and is a broker-dealer and investment adviser.  (*Id.* ¶ 8).

Keith Patrick Gill was employed by MassMutual between March 2019 and January 2021, primarily as a "Financial Wellness Director."  (*Id.* ¶ 15(e)).  He was also registered as a broker-dealer agent with MMLIS.  (*Id.* ¶ 15(f)).

At some point in 2020, Gill began creating social-media posts under the pseudonyms "Roaring Kitty" and "DeepFuckingValue" on various websites.  (*Id.* ¶ 24).  These posts included information about Gill's investment positions, including in stock in the retail company GameStop.  (Compl. ¶ 35).  During that period, Gill sought to conceal his identity, including using pseudonyms and various disguises, and did not disclose his employment at MassMutual or as a licensed broker-dealer.  (*Id.* ¶¶ 45, 85, 107).  Using social-media posts, Gill encouraged investors to buy GameStop stock, ostensibly to drive up its price.  (*Id.* ¶¶ 36-61).

Douglas Rosenberg is a resident of Washington state who purchased GameStop stock during the time Gill was posting on social media.  (Compl. ¶ 6).  According to the complaint, Rosenberg "lost 1.2 [m]illion dollars during January and February 2021 d[ue] to Gill's conspiracy to raise the price of [GameStop] Stock."  (*Id.*).

---

[1] On a motion to dismiss, the court may properly consider four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

### B. <u>Procedural Background</u>

Plaintiff first filed suit in this court in February 2023.  Service was accomplished as to MassMutual but not completed as to defendant Gill.  That action was subsequently dismissed in April 2023 but reopened in May 2023 upon plaintiff's motion.  Plaintiff was further given leave to proceed *in forma pauperis*.

The amended complaint asserts seven claims against Gill:  violations of Section 9(a) of the Exchange Act, 15 U.S.C. § 78i(a) (Counts 1-3); violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 of the Securities and Exchange Commission regulations, 17 C.F.R. § 240.10b–5 (Count 5); conspiracy to violate Mass. Gen. Laws ch. 93A (Counts 9 and 10); and violations of the Sherman Act (Count 12).  As of the date of this order, plaintiff has not served defendant Gill.[2]

It also asserts five claims against MassMutual:  violations of Section 9(a) of the Exchange Act, 15 U.S.C. § 78i(a) (Count 4); violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (Count 6); common-law failure to supervise (Count 7); unfair and deceptive acts under the Washington Consumer Protection Act ("WCPA") (Count 8); and common-law aiding and abetting in Gill's purported scheme (Count 11).[3]

In June 2023, MassMutual moved to dismiss the complaint.  In response, plaintiff requested leave to amend the complaint, which was granted.  MassMutual has now renewed its motion to dismiss the complaint for failing to state a claim upon which relief can be granted.

---

[2] Plaintiff has also filed another action in another district against Reddit Inc., Tesla Inc., and Elon Musk alleging similar claims arising from the same events.  *See Rosenberg v. Reddit Inc.*, No. 23-0082 (N.D. Cal. 2023).

[3] The amended complaint mislabeled several of the alleged counts, but the Court will construe them according to the order in which they appear.

II.    **Standard of Review**

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); Fed. R. Civ. P. 8(e); *see also Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000).  However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. June 23, 1997) (per curiam)).

"In a securities case, the complaint must also satisfy the Private Securities Litigation Reform Act's ("PSLRA") heightened pleading requirements." *Shash v. Biogen Inc.*, 84 F.4th 1, 10 (1st Cir. 2023) (citing *Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 222 (1st Cir. 2022)); 15 U.S.C. § 78u-4(b)(2).   In the First Circuit, the PSLRA requirements are generally congruent with the requirements of Fed. R. Civ. P. 9.  *See Greebel v. FTP Software Inc.*, 194 F.3d 185, 193 (1st Cir. 1999).  The basic purposes of that requirement are (1) to give the defendants notice and enable them to prepare a meaningful response; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard the defendants from frivolous charges that might damage their reputations.  *See In re Lupron Mktg. & Sales Pracs. Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003).  Under the heightened pleading requirement of Rule 9(b), a complaint alleging fraud must state "the who, what, where, and when" of the alleged deception.  *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016).

## III.    Analysis

### A.    Exchange Act Claims

#### 1.    Market Manipulation (Count 4)

The complaint asserts that MassMutual violated Section 9(a) of the Exchange Act by failing to adequately supervise Gill, as authorized by 15 U.S.C. § 78i(f).  It does not appear to allege any direct violations by MassMutual, but relies on an "obligation to supervise" arising under FINRA rules, SEC regulations, and "Federal securities laws."  (Compl. ¶¶ 115-129). According to plaintiff, that failure amounted to "willfully participat[ing]" in Gill's alleged wrongdoing.  (*Id.* ¶ 125).

Plaintiff does not specify which provision of Section 9(a) he contends MassMutual violated.  In general, however, Section 9(a) requires that the complaint allege that (1) the plaintiff

bought or sold a security listed on a national securities exchange, (2) the market price was affected by the defendant's prohibited acts, (3) those acts were carried out with scienter, (4) the plaintiff relied on the acts, and (5) the plaintiff suffered damages.  *See* 15 U.S.C. §§ 78i(a),(f); *SEC v. Malenfant*, 784 F. Supp. 141, 144 (S.D.N.Y. 1992) (discussing sections 9(a)(1) and 9(a)(2)); *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 637 (S.D.N.Y. 2004); *SEC v. Gallagher*, 2023 WL 6276688, at *14 (S.D.N.Y. Sept. 26, 2023); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 424 (S.D.N.Y. 2010).

In particular, Section 9(a) "requires proof of specific intent or purpose to induce others to trade in a security."  *SEC v. Wallace*, 2017 WL 8230026, at *4 (C.D. Cal. May 8, 2017) (citing *United States v. Charnay*, 537 F.2d 341, 350 (9th Cir. 1976)).  "General statements" of wrongdoing are not sufficient; a complaint must allege, among other things, "how [the defendant's] manipulation affected the market for the specific security, and in what way [the plaintiff was] harmed by the manipulation."  *Fezzani*, 384 F. Supp. 2d at 643.

None of the elements of a Section 9(a) claim are met here.  First, the complaint's basic claim is that MassMutual "participated" in Gill's manipulations by failing to adequately supervise him.  (Compl. ¶¶ 124-25).  It does not assert that MassMutual ever engaged in any manipulative conduct itself or participated in the market for GameStop stock in any way.

Second, the complaint does not allege that MassMutual intended to cause any manipulation or that it even knew that Gill was engaged in any purportedly manipulative activities.  Indeed, it alleges that Gill actively attempted to conceal his true identity.  (Compl. ¶¶ 24, 35, 44-45).  The complaint also does not allege that plaintiff relied to his detriment on any actions or statements by MassMutual.  Under the circumstances, and crediting the pleaded facts, it would have been impossible for MassMutual to have acted with scienter within the meaning of

Section 9(a), or for plaintiff to have acted with any reliance on the actions of MassMutual.

Third, the complaint does not link any actions of MassMutual to any fluctuation in any security price, beyond simply asserting that "Plaintiff and the Members' purchase or sale prices for GameStop securities were unlawfully affected by Gill's conduct." (*Id.* ¶ 127).  It provides only two inconsistent allegations about plaintiff's own stock transactions, neither of which implicates MassMutual.  (*Id.* ¶¶ 1, 59).  The assertion in the complaint that MassMutual "participated" in the alleged manipulation includes no indication of how it did so beyond merely employing Gill.  Such assertions are conclusory, and lack the particularity required by Rule 9(b) or the PSLRA.

Accordingly, because the complaint fails to state a claim under Section 9(a) of the Exchange Act, Count 4 will be dismissed.

## 2.    Control Liability (Count 6)

Plaintiff next contends that MassMutual is liable for market manipulation as a "controller" under Section 20(a) of the Exchange Act, alleging that, because Gill was a MassMutual employee, MassMutual is liable for his purportedly fraudulent statements.[4]

Section 20(a) "establishes liability for any person who 'directly or indirectly[] controls any person liable' for a violation of securities laws."  *Mississippi Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 93 (1st Cir. 2008) (quoting 15 U.S.C. § 78t(a)).  To state a claim under Section 20(a), a plaintiff must allege:  (1) an underlying primary violation of the Exchange Act by the purportedly controlled person, and (2) the defendant's control over the primary violator. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 84-85 (1st Cir. 2002).[5]

---

[4] To state a claim under Section 20(a), plaintiffs are not required to meet the heightened pleading requirements under the PSLRA.  *ACA Fin. Guar. Corp. v. Advest Inc.*, 512 F.3d 46, 36 (1st Cir. 2008).

[5] In some jurisdictions, a plaintiff must also allege "culpable participation" by the defendant to support a Section 20(a) claim.  *See, e.g.*, *SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996).  The First

To exercise "control" in this context requires showing that "(1) the alleged control person actually exercised control over the general operations of the primary violator, and (2) the alleged control person possessed . . . power to determine the specific acts or omissions upon which the underlying violation is predicated." *SEC v. Bio Def. Corp.*, 2019 WL 7578525, at *30 (D. Mass. Sept. 6, 2019), *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021).

Even assuming that the complaint alleges an underlying primary violation by Gill—which is far from clear—it does not plead any facts indicating that MassMutual had or exercised any actual control over Gill's conduct related to the transactions at issue (that is, the alleged manipulation of the price of GameStop stock).[6]  It asserts, generally, that MassMutual "had an obligation to adequately supervise Gill," and that "Gill had direct and unfettered access to the market as a registered broker and a representative of [MassMutual, and [MassMutual is] therefore, *presumed* to have had the power or control or to influence the particular transactions giving rise to the securities violations alleged here[.]"  (Compl. ¶¶ 141-42 (emphasis added)).

In short, the complaint relies on conclusory assertions that MassMutual's failure to supervise allowed him to engage in manipulative conduct, but does not allege that MassMutual actually exercised any control over Gill's anonymous statements on Reddit and YouTube. Again, it also goes to some lengths to emphasize that Gill concealed his true identity, and nowhere claims that MassMutual was aware of Gill's activities at any time during the relevant period.

---

Circuit has taken no position on whether that element is required.  *Aldridge*, 284 F.3d at 84-85 & n.6; *see also In re Boston Sci. Corp. Sec. Litig.*, 646 F. Supp. 3d 249, 293-94 (D. Mass. 2022).  Some cases in this district have, however, required allegations of that element.  *See, e.g., Akamai Techs. Inc. v. Deutsche Bank AG*, 764 F. Supp. 2d 263, 266 (D. Mass. 2011).  The Court need not reach the issue here.

[6] The complaint does not appear to allege either scienter or manipulative conduct by Gill, both of which would be required to state a claim under either provision.

In summary, none of those allegations are sufficient to state a claim under Section 20(a) of the Exchange Act.  Accordingly, Count 6 will be dismissed.  *See Thuman v. Dembski*, 2017 WL 3614522 (W.D.N.Y. Apr. 4, 2017), *adopted*, 2021 WL 1865552 (W.D.N.Y. May 10, 2021).

### B.    Common-Law Claims

#### 1.    Failure to Supervise (Count 7)

Plaintiff has also asserted a claim under a theory of common-law failure to supervise.  In support of that theory, he points to the obligations imposed by FINRA Rule 3110, which establishes the supervisory responsibilities of member brokerage firms over their employees.[7]

To allege negligent supervision under Massachusetts law, a plaintiff must allege that an employer "knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action." *Murray v. Uber Techs. Inc.*, 486 F. Supp. 3d 468, 477 (D. Mass. 2020) (quoting *Vicarelli v. Business Intern. Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997)).[8]  However, "purely economic losses are unrecoverable in tort . . . in the absence of personal injury or property damages."  *FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393, 395 (1993); *Webb v. Injured Workers Pharmacy*, 2023 WL 5938606, at *2 (D. Mass. Sept. 12, 2023).

The complaint asserts that MassMutual "failed to adequately supervise Gill" and "had reason to know" of his social-media activities based on the requirements of FINRA Rule 3110,

---

[7] FINRA rules do not create a private right of action.  *See Prestera v. Shearson Lehman Bros.*, 1986 WL 10095, at *3 (D. Mass. July 30, 1986) (finding "no private right of action for alleged violations of the rules of the various self-regulatory organizations"); *see also Allen v. Fidelity Brokerage Servs.*, 2024 WL 135853, at *4 n.5 (S.D.N.Y. Jan. 12, 2024).  That said, in limited circumstances, such rules may be considered in defining the scope of common-law duties.  *See, e.g.*, *Milliner v. Mutual Sec. Inc.*, 207 F. Supp. 3d 1060, 1066 (N.D. Cal. 2016).

[8] Although the complaint simply describes the claim as "common-law failure to supervise," the Court will construe that to mean "negligent supervision," as "the nature and character of the pleading is determined by its substance and not its title, name or description attached to it."  *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 121 n.12 (D. Mass. 2010) (quotation omitted).

including a duty to "implement systems to monitor [his] securities-related communications[.]" (Compl. ¶¶ 151-52, 155).  But it does not assert that MassMutual failed to have such systems, or that its methods of monitoring or supervision violated any duty of care, including the FINRA rules.  And it does not assert that MassMutual had any warning that would connect Gill to his online personas.  Given those limitations, it is doubtful that the complaint successfully states a claim for common-law negligent supervision.

In any event, the Court need not reach the precise scope of the negligence claim.  The complaint requests purely economic damages and does not assert any injury beyond the value of plaintiff's stock.  *Cf. Maio v. TD Bank*, 2023 WL 2465799, at *4 (D. Mass. Mar. 10, 2023) (finding that "lost sleep, anxiety, and depression" were sufficient to overcome motion to dismiss negligence claim on economic-loss doctrine grounds).  Because the only relief the court could grant would be money damages, the negligent supervision claim is barred by the economic-loss doctrine, and Count 7 will be dismissed.

### 2.    Tortious Aiding and Abetting (Count 11)

The complaint's other common-law claim against MassMutual is that it tortiously aided and abetted "in Gill's scheme." (Compl. at 56).[9]

Under Massachusetts law, "aiding and abetting a tort attaches where:  (1) the defendant provides substantial assistance or encouragement to the other party; and (2) the defendant has unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 90 (D. Mass. 2002) (quoting

---

[9] The complaint does not state which alleged violation MassMutual aided or abetted.  The Supreme Court has held that imposing private civil liability on individuals who aid and abet violations of the Exchange Act is unreasonable unless specifically set forth in the act.  *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 174 (1994).  Similarly, if the underlying "scheme" is founded in tort law, the economic-loss doctrine would likely bar recovery.  However, the Court will consider whether the complaint states a claim under *any* theory of aiding-and-abetting liability, and assume the complaint states a permissible predicate claim against Gill.

*Austin v. Bradley, Barry & Tarlow P.C.*, 836 F. Supp. 36, 40 (D. Mass. 1993)).  A complaint must allege some measure of "active participation" and "the knowing provision of substantial assistance" by a defendant.  *Id.* (quoting *Schultz v. Rhode Island Hosp. Tr. Nat'l Bank*, 94 F.3d 721, 730 (1st Cir. 1996)).

Even assuming that the complaint states a predicate claim, it fails to allege aiding-and-abetting liability as to MassMutual.  It repeatedly asserts that MassMutual's liability is based on failing to supervise Gill or passive assistance as his employer.  It does not claim that MassMutual had any actual knowledge of Gill's social-media conduct.  Simply stating that an entity "should have known" of alleged wrongdoing does not rise to the level of actual knowledge.  *In re TelexFree Secs. Litig.*, 360 F. Supp. 3d 46, 51 (D. Mass. 2019) (dismissing a claim of aiding and abetting when the complaint failed to plead actual assistance or knowledge).  Similarly, the complaint does not suggest that MassMutual actively assisted Gill in any of his schemes.  Indeed, it alleges that MassMutual's purported wrongdoing was based on its inaction or passivity, not on any active participation.  *See id.*  That is not enough to constitute active participation.  *Id.*

Accordingly, because the complaint fails to allege the required elements to establish aiding-and-abetting liability as to any primary claim, Count 11 will be dismissed.

### C.   <u>Washington Consumer Protection Act (Count 8)</u>

Finally, the complaint asserts several claims under the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86, seemingly contending that the other alleged claims constitute "*per se*" violations of that statute.  (Compl. ¶¶ 164-69).  Defendants respond that the complaint fails to allege a "public interest impact," as required by the WCPA.

"[T]o prevail in a private [WCPA claim] . . . a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public

interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables Inc. v. Safeco Title Ins.*, 105 Wash. 2d 778, 780 (1986).[10]

Alleging a "public interest impact" under the WCPA can be accomplished in two ways. First, it can be established *per se* if a plaintiff can assert a violation of a statute that either incorporates the WCPA or "violates a statute that contains a specific legislative declaration of public interest impact." Wash. Rev. Code § 19.86.093. Alternatively, such an impact may be shown if a defendant's conduct "(a) injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." *Id.*; *see also Zunum Aero Inc. v. Boeing Co.*, 2022 WL 2116678, at *11 (W.D. Wash. June 13, 2022).

Here, the complaint appears to assert that the alleged violations of other statutes constitute *per se* violations of the WCPA—presumably either the Exchange Act or Mass. Gen. Laws ch. 110A, § 204.[11] Neither statute, however, incorporates the WCPA or contains a "specific legislative declaration of public interest impact." Wash. Rev. Code § 19.86.093. The complaint thus does not allege a *per se* violation of the WCPA and must plausibly allege another ground for the claim to survive.

It does not. Washington courts consider several factors to determine whether the public interest is impacted, including, for example whether "the alleged acts [were] committed in the course of defendant's business," and if "the acts are part of a pattern or generalized course of conduct," and whether "there [is] a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff." *Hangman Ridge*, 105 Wn.2d at 790. There must be "a

---

[10] The Court assumes, for present purposes, that the WCPA applies to the conduct of MassMutual, even though the complaint does not allege any conduct by MassMutual that occurred in Washington state.

[11] Somewhat circularly, it also appears to propose that an alleged violation of the WCPA constitutes a *per se* violation of the WCPA. (Compl. ¶ 164). The Court will disregard that assertion.

real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Behnke v. Ahrens*, 172 Wash. App. 281, 295 (2012) "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Hangman Ridge*, 105 Wash. 2d at 790.

Here, although the complaint contains sections labeled "Numerosity" and "Typicality"— presumably vestiges of a class-action complaint on which it is based—it does not explicitly allege that any alleged acts of MassMutual harmed any other persons, nor that they were likely to do so within the meaning of the WCPA.  Nothing in the complaint suggests that Gill's purported actions were part of MassMutual's business, or that they were part of any "pattern" within MassMutual, or that there is any likelihood of repetition.  *See Lemelson v. Wells Fargo Bank*, 641 F. Supp. 3d 1005, 1013-14 (W.D. Wash. 2022) ("Because the amended complaint fails to include facts which, if accepted as true, would plausibly establish that [the defendant's] acts are capable of repetition and thus affect the public interest, Plaintiffs do not state a claim for violation of the WCPA.").

Because the complaint fails to allege a "public interest impact" as required by the WCPA, Count 8 will be dismissed.

## IV.   <u>Conclusion</u>

For these reasons, defendants' motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  February 5, 2024