## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DOUGLAS ROSENBERG, <br><br> Plaintiff, <br><br> v. <br><br> KEITH PATRICK GILL, MML INVESTORS SERVICES, LLC, AND MASSACHUSETTS MUTUAL LIFE INSURANCE CO., <br><br> Defendants. | Civil Action No. <br> 23-10441-FDS |

## DEFENDANT KEITH PATRICK GILL'S MEMORANDUM OF LAW IN SUPPORT OF HIS RULE 12(b)(6) MOTION TO DISMISS THE AMENDED COMPLAINT

William W. Taylor, III
Christopher R. MacColl
ZUCKERMAN SPAEDER LLP
1800 M Street NW, STE 1000
Washington, D.C. 20036
(202) 778-1849
wtaylor@zuckerman.com
cmaccoll@zuckerman.com

Dated: February 14, 2024                    *Counsel for Keith Patrick Gill*

## <u>TABLE OF CONTENTS</u>

**Page**

Introduction ................................................................................................................. 1

The Complaint .............................................................................................................. 4

    A.    Keith Gill, His GME Thesis, And His Investment ........................................... 4

    B.    Plaintiff's Trades Exposed Him To Unlimited Losses Through No Fault Of Gill's ............................................................................................................... 6

    C.    Investigations Confirmed Gill's Analysis ....................................................... 8

Argument ...................................................................................................................... 9

    A.    Plaintiff Fails To State A Claim Under The Federal Securities Laws ............. 9

        1.    The Complaint Does Not Allege Manipulative Conduct Or Scienter ............. 10

        2.    The Complaint Does Not Allege Reliance ....................................................... 14

        3.    The Complaint Does Not Plausibly Allege Causation ..................................... 15

    B.    Plaintiff's Federal Securities Law Claims Are Barred By The Statute Of Limitations ................................................................................................... 16

    C.    Plaintiff Fails To State A Claim Under Massachusetts General Laws Ch. 93A ......... 17

    D.    Plaintiff Fails To State A Claim Under The Sherman Antitrust Act ............... 19

Conclusion .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008) .................................................................................... 13

*Advanced Tech. Corp. v. Instron, Inc.*,
  925 F. Supp. 2d 170 (D. Mass. 2013) ..................................................................... 19

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
  8 F.4th 1 (1st Cir. 2021) .................................................................................... 18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ........................................................................................ 9

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ............................................................................................ 13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 9, 19

*Brennan v. Zafgen, Inc.*,
  199 F. Supp. 3d 444 (D. Mass. 2016) ..................................................................... 14

*Chaloupka v. Proximo Travel, LLC*,
  2023 WL 5804255 (D. Mass. Feb. 24, 2023) ......................................................... 17

*China Agritech, Inc. v. Resh*,
  584 U.S. 732 (2018) ................................................................................................. 17

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  928 F. Supp. 2d 705 (S.D.N.Y. 2013) ..................................................................... 16

*Debnam v. FedEx Home Delivery*,
  766 F.3d 93 (1st Cir. 2014) ...................................................................................... 18

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ................................................................................................. 11

*Fezzani v. Bear, Stearns & Co.*,
  384 F. Supp. 2d 618 (S.D.N.Y. 2004) ..................................................................... 10

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021) ............................................................................................. 15

*Hackel v. AVEO Pharms., Inc.*,
  474 F. Supp. 3d 468 (D. Mass. 2020) ..................................................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ................................................................................................. 11

*Halper v. Demeter*,
   34 Mass. App. Ct. 299, 610 N.E.2d 332 (1993) ....................................................... 17

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002) ............................................................................................. 14

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   89 F.4th 408 (2d Cir. 2023) ........................................................................................... 13

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157 (2d Cir. 2021) .......................................................................................... 12

*John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*,
   94 F. Supp. 2d 77 (D. Mass. 1999) .............................................................................. 18

*Linkage Corp. v. Trs. of Bos. Univ.*,
   425 Mass. 1, 679 N.E.2d 191 (1997) ............................................................................ 18

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ........................................................................................................ 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ........................................................................................................ 13

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) ......................................................................................... 15

*Rodi v. S. New England Sch. of Law*,
   389 F.3d 5 (1st Cir. 2004) .............................................................................................. 17

*Rosenberg v. Mass Mut. Life Ins. Co.*,
   2024 WL 421780 (D. Mass. Feb. 5, 2024) ............................................................ 10, 11, 18

*Rosenberg v. Reddit*,
   2023 WL 9233482 (N.D. Cal. Dec. 26, 2023) ............................................................. 16

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ........................................................................................................ 11

*Shash v. Biogen, Inc.*,
   84 F.4th 1 (1st Cir. 2023) ............................................................................................... 10

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
   552 U.S. 148 (2008) ........................................................................................................ 10

*Szalla v. Locke*,
   421 Mass. 448, 657 N.E.2d 1267 (1995) ...................................................................... 18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................................................ 2, 9, 10, 14

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ........................................................................................................ 13

*United States v. Stein*,
   456 F.2d 844 (2d Cir. 1972) .......................................................................................... 11

**Statutes**

15 U.S.C. § 78c(a)(47) ................................................................................................ 16

15 U.S.C. § 78i(a) ..................................................................................................... 1, 9

15 U.S.C. § 78j ..................................................................................................... 1, 9, 10

15 U.S.C. § 78u4(b)(2)(A) ........................................................................................... 13

28 U.S.C. § 1658 .................................................................................................... 3, 16

Mass. Gen. Laws ch. 93A ..................................................................................... *passim*

Private Securities Litigation Reform Act ............................................... 2, 9, 12, 14

Sherman Antitrust Act, Section 1 ......................................................................... 3, 19

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 9, 12

Fed. R. Civ. P. 11 ....................................................................................................... 11

Fed. R. Evid. 201 ......................................................................................................... 4

**Regulations**

17 C.F.R. § 240.10b–5 ........................................................................................ 1, 9, 10

**Other Authorities**

Senate Comm. on Banking & Currency, Stock Exchange Practices,
   S.Rep. No. 1455, 73d Cong., 2d Sess. 54 (1934) ................................................. 11

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................. 13

## INTRODUCTION

Plaintiff Douglas Rosenberg lost money when he bet that the price of GameStop stock ("GME") would go down and instead it went up.  He seeks to have Defendant Keith Patrick Gill pay for his losses because Mr. Gill—an individual investor in Massachusetts—made bullish public statements about GameStop's prospects that were consistent with his personal investment in the company.  Plaintiff contends that those statements caused other investors to buy GME, driving the price up.

What Plaintiff does not allege is that Mr. Gill said anything objectively false about GameStop or that he engaged in any manipulative trading.  He does not accuse Mr. Gill of causing him to take the investment positions Plaintiff took.  In fact, he says was "unaware of" Mr. Gill's posts, including ironically those in which Mr. Gill explained the possibility of the "short squeeze" that caused Plaintiff's misfortune and noted that short sellers (like Plaintiff) were "at risk of significant financial losses."  (Compl. ¶¶ 46, 55, 58, ECF No. 38).[1]

As we demonstrate more fully below, the Complaint does not allege conduct by Mr. Gill that constitutes securities fraud and thus fails to state any claim against him.

The Court recently dismissed Plaintiff's claims against Massachusetts Mutual Life Insurance Company and MML Investors Services LLC.  (ECF No. 63).  The claims remaining against Gill are violations of Section 9(a) of the Exchange Act, 15 U.S.C. § 78i(a) (Counts 1–3); violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 of the Securities and Exchange Commission regulations, 17 C.F.R. § 240.10b–5 (Count 5); conspiracy to violate Mass. Gen. Laws ch. 93A (Counts 9 and 10); and violations of the Sherman Act

---

[1]    This memorandum refers to the First Amended Complaint as "Compl." in citations and as "Complaint" in text.  The Complaint has multiple paragraphs numbered "1" and "2."

(Count 12).[2]

There are at least six specific reasons why Plaintiff's claims must be dismissed with prejudice. *First*, Plaintiff fails to allege manipulative conduct and scienter. While the Complaint is replete with conclusory allegations that Gill was "deceptive," "deceitful," "manipulative," and perpetrated "a fraud," it fails to identify a single trade by Gill that was manipulative or any statement by Gill that was objectively false or misleading. (*See* Compl. ¶¶ 38, 42, 46).[3] Plaintiff has nowhere alleged material misstatements with particularity, nor any facts supporting a "strong inference" of an intention "to deceive, manipulate, or defraud," as he is required to under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

*Second*, Plaintiff fails to allege reliance. Plaintiff had no relationship with Gill. (Compl. ¶ 58). This is *not* a case where the plaintiff "sustained financial damages by buying stocks recommended by" Gill. (*Contra* Order at 1, ECF No. 58).[4] Nor is it a case where Plaintiff has identified a material misstatement by Gill on which the market naturally relied—a theory that would be impossible to plausibly allege against Gill, as he was a passive, individual investor.

---

[2] In its opinion dismissing the claims against MassMutual and MMLIS, the Court construed the Complaint generously in light of its *pro se* character, as will we. The counts are incorrectly numbered; the page references in the Table of Contents are generally incorrect; some of the claims are duplicates of others, and some have no content at all. We nevertheless address what we believe are Mr. Rosenberg's claims construed in the most generous way possible.

[3] An SEC investigation into the rise in the price of GME and other so-called "meme stocks" confirmed the accuracy of key factors that Gill's analysis relied on and did not allege manipulation. *See* SEC, Staff Report on Equity and Options Market Structure Conditions in Early 2021 (Oct. 14, 2021), http://tinyurl.com/yuafmdsp ("SEC Report"). Some of the SEC's assertions may be debatable, but the report provides analysis of trading volumes, price movement, and other market dynamics that can be judicially noticed.

[4] Plaintiff alleges that he was "forced to 'cover' the options contracts [he wrote] by purchasing back offsetting GameStop options contracts." (Compl. ¶ 61). Plaintiff states elsewhere that his "Game [*sic*] Stock was closed out," but it is not clear that Plaintiff purchased shares of GameStop. (*Id.* ¶ 2).

Rather, Plaintiff placed bets that Gill's analysis showed might result in exactly the sorts of losses that Plaintiff incurred.  Specifically, Plaintiff wrote[5] options contracts that obligated him to sell GME shares that he did not own at a set price ("naked options") and may have sold GME shares that he borrowed ("short selling").  (Compl. ¶¶ 2, 6, 58–59).  Plaintiff's bets resulted in losses. They may have been unsuitable for him.  Mr. Gill's conduct is not the cause of either.

*Third*, Plaintiff fails to plausibly allege causation.  Plaintiff correctly alleges that Gill took a long position in GME and posted his bullish thesis online, but Gill's views were public many months before Plaintiff's trades.  Plaintiff's substantial losses stem from an aggressive bet that he placed against GME on January 26, 2021.  The market moved swiftly against Plaintiff, and his broker closed his position the next day.  Plaintiff does not plausibly explain how Gill caused that overnight price action.

*Fourth*, Plaintiff filed this suit outside of the two-year statute of limitations period provided by 28 U.S.C. § 1658.

*Fifth*, the counts invoking Massachusetts' Chapter 93A § 11 incorporate all prior allegations in the Complaint, but do not otherwise state their basis.  Chapter 93A requires egregious conduct in trade or commerce, but that is not alleged here.  Additionally, Chapter 93A requires a plausible showing of causation, and the claims fail for the same reasons that the federal securities claims fail.

*Sixth*, Plaintiff accuses Gill of price fixing in violation of Section 1 of the Sherman Act. The accusation that Gill, a then 33-year-old individual from Brockton, Massachusetts fixed the

---

[5]     The Complaint alleges that Plaintiff "sold" options.  "Selling options" and "writing options" are often used interchangeably.  This memorandum prefers to refer to what Plaintiff did as writing call options because that formulation clarifies that Plaintiff was accumulating derivative risk in his brokerage account, not eliminating existing risk by selling options he held. (*See* Compl. ¶¶ 58–59).

price of a multibillion-dollar company by posting an investment thesis and screenshots of his investment online is not plausible.  Moreover, despite the public nature of Gill's social media posts, the Complaint identifies no agreement between Gill and anyone.

## THE COMPLAINT

This memorandum accepts the allegations in the Complaint as true and demonstrates that they are insufficient to support any of the legal claims.  It also refers to social media posts referenced by and incorporated into the Complaint, and on facts about Gill, market prices, and GME trading from "sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Before turning to the six defects, we describe the facts as Mr. Rosenberg asserts them.

**A.**    **Keith Gill, His GME Thesis, And His Investment**

Between late 2019 and early 2021, Gill developed and shared a bullish thesis on GME. (Compl. ¶¶ 26, 46–48, 53–55).  Consistent with his bullish views, Gill purchased call options giving him the right, but not the obligation, to buy GME for $8 per share on or before January 15, 2021.  (*Id.* ¶ 35).[6]  Gill posted a screenshot of his E*trade account on the Reddit forum WallStreetBets in late 2019; his initial post showed a $53,566.04 cost basis for his GME options. (*Id.*, n.9).  Gill maintained a long position in GME throughout the relevant period, and at times managed that position.  (*See id.* ¶ 38).  Gill's posts were "initially met with skepticism," but "garnered a cult-like following."  (*Id.* ¶ 37).  Gill posted various updates to WallStreetBets until April 2021.[7]

---

[6]    Throughout most of 2019 and much of 2020, GME traded between $4 and $8 per share. GME underwent a 4:1 stock split on July 22, 2022, meaning that one must multiple today's price by four to arrive at the price comparable to the 2019–2021 period.  *See* GameStop Corp. (GME), Yahoo!Finance, https://finance.yahoo.com/quote/GME/history/.

[7]    DeepFuckingValue, GME YOLO update – Apr 16 2021 – final update (Apr. 16, 2021), https://www.reddit.com/r/wallstreetbets/comments/msblc3/gme_yolo_update_apr_16_2021_final_update/.

In the summer of 2020, Gill began hosting a YouTube channel that discussed Gill's investing practices generally and placed a particular emphasis on GameStop, which was Gill's largest investment.  (*Id.* ¶¶ 44, 46).  Gill also posted prerecorded videos on YouTube.  (*Id.* ¶ 46). His most watched video is a July 27, 2020, hour-long analysis titled "100%+ short interest in GameStop stock (GME) – fundamental & technical deep value analysis."  (*Id.* ¶ 46, n.14).[8]  In that video and elsewhere he noted that GME was the largest position in his model portfolio and delved into a complex array of charts and analysis that showed Gill was a "sophisticated and calculated investor."  (*Id.* ¶ 45).  Nevertheless, the Complaint accuses Gill of using a "false identity" and of using a "fake persona of an amateur, everyday fellow."  (*Id.* ¶¶ 2, 82).

Gill also posted about GME numerous times on Twitter.  (*Id.* ¶ 52).  The Complaint alleges that Gill "improperly" "questioned the ability of short sellers to cover their positions" and said that short sellers (like Plaintiff) "were at risk of significant financial losses."  (*Id.* ¶ 55).  It includes screenshots of Gill's Twitter posts from August and September 2020 that summarize his investment thesis and the risks to short sellers.  (*See id.* ¶ 55 ("When the level of $GME short interest is juxtaposed with my level of bullishness (& presumably that of Cohen & Burry)[9] I can't help but think [the short interest is] a result of automated shorting algorithms gone awry. Still not clear to me whether or not these shorts can be unwound systematically.")).

The Complaint identifies several posts by other Reddit users who purported to have made investment decisions because they were inspired by Gill.  (*See id.* ¶¶ 39, 40, 43).  It includes one

---

[8]      *See* RoaringKitty, YouTube (July 27, 2020), https://www.youtube.com/watch?v=GZTr1-Gp74U.

[9]      Cohen refers to Ryan Cohen, the co-founder of Chewy, who disclosed a near 10% stake in GME in September 2020 and later became GameStop's CEO.  Burry refers to Michael Burry, best known for investments betting against subprime mortgages in the lead up to the 2008 financial crisis.  Burry is depicted in the 2015 film *The Big Short*, an adaptation of the 2010 book of the same name by Michael Lewis.

post from a user who mentions "teaming up," but it identifies no posts by Gill that proposes or accepts any plan to coordinate trades with anyone.  (*Id.* ¶ 39).

Gill's thesis, described extensively in video referenced *supra*, rested on the potential for GameStop to turn around and reinvent its business.  Gill also repeatedly underscored the possibility of a "short squeeze."  (*Id.* ¶ 56).

The Complaint asserts that "the aim of [Gill's] social-media campaign was simply to increase the worth of [Gill's] GameStop shares by creating a demand for the stock" and that Gill "exaggerated and misrepresented the prospects of GameStop."  (*Id.* ¶ 2).[10]  Accounting for GameStop's stock split, the current price of GME remains up 1000%+ from when Gill began sharing his views.[11]

**B.**   **Plaintiff's Trades Exposed Him To Unlimited Losses Through No Fault Of Gill's**

In January 2021, GME experienced unusual volatility and appreciation that was broadly consistent with Gill's thesis.  GME's price rose from around $5 per share at the time of Gill's initial investment, to around $20 per share in late December 2020, to $65 on January 22, 2021, and hit intraday highs above $100 per share on January 25, 2021.  (*See* Compl. ¶¶ 2, 38, 50).  This extraordinary rise was widely covered by the national media.[12]

---

[10]   Gill's testimony before the United States House of Representatives Financial Services Committee soundly rejects those allegations.  *See generally* Keith Patrick Gill, Written Testimony, *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide: Hearing Before the H. Comm. on Fin. Servs.*, 117 Cong. (2021), https://democrats-financialservices.house.gov/UploadedFiles/HHRG-117-BA00-Wstate-GillK-20210218.pdf (submitted to committee by undersigned counsel on February 17, 2021) (previously filed at ECF No. 44-1) ("Cong. Test.").

[11]   *See* GameStop Corp. (GME), Yahoo!Finance, https://finance.yahoo.com/quote/GME/history.

[12]   *See, e.g.*, Joe Wallace, *GameStop Stock Jumps to New Record*, The Wall Street Journal (Jan. 25, 2021), https://www.wsj.com/articles/gamestop-shares-surge-toward-fresh-record-ahead-of-opening-bell-11611579224; Hamza Shaban, *GameStop shares are on a wild, Reddit-driven run*, The Washington Post (Jan. 25, 2021),

On January 26, 2021, while purportedly "unaware of Gill's" social media posts, Plaintiff wrote call options that obligated him to sell 2,000 shares of GME at $100 or $200 per share, at the option of whomever bought those derivative contracts (i.e., plaintiff was betting the price of GME would fall).  (*Id.* ¶¶ 58, 59).[13]  Plaintiff did not own 2,000 shares of GME, and thus the call options he wrote were "naked." [14]  Writing naked call options exposed Plaintiff to theoretically unlimited losses.  In practice, and as happened here, brokers require collateral when an investor takes on such extraordinary risk; brokers will require additional collateral if the market moves against the investor; and if the investor is unwilling or unable to post the requisite collateral, the broker will close the position.  (*See id.* ¶¶ 58, 61).

Plaintiff was "forced to 'cover' [losses on his] options contracts by purchasing [] offsetting GameStop options," when "Game[S]top shares [were] at unwarrantedly and unprecedented[ly] inflated prices of $300 and $315" per share.  (*Id.* ¶ 61).  Plaintiff filed a "transaction confirmation" indicating his broker required him to buy call options around 11:30

---

https://www.washingtonpost.com/business/2021/01/25/gamestop-stock-short-squeeze-/; Ben Winck, *GameStop Short-Sellers Lost $1.6 Billion in a Single Day As Reddit Traders Rebelled Against Them*, BUSINESS INSIDER (Jan. 25, 2021), https://markets.businessinsider.com/news/stocks/gamestop-stock-short-seller-squeeze-losses-reddit-traders-citron-gme-2021-1-1030000080; Matt Levine, *The GameStop Game Never Stops*, BLOOMBERG (Jan. 25, 2021), https://www.bloomberg.com/opinion/articles/2021-01-25/the-game-never-stops; Simon Moore, *After Sky Rocketing, GameStop's Short Squeeze Saga Continues, But It's Less Unusual Than You Might Think*, FORBES (Jan. 25, 2021), https://www.forbes.com/sites/simonmoore/2021/01/25/after-sky-rocketing-gamestops-short-squeeze-saga-continues-but-its-less-unusual-than-you-might-think/?sh=2439ec6d5083; Paul R. La Monica, *The strange but true reason why GameStop's stock keeps surging*, CNN (Jan. 25, 2021), https://www.cnn.com/2021/01/25/investing/gamestop-stock-reddit-wsb/index.html.

[13]    Plaintiff's trading confirmations suggest that he wrote 10 call options with a strike price of $100 per share and 10 call options with a strike price of $200 per share.  (*See* ECF No. 32-2).

[14]    Plaintiff's allegations are clarified somewhat by facts alleged in his complaint against Tesla, Musk, and Reddit.  He "held positions in naked GME options on January 26th and short positions in GME stock on February 24th."  *See* Leave Motion to Amend Complaint at 3, *Rosenberg v. Reddit Corp., et al.*, Case No. 3:23-cv-820-CRB (N.D. Cal. Nov. 15, 2023), ECF No. 24 ("Reddit Compl.").

am on January 27, 2021.  (ECF No. 32-2).  Plaintiff lost approximately $420,000 on these trades.

Plaintiff separately asserts that he suffered an additional loss of $710,76[1].80 on or about February 18, 2021.  (Compl. ¶ 2).  The Complaint includes an image from Plaintiff's brokerage showing this loss below a section for "SHORT[]" positions.  (*Id.* ¶ 2).  In another lawsuit, Plaintiff explained that in addition to his "naked GME options," he held "short positions in GME stock" in February 2021.  (Reddit Compl. ¶ 2).[15]  Thus, in addition to writing call options, Plaintiff appears to have borrowed and sold shares of GME that he did not own in the hope of being able to buy shares at a lower price at some later date.

**C.**    **Investigations Confirmed Gill's Analysis**

The Securities and Exchange Commission Staff investigated and reported on the myriad causes of the rise of GME and other heavily shorted stocks in January 2021.  (*See* SEC Report).  The SEC Report does not identify market manipulation as a cause of the rise in GME shares, and it does not even mention Gill by name.  The report does, however, confirm the accuracy of many of the criteria that Gill analyzed in concluding that a GME short squeeze was possible, most notably its extraordinary short interest, often above 100% of the float.  (*Id.* at 21, n.61).  The Staff also observed "price increases concurrently with known major short sellers covering their short positions after incurring significant losses," though the Staff concluded that "it was the positive sentiment, not the buying-to-cover, that sustained the weeks-long price appreciation of GameStop stock."  (*Id.* at 25–26).

Plaintiff has blamed seemingly everyone but himself.  In addition to Gill, he has sued Elon Musk, Reddit, Tesla, MassMutual, and MML Investor Services, LLC for allegedly causing the loss at issue.  (*See generally* Compl.; Reddit Compl.).  Plaintiff filed this lawsuit on or about

---

[15]    The mechanics and timing of Plaintiff's February trades are not clear from the Complaint.

February 23, 2023, more than two years after Gill testified before a congressional committee about his investment in GME and his social media posts.  (*See* Cong. Test.).[16]

## ARGUMENT

As we noted, the Complaint asserts seven claims against Gill: violations of Section 9(a) of the Exchange Act, 15 U.S.C. § 78i(a) (Counts 1–3); violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 of the Securities and Exchange Commission regulations, 17 C.F.R. § 240.10b–5 (Count 5); conspiracy to violate Mass. Gen. Laws ch. 93A (Counts 9 and 10); and violations of the Sherman Act (Count 12).[17]  This memorandum begins by addressing the deficiencies in Plaintiff's Section 9(a) and 10(b) claims and then turns to the deficiencies in Plaintiff's state law and Sherman Act counts.

The plausibility standard set forth by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies with substantial force in this case.  Because Plaintiff's claims sound in fraud, they must be pled with the heightened "particularity" required by Federal Rule of Civil Procedure 9(b).  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007).  The PSLRA imposes similarly "[e]xacting pleading requirements" and "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 313.  Plaintiff must establish a "'strong inference' of scienter" and courts are required to account for "plausible opposing inferences," including by consulting "other sources"

---

[16]     Gill was also interviewed for a January 2021 Wall Street Journal article.  (Compl. ¶ 1, n.1).

[17]     We follow the numbering adopted by the Court's February 5, 2024, Memorandum and Order (ECF No. 63).  The Complaint contained a count under the Washington Consumer Protection Act ("WCPA"), but it failed to identify whom that count is against or state its basis. The Court reasonably considered earlier text in the Complaint, concluded that the WCPA claim was brought against MassMutual, and dismissed it.

that are judicially noticeable.  *Id.* at 322–23.

**A.      Plaintiff Fails To State A Claim Under The Federal Securities Laws**

As this Court explained:

> Section 9(a) requires that the complaint allege that (1) the plaintiff
> bought or sold a security listed on a national securities exchange,
> (2) the market price was affected by the defendant's prohibited acts,
> (3) those acts were carried out with scienter, (4) the plaintiff relied
> on the acts, and (5) the plaintiff suffered damages. In particular,
> Section 9(a) requires proof of specific intent or purpose to induce
> others to trade in a security.  General statements of wrongdoing are
> not sufficient; a complaint must allege, among other things, how the
> defendant's manipulation affected the market for the specific
> security, and in what way the plaintiff was harmed by the
> manipulation.

*Rosenberg v. Mass Mut. Life Ins. Co.*, 2024 WL 421780, at *3 (D. Mass. Feb. 5, 2024) (cleaned

up) (citations omitted), ECF No. 63.

The requirements for a claim under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j,

and Rule 10b-5, 17 C.F.R. § 240.10b–5, are similar.  *See, e.g.*, *Fezzani v. Bear, Stearns & Co.*,

384 F. Supp. 2d 618, 637 (S.D.N.Y. 2004).  Such a claim requires "(1) a material

misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv.*

*Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Shash v. Biogen, Inc.*, 84 F.4th 1,

11 (1st Cir. 2023).  "Scienter" requires "a mental state embracing intent to deceive, manipulate,

or defraud."  *Tellabs*, 551 U.S. at 319.

The Complaint fails to plausibly allege that Gill violated section 9(a) or 10(b) because the

Complaint:  (1) does not specify manipulative conduct or plausibly plead scienter; (2) concedes

that Plaintiff did not rely on Gill's social media posts and fails to plausibly allege fraud on the

market; and (3) fails to allege causation.

1.      <u>**The Complaint Does Not Allege Manipulative Conduct Or Scienter**</u>

This Court has already correctly observed that the "[t]he complaint does not appear to allege either scienter or manipulative conduct by Gill, both of which would be required to state a claim under" the referenced securities laws. *Rosenberg*, 2024 WL 421780, at *4 n.6.

Manipulative conduct is "'virtually a term of art when used in connection with securities markets.' The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)).  "It connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst*, 425 U.S. at 199.  That is, manipulation is "'a mirage' rather than 'the reflection of a genuine demand.'" *United States v. Stein*, 456 F.2d 844, 850 (2d Cir. 1972) (quoting Senate Comm. on Banking & Currency, Stock Exchange Practices, S.Rep. No. 1455, 73d Cong., 2d Sess. 54 (1934)).  It may also include a "material misstatement or omission in connection with the purchase or sale of any security." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

The Complaint does not identify any trades or market conduct by Gill that constitute manipulative conduct.[18]  It references posts Gill made on the WallStreetBets forum that showed his position in GME, two of which are reproduced in the Complaint, but the Complaint does not

---

[18]      In past submissions, Plaintiff has filed and cited a "Consent Order" that is not referenced in the Complaint and to which Gill was not a party.  Plaintiff has falsely asserted that this order shows that Gill "effected more than 1700 trades of GME."  (ECF Nos. 50 at 6, 50-2).  That is not alleged in the Complaint; it is not supported by the Consent Order; and it is not an allegation that could be made consistent with Federal Rule of Civil Procedure 11.  Regardless, frequent trading does not constitute manipulative conduct.

allege those posts were inaccurate.  (Compl. ¶¶ 38, 42).[19]  The Complaint identifies one post by
*another* Reddit user who said (apparently to anyone viewing the forum) that "teaming up" to
"fu** over retail traders . . . brings tears to my eyes," (*id.* ¶ 39), but it does not identify any post
or statement by Gill related to coordinating trades.  Naked, conclusory assertions that Gill was
"attempt[ing] to induce coordinated market activity" by sharing his bullish views online are
insufficient under both Federal Rule of Civil Procedure 9(b) and the PSLRA.  (*Id.* ¶ 95).

The Complaint also fails to allege any false or misleading statements by Gill.  It
references numerous YouTube videos and Twitter posts by Gill that generally describe his
bullish views on GME (*e.g.*, ¶¶ 46–48, 54–56), but it does not identify a single "concrete
description" or "factual representation" that is false or misleading.  *In re Synchrony Fin. Sec.
Litig.*, 988 F.3d 157, 168 (2d Cir. 2021).  Rather, the Complaint reflects the *complete alignment*
between Gill's bullish investment in GME and his focus on GameStop in his social media posts.
Though initially contrarian (Compl. ¶ 37), Gill's analysis proved accurate, and the SEC has
confirmed technical characteristics that he emphasized.  (SEC Report at 21, 25).

The Complaint alleges that Gill misled investors through a "false identity" and "fake
persona of an amateur, everyday fellow, who simply was looking out for the little guy."  (Compl.
¶¶ 2, 82).  But Plaintiff acknowledges that Gill's videos and posts "reveal[ed] that he was a
highly sophisticated and calculated investor" and that Gill used "an array of financial
spreadsheets containing hundreds of metrics and financial calculations."  (*Id.* ¶ 45).  The "false
identity" accusation is also an overstatement.  Gill used a pair of usernames as is common online,

---

[19]      Gill's posts show that he held a substantial long position in GME for a period *longer than
a year*.  This investment, particularly when paired with a legitimate market thesis that was shared
by numerous other investors and based on analysis that was subsequently confirmed by the SEC,
is not remotely comparable with the sorts of short term, deceptive trading patterns that lend
themselves to Section 9(a) claims.

but his trades and views were genuine, and no reasonable investor would have thought his real name was "Roaring Kitty" or "Deep F. Value."[20]

In any event, the allegation that Gill was "false and misleading *as to material facts*," by failing "to disclose that [he] was a professional, registered, licensed broker" or otherwise having a supposedly "fake persona," (Compl. ¶¶ 2, 107), is insufficient on its face.[21]  "[T]he securities laws care only about the 'significance of an omitted or misrepresented fact to a reasonable investor.'"  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 187 (2015) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976)); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) ("It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant.").  As a passive, individual investor, Gill's clothing, the details of his CV, and his opinions are not "material facts" to a reasonable GME investor.  *See Hackel v. AVEO Pharms., Inc.*, 474 F. Supp. 3d 468, 482 (D. Mass. 2020) (dismissing claims for lack of materiality where allegedly omitted information would not have "significantly altered the total mix of information available to shareholders").

In the absence of material misstatements or manipulative conduct, persuading others that an investment is attractive is not—and could not constitutionally be—a violation of the Securities Laws.  *See* U.S. Const. amend. I.  *Even when false*, "optimistic opinions" are "mere puffery" and thus "inactionable."  *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 417 (2d Cir. 2023).  Here, far from being false, Gill is being sued because his opinions were correct.

---

[20]    The "disguises" that Gill's former employer maintained "hid his real identity" were primarily "a headband and cat-themed" shirts that did not obscure his face.  (*Id.*; Mem. of Law at 1, ECF No. 43).

[21]    As Gill testified before Congress, he was not a professional broker in the common parlance.  It was not his job to sell stock or other securities; he did not have clients; and he was not compensated through fees or commissions.  (Cong. Test. at 1).

The Complaint also fails to plead a "strong inference" of scienter. 15 U.S.C.

§ 78u4(b)(2)(A).  "More than mere proof that the defendants made a particular false or

misleading statement is required to show scienter."  *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512

F.3d 46, 65 (1st Cir. 2008).  Plaintiff's allegations do not come close.

As noted *supra*, the Complaint fails to identify any false statement or omission that could

be considered material information about GME.  What it offers instead are conclusory, non-

specific allegations that Gill was "deceptive" and the like.  Such "'[c]atch-all allegations' which

merely assert motive and opportunity, without something more, fail to satisfy the PSLRA."

*Brennan v. Zafgen, Inc.*, 199 F. Supp. 3d 444, 468 (D. Mass. 2016) (Saylor, J.), *aff'd*, 853 F.3d

606 (1st Cir. 2017) (quoting *In re Cabletron Sys., Inc.*, 311 F.3d 11, 39 (1st Cir. 2002)).  Far

from suggesting an "intent to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 319, the

facts alleged here show that Gill's substantial long position in GME, which he maintained

throughout the relevant time period, was consistent with his publicly expressed, emphatically

bullish views about the prospects for GameStop.  The logical inference—one that is also a matter

of fact that Gill testified to before a congressional committee (*see* Cong. Test.)—is that the views

he expressed were genuine.

2.     **The Complaint Does Not Allege Reliance**

Reliance is an element of both Section 9(a) and 10(b) claims.  It "provides the requisite

causal connection between a defendant's misrepresentation and a plaintiff's injury."  *Basic Inc.*

*v. Levinson*, 485 U.S. 224, 243 (1988).  Plaintiff expressly disclaims direct reliance by asserting

that he was "unaware of" Gill's social media communications.  (Compl. at 1, ¶ 58).

In an appropriate case, a plaintiff may advance a fraud-on-the-market theory.  This is not

such a case.  *Basic Inc. v. Levinson* permits a presumption of reliance via effect on market prices

"where *materially misleading statements* have been disseminated into an impersonal, well-developed market for securities."  485 U.S. at 247 (emphasis added).  To establish such a presumption, "a plaintiff must prove: (1) that the alleged misrepresentation was publicly known; (2) that it was material; (3) that the stock traded in an efficient market; and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed."  *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021).

The Complaint fails, for the reasons discussed *supra*, to plausibly allege that *any statements* made by Gill perpetrated a fraud on the market.  *See Phillips v. LCI Int'l, Inc*., 190 F.3d 609, 617 (4th Cir. 1999) ("Because in a fraud-on-the-market case the 'reasonable investor' for materiality purposes is not an individual plaintiff, but the market itself, a statement cannot be material if the hypothetical reasonable investor—that is, the market—would not regard the statement, in context, as significant.").  This is particularly clear considering that Gill was not an insider, did not have non-public information related to GME, and that the Complaint fails to explain the link between any specific statements by Gill and the price action that supposedly caused Plaintiff's losses.

### 3.     The Complaint Does Not Plausibly Allege Causation

Plaintiff fails to allege causation considering: (1) the absence of any clear link between Gill's statements and Plaintiff's loss; and (2) the numerous other factors that affected the price of GME.  For example, substantial investment and turnaround efforts initiated by Ryan Cohen in the fall of 2020 contributed to what the SEC termed the "positive sentiment . . . that sustained the weeks-long price appreciation of GameStop stock."  (SEC Report at 26).  Yet these factors are not accounted for in the Complaint.  Instead, the Complaint speculates that Gill was responsible for the significant upward price move in GME between January 26, 2021, when Plaintiff wrote

call options, and January 27, 2021, when Plaintiff's options position was closed.[22]  Plaintiff's

implausible theory seems to be that Gill caused this overnight price jump through social media

statements and YouTube videos that Gill posted months earlier, revealing Gill's initial $53,000

investment, described his thesis, and celebrated his gains.  Plaintiff has further undercut this

facially implausible theory by suing Reddit, Tesla, and Elon Musk for supposedly causing the

same loss.  *See Rosenberg v. Reddit*, 2023 WL 9233482 (N.D. Cal. Dec. 26, 2023).  The lack of

causation is an additional basis on which Plaintiff's securities law claims should be dismissed.

*See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 715–16

(S.D.N.Y. 2013) (dismissing for lack of loss causation where the amended complaint failed to

acknowledge an obvious alternative cause of price action).[23]

**B.**     **Plaintiff's Federal Securities Law Claims Are Barred By The Statute Of Limitations**

"[A] private right of action that involves a claim of fraud, deceit, manipulation, or

contrivance in contravention of a regulatory requirement concerning the securities laws," which

are defined to include the Securities Act and the Exchange Act, must be brought not later than "2

years after the discovery of the facts constituting the violation."  28 U.S.C. § 1658; *see* 15 U.S.C.

§ 78c(a)(47).  The Supreme Court has held "that 'discovery' as used in this statute encompasses

not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff

would have known."  *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).

---

[22]     Plaintiff asserts that he suffered a second loss on February 18, 2021 (Compl. ¶ 2), which coincidentally or not is the day that Gill testified before Congress.  The Complaint does not provide any rational explanation as to how Gill was separately responsible for that loss.

[23]     Plaintiff's lawsuit against Reddit, Musk, and Tesla references a post by Musk after the market close on January 26 that Plaintiff seemingly blames for the price action the next morning. (Reddit Compl. at 9 of 20).  While blaming others, Plaintiff has been unable to accept his own responsibility; he recently leveled accusations of ethical misconduct at an attorney for questioning whether Plaintiff accepted responsibility for his own investment choices.  (*See* Motion to Disqualify Opposing Counsel for Violations of Ethics Rules, ECF No. 41).

Here, Plaintiff asserts that he suffered losses in late January 2021 and again on February 18, 2021.  (Compl. ¶¶ 1, 2, 58–61).  Plaintiff's claims sound in fraud and are based on public statements by Gill that have been available to Plaintiff since before the losses at issue.  Gill's conduct has been anything but hidden during this time.  He gave an interview to The Wall Street Journal for an article that was published on January 29, 2021,[24] and he testified before Congress regarding his social media posts and trading on February 18, 2021.  (*See* Cong. Test.).

Because Plaintiff filed his initial complaint against Gill on February 23, 2023, more than two years after the public statements by Gill that Plaintiff claims constitutes securities fraud (*see* ECF No. 1), Plaintiff's securities law claims are barred by the statute of limitations.[25]

## C.   Plaintiff Fails To State A Claim Under Massachusetts General Laws Ch. 93A

Counts 9 and 10 are nearly identical claims for "conspiracy" to violate Mass. Gen. Laws ch. 93A.  These counts reference Ch. 93A § 11 as "-11," but do not explain their basis except by incorporating all preceding paragraphs.[26]  They can be dismissed for that reason alone.  *See Halper v. Demeter*, 34 Mass. App. Ct. 299, 302, 610 N.E.2d 332, 334 (1993) (requiring "precise

---

[24]   Julia-Ambra Verlaine & Gunjan Banerji, *Keith Gill Drove the GameStop Reddit Mania. He Talked to the Journal*, THE WALL STREET JOURNAL (Jan. 29, 2021), https://www.wsj.com/articles/keith-gill-drove-the-gamestop-reddit-mania-he-talked-to-the-journal-11611931696.

[25]   Plaintiff cannot reasonably maintain that his claims were tolled by the complaint in *Iovin v. Gill*, Case No. 3:21-cv-10264 (D. Mass. Feb. 16, 2021), that he largely copied.  That putative action was never served on Gill or anyone else, and "to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims."  *See China Agritech, Inc. v. Resh*, 584 U.S. 732, 743 (2018).  Plaintiff has not been diligent.

[26]   To the extent that Plaintiff intended to bring a Chapter 93A § 9 action, he was required to send a demand letter and failed to do so.  *See Chaloupka v. Proximo Travel, LLC*, No. 21-40028-DHH, 2023 WL 5804255, at *3 (D. Mass. Feb. 24, 2023) (dismissing plaintiff's 93A claim for failing to mail or deliver a "written demand for relief" to defendant "at 'least thirty days prior to the filing of any such action'" (quoting Mass. Gen. Laws ch. 93A, § 9(3))); *see also Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) ("notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit'").

nature of the plaintiff's allegation" under Chapter 93A).[27]

A Chapter 93A § 11 claim has three elements: "(1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021). Such a claim "requires that there be a commercial transaction between" persons "engaged in trade or commerce." *Szalla v. Locke*, 421 Mass. 448, 451, 657 N.E.2d 1267, 1269 (1995).

As an initial matter, Plaintiff fails to allege *any transaction* between himself and Gill. *See Linkage Corp. v. Trs. of Bos. Univ.*, 425 Mass. 1, 23, 679 N.E.2d 191, 206–07 (1997) (Chapter 93A § 11 "requires that there be a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce."). Plaintiff also fails to allege that Gill's social media posts constituted engagement in "trade or commerce." Gill's posts reflected a personal interest that the Complaint fails to allege his employer even knew about. *See generally Rosenberg*, 2024 WL 421780 (D. Mass. Feb. 5, 2024), ECF No. 63. He was not offering anything for sale or engaged in advertising, and thus, his posts do not constitute trade or commerce. *See* Mass. Gen. Laws ch. 93A § 1(b); *see also Debnam v. FedEx Home Delivery*, 766 F.3d 93, 96 (1st Cir. 2014); *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 121 (D. Mass. 1999) ("no commercial relationship exists where the parties only contact occurs in the context of litigation").

Plaintiff has also failed to plead an unfair or deceptive method or act. Chapter 93A § 11

---

[27]     If Plaintiff's Chapter 93A claim intended to allege antitrust violations, *see infra*. If Plaintiff intended to assert a private cause of action for alleged FINRA rule violations, Gill incorporates by reference MassMutual's briefing as to why no such cause exists. (*See* ECF No. 43 at 7–8).

generally requires a degree of "rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce" or "egregious" conduct. *Anoush Cab*, 8 F.4th at 17–18. Gill's alleged efforts to spread his bullish views about a company he was invested in is so commonplace that there is a cable news channel (CNBC) with a range of shows on which guests pitch their favorite investments nearly every day.

The Complaint also fails to plausibly allege "factual causation and proximate causation," *id.* at 16, as is required for a Chapter 93A § 11 claim, for the reasons described *supra*. Whatever theory Plaintiff intended to assert, his Chapter 93A claim should be dismissed.

**D.**       **Plaintiff Fails To State A Claim Under The Sherman Antitrust Act**

Count 12 alleges violation of the Sherman Act. There is no relevant text below that count, but the immediately preceding paragraph states that "Gil[l] conspired with fellow posters to fix the price of GME Stock and options." (Compl. ¶ 172).

"Section 1 of the Sherman Act prohibits conspiracies in restraint of trade. This provision reaches only agreements, not independent decisions." *Advanced Tech. Corp. v. Instron, Inc.*, 925 F. Supp. 2d 170, 177 (D. Mass. 2013); *see also Twombly*, 550 U.S. at 553 ("'[T]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'"). "To survive dismissal, a plaintiff must plead 'enough factual matter (taken as true) to suggest that an agreement was made.'" *Advanced Tech. Corp.*, 925 F. Supp. 2d at 178. Mere "[a]llegations of parallel behavior" are insufficient. *Id.* "[W]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

The requisite indicia of an illicit agreement—as opposed to mere parallel buying by retail

investors, some of whom urged each other to hodl—are non-existent.  Gill's social media posts are publicly available, yet no agreement has been identified.  The Complaint fails to set forth even the most basic details of what this imagined agreement "to fix the price of GME Stock and options" was, when it was put in place, or how it could have been enforced among its unidentified, presumably anonymous participants.  Gill also had no capability to fix the price of GME, a stock that investors were *supposed to be able* to *buy* or sell.  The SEC Report notes that "[f]rom January 13-29, an average of approximately 100 million GME shares traded per day." SEC Report at 18.  Gill's posts show that he traded infrequently, and none show him with a position of more than 200,000 shares (or less than 0.2 percent of the volume of GME that was being traded on an average January day).  It is also unclear what price was supposed to be "fixed," and the allegation of price fixing is particularly perplexing given that Plaintiff's damages resulted from extraordinary volatility, not a fixed price.  Plaintiff has therefore failed to plead, and has no prospect of ever pleading, a plausible price fixing claim against Gill.

## CONCLUSION

For all of the foregoing reasons, all of the claims asserted against Keith Patrick Gill in Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: February 14, 2024                    Respectfully Submitted,

                                            /s/ Christopher R. MacColl
                                            William W. Taylor, III, *pro hac* forthcoming
                                            Christopher R. MacColl (BBO #706164)
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street NW, STE 1000
                                            Washington, D.C. 20036
                                            202-778-1849
                                            wtaylor@zuckerman.com
                                            cmaccoll@zuckerman.com

                                            *Counsel for Keith Patrick Gill*