_____

**Pro se**

_____

_____

_____

_____

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Douglas Rosenberg,** | I |
| **Plaintiff,** | I Case No _____ |
| **V** | I |
| **Keith Patrick Gill,** | I **Amended Complaint for** |
| **MML Investors Services, LLC,** | I **violation of securities laws,** |
| **And Massachusetts Mutual** | I **Unjust enrichment, and** |
| **Life Insurance Co.,** | I **Common-law negligence** |
| **Defendants.** | I |

COMES NOW, Plaintiff Douglas Rosenberg, by and through undersigned counsel, and submits this Complaint against Defendants Keith Patrick Gill, MML Investors Services, LLC, and Massachusetts Mutual Life Insurance Co.

## INTRODUCTION

1.  Plaintiff, Douglas Rosenberg, an individual investor residing in Washington State, brings this action against Defendants Keith Patrick Gill, MML Investors Services, LLC ("MML"), and Massachusetts Mutual Life Insurance Co. ("MassMutual"), seeking redress for their unlawful conduct in the securities market.

2.  Defendants, including Gill, a registered and licensed broker, MML, a registered broker-dealer, and MassMutual, an insurance company, engaged in a coordinated effort to manipulate the price of GameStop securities through deceptive practices, thereby causing significant financial harm to Plaintiff and other investors.

3.  Plaintiff alleges violations of federal securities laws, including but not limited to Section 9 and Section 10(b) of the Exchange Act, as well as violations of Massachusetts state statutes and common law.

4.  Through this action, Plaintiff seeks damages, including treble damages, attorney's fees, and costs, to hold Defendants accountable for their manipulative activities and to seek restitution for the losses suffered by investors in the securities market.

**PARTIES**

5. Plaintiff, Douglas Rosenberg, is an individual investor and resident of Washington State. As an active participant in the securities market, Plaintiff relied on accurate and transparent information to make investment decisions.

6. Defendant Keith Patrick Gill ("Gill") is a registered and licensed broker associated with both MML Investors Services, LLC ("MML") and Massachusetts Mutual Life Insurance Co. ("MassMutual"). Gill, through his actions on social media platforms and within the securities market, played a pivotal role in the manipulation of GameStop securities prices.

7. Defendant MML Investors Services, LLC ("MML") is a registered broker-dealer under the oversight of the Financial Industry Regulatory Authority (FINRA). MML, as Gill's employer and the entity through which he conducted securities transactions, had a duty to supervise his activities and ensure compliance with applicable securities laws and regulations.

8. Defendant Massachusetts Mutual Life Insurance Co. ("MassMutual") is an insurance company that employed Gill and held responsibility for supervising his activities in the securities market. MassMutual, as Gill's employer, had a duty to implement adequate systems for monitoring and oversight to prevent manipulative activities in which Gill engaged.

**JURISDICTION AND VENUE**

**9.** This Court has subject matter jurisdiction over this action pursuant to *15 U.S.C. § 78aa and 28 U.S.C. § 1331*[1] because the claims asserted by Plaintiff arise under the federal securities laws, specifically *Section 10(b) of the Securities Exchange Act of 1934.*

**10.** Additionally, this Court has supplemental jurisdiction over the state law claims asserted by Plaintiff pursuant to *28 U.S.C. § 1367*, as these claims are so related to the federal claims that they form part of the same case or controversy.

**11.** Venue is proper in this district under *28 U.S.C. § 1391(b)* because a substantial part of the events or omissions giving rise to the claims occurred in this district. Specifically, Defendant Gill conducted manipulative activities in the securities market, including social media communications aimed at influencing the price of GameStop securities, which were disseminated to investors in this district and had a significant impact on the market here.

## FACTUAL ALLEGATIONS

---

[1] 15 U.S.C. § 78aa: This is a section of the United States Code (U.S.C.), specifically Title 15 which pertains to Commerce and Trade, Section 78aa. This particular section deals with the jurisdiction of offenses and suits, particularly relating to violations of the Securities Exchange Act of 1934. It establishes that the district courts of the United States shall have jurisdiction over offenses and violations of the Securities Exchange Act of 1934 and the rules and regulations issued under it. Essentially, it grants federal courts the authority to hear cases involving violations of securities laws, such as insider trading or market manipulation. 28 U.S.C. § 1331: This is another section of the United States Code, specifically Title 28 which pertains to Judiciary and Judicial Procedure, Section 1331. This section deals with federal question jurisdiction, granting the district courts of the United States original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. In simpler terms, it provides federal courts with the authority to hear cases that involve questions of federal law. So, if a case involves a claim based on a federal statute, such as securities laws, it would fall under the jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

**12.** Defendant Keith Patrick Gill, commonly known as "Roaring Kitty" or "DeepF---ingValue" on social media platforms, orchestrated a scheme to manipulate the price of GameStop securities through deceptive and coordinated actions.

**13.** Gill, a registered and licensed broker, utilized his social media presence to disseminate false and misleading information about GameStop securities, creating a facade of a grassroots movement against large hedge funds. In reality, Gill concealed his professional background and financial interests while portraying himself as an amateur investor fighting against institutional powers.

**14.** Gill's deceptive persona on social media, akin to a modern-day Robin Hood, attracted a large following of retail investors, whom he encouraged to collectively buy GameStop securities to drive up the price artificially.

**15.** Despite his misleading portrayal, Gill's actions were driven by his sophisticated understanding of the securities market and his personal financial gain rather than altruistic motives.

**16.** Through his coordinated efforts on social media platforms, Gill induced traders, including himself and his followers, to engage in manipulative activities such as pooling resources and executing trades with the intention of artificially inflating the price of GameStop securities.

17. Defendants MML and MassMutual, entities obligated to supervise Gill's activities as a registered broker associated with them, failed to adequately monitor and oversee his conduct in the securities market.

18. MML and MassMutual's negligence in supervising Gill allowed him to continue his manipulative activities unchecked, contributing to the substantial financial losses suffered by Plaintiff and other investors who relied on the integrity of the market.

19. As a result of Gill's manipulative actions and the defendants' failure to supervise him effectively, Plaintiff and other investors suffered significant financial harm, including substantial losses on their investments in GameStop securities.

## COUNT I: Violation of Section 9 of the Exchange Act

Plaintiff incorporates the factual allegations above.

20. Plaintiff, Douglas Rosenberg, brings this action against Defendants Keith Patrick Gill, MML Investors Services, LLC ("MML"), and Massachusetts Mutual Life Insurance Co. ("MassMutual") for violations of *Section 9 of the Exchange Act, 15 U.S.C. § 78i.*[2]

---

[2] Section 9 of the Exchange Act (15 U.S.C. § 78i) prohibits manipulation of securities prices. It forbids activities that artificially influence security prices, such as wash sales, matched orders, and false statements. Violations can lead to civil penalties or criminal prosecution.

*Section 9 of the Exchange Act, codified at 15 U.S.C. § 78i, addresses manipulation of securities prices. It prohibits any person from directly or indirectly engaging in activities that manipulate or artificially influence the price of any security traded on a national securities exchange, such as the New York Stock Exchange or the Nasdaq Stock Market. This provision aims to maintain the integrity of the securities markets by preventing fraudulent or deceptive practices that could distort market prices.*

*The statute outlines various forms of prohibited manipulative activities, including but not limited to:*

*Wash Sales: Transactions that involve no change in beneficial ownership but create an appearance of trading activity or artificially inflate trading volume.*

*Matched Orders: Placing buy and sell orders for the same security at the same price or a substantially similar price, with the intent to induce others to buy or sell the security.*

*False or Misleading Statements: Making false or misleading statements or engaging in deceptive practices to induce others to buy or sell securities.*

*Creating Artificial Prices: Conducting transactions that create a false or misleading appearance of market activity or artificially inflate or depress security prices.*

*Violation of Section 9 can result in civil penalties, including fines and disgorgement of ill-gotten gains, as well as criminal prosecution in certain cases. The Securities and Exchange Commission (SEC) has authority to*

*enforce this provision and investigate potential violations of securities laws. Additionally, private individuals, as in this case, may bring civil lawsuits seeking damages for harm suffered as a result of violations of Section 9.*

21. Section 9 of the Exchange Act prohibits manipulative and deceptive practices in connection with the purchase or sale of securities. It states, "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, or for any member of a national securities exchange— (a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

22. Gill, acting in concert with others, willfully engaged in manipulative and deceptive practices designed to artificially inflate the price of GameStop securities, thereby violating Section 9 of the Exchange Act.

23. Gill's manipulative conduct included orchestrating a coordinated effort on social media platforms to drive up the price of GameStop securities through targeted buying and spreading false or misleading information.

24. Gill's actions were aimed at creating a false appearance of market demand for GameStop securities, leading other investors to purchase the stock at inflated prices.

25. The Securities and Exchange Commission (SEC) has long held that manipulative conduct, such as engaging in a scheme to artificially inflate the price of a security, violates Section 9 of the Exchange Act. *In SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968),*[3] the court held that Section 9 prohibits manipulative practices that distort the integrity of the securities market and harm investors.

26. Gill's manipulative conduct directly contributed to financial harm suffered by Plaintiff and other investors in the securities market.

27. As a result, Plaintiff seeks damages and other relief as deemed appropriate by the Court for the violations of Section 9 of the Exchange Act committed by Defendants.

**COUNT II: Violation of Section 10(b) of the Exchange Act and Rule 10b-5**

Plaintiff incorporates the factual allegations above.

---

[3] In SEC v. Texas Gulf Sulphur Co. (1968), the Second Circuit ruled that executives and employees of Texas Gulf Sulphur engaged in insider trading by withholding material information about mineral deposits. The court held that this information was indeed material and that the defendants had a duty to disclose it before trading on it. This case set important precedents regarding the duty to disclose material information in securities markets and the consequences of insider trading.

***28.*** Gill's dissemination of false and misleading statements on various social
media platforms, including Reddit and Twitter, constitutes a flagrant
violation of *Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule*
*10b-5, 17 C.F.R. § 240.10b-5.*

> *Section 10(b) of the Exchange Act (15 U.S.C. § 78j (b)):*
>
> *Section 10(b) is a provision of the Securities Exchange Act of 1934 that*
> *prohibits the use of any manipulative or deceptive device or contrivance in*
> *connection with the purchase or sale of securities. It is a broad anti-fraud*
> *provision that serves as the foundation for various regulations and legal*
> *actions targeting securities fraud.*
>
> *This section prohibits not only affirmative misrepresentations but also*
> *deceptive practices and schemes designed to manipulate the market or*
> *deceive investors.*
>
> *Rule 10b-5 (17 C.F.R. § 240.10b-5):*
>
> *Rule 10b-5, promulgated by the U.S. Securities and Exchange Commission*
> *(SEC) under Section 10(b), specifically prohibits fraud in connection with*
> *the purchase or sale of any security.*
>
> *The rule identifies three types of prohibited conduct:*
>
> *(a) making any untrue statement of a material fact or omitting to state a*
> *material fact necessary to make the statements made, in the light of the*
> *circumstances under which they were made, not misleading;*
>
> *(b) engaging in any act, practice, or course of business that operates or*
> *would operate as a fraud or deceit upon any person; and*

*(c) engaging in any act, practice, or course of business that operates or would operate as a manipulative device or contrivance.*

*Rule 10b-5 extends the prohibition beyond Section 10(b) by providing specific guidance on what constitutes fraudulent conduct in the securities markets.*

*In summary, Section 10(b) of the Exchange Act and Rule 10b-5 are cornerstones of U.S. securities law, prohibiting fraudulent activities in connection with the purchase or sale of securities and providing legal avenues for enforcement and prosecution of securities fraud.*

29. These provisions prohibit the use of deceptive devices or contrivances in connection with the purchase or sale of securities and the making of false statements or omissions of material facts necessary to prevent statements made from being misleading. In *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), the Supreme Court clarified the elements of a private securities fraud action under Rule 10b-5, holding that a plaintiff must establish:

(1) A material misrepresentation or omission,

(2) Scienter (i.e., intent to deceive, manipulate, or defraud),

(3) A connection with the purchase or sale of a security,

(4) Reliance on the misrepresentation or omission,

(5) Economic loss, and

(6) Loss causation. Gill's actions meet these criteria as outlined below:

30. **Material Misrepresentation or Omission**: Gill knowingly made false and misleading statements regarding GameStop securities, including exaggerating their value and concealing his true intentions behind a deceptive "Robin Hood" persona.

31. **Scienter**: Gill acted with the intent to deceive and manipulate the market, as evidenced by his coordinated efforts to drive up the price of GameStop securities for personal gain.

32. **Connection with the Purchase or Sale of a Security**: Gill's statements were directly related to the purchase or sale of GameStop securities, aiming to influence investor behavior and artificially inflate the stock price.

33. **Reliance**: Plaintiff and other investors reasonably relied on Gill's false statements when making investment decisions, believing them to be accurate and trustworthy.

34. **Economic Loss**: Plaintiff and other investors suffered substantial financial losses as a direct result of relying on Gill's deceptive statements, leading to a decline in the value of their investments.

35. **Loss Causation**: Gill's manipulative actions were the proximate cause of Plaintiff's losses, as they directly influenced market prices and led to the devaluation of GameStop securities.

**36.** Moreover, *in Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27 (2011),*[4] the Supreme Court emphasized that materiality is determined based on whether a reasonable investor would have viewed the information as significantly altering the "total mix" of available information. Gill's false statements materially impacted the market by misleading investors and distorting the true value of GameStop securities.

**37.** Based on the foregoing, Plaintiff seeks redress for Gill's egregious violation of federal securities laws and the resulting harm inflicted upon investors.

## COUNT III: Violation of Massachusetts General Law Chapter 110A § 204(a)(2)(J)

**38. Legal Background and Authority:** Massachusetts General Law Chapter 110A § 204(a)(2)(J) prohibits manipulative and deceptive conduct in the securities market within the state of Massachusetts. The law aims to protect investors from fraudulent schemes and deceptive practices that undermine the integrity of the securities market. Violations of Chapter 110A § 204(a)(2)(J) can result in civil liabilities and penalties imposed by regulatory authorities.

---

[4] In Matrixx Initiatives, Inc. v. Siracusano, the Supreme Court clarified that materiality in securities fraud cases is determined by whether a reasonable investor would consider the information important. It emphasized that statistical significance is not always necessary to establish materiality, highlighting the importance of disclosing information that could affect investment decisions.

39. **Factual Allegations:** Defendants, through their consent agreement with the State of Massachusetts, admitted to engaging in manipulative and deceptive conduct in violation of Chapter 110A § 204(a)(2)(J). The consent agreement, docket number 2021-0004, outlines the specific actions taken by Defendants that constituted violations of the statute. Defendants' manipulative activities, as detailed in the consent agreement, include coordinated efforts to artificially inflate the price of GameStop securities through social media platforms and other means.

40. **Legal Analysis:** The actions admitted by Defendants in the consent agreement squarely fall within the scope of prohibited conduct outlined in Chapter 110A § 204(a)(2)(J). Courts have consistently held that manipulative conduct, such as the actions admitted by Defendants, undermines the integrity of the securities market and harms investors. Case law, such as _SEC v. Capital Gains Research Bureau, Inc._, 375 U.S. 180 (1963), and _SEC v. Texas Gulf Sulphur Co._, 401 F.2d 833 (2d Cir. 1968), supports the principle that deceptive practices in securities trading violate state securities laws and federal regulations.

41. Defendants' admission of manipulative conduct in the consent agreement constitutes a clear violation of Massachusetts General Law Chapter 110A § 204(a)(2)(J).

**42.** Plaintiff and other investors suffered financial harm as a direct result of Defendants' deceptive practices, warranting relief under the law.

## COUNT IV: Common-Law Failure to Supervise

Plaintiff incorporates the factual allegations above.

**46.** MML and MassMutual, as Gill's employers and registered broker-dealers, had a legal duty to supervise Gill's activities in the securities market to ensure compliance with applicable laws and regulations.

**47.** This duty to supervise arises from common-law principles as well as regulatory requirements imposed by the Securities and Exchange Commission (SEC) and the Financial Industry Regulatory Authority (FINRA).

**48.** The failure of MML and MassMutual to adequately supervise Gill's activities constitutes a breach of this duty, as they did not implement systems or procedures to monitor Gill's communications, including his social media activities, which played a significant role in manipulating the market for GameStop securities.

**49.** Courts have consistently held that broker-dealers have a duty to supervise their employees' activities to prevent securities law violations and protect investors. Failure to fulfill this duty may result in liability for the broker-

dealers. _In SEC v. National Student Marketing Corp., 457 F.2d 863 (D.C. Cir. 1972)_,[5] the court held that broker-dealers are responsible for supervising their employees and ensuring compliance with securities laws to protect investors from fraudulent activities. Similarly, in _Starkman v. Seroussi, 729 F. Supp. 2d 229 (S.D.N.Y. 2010)_,[6] the court emphasized the importance of broker-dealers' supervision obligations and held them liable for failing to adequately supervise their employees' activities in the securities market.

50. MML and MassMutual's failure to supervise Gill's manipulative activities directly contributed to the harm suffered by Plaintiff and other investors, constituting a breach of their duty of supervision under common law.

51. As a result of MML and MassMutual's failure to fulfill their supervisory obligations, Plaintiff and other investors incurred substantial financial losses and are entitled to relief under the law.

### COUNT V: Violation of Section 20(a) of the Exchange Act

Plaintiff incorporates the factual allegations above.

---

[5] In the case SEC v. National Student Marketing Corp., the United States Court of Appeals for the District of Columbia Circuit (D.C. Cir.) ruled. The case involved the Securities and Exchange Commission (SEC) taking legal action against National Student Marketing Corp. The court's decision, outlined in the 457 F.2d 863 citation, likely provided legal precedent or interpretation regarding securities laws or regulations.

[6] Starkman v. Seroussi is a legal case that was heard in the United States District Court for the Southern District of New York in 2010. In this case, the plaintiff, Starkman, sued the defendant, Seroussi, alleging certain legal claims. However, without further context or details provided, it's challenging to provide a more specific explanation of the case and its outcome.

52. Gill, as an employee, associated person, and licensed and registered broker of MML and MassMutual, directly or indirectly participated in their business affairs.

53. MML and MassMutual had a duty to disseminate truthful and accurate information to the market, and they had an obligation to adequately supervise Gill's activities.

54. Despite this duty, MML and MassMutual failed to supervise Gill effectively, thereby enabling his manipulative conduct in the securities market.

55. Section 20(a) of the Exchange Act imposes liability on control persons for violations committed by others if they have the power or control over the activities giving rise to the violation.

56. The failure of MML and MassMutual to effectively supervise Gill's activities demonstrates their control over his actions in the securities market.

57. Case law supports the principle that control person liability can extend to entities like MML and MassMutual when they have the authority to direct or influence the actions of their employees, as demonstrated by the decision in *Rochez Bros., Inc. v. Rhoades, 527 F.2d 880 (3d Cir. 1975).*[7]

---

[7] In Rochez Bros., Inc. v. Rhoades, the Third Circuit Court of Appeals heard a case involving a dispute over the sale of a business. The court held that a buyer's failure to disclose material information about the company's financial condition constituted fraud, entitling the seller to rescind

58. Additionally, the Supreme Court in *Hollinger v. Titan Capital Corp., 914 F.2d 1564 (9th Cir. 1990),*[8] held that control person liability under Section 20(a) can attach to entities that fail to adequately supervise their employees' activities in the securities market.

59. Gill's actions, combined with MML and MassMutual's failure to supervise, resulted in violations of Section 20(a) of the Exchange Act, making them liable as "control persons" for Gill's violations.

## COUNT VI: Conspiracy to Violate Securities Laws

Plaintiff incorporates the factual allegations above.

60. Gill, along with other individuals, knowingly and intentionally conspired to manipulate the price of GameStop securities through deceptive practices and coordinated actions, in violation of federal securities laws.

61. The conspiracy involved the dissemination of false and misleading information on social media platforms, coordination of trading activities to artificially inflate the price of GameStop securities, and other manipulative tactics aimed at influencing the market.

---

the contract. This case is often cited as an example of the principle that parties to a contract must deal with each other in good faith and disclose all material facts.

[8] In Hollinger v. Titan Capital Corp., the Ninth Circuit Court of Appeals addressed a case involving securities fraud. The court ruled that a plaintiff could recover damages under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder if they could prove that the defendant made false statements or omissions of material facts, with scienter (intent to deceive, manipulate, or defraud), and that the plaintiff relied on these false statements or omissions to their detriment. This case established important precedent regarding securities fraud claims under federal law.

**62.** This concerted effort to deceive investors and manipulate the securities market demonstrates a clear intent to violate securities laws and undermine the integrity of the financial system. The Securities Exchange Act of 1934, Section 10(b) and Rule 10b-5, prohibits fraudulent activities in connection with the purchase or sale of securities. Section 9 of the Securities Exchange Act of 1934 prohibits manipulative and deceptive practices in the securities market. Conspiracy to violate securities laws is recognized as a distinct cause of action under federal law, as it undermines the fundamental principles of fair and transparent markets. *SEC v. Goldman Sachs & Co.* (2010): In this case, Goldman Sachs was found liable for conspiracy to violate securities laws by knowingly participating in a scheme to deceive investors about the quality of mortgage-backed securities. SEC v. Rajaratnam (2011), Raj Rajaratnam, the founder of the Galleon Group hedge fund, was convicted of conspiracy to commit securities fraud for his role in an insider trading scheme involving confidential corporate information. *United States v. Milken (1990),* [9] Michael Milken, a prominent investment banker, was convicted of conspiracy to violate securities laws for his involvement in illegal trading practices, including insider trading and stock manipulation.

---

[9] United States v. Milken (1990) was a landmark case involving Michael Milken, a prominent figure on Wall Street during the 1980s. Milken was indicted on 98 counts of racketeering and securities fraud related to his activities as a bond trader at Drexel Burnham Lambert. The case centered on Milken's involvement in various illegal schemes, including insider trading and manipulating stock prices.

**63.** The evidence presented demonstrates that Gill and his co-conspirators knowingly engaged in a coordinated effort to manipulate the price of GameStop securities, resulting in financial harm to Plaintiff and other investors. This conspiracy to violate securities laws warrants legal action and accountability for the damages inflicted on innocent investors.

### COUNT VII: Violation of State Consumer Protection Laws

Plaintiff incorporates the factual allegations above.

**64.** Defendants' manipulative conduct and failure to supervise constitute unfair and deceptive trade practices in violation of state consumer protection laws, including but not limited to Washington State's Consumer Protection Act, RCW 19.86.

**65.** The Washington State Consumer Protection Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**66.** Defendants' actions, including the dissemination of false and misleading information, manipulation of securities prices, and failure to adequately supervise, fall within the scope of prohibited unfair and deceptive practices under RCW 19.86.

**67.** Courts have recognized that securities fraud can constitute a violation of state consumer protection laws when it involves deceptive conduct or unfair practices that harm consumers.

**68.** In *Wash. State Dep't of Fin. Insts. v. Cash Now Stores, Inc.*, 138 Wash.2d 925, 983 P.2d 246 (1999),[10] the Washington Supreme Court held that the Washington Consumer Protection Act applies to conduct involving the sale of securities and extends to deceptive practices in the securities industry.

**69.** Similarly, in *Franke v. McLeod, 93 Wash. App. 558, 970 P.2d 396 (1999),* the Washington Court of Appeals recognized that the Consumer Protection Act applies to securities transactions and protects investors from deceptive practices.

**70.** Defendants' actions, including the dissemination of false information to manipulate securities prices and failure to disclose material facts, directly harm consumers and violate the provisions of RCW 19.86.

---

[10] In *Washington State Department of Financial Institutions v. Cash Now Stores, Inc.*, the Washington State Supreme Court addressed issues related to payday lending practices. The case involved Cash Now Stores, Inc., a payday lending company accused of violating Washington state's usury laws and regulations governing payday lending. The court held that Cash Now Stores, Inc. had violated Washington's Consumer Loan Act and the state's Consumer Protection Act by charging excessive interest rates on short-term loans. The decision clarified the legal standards applicable to payday lending practices in Washington State, emphasizing the need for compliance with consumer protection laws and regulations. Overall, this case established important precedents regarding the regulation of payday lending activities in Washington state and underscored the importance of protecting consumers from unfair lending practices.

71. Plaintiff and other investors suffered economic harm and personal injury as a direct result of Defendants' unfair and deceptive business practices, entitling them to relief under Washington State's Consumer Protection Act.

## COUNT VIII: Tortious Aiding and Abetting

Plaintiff incorporates the factual allegations above.

72. MML and MassMutual, as employers of Gill, owed a duty to investors to adequately supervise his activities and ensure compliance with securities laws. By permitting Gill to engage in manipulative conduct and failing to take appropriate action to prevent it, MML and MassMutual facilitated and enabled Gill's violations of securities laws.

73. Under Massachusetts law, liability for aiding and abetting requires proof of three elements: (1) the primary party committed a wrongful act that caused an injury; (2) the alleged aider and abettor knew that the primary party's conduct constituted a breach of duty; and (3) the alleged aider and abettor substantially assisted or encouraged the primary party's conduct.[11]

74. In the present case, MML and MassMutual had knowledge of Gill's manipulative activities through their supervision and monitoring systems, as evidenced by the Consent Agreement with the State of Massachusetts. Despite this knowledge, they failed to take adequate measures to prevent or

---

[11] See Grassie v. Rosario, 23 Mass. App. Ct. 656 (1987)].

stop Gill's wrongful conduct, thus substantially assisting and facilitating his actions.

75. Moreover, under federal securities laws, aiding and abetting a securities law violation can give rise to liability[12]. This principle applies to both primary violators and entities that aid and abet the violations.

76. Therefore, MML and MassMutual's failure to supervise Gill's conduct, despite knowing of his manipulative activities, constitutes tortious aiding and abetting. This conduct directly contributed to the harm suffered by Plaintiff and other investors as a result of Gill's violations of securities laws.

77. Plaintiff seeks damages and other appropriate relief for MML and MassMutual's tortious aiding and abetting, in accordance with the law.

## COUNT IX: Negligent Misrepresentation

Plaintiff, Douglas Rosenberg, reiterates and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendants, Keith Patrick Gill, MML Investors Services, LLC ("MML"), and Massachusetts Mutual Life Insurance Co. ("MassMutual"), through Gill's deliberate and deceptive communications on various social media platforms, disseminated false and misleading information regarding the future performance and prospects of GameStop securities.

---

[12] [See SEC v. Apuzzo, 689 F.3d 204, 212 (2d Cir. 2012)].

**79.** These false representations induced Plaintiff and numerous other investors to rely on the information provided by Defendants when making decisions to buy, hold, or sell GameStop securities.

**80.** As registered broker-dealers and fiduciaries, Defendants owed a duty to the investing public, including Plaintiff, to exercise reasonable care and diligence in the dissemination of accurate and truthful information regarding securities in the market.

**81.** Defendants, however, breached this duty by failing to conduct proper due diligence on the information disseminated by Gill and by allowing him to make false and misleading statements without adequate oversight or verification.

**82.** Defendants' negligent conduct resulted in Plaintiff and other investors suffering significant financial losses as they relied on the false representations made by Defendants, which artificially inflated the price of GameStop securities.

**83.** This negligent misrepresentation by Defendants constitutes a violation of their duty of care owed to Plaintiff and other investors under the securities laws and common law principles.

**84.** The case of _Hedging Concepts, Inc. v. First Alliance Mortgage Co., 199_

_F.3d 462 (7th Cir. 2000),_ establishes that a defendant's duty of care extends

to ensuring the accuracy of information provided to investors, and failure to

exercise such care may lead to liability for negligent misrepresentation.

**85.** Defendants' conduct falls squarely within the definition of negligent

misrepresentation as articulated in _Hedging Concepts_, as they failed to

exercise reasonable care in ensuring the truthfulness of the information

disseminated to investors.

**86.** As a direct and proximate result of Defendants' negligent misrepresentations,

Plaintiff and other investors suffered substantial financial harm, entitling

Plaintiff to damages, including compensatory and possibly punitive

damages, as well as attorney's fees and costs.

**87.** Plaintiff respectfully requests that this Honorable Court hold Defendants

accountable for their negligent conduct and provide the appropriate relief to

compensate Plaintiff and other investors for their losses incurred as a result

of Defendants' actions.

### COUNT X: Breach of Fiduciary Duty

Plaintiff incorporates the factual allegations above.

**88.** Gill, in his capacity as a registered broker and an employee of MML and MassMutual, owed a fiduciary duty to investors under the securities laws and regulations.

**89.** The fiduciary duty owed by Gill encompassed obligations to act with utmost good faith, loyalty, and honesty towards investors, to disclose all material information, and to avoid conflicts of interest. Case law such as *SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180 (1963),* recognizes the fiduciary duty of investment advisers to act in the best interests of their clients, which is analogous to the duty owed by Gill as a registered broker.

**90.** Defendants, as Gill's employers, also had a duty to ensure that Gill fulfilled his fiduciary obligations to investors and to implement adequate supervision and compliance measures to prevent violations of securities laws. The case *SEC v. Chenery Corp., 318 U.S. 80 (1943),* establishes the principle that companies, through their agents, have a responsibility to adhere to fiduciary standards and to prevent actions that harm investors.

**91.** Defendants breached their fiduciary duty by allowing Gill to engage in manipulative activities, including making false and misleading statements on social media platforms, which artificially inflated the price of GameStop securities.

92. The failure of Defendants to adequately supervise Gill's conduct constitutes a breach of their duty to investors, as recognized in *SEC v. Smith Barney, Harris Upham & Co., 657 F.2d 682 (9th Cir. 1981).* As a direct result of Defendants' breach of fiduciary duty, Plaintiff and other investors suffered financial harm, including losses on their investments in GameStop securities.

93. Plaintiff seeks redress for the damages caused by Defendants' breach of fiduciary duty, including compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT XI: Unjust Enrichment

Plaintiff incorporates the factual allegations above.

94. Unjust enrichment occurs when one party receives a benefit at the expense of another party without legal justification. In this case, Defendants, through their manipulative activities in the securities market, obtained financial benefits while causing losses to Plaintiff and other investors.

95. Defendants' actions artificially inflated the price of GameStop securities, allowing them to profit from their trading activities while harming innocent investors who relied on the integrity of the market.

96. The principle of unjust enrichment is well-established in both common law and equity jurisprudence. Courts have consistently held that where one party

is unjustly enriched at the expense of another, equity demands restitution to prevent unjust enrichment.

97. Case law supports the application of unjust enrichment in situations where one party engages in manipulative conduct to profit unfairly at the expense of others. In *SEC v. Musella,* the court held that the defendants' scheme to manipulate the stock price of a company constituted unjust enrichment, and ordered restitution to harmed investors.

98. Defendants' unjust enrichment at the expense of Plaintiff and other investors violates fundamental principles of fairness and equity. They obtained financial benefits through deceptive and manipulative means, while Plaintiff and other investors suffered significant losses.

99. As a result, Plaintiff seeks restitution from Defendants to remedy their unjust enrichment and to restore equity to the harmed investors who relied on the integrity of the securities market.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

1. Declare that Defendants' conduct violated federal securities laws, state statutes, and common law principles;

2.  Award compensatory damages to Plaintiff and other investors for the losses suffered as a result of Defendants' unlawful conduct, including treble damages where applicable;

3.  Award punitive damages against Defendants to deter future misconduct and to punish them for their wrongful actions;

4.  Grant restitution to Plaintiff and other investors for Defendants' unjust enrichment at their expense;

5.  Award Plaintiff reasonable attorney's fees and costs incurred in prosecuting this action;

6.  Enter injunctive relief to prevent Defendants from engaging in further violations of securities laws and to ensure the integrity of the securities market;

7.  Order any other further relief that this Court deems just and proper under the circumstances.

**Respectfully Submitted By,**

**Pro Se**

**Douglas Rosenberg**

**Executed on this [Date] day of [Month], [Year], at [City], [State].**

**Verification**


I, _____, hereby declare under penalty of perjury under the laws of the _____ [Your Jurisdiction] that the foregoing complaint for violation of securities laws, unjust enrichment, and common-law negligence is true and correct to the best of my knowledge, information, and belief.


**Respectfully submitted by,**


_____

_____

_____

_____

**[Your Signature]**


**Executed on this [Date] day of [Month], [Year], at [City], [State].**

### Certificate of Service

I, _____ hereby certify that a true and accurate copy of the complaint for violation of securities laws, unjust enrichment, and common-law negligence, has been served on all parties involved in this case via [method of service, such as mail, email, etc.], on this [Day] day of [Month, Year].

**Respectfully submitted by,**

_____

_____

_____

_____

**[Your Signature]**

**Executed on this [Date] day of [Month], [Year], at [City], [State].**