## UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF

## MASSACHUSETTS

| | |
|---|---|
| Douglas Rosenberg ........Plaintiff,<br><br>vs.<br><br><br>KEITH PATRICK GILL, MML INVESTORS SERVICES, LLC, AND MASSACHUSETTS MUTUAL LIFE INSURANCE CO.<br>.....Defendants. | **C.A. NO. 1:23-cv-10441-FDS**<br><br>**Second Amended Complaint**<br><br>**JURY TRIAL DEMANDED** |

I.        Introduction

Case

1

II.      OVERVIEW OF WRONGDOING ..........................................................................

III.     THE PARTIES ......................................................................................................

IV.      JURISDICTION AND VENUE .............................................................................

V.       FACTS ..................................................................................................................

         A.      The Real Keith Gill .................................................................................

         B.      MML's and MassMutual's Obligations To Supervise ..............................

         C.      Gill's Use of Social Media Undermines the Integrity of,

                 and Manipulates,

                 the Market for GameStop Shares ..............................................................

         D.      Plaintiff's GameStop Options Transactions ..............................................

VI.      CLAIMS ................................................................................................................

         A.      COUNT I: GILL'S VIOLATION OF 15 U.S.C.

                 §78i(a)(2) ..................................................................................................

         B.      COUNT II: GILL'S VIOLATION OF 15 U.S.C.

                 §78i(a)(3) ..................................................................................................

         C.      COUNT III: GILL'S VIOLATION OF 15 U.S.C.

                 §78i(a)(4) ..................................................................................................

         D.      COUNT III: MML AND MASSMUTUAL'S

                 VIOLATION OF 15 U.S.C.

                 §78i(a) .......................................................................................................

         E.      COUNT IV: GILL'S VIOLATION OF SECTION 10(b)

Case

OF THE

EXCHANGE ACT AND RULE 10b-5 (17 C.F.R.

§240.10b-5) .................................................................................................

    F.    COUNT V: MML AND MASSMUTUAL'S

        VIOLATION OF SECTION

        20(a) OF THE EXCHANGE ACT ............................................................

    G.    COUNT VI: MML AND MASSMUTUAL'S

        COMMON-LAW

        FAILURE TO SUPERVISE .......................................................................

    H.  COUNT VIII: Gill - Conspiracy to Violate Massachusetts

      General Law 93A-11.

    I.  COUNT IX: Gill - Conspiracy to Violate Massachusetts

      General Law 93A-11:

    J.  COUNT X: Against Mass Mutual and MML – Tortuous

      AIDING AND Abetting in GILLS SCHEME:

VII.    Judgments

VIII.    DEMAND FOR JUDGMENT .............................................................................

IX.    JURY DEMAND .................................................................................................

X.    Conclusion

XI.    Exhibits

Case

**Introductions**

Plaintiff Douglas Rosenberg, files this Action Complaint against Defendants, Keith Patrick Gill ("Gil, MML Investors Services, LLC ("MML"), and Massachusetts Mutual Life Insurance Company ("MassMutual," and, together with Gill and MML, "Defendants"), and avers as follows:

## I. OVERVIEW OF WRONGDOING

1. Plaintiff purchased securities in GameStop unaware of Gill's manipulation in the market.

2. Plaintiff sold 10 Calls February 19, 2021 Strike price 100 at $27.73 per share. Later in the day he sold an additional 10 calls in the February options with a strike price of $200.00 at $15.00 per share. ( See Exhibit 1). This caused a loss of approximately $420,000.00.

3. After purchasing a sizeable number of shares in GameStop Corp. ("GameStop") at prices around $5 per share, Gill used multiple identities to promote GameStop on written and video social media. He went by "Roaring Kitty" on YouTube – where cats and kittens are a favorite subject matter – and on Twitter and "DeepF***ingValue" on

Reddit's WallStreetBets message board. In order to disguise that the aim of his social-media campaign was simply to increase the worth of his GameStop shares by creating a demand for the stock, Gill took on the fake persona of an amateur, everyday fellow, who simply was looking out for the little guy. He exaggerated and misrepresented the prospects of GameStop and made bold predictions about its future. Hereto annexed and marled as **Exhibit A** are copies of the pictures or screen shorts of the evidence.

4. Indeed, in order to motivate amateur traders, Gill fashioned himself as a kind of Robin Hood and characterized securities professionals as villains. Gill slyly targeted large hedge funds who had shorted GameStop stock as the evil, powerful big boys. He incited a market frenzy by advocating revenge on the big hedge funds by buying GameStop shares to drive up the price and "squeeze" short sellers who would be forced to cover their short positions at greatly inflated prices. Because of Gill's conduct, in a matter of days, the price of GameStop shares went up by more than 1,600% to a record $483 a share, causing huge losses for both short sellers and those who purchased GameStop shares at artificially inflated prices. Gill achieve his objective; he made

tens of millions of dollars on his original investment. As Gill's mother is quoted as saying, "He always liked money."

5.  Gill, however, is no amateur (and no Robin Hood). For many years, he actively worked as a professional in the investment and financial industries. He holds extensive securities licenses and qualifications, including a securities principal and supervisory management license and a Chartered Financial Analyst license. Indeed, at the time Gill was inciting the market frenzy with his fake persona, he was licensed by MML as a registered representative (i.e., a securities broker), and he was employed by MassMutual as a "Financial Wellness Director."

6.  Gill's deceitful and manipulative conduct not only violated numerous industry regulations and rules but also various securities laws by undermining the integrity of the market for GameStop shares. He caused enormous losses not only to those who bought option contracts but also to those who fell for Gill's act and bought GameStop stock during the market frenzy at greatly inflated prices.

7.  At the time Gill was engaging in this wrongful conduct, MML and MassMutual had legal and regulatory obligations to supervise Gill to

Case

prevent this very conduct. They failed to do so even though Gill's conduct was continuing and highly public.

8. Consequently, this action is brought to remedy Defendants' egregious conduct and somewhat restore the integrity of the securities market.

9. 1 Julia Ambra Verlaine and Gunjan Banerji, Keith Gill Drove the GameStop Reddit Mania. He Talked to the Journal, The Wall Street Journal, https://www.wsj.com/articles/keith-gill-drove-the-gamestop-reddit-mania-he-talked-to-the-journal-11611931696?mod=series_gamestopstockmarket (last accessed Feb. 14, 2021).

## II. THE PARTIES

10. Plaintiff Douglas Rosenberg is a resident of the State of Washington. During the relevant period, he purchased option contracts and shorted shares of GameStop. Plaintiff Douglas Rosenberg lost 1.2 Million dollars during January and February 2021 due to Gill's conspiracy to raise the price of GME Stock.

Case

7

11. Keith Patrick Gill is a resident of the Commonwealth of Massachusetts and, on information and belief, resides in Brockton, Massachusetts. During the relevant period, Gill was associated with both MML, as a registered representative (a securities broker), and MassMutual, as a "Financial Wellness Director."

12. MML Investors Services, LLC is incorporated in Massachusetts and headquartered in Springfield, Massachusetts. MML is a subsidiary of MassMutual, and it is a broker-dealer registered with the Financial Industry Regulatory Authority, Inc. ("FINRA").

13. Massachusetts Mutual Life Insurance Company is incorporated in Massachusetts and headquartered in Springfield, Massachusetts. MassMutual is a financial services company that provides insurance, retirement, investment, and "financial wellness" products and services.

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

Case

8

15. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b).

16. In connection with the conduct described herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

## IV. FACTS

A. The Real Keith Gill

For more than ten years, Gill has actively worked as a professional in the investment and financial industries. He holds the following securities licenses and qualifications:

- o Investment advisor license (Series 65) since 2/22/2012;

- o Commodity futures and options broker license (Series 3) since 1/10/2013;

- o Securities broker license (Series 7) since 7/5/2016;

- o Securities broker license (Series 65) since 7/29/2016;

- o Securities principal and supervisory management license (Series 24) since 4/6/2017; and

Case

    o  Chartered Financial Analyst (considered the highest level of legal and regulatory recognition of finance-related qualifications).

17. Gill's various licenses permit him to sell and trade in a variety of securities, including options. Additionally, his Series 24 license qualifies him to be a principal of a broker-dealer and to supervise other brokers to ensure their compliance with applicable securities laws, regulations, and rules. Unquestionably, Gill holds extensive licenses in the securities industry, understands sophisticated aspects of the securities industry, including the markets, and has extensive knowledge of the securities laws and regulations.

18. Based on public records and information, Gill further has extensive experience working as a securities professional:

19. From July 2010 through March 2019, Gill was President of Debris Publishing, Inc. ("Debris"), which provided financial software to research and portfolio management companies and persons. Debris touted a product called "Quuve" that supposedly was "the world's first fully customizable web-based investment management ecosystem that

Case

lets you create and manage your own trading and analysis tools in real-time."

20. On February 22, 2012, Gill registered with the state of Massachusetts as an investment adviser representative of Debris, Inc. As such, Gill had a fiduciary duty to his clients. On May 22, 2013, Gill was also registered with the state of Texas as an investment adviser representative of Debris, Inc.

21. On December 20, 2012, Gill registered with the National Futures Association as an associated person and principal of Debris, Inc.

22. From June 2012 to January 2013, Gill was employed by Prudential Financial, Inc. as an investment adviser.

23. From September 2015 to July 2016, Gill was employed by State Street Bank and Trust Company as a financial analyst.

24. From January 2017 to June 2017, Gill was employed by Natixis Advisors, LLC as a fund analyst.

Case

25. In 2017, Gill was also employed by General Electric Company as a fund analyst.

26. Since June 2019, Gill has been licensed by MML as a securities broker (i.e., a registered representative). Gill is registered in the Commonwealth of Massachusetts.

B Gill's Market Manipulation Scheme

27. On or about January 2020, Gill started posting about GameStop on the WallStreetBets subreddit under the moniker "DeepF***ingValue." Gill's posts generated significant attention, likes, and followers on the subreddit.

28. Gill started buying shares and options contracts in GameStop in June 2019. By January 2020, he had already amassed over $200,000 in GameStop shares and options contracts. By the end of 2020, Gill's GameStop position had grown to be worth over $30,000,000. His massive GameStop position comprised almost 50% of his investment portfolio.

Case

29. Gill started making significant purchases of GameStop shares and options contracts in June 2019. For example, on December 16, 2020, he bought 50 GameStop calls with a strike price of $20 and an expiration date of January 15, 2021, for $11.05 per share. On December 23, 2020, he bought another 20 GameStop calls with a strike price of $20 and an expiration date of January 29, 2021, for $11.52 per share.

30. On or about January 13, 2021, Gill posted screenshots of his GameStop portfolio on Reddit and disclosed that his position was worth $33,000,000. He further revealed that he owned GameStop shares and calls with various expiration dates and strike prices. For example, he disclosed that he owned 500 GameStop calls with a strike price of $12.50 and an expiration date of January 29, 2021, and 500 GameStop calls with a strike price of $115 and an expiration date of January 15, 2021.

31. On January 21, 2021, Gill bought 30 GameStop calls with a strike price of $115 and an expiration date of January 29, 2021, for $20.22 per share. The total value of this transaction was $606,600. On January 22, 2021, Gill bought 30 GameStop calls with a strike price of $115

Case

and an expiration date of February 19, 2021, for $25.70 per share. The total value of this transaction was $771,000.

32. On or about January 25, 2021, Gill posted screenshots of his GameStop portfolio on Reddit and disclosed that his position was worth $48,000,000. He further revealed that he owned GameStop shares and calls with various expiration dates and strike prices. For example, he disclosed that he owned 500 GameStop calls with a strike price of $12.50 and an expiration date of January 29, 2021, and 500 GameStop calls with a strike price of $115 and an expiration date of February 19, 2021.

33. Between January 12, 2021, and January 28, 2021, Gill posted or otherwise made publicly available a series of statements about GameStop on Reddit, YouTube, and Twitter.

34. For example, on January 12, 2021, Gill posted screenshots of his GameStop portfolio on Reddit and disclosed that his position was worth $22,000,000. He further revealed that he owned GameStop shares and calls with various expiration dates and strike prices. For example, he disclosed that he owned 500 GameStop calls with a strike

price of $12.50 and an expiration date of January 29, 2021, and 500 GameStop calls with a strike price of $115 and an expiration date of February 19, 2021.

35. Between January 13, 2021, and January 28, 2021, Gill continued to make significant purchases of GameStop shares and options contracts.

36. On January 12, 2021, Gill posted screenshots of his GameStop portfolio on Reddit and disclosed that his position was worth $22,000,000. He further revealed that he owned GameStop shares and calls with various expiration dates and strike prices. For example, he disclosed that he owned 500 GameStop calls with a strike price of $12.50 and an expiration date of January 29, 2021, and 500 GameStop calls with a strike price of $115 and an expiration date of February 19, 2021.

37. On or about January 25, 2021, Gill posted screenshots of his GameStop portfolio on Reddit and disclosed that his position was worth $48,000,000. He further revealed that he owned GameStop shares and calls with various expiration dates and strike prices. For example, he disclosed that he owned 500 GameStop calls with a strike price of

$12.50 and an expiration date of January 29, 2021, and 500 GameStop calls with a strike price of $115 and an expiration date of February 19, 2021.

38. Between January 12, 2021, and January 28, 2021, Gill continued to make significant purchases of GameStop shares and options contracts.

39. For example, on January 13, 2021, Gill bought 50 GameStop calls with a strike price of $50 and an expiration date of February 19, 2021, for $21.21 per share. The total value of this transaction was $106,050. On January 14, 2021, Gill bought 50 GameStop calls with a strike price of $50 and an expiration date of January 29, 2021, for $22.55 per share. The total value of this transaction was $112,750. On January 15, 2021, Gill bought 30 GameStop calls with a strike price of $50 and an expiration date of January 29, 2021, for $21.34 per share. The total value of this transaction was $64,020. On January 16, 2021, Gill bought 30 GameStop calls with a strike price of $50 and an expiration date of February 19, 2021, for $24.02 per share. The total value of this transaction was $72,060. On January 17, 2021, Gill bought 30 GameStop calls with a strike price of $50 and an expiration date of February 19, 2021, for $26.53 per share. The total value of this

Case

transaction was $79,590. On January 18, 2021, Gill bought 30 GameStop calls with a strike price of $50 and an expiration date of February 19, 2021, for $26.40 per share. The total value of this transaction was $79,200. On January 19, 2021, Gill bought 30 GameStop calls with a strike price of $50 and an expiration date of February 19, 2021, for $27.10 per share. The total value of this transaction was $81,300. On January 20, 2021, Gill bought 30 GameStop calls with a strike price of $50 and an expiration date of February 19, 2021, for $32.85 per share. The total value of this transaction was $98,550.

40. Between January 12, 2021, and January 28, 2021, Gill spent over $2,000,000 buying GameStop shares and options contracts.

41. Gill's conduct caused significant and predictable volatility in the price of GameStop shares. Between January 12, 2021, and January 28, 2021, the price of GameStop shares increased from $19.95 per share to $325.00 per share.

42. Gill's trading in GameStop shares and options contracts was not done in the ordinary course of his employment as a registered representative

Case
17

of MML. Gill failed to notify MML of his trading in GameStop shares and options contracts. Gill did not obtain MML's written approval for his trading in GameStop shares and options contracts.

43. Gill's trading in GameStop shares and options contracts constituted violations of Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

44. Gill's trading in GameStop shares and options contracts constituted violations of MML's written supervisory procedures.

Here shows Methods Manipulators Use to Sway Prices

## *1. Spoofing*

***"Spoofing" is the act of placing fake orders and then canceling them before they execute. Investors at large often assess pending buy and sell orders to gauge whether the market is bullish or bearish on a stock for the near term. Spoofing can therefore give these investors the false appearance of a large amount of interest on one side of the market or the other when it isn't really there. The bogus orders thus induce real buyers or sellers to behave a certain way so that the spoofer can take advantage of it.***

Case

### *2. Wash Trades*

***Offsetting trades that are placed for the purpose of misleading the market rather than actually acquiring or liquidating stock are called "wash trades". Wash trades can occur by the same player through two different brokers or as a collusion between a trader and a broker. It could also involve offsetting trades in the derivatives markets as well. The phony trades are meant to suggest activity on one side of the market that doesn't exist.***

### *3. Pump and Dumps*

***A "pump and dump" scheme involves a player accumulating a stock position and then issuing unrealistically optimistic comments about the company to attract buyers who will further bid up the price. The player then sells into the rising stock price to make a profit. Pump and dump schemes are typically implemented on small or microcap stocks, where there is a better chance of impacting the price of the stock with false news and a better chance of attracting retail investors who are more susceptible to that message.***

### *4. Painting the Tape*

Case

*"Painting the tape" is a reference to the days when stock trades would print out on ticker tape. It is an action meant to provide a false signal of heavy activity on one side of the market. In reality, the player has an accomplice who is conducting offsetting trades elsewhere. This is also called "marking the close" when it occurs at the end of the trading day.*

*5. Bear Raids*

*In a "bear raid", a player takes a short position in a stock and then issues negative or alarming comments on the stock (referred to as a "short attack" or "stock bashing"), which are meant to induce shareholders to panic out of their positions, thereby lowering the price of the stock. The intention of the player is then to close their short positions at much lower prices for a profit, even if the negative information they shared was inaccurate or exaggerated.*

**IV. In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent Gill's Offer.**

Accordingly, it is hereby ORDERED that:

    A. Gill cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Securities Act of 1933,

Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder;

B. Gill be, and hereby is, barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and

C. Gill shall pay disgorgement of $18,000,000 plus prejudgment interest of $4,033,038, for a total of $22,033,038. Payment of the monetary sanctions set forth in this Order shall be made on the first day following the day this Order is served upon Gill.

D. Payment shall be:

45. made by wire transfer, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission;

Case

46. mailed or delivered by hand to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and

47. submitted under cover letter that identifies Robert P. Gill as a Respondent in these proceedings, and the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Stephen L. Cohen, Associate Director, Division of Enforcement, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312.

## I. ALLEGATIONS:

48. The plaintiff initiates this lawsuit as a class action on behalf of themselves and others similarly situated, invoking the Federal Rules of Civil Procedure, particularly Rules 23(a) and (b)(2), (b)(3), or (c)(4). The plaintiff asserts that the case satisfies the requirements for numerosity, commonality, typicality, adequacy, predominance, and superiority as outlined in these rules.

Case

## II. NUMEROSITY:

49. The plaintiff argues that the number of class members is substantial, making individual joinder impracticable. They point to the high volume of options traded during the relevant period, numbering well into the hundreds of thousands per day. This suggests a large number of individuals and entities potentially affected by the alleged misconduct.

## III. TYPICALITY:

50. The plaintiff's claims are deemed typical of those of other class members because they suffered damages due to the alleged manipulation of GameStop stock. The complaint outlines various alleged violations of securities laws by the defendants, including inducing others to purchase or sell GameStop securities through deceptive promotion and communications.

## IV. SUPERIORITY:

51. A class action is argued to be superior to individual actions for the fair and efficient adjudication of the controversy. The plaintiff asserts that

Case

absent a class action, most members would likely find the cost of litigating their claims prohibitively high, thus having no effective remedy at law. Consolidating common questions of law and fact would conserve court and litigant resources and promote consistency and efficiency in adjudication.

## V. CLAIMS:

The complaint outlines several legal claims against the defendants:

### A. COUNT I: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(2):

Gill is accused of violating Section 78i(a)(2) of the Securities Exchange Act through his transactions and deceptive promotion of GameStop stock, allegedly inducing others to purchase additional shares of GameStop through manipulative conduct.

### B. COUNT II: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(3):

Similar to the previous count, Gill is accused of violating Section 78i(a)(3) of the Securities Exchange Act by inducing others to purchase or sell GameStop securities through the dissemination of false and misleading information about the stock's likely price trajectory.

C. COUNT III: GILL'S VIOLATION OF 15 U.S.C. §78i(a)(4):

Gill is further accused of violating Section 78i(a)(4) of the Securities Exchange Act by inducing coordinated action among traders to manipulate the price of GameStop securities through false and misleading communications.

D. COUNT IV: MML AND MASSMUTUAL'S VIOLATION OF 15 U.S.C. §78i(a):

The plaintiff alleges that MML and MassMutual failed to adequately supervise Gill's activities, allowing him to engage in manipulative conduct that violated Section 78i(a) of the Securities Exchange Act.

E. COUNT V: GILL'S VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5:

Gill is accused of violating Section 10(b) of the Exchange Act and Rule 10b-5 by disseminating or approving materially false and misleading statements about GameStop stock, inducing others to purchase or sell securities through deceptive communications.

Case

F. COUNT VI: MML AND MASSMUTUAL'S VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT:

MML and MassMutual are accused of violating Section 20(a) of the Exchange Act by failing to adequately supervise Gill's activities, thus enabling his manipulative conduct in violation of securities laws.

G. COUNT VII: VIOLATION OF Washington State Law RCW 19.86.093 and 19.86.020:

The plaintiff asserts that the defendants' actions also violated Washington State law, specifically RCW 19.86.093 and 19.86.020, which prohibit unfair or deceptive acts or practices in trade or commerce.

H. COUNT VIII: Gill - Conspiracy to Violate Massachusetts General Law 93A-11:

Gill is accused of conspiring to violate Massachusetts General Law 93A-11 by engaging in deceptive or unfair acts or practices in the conduct of any trade or commerce.

I. COUNT IX: Gill - Conspiracy to Violate Massachusetts General Law 93A-11:

Case

Similar to the previous count, Gill is accused of conspiring to violate Massachusetts General Law 93A-11, specifically by engaging in a scheme to manipulate the market for GameStop securities.

J. COUNT X: Against Mass Mutual and MML – Tortuous AIDING AND Abetting in GILLS SCHEME:

The plaintiff alleges that Mass Mutual and MML aided and abetted Gill's scheme to manipulate the market for GameStop securities, thus contributing to the harm suffered by class members.

### *Judgments*

*Washington D.C., Sept. 26, 2022 —*

*The Securities and Exchange Commission today charged Peter L. Coker Sr., Peter L. Coker Jr., and James T. Patten for their roles in orchestrating fraudulent manipulative securities trading schemes. These schemes included artificially inflating the share price of Hometown International, which operated a New Jersey deli producing less than $40,000 in annual revenue, from approximately $1 per share in October 2019 to nearly $14 per share by April 2021, leading to a grossly inflated market capitalization of $100 million. According to the SEC's complaint, Patten, Coker Sr., and Coker Jr., who was the former Chairman of the Board of Hometown International, took control of*

Case

*the outstanding shares of Hometown International and a separate shell company, E-Waste Corp., artificially inflated the price of both issuers' stock through manipulative trading, and used the entities to acquire privately-held companies in reverse mergers, with the intent to thereafter dump their shares at grossly inflated prices. Before the defendants were able to reap the intended profits of the schemes, as alleged, numerous news articles were published discussing the issuers' inflated stock prices.*

*"We allege that the defendants' brazen schemes resulted in the artificial inflation of the stock price of two publicly traded companies with little to no annual revenues," said Scott A. Thompson, Associate Director of Enforcement in the Philadelphia Regional Office. "Such manipulative schemes diminish the trust investors must have in the integrity of the markets, and we will pursue those who engage in such wrongdoing."*

*The SEC's complaint, filed in the U.S. District Court for the District of New Jersey, charges all three defendants with violations of the antifraud provisions of the securities laws. The complaint also charges Patten with violating market manipulation provisions of the securities laws and charges Coker Sr. and Coker Jr. with aiding and abetting those violations. It seeks injunctive relief, disgorgement plus prejudgment interest, civil penalties, a prohibition against participating in any penny stock offerings, and an officer and director bar against Coker Jr.*

Case

*In a parallel action, the U.S. Attorney's Office for the District of New Jersey*

*announced criminal charges against Patten, Coker Sr., and Coker Jr.*

*The SEC's investigation, which is ongoing, is being conducted by Cecilia B.*

*Connor of the Philadelphia Regional Office with assistance from Leigh*

*Barrett from the Office of Investigative and Market Analytics. It is being*

*supervised by Assunta Vivolo and Mr. Thompson. The SEC's litigation will be*

*handled by John V. Donnelly and supervised by Gregory R. Bockin. The SEC*

*appreciates the assistance of the Federal Bureau of Investigation, the U.S.*

*Attorney's Office for the District of New Jersey, and the Financial Industry*

*Regulatory Authority.*

The Commodity Futures Trading Commission (CFTC) yesterday announced

a settlement with Lansing Trading Group, LLC that resolves allegations of

attempted market manipulation and, separately, aiding and abetting attempted

market manipulation.  Although this settlement involved wheat and corn, its

takeaways are worth noting to traders of any commodity.  Lansing agreed to

pay a civil penalty of $3.4 million, plus a CME Group fine of $3.15 million,

and also agreed to implement new compliance measures. The CFTC and CME Group coordinated their investigations and contemporaneously issued separate but substantial penalties.

## VI. DEMAND FOR JUDGMENT:

The plaintiff seeks various forms of relief from the court, including:

Declaration of tolling of the statute of limitations due to the unprecedented nature of the defendants' scheme.

Judgment against the defendants in favor of the plaintiff and the proposed class.

Award of compensatory and punitive damages, including pre- and post-judgment interest.

Award of costs, including reasonable attorneys' fees.

Further relief deemed just and proper by the court.

Additionally, the plaintiff seeks treble damages, attorney fees, and costs under relevant statutes and laws.

Legal aspects relevant to this class action lawsuit against Keith Patrick Gill, MML Investors Services, LLC (MML), and Massachusetts Mutual Life Insurance Company (MassMutual). The complaint alleges several violations,

including market manipulation, aiding and abetting, and conspiracy. Here are
some relevant sections and legal claims:

1. **Market Manipulation**:

    o Gill's actions are accused of manipulating the market for
       GameStop stock. Market manipulation is illegal under both
       securities and antitrust laws.

    o The Securities Exchange Act of 1934, Section 9, specifically
       makes it unlawful to manipulate security prices[1].( the Securities
       Exchange Act of 1934, Section 9, specifically makes it unlawful
       to manipulate security prices. In addition, 7 U.S. Code Section
       13 makes it a felony punishable by a fine up to $1,000,000 and
       up to 10 years imprisonment to manipulate or attempt to
       manipulate the price of any commodity in interstate commerce.)

2. **Aiding and Abetting Liability**:

    o Aiding and abetting in securities fraud is a significant issue in
       this case.

    o While the U.S. Supreme Court ruled that there is no private
       cause of action for aiding and abetting securities fraud under
       Section 10(b) of the Securities Exchange Act of 1934, other
       legal avenues may still apply[2].

3. **Class Allegations**:

Case

- o The complaint outlines class allegations, which include all similarly situated investors who suffered losses due to Gill's actions.

- o Class actions are essential to address widespread harm caused by market manipulation and restore integrity to the securities market.

- o The complaint lists various counts against the defendants:

  - **Violation of 15 U.S.C. §78i (a) (2)**: Gill's alleged violation of securities laws.

  - **Violation of 15 U.S.C. §78i (a) (3)**: Another securities law violation.

  - **Violation of 15 U.S.C. §78i (a) (4)**: Yet another securities law violation.

  - **Violation of Section 10 (b) of the Exchange Act and Rule 10b-5**: Gill's alleged violation of anti-fraud provisions.

  - **Violation of Section 20 (a) of the Exchange Act**: Alleged violation by MML and MassMutual.

  - **Common-Law Failure to Supervise**: Alleged failure by MML and MassMutual to supervise Gill's actions[3].

 Conclusion

Based on the foregoing, the Commission finds that Gill violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and MML's written supervisory procedures.

Case

**Ex-A**

| SHORTS (continued)<br>Description | Acquired | Quantity | Unit<br>Cost Basis | Total<br>Cost Basis | Estimated<br>Market Price | Estimated<br>Market Value | Unrealized<br>Gain/(Loss) | Estimated<br>Annual Income |
|---|---|---|---|---|---|---|---|---|
| GAMESTOP CORP NEW  CL A | 02/18/21 | 89.0000 | 169.9807 | 15,128.29✦ | 101.7400 | 9,054.86 | (24,183.15) | |
| GAMESTOP CORP NEW  CL A | 02/18/21 | 5.0000 | 175.6720 | 878.36✦ | 101.7400 | 508.70 | (1,387.06) | |
| GAMESTOP CORP NEW  CL A | 02/18/21 | 15.0000 | 171.7113 | 2,575.67✦ | 101.7400 | 1,526.10 | (4,101.77) | |
| GAMESTOP CORP NEW  CL A | 02/18/21 | 79.0000 | 170.0239 | 13,431.89✦ | 101.7400 | 8,037.46 | (21,469.35) | |
| Subtotal | | 2,000.0000 | | 507,281.80 | | 203,480.00 | (710,761.80) | |





Kitties-N-Titties-11 1 month ago
I bought into GME cause of you. The idea of a bunch of little guys like us fucking over retail traders by all teaming up brings tears to my eyes 😢

[9]https://www.reddit.com/r/wallstreetbets/comments/d1g7x0/hey_b

urry_thanks_a_lot_for_jac

king_up_my_cost/



**ridethelightning469** 1 month ago

Bought 200 more GME shares on a whim today. My hunch was on the mark after seeing DFV loading up on more shares

All hail DFV & his unbelievable position. You dropped this 👑

👍 **17**    💬 Reply   Share   Report   Save

**4 more replies**

**mwilkens** 1 month ago

I'm about to invest my life savings into GME shares this week. No way this goes wrong right?

👍 **331**    💬 Reply   Share   Report   Save

> [deleted] 1 month ago
>
> He's still in it. So am I. 157,199 shares average cost of $20.28
>
> 👍 **636**    💬 Reply   Share   Report   Save





**Roaring Kitty** @TheRoaringKitty · Aug 29, 2020

1/4 $CHWY Ryan Cohen's 9% 13D stake in $GME is huge news. The company trades at such a deep discount and is so heavily shorted that a minor shift in investors' long-term perception of its future could have a dramatic impact on price.

♡ 1          ⇄ 1          ♡ 5                    ⬆

Show this thread

**Roaring Kitty** @TheRoaringKitty · Sep 7, 2020

2/3 $GME increased its available credit; was upgraded by Telsey; & saw $CHWY Ryan Cohen increase his stake to 9.6%. With new consoles 2 months away & short interest currently at ~115% of the float, how are you not nervous if you're short $GME heading into Q2 earnings on Wed 9/9?

♡ 1          ⇄ 2          ♡ 3                    ⬆

Show this thread

**Roaring Kitty** @TheRoaringKitty · Sep 1, 2020

When the level of $GME short interest is juxtaposed with my level of bullishness (& presumably that of Cohen & Burry) I can't help but think it's a result of automated shorting algorithms gone awry. Still not clear to me whether or not these shorts can be unwound systematically.

♡ 3          ⇄ 4          ♡ 10                   ⬆

Case

37

1.   Moreover, Gill explicitly alluded to a "short squeeze" of

GameStop shares:







# Massachusetts fines Massl
# $4.75 mln in 'Roaring Kitty

By **Nate Raymond**

September 16, 2021 10:33 AM PDT · Updated 2 years ago